**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al* [1]<br><br>         Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered)<br><br>**Objection Date: April 6, 2023 at 4:00 p.m.**<br>**Hearing Date:  April 13, 2023 at 10:00 a.m.** |

**TRUSTEE'S APPLICATION FOR APPROVAL OF RETENTION OF GREENHILL &
CO., LLC AS INVESTMENT BANKER AND FOR RELATED RELIEF**

   George L. Miller, the duly appointed chapter 7 trustee (the "Trustee") for the estates of the

above-captioned Debtors (collectively, the "Debtors" or "Estates"), pursuant to sections 105,

327(a), 328(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Federal

Rule of Bankruptcy Procedure 2014, and Rule 2014-1 of the Local Rules for the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), hereby applies (the

"Application") for entry of an order (i) approving the retention of Greenhill & Co., LLC

("Greenhill") as the Trustee's investment banker and (ii) approving the Trustee's compensation

arrangement with Greenhill. In support of the Application, the Trustee respectfully states as

follows:

**JURISDICTION AND VENUE**

   1.   The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference* from the United States District Court for the District of Delaware,

---

[1]  The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a Final Order by the Bankruptcy Court in connection with this Application to the extent that it is later determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

2.      On February 23, 2023 (the "Petition Date"), each of the affiliated Debtors Akorn Holding Company LLC, Case No. 23-10253; Akorn Intermediate Company LLC, Case No. 23-10254 and Akorn Operating Company, LLC, Case No. 23-10255 (collectively the "Bankruptcy Cases") filed a voluntary petition in the Bankruptcy Court for relief under chapter 7 of the Bankruptcy Code.

3.      On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the chapter 7 Trustee to the Estates of each of the Debtors.

4.      On March 20, 2023 an Order was entered by this Court Directing Joint Administration and Procedural Consolidation of Cases [Doc. No. 42] directing procedural consolidation and joint administration of the Bankruptcy Cases with the bankruptcy case of Akorn Holding Company LLC, Case No. 23-10253.

5.      The Debtors' businesses included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products. The Debtors were an industry leader in branded and generic products in alternate dosage forms such as ophthalmics, injectables, oral liquids, topicals, inhalants and nasal sprays. The Debtors operated at numerous locations in the United States, both owned and leased, and were headquartered in Gurnee, Illinois.

LEGAL\62205607\3 6010823/00574256

6.	The Debtors' operations in the U.S. have all ceased.  However, their Swiss affiliate, non-Debtor Akorn AG, continues to operate.  Debtor Akorn Operating Company LLC owns 100% of the equity in Akorn International S.á.r.l, a non-debtor based in Luxembourg.  Akorn International S.á.r.l, in turn, owns 100% of the equity in Akorn AG.

7.	To date, the Debtors have not filed their respective schedules, statements, and other documents required to be filed in the Bankruptcy Cases pursuant to Bankruptcy Rule 1007(b)(1) (the "Schedules and Documents") and it is uncertain whether the Debtors have the ability to file such Schedules and Documents.

8.	Prior to the Petition Date, the Debtors had retained Greenhill as investment banker to explore the possibility of selling substantially all of their businesses.  The Debtors were unable to obtain a satisfactory offer for the purchase of their businesses as a going concern, and filed these Bankruptcy Cases shortly thereafter.

9.	The Trustee requires an investment banker to conduct a sale process for assets of the Estates.  Following arm's length negotiations, the Trustee and Greenhill have agreed upon the terms and conditions that would govern Greenhill's employment as investment banker to the Estates, as set out in the engagement agreement dated March 10, 2023, a copy of which is attached to this Application as Exhibit "A" (the "Engagement Agreement").  The Trustee hereby incorporates the Engagement Agreement by reference.  A summary of certain material terms of the Engagement Agreement is provided below.[2]

## RELIEF REQUESTED

10.	Pursuant to sections 105, 327(a), 328(a) and 363 of the Bankruptcy Code, the Trustee seeks to retain and compensate Greenhill as his investment banker in accordance with the

---

[2] In the event of any inconsistency between this Application and the Engagement Agreement, the terms of the Engagement Agreement shall govern.

terms and conditions of the Engagement Agreement, effective as of March 10, 2023. The Trustee

submits this Application in reliance upon the *Declaration of Neil A. Augustine* (the "Augustine

Declaration"), a copy of which is attached hereto as Exhibit "B."

## APPLICABLE AUTHORITY

11.     Section 327(a) of the Bankruptcy Code provides that a trustee, subject to court

approval, "may employ one or more attorneys, accountants, appraisers, auctioneers, or other

professional persons, that do not hold or represent an interest adverse to the estate, and that are

disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under

this title." 11 U.S.C. § 327(a).

12.     Additionally, under section 328(a) of the Bankruptcy Code, the Trustee, "with the

court's approval, may employ or authorize the employment of a professional person under section

327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an

hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals,

including investment bankers, on more flexible terms that reflect the nature of their services and

market conditions.

13.     Bankruptcy Rule 2014 further requires that an application for retention of a

professional person include:

> [S]pecific facts showing the necessity for the employment, the name
> of the person to be employed, the reasons for the selection, the
> professional services to be rendered, any proposed arrangement for
> compensation, and, to the best of the applicant's knowledge, all of
> the person's connections with the debtor, creditors, any other party
> in interest, their respective attorneys and accountants, the United
> States trustee, or any person employed in the office of the United
> States trustee.

Fed R. Bank. P. 2014(a).

4

14.	In addition, Local Rule 2014-1 provides, "Any entity seeking approval of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval."

## BASIS FOR RELIEF REQUESTED

### A.	Greenhill's Qualifications

15.	The Trustee requires a qualified and experienced investment banker with the resources, capabilities and experience of Greenhill to assist him in maximizing the value of the Estates.  The Trustee believes that retaining Greenhill as his investment banker is in the best interest of the Estates and creditors because, among other things, Greenhill has extensive experience in, and an excellent reputation for, providing investment banking and financial advisory services to bankruptcy estate fiduciaries.

16.	As set forth in the Augustine Declaration, Greenhill and its senior professionals have extensive expertise providing investment banking services to financially distressed companies, creditors, committees, equity holders, asset purchasers, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court. Greenhill and its professionals have extensive experience in advising various parties in interest and constituencies in bankruptcy proceedings and have served as investment banker to numerous debtors and creditors in restructurings involving, among others: American Commercial Lines, Inc.; American Roads LLC; AMR Corporation; BearingPoint, Inc.; Atlantic Express Transportation Group; Answers Corporation; Avaya Inc.; Blockbuster Inc.; Cengage Learning, Inc.; Cenveo, Inc.; Chrysler, LLC; Cirque du Soleil Canada Inc.; Clover Technologies Group, LLC; David's Bridal, Inc.; Delphi Corp.; Destination Maternity Corporation; Energy Future Holdings; EXCO Resources, Inc.; Fairpoint Communications, Inc.; Fairway Group Holdings; Fusion Connect Inc.;

LEGAL\62205607\3 6010823/00574256

General Growth Properties, Inc.; Genco Shipping & Trading Limited; Global Geophysical Services, Inc.; Global Eagle Entertainment Inc.; GT Advanced Technologies Inc.; The Gymboree Corporation; Harry & David Holdings, Inc.; Hawker Beechcraft, Inc.; Inner City Media Corporation; InnovativeCommunication Corporation; LATAM Airlines Group S.A.; LifeCare Holdings, LLC; Lyondell Chemical Company; M&G USA Corporation; Milacron Holdings Inc.; Momentive Performance Materials; Motor Coach Industries International, Inc.; MTE Holdings LLC; Nassau Broadcasting Partners, L.P., New World Pasta Company; Performance Sports Group Ltd.; Quebecor World, Inc.; Refco Inc.; rue21 Inc.; Sbarro Inc.; Skillsoft Corporation; Sports Authority Holdings, Inc.; The Roman Catholic Diocese of Rockville Centre, New York; Trident Resources Corp.; Trump Entertainment Resorts, Inc.; VeraSun Energy Corporation; Werner Co. and WestPoint Stevens Inc.[3]

17.     Importantly, Greenhill has already served as investment banker in connection with the Debtors' prepetition efforts to consummate a sale of their businesses as a going concern.  As set forth in the Augustine Declaration, Greenhill has worked closely with the Debtors, their management, and their other advisors and has become well acquainted with, among other things, the Debtors' business, assets and capital structure.  The professionals at Greenhill are also well acquainted with the market for the Debtors' assets and have been in regular contact with potential purchasers.

18.     Accordingly, the Trustee believes Greenhill is uniquely suited to provide the investment banking services that are contemplated by the Engagement Agreement and described herein.

---

[3] Includes engagements while professionals were employed at other firms than Greenhill.

LEGAL\62205607\3 6010823/00574256

**B. Greenhill's Disinterestedness**

19.     To the best of the Trustee's knowledge, information, and belief, and based upon the attached Augustine Declaration: (i) Greenhill is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a), and holds no interest materially adverse to the Trustee, the Debtors, the Estates, the creditors, and/or the equity interest holders regarding the matters for which Greenhill is to be employed; and (ii) Greenhill has no connection to the Trustee, the Debtors, the Estates, the creditors, the equity interest holders, and/or to any related parties, except as may be disclosed in the Augustine Declaration. Moreover, the retention and employment of Greenhill is necessary, and is in the best interests of the Estates and creditors.

**C. Scope of Services**

20.     The Engagement Agreement governs the relationship between Greenhill and the Trustee. Pursuant to the Engagement Agreement, Greenhill will render the services set forth below, to the extent the Trustee deems necessary, as appropriate and feasible:

   a. Assist the Trustee in preparing marketing materials (based entirely on information supplied by the Trustee and the Debtors) for distribution to potential Acquirers (as defined in the Engagement Agreement), which materials shall not be made available to or used in discussions with any person or entity (including potential Acquirers) until both it and its use for that purpose have been approved by the Trustee;

   b. Assist the Trustee in arranging for potential Acquirers to conduct business investigations;

   c. Assist the Trustee in coordinating and maintaining a data room and assisting in other diligence and process matters including site visits;

   d. Assist the Company in raising, structuring and effecting debtor-in-possession financing;

   e. Provide advice and coordinate with the Trustee and counsel to develop a strategy for any Transaction and other transactions, as applicable and mutually agreed by the Trustee and Greenhill;

7

f. Assist the Trustee and its other professionals in reviewing the terms of any proposed Transaction;

g. Assist or participate in negotiations with the parties in interest, including, without limitation, any potential Acquirers, and any current or prospective creditors of the Debtors and/or their respective representatives in connection with a Transaction;

h. If requested by the Trustee, participate in hearings before Bankruptcy Court and provide relevant testimony with respect to Greenhill's services and the matters described herein, as well as issues arising in connection with Greenhill's area of expertise concerning a Transaction; and

i. Provide such other general advisory services and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Trustee and Greenhill,

(each, a "Service" and together, the "Services").  For the avoidance of doubt, Greenhill will not be responsible for advising on or assisting in the sale or disposition of inventory or accounts receivable.

**D.     Compensation**

21.     Subject to Court approval, and in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, the Trustee will compensate Greenhill in accordance with the terms and provisions of the Engagement Agreement, which provides a compensation structure (the "Fee and Expense Structure") in relevant part as follows:

a. Monthly Advisory Fee.  A non-refundable financial advisory fee of $150,000 per month (the "Monthly Advisory Fee"), which shall accrue on a monthly basis in advance, beginning as of March 10, 2023; provided that the initial and final Monthly Advisory Fee will be pro-rated for any incomplete monthly period of service. Any accrued and unpaid Monthly Advisory Fees shall be payable promptly in aggregate upon the closing of any Transaction.[4]

---

[4] The term "Transaction" is defined in the Engagement Agreement as follows:

> (i) any sale or disposition by any of the Debtors to an Acquiror (as defined below) of all or a portion of the assets (including through the assignment of any executory contracts) or operations of the Debtors or, (ii) the acquisition, directly or indirectly, by one or more Acquirers (or by one or more persons

LEGAL\62205607\3 6010823/00574256

b. <u>Transaction Fee</u>. If, at any time during the Fee Period (as defined in the Engagement Agreement), either (a) any Transaction is consummated or (b) a definitive agreement to effect any Transaction is entered into, and a Transaction with the party to such definitive agreement (or an affiliate thereof) is eventually consummated at any time thereafter (including following the expiration of the Fee Period), in either case, Greenhill shall be entitled to receive a transaction fee (the "<u>Transaction Fee</u>") payable upon consummation of the Transaction, equal to:

    i. $500,000 with respect to the first $25,000,000 in Aggregate Proceeds (as defined in Schedule B of the Engagement Agreement) paid to the Debtors or its security holders in respect of all Transactions during the Fee Period;

    ii. 3.0% of the second $25,000,000 in Aggregate Proceeds paid to the Debtors or its security holders in respect of all Transactions during the Fee Period;

    iii. 3.5% of the third $25,000,000 in Aggregate Proceeds paid to the Debtors or its security holders in respect of all Transactions during the Fee Period; and

    iv. 4.0% of any additional Aggregate Proceeds paid to the Debtors or its security holders in respect of all Transactions during the Fee Period.

22.    In addition to any fees that may be paid to Greenhill under the Engagement Agreement, the Engagement Agreement also provides that the Estates shall reimburse Greenhill for its reasonable and documented out-of-pocket expenses, including the reasonable and documented fees, disbursements and other charges of Greenhill's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court); provided, however, that

---

acting together with an Acquirer pursuant to a written agreement or otherwise), as defined below, whether in a single transaction, multiple transactions or a series of transactions, of all or a portion of the assets (including through the assignment of any executory contracts) or operations of the Debtors. The sale or disposition by the Debtors of any Inventory or Accounts Receivable to an Acquiror as a stand-alone transaction shall not be deemed a Transaction. For the avoidance of doubt, a "Transaction" shall result in a Transaction Fee as long as Greenhill was involved in the marketing or consummation of the Transaction for either clause (i) or (ii) above.

Engagement Agreement at ¶ 3.

LEGAL\62205607\3 6010823/00574256

such expenses shall not exceed $75,000 in the aggregate for this engagement without the consent of the Trustee (the "Expense Cap").

23.     During the pendency of these cases, Greenhill shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the Fee and Expense Structure.

24.     The Trustee requests that the Bankruptcy Court approve the Fee and Expense Structure under section 328(a) of the Bankruptcy Code.  The Fee and Expense Structure described above was negotiated at arms' length, and the Trustee believes that it constitutes fair and reasonable terms and conditions for the retention by the Trustee of Greenhill as his investment banker in accordance with sections 327(a) and 328(a) of the Bankruptcy Code. The Trustee believes that the Fee and Expense Structure is comparable to compensation generally charged by other firms of similar stature to Greenhill for comparable engagements, both in and out of bankruptcy. The Trustee also has been advised by Greenhill that the Fee and Expense Structure is consistent with Greenhill's normal and customary billing practices for cases of this size and complexity, which require the level and scope of the Services outlined. Additionally, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Greenhill expects to undertake, as well as the potential for failure.

25.     The Trustee thus believes that the Fee and Expense Structure is reasonable, adequately reflecting: (i) the nature of the services to be provided by Greenhill and (ii) fee and expense structures and indemnification provisions typically utilized by Greenhill and other leading investment banking firms, which do not bill their time on an hourly basis and generally are

10

compensated on a transactional basis. In particular, the Trustee believes the Fee and Expense Structure creates a proper balance between fixed monthly fees and contingency fees based on the successful closing of a Transaction and the overall success of these Bankruptcy Cases. Moreover, Greenhill's substantial experience with respect to investment banking services, coupled with the nature and scope of work already performed by Greenhill before the Petition Date, further supports the reasonableness of the Fee and Expense Structure.

26.     Accordingly, the Trustee believes that this Court should approve Greenhill's retention subject solely to the standard of review set forth in section 328(a) of the Bankruptcy Code and that Greenhill's compensation should not be subject to any additional standard of review, including under section 330 of the Bankruptcy Code.

### E.     Indemnification

27.     As part of its overall compensation to Greenhill, the Engagement Agreement provides that the Estates shall indemnify Greenhill and its professionals and affiliates in connection with the Services rendered in these Bankruptcy Cases from and against losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities and costs and reasonable documented out-of-pocket fees and expenses, except to the extent that such losses or claims arose primarily because of gross negligence, bad faith or willful misconduct (the "Indemnification Provision").

28.     The Trustee believes that the Indemnification Provision is customary and reasonable for investment banking engagements, both in and out-of-court. Approval of the Indemnification Provision is also warranted under section 328 of the Bankruptcy Code, which

11

allows a debtor, with the Court's approval, to employ "a professional person under section 327…of this title…on any reasonable terms and conditions of employment." 11 U.S.C. § 328(a).

## FEE APPLICATIONS AND RECORD KEEPING

29.     The Trustee has been advised by Greenhill that it is not the general practice of investment banking and financial services firms to keep detailed time records similar to those customarily kept by attorneys, nor do such investment banking and financial services firms keep time records on a "project category" basis. Notwithstanding the foregoing, Greenhill intends to file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures or orders of the Court. Greenhill's fee applications for allowance of its compensation and expenses will be paid by the Trustee as authorized by this Court.   Finally, the Trustee requests authority to pay Greenhill's reasonable and documented expenses each month without further order of this Court, up to the amount of the Expense Cap.

30.     Greenhill's applications will include time records setting forth, in a summary format, a description of the services rendered by each Greenhill professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Estates. Because Greenhill does not ordinarily maintain contemporaneous time records in one-tenth-hour (.1) increments or provide or conform to a schedule of hourly rates for its professionals, Greenhill will file time records in half-hour (.5) increments.   Greenhill's professionals shall not be required to keep time records on a "project category" basis and shall not be required to provide or conform to any schedule of hourly rates.   Greenhill will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the services discussed above. Greenhill's

LEGAL\62205607\3 6010823/00574256

applications for compensation and expenses will be paid by the Estates upon approval by this Court. To the extent that Greenhill's time keeping process as described herein deviates from what would otherwise be required under Local Rule 2016-2(d), the Trustee respectfully requests that the Court allow such deviations pursuant to Local Rule 2016-2(h) and waive any requirements to the contrary.

31.     Greenhill has not shared or agreed to share any compensation to be paid by the Estates with any other person, other than principals and employees of Greenhill, in accordance with section 504 of the Bankruptcy Code.

## NOTICE

32.     Notice of this Application, together with a copy of this Application, will be given to the following parties (the "Notice Parties"): (i) the Office of the United States Trustee; (ii) counsel for the Debtors; (iii) the ABL Administrative Agent, (iv) the TL Administrative Agent, (v) known counsel to the ABL Lenders; (vi) known counsel for TL Lenders; and (vii) all parties who have requested notice pursuant to Rule 2002. In light of the nature of the relief requested, the Trustee submits that no further notice need be given.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order in substantially the attached form: (i) granting the relief requested in this Application; (ii) authorizing him to retain and compensate Greenhill as investment banker as provided in the Engagement Agreement, effective as of March 10, 2023; (iii) approving the terms and conditions of the Engagement Agreement; (iv) authorizing the Trustee to enter into the Engagement Agreement and

take such actions as may be necessary to carry out his duties under the Engagement Agreement; and (v) granting any such further relief as may be appropriate.

Dated: March 22, 2023                COZEN O'CONNOR

*/s/ John T. Carroll, III*
John T. Carroll, III (No. 4060)
Simon E. Fraser (No. 5335)
1201 N. Market St., Ste. 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
Facsimile: (302) 295-2013
jcarroll@cozen.com
sfraser@cozen.com

*Proposed Counsel for the Trustee,*
*George L. Miller*

14