EXHIBIT "A"

Greenhill & Co., LLC
1271 Avenue of the Americas
New York, New York 10020

# Greenhill

As of March 10, 2023

George L. Miller
8 Penn Center, Suite 950
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103

Akorn Operating Company LLC
1925 W. Field Court
Suite 300
Lake Forest, IL 60045

Attn: George L. Miller, Chapter 7 Trustee to Akorn Operating Company LLC

Dear Mr. Miller:

This letter agreement (this "Agreement") confirms the terms under which Mr. George Miller (the "Trustee"), solely in his capacity as bankruptcy trustee to Akorn Operating Company LLC (collectively with Akorn Holding Company LLC and its direct and indirect subsidiaries and affiliates, the "Debtors") with respect to the Debtors' bankruptcy proceedings under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Cases"), has engaged Greenhill & Co., LLC ("Greenhill") as sole investment banker to the Trustee, in connection with advising the Trustee on the sale of any or all of the Debtors' assets (except for the sale or disposition of Inventory or Accounts Receivable, with each of "Inventory" and "Accounts Receivable" as defined under Article 9 of the Uniform Commercial Code), and on such other financial matters as to which the Trustee and Greenhill may agree in writing during the term of this engagement, as more specifically discussed herein. For purposes hereof, the term "Debtors" includes any entity formed or invested in to consummate a Transaction (as defined below).

If appropriate in connection with performing its services for the Trustee hereunder, Greenhill may utilize the services of one or more of its affiliates, in which case, references herein to Greenhill shall include such affiliates.

1. Scope of Services.

    In connection with the engagement hereunder, Greenhill will render the services set forth below, to the extent the Trustee deems necessary, as appropriate and feasible:

a. assist the Trustee in preparing marketing materials (based entirely on information supplied by the Trustee and the Debtors) for distribution to potential Acquirers (as defined below), which materials shall not be made available to or used in discussions with any person or entity (including potential Acquirers) until both it and its use for that purpose have been approved by the Trustee;

b. assist the Trustee in arranging for potential Acquirers to conduct business investigations;

c. assist the Trustee in coordinating and maintaining a data room and assisting in other diligence and process matters including site visits;

d. assist the Company in raising, structuring and effecting debtor-in-possession financing;

e. provide advice and coordinate with the Trustee and counsel to develop a strategy for any Transaction and other transactions, as applicable and mutually agreed by the Trustee and Greenhill;

f. assist the Trustee and its other professionals in reviewing the terms of any proposed Transaction;

g. assist or participate in negotiations with the parties in interest, including, without limitation, any potential Acquirers, and any current or prospective creditors of the Debtors and/or their respective representatives in connection with a Transaction;

h. if requested by the Trustee, participate in hearings either before the United States Bankruptcy Court in which the Bankruptcy Cases are pending (the "Bankruptcy Court") and provide relevant testimony with respect to Greenhill's services and the matters described herein, as well as issues arising in connection with Greenhill's area of expertise concerning a Transaction; and

i. provide such other general advisory services and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Trustee and Greenhill,

(each a "Service" and together, the "Services").

For the avoidance of doubt, Greenhill will not be responsible for advising on or assisting in the sale or disposition of Inventory or Accounts Receivable.

In rendering the Services to the Trustee hereunder, Greenhill is not assuming any responsibility for the Trustee's and the Debtors' underlying business decision to pursue (or not to pursue) or to effect (or not to effect) any Transaction. The Trustee

agrees that Greenhill shall not have any obligation or responsibility to provide accounting, audit, "crisis management," or "business consultant" services for the Trustee, and shall have no responsibility for designing or implementing any operating, organizational, administrative, cash management or liquidity improvements, or to provide any opinions with respect to solvency in connection with any Transaction. The Trustee confirms that it will rely on its own counsel, accountants and other similar expert advisors for legal, accounting, tax, regulatory and other similar advice.

It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Greenhill to underwrite, place or purchase any securities.

It is further understood that this Agreement and its terms shall be the only agreement between the Trustee and Greenhill in relation to the Services and all prior engagement letters between the Debtors (including any predecessor entities) and Greenhill in respect of other transactions shall be deemed terminated as of the date hereof.

As part of our investment banking business, Greenhill has regular ordinary-course conversations concerning our clients' respective businesses, the markets, and potential transactions, as is customary for advisory services. Often, we may represent such clients on matters unrelated to any Transaction. Our clients include lender institutions, creditors, interested parties and potential counterparties to the Trustee or the Debtors who may have interests that are not aligned with your interests. The parties agree that any such relationships and transaction(s) do not constitute a conflict of interest or a potential conflict of interest on the part of Greenhill, except where we may separately disclose to you circumstances that may require special consideration.

2. Information.

The Trustee shall use its best efforts, or cause other stakeholders, to make available to Greenhill all information concerning the business, assets, operations, financial condition, and prospects of the Debtors that Greenhill requires to render the Services hereunder ("Debtors' Information"), and shall provide Greenhill with access to the Trustee and the Debtors' consultants, officers, directors, employees, independent accountants, counsel and other advisors and agents as Greenhill deems appropriate. In order to coordinate effectively the Trustee's and Greenhill's activities to effect any Transaction, the Trustee will promptly inform Greenhill of any discussions, negotiations or inquiries regarding a possible Transaction (including any such discussions, negotiations or inquiries that have occurred prior to the date of this Agreement).

The Trustee represents that all Debtors Information furnished by it or on its behalf to Greenhill, at all times during Greenhill's engagement (i) will be true and correct in all material respects, and (ii) will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not

misleading in light of the circumstances under which such statements are made, in each case as of the date on which such Debtors Information is provided, or as of the date indicated in such Debtors Information, as applicable. If at any time during the term of this engagement, the Trustee becomes aware that the Debtors Information is or becomes inaccurate, incomplete or misleading in any material respect the Trustee shall promptly notify Greenhill.

Greenhill agrees that it will use the Debtors Information for the sole purpose of the engagement contemplated by this Agreement. The Trustee recognizes and acknowledges that in advising the Trustee and completing its engagement hereunder, Greenhill will also be using and relying on publicly available information and on data, material and, with the Trustee's permission, other information furnished to Greenhill by the Trustee's other advisors.

It is understood that in performing under this engagement, Greenhill shall be entitled to rely upon and assume, without assuming any responsibility for independent verification, the accuracy and completeness of all information that is publicly available and of all information that has been furnished to it by the Trustee and/or the Trustee's consultants and advisors, the Debtors and/or the Debtors' consultants and advisors, or otherwise reviewed by Greenhill, and Greenhill shall not assume any responsibility or have any liability therefor; *provided, however*, that Greenhill acknowledges that projections and forecasts are subject to significant uncertainties and contingencies, many of which may be beyond the Trustee's control, and no assurance can be given that any particular projections or forecasts will be realized and that actual results during the period or periods covered by the projections or forecasts may differ from projected results, and such differences may be material.

3. Definitions.

As used herein, the term "Transaction" shall mean (i) any sale or disposition by any of the Debtors to an Acquiror (as defined below) of all or a portion of the assets (including through the assignment of any executory contracts) or operations of the Debtors or, (ii) the acquisition, directly or indirectly, by one or more Acquirers (or by one or more persons acting together with an Acquirer pursuant to a written agreement or otherwise), as defined below, whether in a single transaction, multiple transactions or a series of transactions, of all or a portion of the assets (including through the assignment of any executory contracts) or operations of the Debtors. The sale or disposition by the Debtors of any Inventory or Accounts Receivable to an Acquiror as a stand-alone transaction shall not be deemed a Transaction. For the avoidance of doubt, a "Transaction" shall result in a Transaction Fee as long as Greenhill was involved in the marketing or consummation of the Transaction for either clause (i) or (ii) above.

4. <u>Compensation</u>.

As compensation for Greenhill's Services rendered hereunder, the Debtors (including any successor to or assignee of all or substantially all of the assets and/or business of the Debtors) shall pay Greenhill the following fees, in cash, in U.S. Dollars, via direct wire transfer:

- a. <u>Monthly Advisory Fee</u>. A non-refundable financial advisory fee of $150,000 per month (the "<u>Monthly Advisory Fee</u>"), which shall accrue on a monthly basis in advance, beginning as of March 10th, 2023; provided that the initial and final Monthly Advisory Fee will be pro-rated for any incomplete monthly period of service. Any accrued and unpaid Monthly Advisory Fees shall be payable promptly in aggregate upon the closing of any Transaction.

- b. <u>Transaction Fee</u>. If, at any time during the Fee Period, either (a) any Transaction is consummated or (b) a definitive agreement to effect any Transaction is entered into, and a Transaction with the party to such definitive agreement (or an affiliate thereof) is eventually consummated at any time thereafter (including following the expiration of the Fee Period), in either case, Greenhill shall be entitled to receive a transaction fee (the "<u>Transaction Fee</u>") payable upon consummation of the Transaction, equal to:

    - a. $500,000 with respect to the first $25,000,000 in Aggregate Proceeds (as defined in <u>Schedule B</u> to this Agreement) paid to the Debtors or its securityholders in respect of all Transactions during the Fee Period;

    - b. 3.0% of the second $25,000,000 in Aggregate Proceeds paid to the Debtors or its securityholders in respect of all Transactions during the Fee Period;

    - c. 3.5% of the third $25,000,000 in Aggregate Proceeds paid to the Debtors or its securityholders in respect of all Transactions during the Fee Period; and

    - d. 4.0% of any additional Aggregate Proceeds paid to the Debtors or its securityholders in respect of all Transactions during the Fee Period.

As used in this Agreement, "<u>Fee Period</u>" shall mean the period including the term of this Agreement and Greenhill's engagement hereunder, and the period beginning upon the termination of this Agreement and Greenhill's engagement hereunder and extending 12 (twelve) months thereafter.

5. Credit.

Greenhill shall credit against any Transaction Fee, an amount equal to 50% of the Monthly Advisory Fees, provided that such Transaction Fee is paid in full and provided that the sum of the foregoing credits shall not exceed the Transaction Fee.

6. Recognition of Fee Structure.

The Trustee and Greenhill acknowledge and agree that the hours worked, the results achieved, and the ultimate benefit to the Debtors of the work performed, in each case, in connection with this engagement, may be variable, and that the Trustee and Greenhill have taken this into account in setting the fees hereunder.

No fee payable to any other person, by the Debtors or any other party, shall affect any fee payable to Greenhill hereunder.

7. Out-of-Pocket Expenses.

Without in any way reducing or affecting the provisions of Schedule A hereto, the Debtors shall promptly reimburse, during the term of the engagement hereunder, Greenhill on a monthly basis for its reasonable and documented out-of-pocket expenses incurred in connection with the performance of its engagement hereunder, including, without limitation, the reasonable and documented fees, disbursements and other charges of Greenhill's counsel (without the requirement that the retention of such counsel be approved by the Bankruptcy Court); *provided, however*, that such expenses shall not exceed $75,000 without the consent of the Trustee. Expenses shall also include, but not be limited to, documented out-of-pocket expenses incurred in connection with travel and lodging, data processing and communication charges, research and courier services. If Greenhill's engagement hereunder is approved by the Bankruptcy Court, consistent with and subject to any applicable order of the Bankruptcy Court, the Debtors shall promptly reimburse Greenhill for such expenses under this Section 7 upon presentation of an invoice or other similar documentation with reasonable detail. Greenhill agrees to provide the Trustee with reasonable documentary support for its expenses at the Trustee's request or at the Bankruptcy Court's direction.

8. Indemnification.

The Debtors hereby agrees to indemnify Greenhill and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this Agreement as Schedule A commencing from the date hereof, which Indemnification Provisions shall be subject to the Bankruptcy Court order approving Greenhill's retention during the Bankruptcy Cases. Such Indemnification Provisions are an integral part of this Agreement, and the terms thereof are incorporated by reference herein. For the avoidance of doubt, such Indemnification Provisions shall survive any termination or completion of Greenhill's engagement hereunder.

9. Termination.

This Agreement and Greenhill's engagement hereunder may be terminated by either the Trustee or Greenhill at any time, upon providing 30 days' advance written notice thereof to the other party, *provided, however*, that (a) termination of Greenhill's engagement hereunder shall not affect the Debtors' continuing obligation to indemnify Greenhill and certain related persons as provided for in Schedule A to this Agreement, and its continuing obligations and agreements under paragraphs 8, 9, 10, 11, 13 and 14 hereof, (b) notwithstanding any such termination, Greenhill, shall be entitled to receive from the Debtors the fees in the amounts and at the times provided for in paragraph 4 hereof, and (c) any termination of Greenhill's engagement hereunder shall not affect the Debtors' obligation to reimburse expenses provided in paragraph 7 hereof in the amounts and at the times provided therein; provided that, no Transaction Fee shall be payable to Greenhill with respect to the sale of any Inventory or Accounts Receivable as part of a stand-alone transaction consummated after the termination of Greenhill's engagement hereunder. Without limiting any of the foregoing any Transaction Fee shall be payable in the event that (a) any Transaction is consummated at any time prior to the expiration of the Fee Period, or (b) a letter of intent or definitive agreement with respect thereto is executed at any time prior to the expiration of the Fee Period (which letter of intent or definitive agreement subsequently results in the consummation of the related Transaction), in each case subject to the terms herein; provided that, no Transaction Fee shall be payable with respect to the sale of any Inventory or Accounts Receivable consummated after the termination of Greenhill's engagement hereunder. Greenhill acknowledges that its fees shall be subject to Bankruptcy Court approval of Greenhill's retention in the Bankruptcy Cases. Notwithstanding anything in this Agreement to the contrary, if this Agreement is terminated due to gross negligence or willful misconduct by Greenhill, or Greenhill unilaterally terminates this Agreement absent breach of this Agreement by the Trustee, Greenhill shall receive no compensation after such date of termination of this Agreement.

10. Independent Contractor.

Greenhill has been retained under this Agreement as an independent contractor with no fiduciary duties owing to or agency relationship with the Trustee, the Debtors or to any other party.

11. Confidentiality.

The advice (oral or written) rendered by Greenhill pursuant to this Agreement is intended solely for the benefit and use of the Trustee in considering the matters to which this Agreement relates, and the Trustee agrees that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to Greenhill be made by the Trustee, without the prior written consent of Greenhill, except in each case as may be required by law, rule, or

Akorn Operating Company LLC
As of March 10, 2023
Page 8

regulation or legal, judicial, administrative or regulatory process or proceeding, including in connection with any application for retention of Greenhill in a Bankruptcy Case. The parties acknowledge that the Confidentiality Agreement entered into on April 20th, 2022 (the "Confidentiality Agreement") remains in full force and effect. In the event there is any conflict between the provisions of the Confidentiality Agreement and this Agreement, the provisions of this Agreement shall prevail.

12. Required Information.

The Trustee acknowledges that Greenhill is required to obtain, verify and record certain information that identifies each entity that enters into a formal business relationship with Greenhill (including, but not limited to, the Trustee's and the Debtors' complete legal name, street address and taxpayer ID number or similar identification number) in accordance with the USA Patriot Act and FinCEN rules.

13. Public Announcement.

The Trustee agrees that Greenhill shall have the right, at its own expense, without the Trustee's consent, upon the earlier of (i) public announcement of Greenhill's retention and (ii) closing of a Transaction, to place announcements and advertisements or otherwise publicize a Transaction in such financial and other newspapers and journals as it may choose, stating that Greenhill acted as financial advisor to the Trustee in connection with such Transaction. The Trustee further agrees that Greenhill may utilize the Debtors' logo and other marks in any such public announcement and/or general marketing and promotional materials.

14. Choice of Law; Jurisdiction.

This Agreement shall be deemed to be made in New York. This Agreement and all controversies arising from or relating to performance of this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law. The Trustee hereby irrevocably consents to personal jurisdiction in the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this Agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Trustee, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions; *provided* that during the Bankruptcy Cases, any such claims shall be heard and determined by any Bankruptcy Court having jurisdiction over the chapter 7 case or cases, or similar proceedings in other jurisdictions.

The Trustee hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to such party at the Trustee's address set forth above, such service to become effective ten (10) days after such mailing.

ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH GREENHILL'S ENGAGEMENT IS HEREBY WAIVED BY BOTH PARTIES.

15. Successors and Assigns.

This Agreement shall be binding upon the parties hereto and their respective successors and assigns. This Agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Debtors, or any other person or entity not a party hereto other than the Indemnified Parties referenced in the Indemnification Provisions contained herein.

16. Chapter 7.

The Trustee shall use its commercially reasonable efforts to promptly apply to the Bankruptcy Court for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of this Agreement and Greenhill's retention by the Trustee under the terms of this Agreement, subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Trustee shall supply Greenhill with a draft of such application and any proposed order authorizing Greenhill's retention sufficiently in advance of the filing of such application and proposed order to enable Greenhill and its counsel to review and comment thereon. Greenhill shall have no obligation to provide any services under this Agreement if Greenhill's retention under the material terms of this Agreement is not approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Greenhill in all respects. Greenhill acknowledges that in the event that the Bankruptcy Court approves its retention by the Trustee, Greenhill's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders. In the event that Greenhill's engagement hereunder is approved by the Bankruptcy Court, the Debtors shall pay all fees and expenses of Greenhill hereunder as promptly as practicable in accordance with the terms hereof and the order approving the retention of Greenhill. Subject to being so retained, Greenhill agrees that during the pendency of the Bankruptcy Cases, it shall continue to perform its obligations under this Agreement and shall file interim and final applications for allowance of the fees and expenses payable to it under the terms of

this Agreement pursuant to the applicable Federal Rules of Bankruptcy Procedure, and the local rules and orders of the Bankruptcy Court.

The Trustee shall use best efforts to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Cases provides for the full and prompt payment of Greenhill's fees and expenses contemplated hereby from any cash collateral and financing proceeds. Greenhill's compensation as set forth herein and payments made pursuant to the reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration or as professional compensation to the fullest extent permitted by the Bankruptcy Code. The Trustee shall use its best efforts to ensure that Greenhill is entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Debtors to pay promptly Greenhill the compensation and expense reimbursement contemplated hereby after taking into account the Debtors' obligations to other professionals entitled to the benefit of the carve-outs) in effect in such cases pursuant to one or more financing and/or cash collateral orders entered by the Bankruptcy Court. Greenhill shall have no obligation to provide any further services if the conditions of this paragraph are not satisfied.

In agreeing to seek Greenhill's retention under Section 328(a) of the Bankruptcy Code, the Trustee acknowledges that it believes that Greenhill's general restructuring experience and expertise, its knowledge of the industry in which the Debtors operate and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Debtors, that the value to the Debtors of Greenhill's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Advisory Fee and Transaction Fee are reasonable, regardless of the number of hours expended by Greenhill's professionals in performance of the services provided hereunder.

17. <u>Entire Agreement</u>.

Except as provided herein, this Agreement, including <u>Schedule A</u> hereto, embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each party.

18. <u>Authority</u>.

Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement and the transactions contemplated hereby. Each party hereto further represents and warrants that this Agreement has been duly and validly authorized by all necessary corporate or other action on the part of the Trustee and

has been duly executed and delivered by the Trustee and constitutes a legal, valid and binding agreement of the Trustee, enforceable in accordance with its terms.

19. Counterparts.

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement. Delivery of an executed counterpart of a signature page to this Agreement by facsimile, portable document format (PDF) or other electronic means shall be effective as delivery of a manually executed counterpart to this Agreement.

20. Additional Services.

If at any time during the term of this Agreement the Trustee requests additional services not covered in this Agreement, the parties may agree on an additional engagement, the terms of which will be set forth in an amendment to this Agreement or a separate letter agreement containing terms and conditions to be mutually agreed upon, including, without limitation, appropriate indemnification provisions. In any such additional engagement, Greenhill shall be paid fees to be mutually agreed upon in good faith by the Trustee and Greenhill at the appropriate time, which fees shall be customary for similarly situated investment banking firms in similar circumstances.

We are pleased to accept this engagement and look forward to working with the Trustee. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between the parties hereto.

Very truly yours,

GREENHILL & CO., LLC

By: /s/ Neil Augustine

Name: Neil Augustine

Title: Vice Chairman, Managing Director
Co-Head of North American Financing Advisory & Restructuring

By: /s/ Rupert Hill

Name: Rupert Hill

Title: Managing Director
Head of Global Pharmaceuticals and European Healthcare

Accepted and Agreed to:

Akorn Operating Company LLC

By: /s/ George L. Miller

Name: George L. Miller

Title: Chapter 7 Trustee

## SCHEDULE A

## INDEMNIFICATION

Subject to the provisions of this Schedule A, the Debtors shall indemnify and hold harmless Greenhill and its affiliates and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Greenhill and each of such other persons, an "Indemnified Party" and, collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including, without limitation, stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities and costs and reasonable documented out-of-pocket fees and expenses (including reasonable and documented fees, disbursements and expenses of outside legal counsel) (collectively, "Losses") directly or indirectly in connection with, arising out of, based upon or related to the engagement of Greenhill under this Agreement or any transaction, activities or conduct in connection therewith, regardless of whether such activities or conduct occurred prior to or after the date hereof; provided that the Debtors shall not be required to indemnify any Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose primarily because of the gross negligence, bad faith or willful misconduct of such Indemnified Party.

The Debtors shall further promptly reimburse the Indemnified Parties for any reasonable and documented out-of-pocket legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing, pursuing or settling any action or other proceeding (whether formal or informal) or threat thereof (including, without limitation, any reasonable and documented out-of-pocket expenses incurred in connection with any response to a subpoena or similar request for documents and/or testimony) relating to any of the matters covered by the indemnification set forth in the preceding paragraph, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under this Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose primarily because of the gross negligence, bad faith or willful misconduct of such Indemnified Party, such Indemnified Party will promptly remit to the Debtors any amounts reimbursed under this paragraph. Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Debtors in writing of such Action, but the failure to so notify shall not relieve the Debtors from any liability hereunder (a) if the Debtors had actual notice of such Action or (b) unless and only to the extent that such failure adversely affects the rights and defenses of the Debtors in respect of such Action. The Debtors shall not be liable for any settlement of any proceeding effected without its prior written consent (not to be unreasonably withheld), but if settled with such consent or if there is a final judicial determination by a court of competent jurisdiction against an Indemnified Party, the Debtors agree to indemnify the Indemnified Party from and against any loss or liability by reason of such settlement or judgment to the extent subject to indemnification pursuant to the terms hereof.

The Debtors agree that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined by a court of competent jurisdiction to be unavailable, or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein (other than pursuant to the proviso in the first paragraph of this Schedule A), then the Debtors shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Debtors and its members, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Debtors and such Indemnified Party and any other party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed any earned Transaction Fee.

The rights of the Indemnified Parties hereunder shall be in addition to any other rights that any Indemnified Party may have at common law, by statute or otherwise. Except as otherwise expressly provided for in this Agreement, if any term, provision, covenant or restriction contained in this Agreement is finally determined by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations set forth herein shall apply to any modification of this Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, this Agreement.

## SCHEDULE B

For the purpose of calculating the Transaction Fee and subject to the terms of the final two sentences of this paragraph, "Aggregate Proceeds" shall equal the sum of (without duplication): (A)(i) cash proceeds paid to the Debtors or its securityholders in respect of a Transaction; (ii) notes, securities and other property paid to the Debtors or its securityholders in respect of a Transaction; (iii) payments actually made to the Debtors or its securityholders in installment in respect of a Transaction; and (iv) contingent payments (whether or not related to future earnings or operations); plus (B) the aggregate principal amount of all indebtedness for borrowed money (which, for the avoidance of doubt, shall not include capitalized leases, pension liabilities normal accounts payable and accrued expenses) outstanding immediately prior to consummation of a Transaction and assumed by the Acquirer in connection with the consummation of a Transaction. Aggregate Proceeds shall not include any tax refund or similar receivable payable to the Company or any of its subsidiaries but not yet received as of the consummation of a Transaction. For the avoidance of doubt, Aggregate Proceeds shall include payments to Akorn AG in respect of a Transaction only to the extent such payments directly or indirectly result in value attributable to Akorn Operating Company, LLC's indirect equity ownership of Akorn AG (the "Akorn AG Equity Value"), and only in the amount of the Akorn AG Equity Value.

For purposes of computing any fees payable to Greenhill hereunder non-cash consideration shall be valued as follows: (A) publicly traded securities shall be valued at the average of their closing prices (as reported in The Wall Street Journal) for five trading days ending five trading days prior to the closing of a Transaction and (B) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the Trustee and Greenhill on the day prior to the consummation of a Transaction; provided that, if such parties are unable to agree on a fair market value for such non-cash consideration, then the parties shall submit such issue to a panel of three arbitrators located in New York, New York (with one arbitrator being chosen by each party and the third being chosen jointly by the parties) for determination, which determination shall be binding upon each of the Debtors and Greenhill.