# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| AKORN HOLDING COMPANY LLC, *et al* [1] | Case No. 23-10253 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date:** May 25, 2023 at 9:30 a.m. ET |
| | **Objection Date:** May 18, 2023 at 4:00 p.m. ET |

**TRUSTEE'S MOTION FOR ENTRY OF ORDER (I) REJECTING LEASE FOR CRANBURY PROPERTY, (II) ABANDONING REMAINING PERSONAL PROPERTY, AND (III) GRANTING RELATED RELIEF**

George L. Miller, as chapter 7 trustee (the "Trustee") of the estates (the "Estates") of the above-captioned debtors (the "Debtors"), pursuant to sections 365 and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves (the "Motion") for entry of an order (i) rejecting the Estates' interest in that certain *Ground Lease,* dated June 15, 2016 (as amended, the "Cranbury Lease") for the property located at 5 Cedar Brook Drive, Cranbury, New Jersey (the "Cranbury Property"), effective as of April 30, 2023; (ii) authorizing the Trustee to abandon any personal property remaining at the Cranbury Property, effective as of April 30, 2023; and (iii) providing certain related relief. In support of the Motion, the Trustee respectfully states as follows:

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

*Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M), and pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a Final Order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### A. Overview

2. On February 23, 2023 (the "Petition Date"), each of the affiliated Debtors Akorn Holding Company LLC ("Akorn Holding"), Case No. 23-10253; Akorn Intermediate Company LLC ("Akorn Intermediate"), Case No. 23-10254 and Akorn Operating Company, LLC ("Akorn Operating"), Case No. 23-10255 (collectively the "Bankruptcy Cases") filed a voluntary petition in the Bankruptcy Court for relief under chapter 7 of the Bankruptcy Code.

3. On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the chapter 7 Trustee to the Estates of each of the Debtors.

4. The Debtors' businesses included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products. The Debtors were an industry leader in branded and generic products in alternate dosage forms such as ophthalmics, injectables, oral liquids, topicals, inhalants and nasal sprays. The Debtors operated at numerous locations in the United States, both owned and leased, and were headquartered in Gurnee, Illinois.

5. The Debtors' operations in the U.S. have all ceased. However, their Swiss affiliate, non-Debtor Akorn AG, continues to operate. Debtor Akorn Operating Company LLC owns 100% of the equity in Akorn International S.á.r.l, a non-debtor based in Luxembourg. Akorn International S.á.r.l, in turn, owns 100% of the equity in Akorn AG.

**B. Cranbury Lease**

6. On or about June 15, 2016, Akorn Inc., as Tenant, and Cedar Brook Corporate Center, LP, as Landlord (the "Landlord"), entered into the Cranbury Lease. The monthly rent and other expenses payable under the Cranbury Lease are approximately $125,000 in the aggregate.

7. Greenhill & Co. ("Greenhill"), is currently marketing and offering for sale substantially all of the Estates' assets through a public bidding and auction process and has communicated with over 200 parties (the "Marketing Process"). During the Marketing Process, no party has expressed an interest in receiving an assignment of the Cranbury Lease.

8. On April 24, 2023, the Trustee filed a motion for authority to sell the equipment and other personal property located at the Cranbury Property (the "Equipment") to Heritage Global Partners, Inc. (the "Purchaser"). *See* D.I. 120. The Purchaser has removed all Equipment from the Cranbury Property. Accordingly, the Trustee is able to relinquish possession of the Property as of April 30, 2023.

## SUMMARY OF RELIEF REQUESTED

9. By this Motion, the Trustee respectfully requests entry of orders: (i) approving the Estates' rejection of the Cranbury Lease, effective as of April 30, 2023; (ii) abandoning any personal property that may remain at the Cranbury Property (the "Personal Property"), effective as of April 30, 2023; and (iii) granting related relief.

## RELIEF REQUESTED AND APPLICABLE AUTHORITY

**I. The Trustee requests that the Court approve the rejection of the Cranbury Lease.**

10. Section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the Trustee. *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (Bankr. D. Del. 1995). Application of the business judgment standard requires a court to approve a trustee's business decision unless the decision is the product of bad faith, whim, or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985). Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citation omitted).

11. Rejection of an unexpired lease is appropriate where such rejection would benefit the estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989). Upon finding that a trustee has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a). *See In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed,* 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary

circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

12. Here the Cranbury Lease provides no benefit to the Estates. By rejecting the Cranbury Lease, the Trustee anticipates that the Estates will save approximately $125,000 per month in rent and associated costs. Absent rejection, the Estates may be liable for continued rental payments under the Cranbury Lease, as well as certain real property taxes, utilities, insurance, and other related charges associated with the Lease. Additionally, the Trustee has determined in his business judgment that the carrying cost of the Cranbury Lease exceeds any value that might potentially be achieved from attempting to assign the Cranbury Lease or sublet the Cranbury Property. No party has approached the Trustee during the Marketing Process with an interest in receiving an assignment of the Cranbury Lease.

13. Accordingly, in an effort to reduce potential administrative costs, and in the exercise of the Trustee's sound business judgment, the Trustee has determined that rejecting the Cranbury Lease is in the best interests of the Estates and their creditors.

**II.    The Trustee requests that rejection of the Cranbury Lease take effect as of April 30, 2023.**

14. Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively. *See, e.g., In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection of [leases] to apply retroactively"). Courts have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of an order authorizing such rejection where the balance of equities favors such relief. *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028–29 (1st Cir.

1995) (stating that "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating that "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *CCI Wireless*, 297 B.R. at 140 (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *see also In re At Home Corp.*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (holding "that a bankruptcy court may approve retroactively the rejection of an unexpired nonresidential lease").

15. "To grant *nunc pro tunc* rejection, the [Trustee] must have stated an unequivocal intent to reject the leases." *In re Fleming Companies, Inc.,* 304 B.R. 85, 96 (Bankr. D. Del. 2003); *see Chi-Chi's*, 305 B.R. at 399 (authorizing rejection as of date debtors surrendered possession to landlord). "Courts have further held that the retroactive rejection of executory contracts and unexpired leases may be approved 'after balancing the equities' of a case and concluding that such equities weigh in favor of the debtor." *In re Extraction Oil & Gas,* 622 B.R. 608, 630 (Bankr. D. Del. 2020) (authorizing retroactive rejection where debtors sought relief as soon as they determined that lease rejection was in the best interest of their estates, and where failing to authorize retroactive rejection would force debtors to "incur unnecessary administrative charges . . . that do not provide an equivalent benefit to the Debtors' estates").

16. Here, the balance of equities favors rejection of the Cranbury Lease effective as of April 30, 2023. Without this relief, the Estates may incur unnecessary administrative expenses related to the Cranbury Lease. On the other hand, the Landlord will not be prejudiced if rejection is deemed effective as of April 30th, as this is the date on which the Trustee will return the keys

6

and irrevocably surrender possession of the Cranbury Property.  In addition, the Trustee intends for the filing of this Motion to be an irrevocable statement of surrender and abandonment of the Cranbury Property to the Landlord as of April 30th, and the Trustee waives his right to withdraw the request to reject the Cranbury Lease.  Contemporaneously with the filing of this Motion, the Trustee will cause notice of this Motion to be served on the Landlord, thereby allowing it sufficient opportunity to respond if it wishes.

17. The Court has routinely approved similar relief in the past. *See In re Cosi, Inc.*, Case No. 20-10417 (BLS) (Bankr. D. Del. Aug. 10, 2020) (authorizing retroactive rejection of lease as of specified date); *In re Things Remembered, Inc*., No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (authorizing debtors' rejection of certain license agreements *nunc pro tunc* to prior notice date); *In re Charming Charlie Holdings Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (authorizing rejection of unexpired leases *nunc pro tunc* to prior notice date); *In re Quicksilver Res. Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. Apr. 15, 2015) (authorizing rejection of executory contracts effective as of specified dates); *In re QCE Fin. LLC*, No. 14-10543 (PJW) (Bankr. D. Del. Apr. 9, 2014) (authorizing rejection of unexpired leases *nunc pro tunc* to the petition date); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Feb. 26, 2014) (authorizing rejection of unexpired leases *nunc pro tunc* to prior notice date).

18. Accordingly, the Trustee respectfully request that the Court deem the Cranbury Lease rejected effective as of April 30, 2023.

### III. The Trustee requests that the Court authorize the abandonment of any Personal Property that remains at the Cranbury Location.

19. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Courts generally give great deference to a debtor's

decision to abandon property. *See, e.g., In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless certain property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. *Id*.

20. In this case, the Trustee has already sought approval to sell all or substantially all of the Equipment located at the Cranbury Property, and the Purchaser has agreed to remove the Equipment on an expedited basis on or before April 30, 2023. Upon removal of the Equipment, the Personal Property remaining at the Cranbury Property, if any, is of inconsequential value. The cost of removing and storing such Personal Property for future use, marketing or sale would exceed its value. Further, any efforts by the Trustee to move or market the Personal Property could unnecessarily delay the Trustee's surrender of the Cranbury Property and rejection of the Cranbury Lease. Accordingly, the Trustee's determination to abandon the Personal Property is appropriate, and well within his business judgment.

21. This Court has routinely approved similar relief. *See, e.g., In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (authorizing, but not directing, the debtors to abandon personal property at the debtors' leased premises that was subject to a rejected lease); *In re Charming Charlie Holdings Inc.*, No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (same); *In re Dex Media, Inc.*, No. 16-11200 (KG) (Bankr. D. Del. June 8, 2016) (same); *In re Sports Auth. Holdings, Inc.*, No. 16-10527 (MFW) (Bankr. D. Del. Apr. 4, 2016) (same); *In re Samson Res. Corp.*, No. 5-11934 (CSS) (Bankr. D. Del. Feb. 19, 2016) (same).

## NOTICE

22. Notice of this Motion together with a copy of the Motion will be given to the following parties: (a) the Office of the United States Trustee; (b) the Debtors' counsel; (c) the Landlord; (d) the Debtors' pre-petition secured lenders with names and addresses appearing in Schedule D of the Schedules of Assets and Liabilities prepared by the Debtors; (e) the ABL Administrative Agent, (f) the TL Administrative Agent, (g) known counsel to the ABL Lenders; (h) known counsel for TL Lenders; (i) known counsel to any other Lenders; (j) largest thirty (30) unsecured creditors with names and addresses appearing in Schedule F of the Schedules of Assets and Liabilities prepared by the Debtors; and (k) all parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002.  The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially in the form of Order attached hereto as **Exhibit A**, (i) rejecting the Cranbury Lease, effective as of April 30, 2023; (ii) abandoning any Personal Property that remains at the Cranbury Property after removal of the Equipment, effective April 30, 2023; and (iii) granting any additional relief as is just and proper.

Dated:  April 26, 2023                                    COZEN O'CONNOR

By:  */s/ John T. Carroll, III*
John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 N. Market Street, Suite 1001
Wilmington, DE  19801
(302) 295-2000 Phone
(302) 295-2013 Fax No.
jcarroll@cozen.com
sfraser@cozen.com

David R. Doyle (IL ARDC 6303215)
(Admitted in IL/Not admitted in DE)
123 N. Wacker Drive, Suite 1800
Chicago, IL  60606
(312) 474-1648 Phone
(312) 382-8910 Fax No.
daviddoyle@cozen.com

*Counsel to George L. Miller, Chapter 7 Trustee*