# EXHIBIT "B"

# Arnold & Porter

**Daniel A. Kracov**
+1 202.942.5120 Direct
Daniel.Kracov@arnoldporter.com

May 11, 2021

Beth Zelnick Kaufman
Executive Vice President,
  Chief Legal Officer & Corporate Secretary
Akorn Operating Company LLC.
1925 West Field Court, Suite 300
Lake Forest, IL  60045

Dear Beth:

We are very pleased that Akorn Operating Company LLC. ("Akorn") has engaged Arnold & Porter Kaye Scholer LLP, a Delaware limited liability partnership ("Arnold & Porter" or the "Firm"), to provide legal services to it in connection with regulatory and compliance matters.  The purpose of this letter is to set forth our mutual understanding as to the basis on which we will represent you with respect to this matter and such additional matters as we may mutually agree.

1.      <u>Fee Calculation</u>.  Arnold & Porter will charge Akorn for professional services based on the time we spend on your matters.  Rates for attorneys likely to work on your matters are attached.  Please note that we will be billing you at a 15% discount off our standard rates.  You should be aware that our billing rates are reviewed at least annually, usually in January of each year, and may be modified prospectively to reflect changes in our cost structure (including those related to changes in seniority levels), market conditions, and such other factors as the Firm deems appropriate.

Our charges will include billings for the time of attorneys and, where applicable, other professionals and paraprofessionals.  We will be pleased to indicate to you, if you wish, our current standard hourly rates for attorneys and others at various levels of seniority.

In the event we are authorized or requested by you or on your behalf, or required by law as we may determine, or by any legal process, to produce any of (a) our files, (b) your files stored with us, or (c) our personnel as formal or informal witnesses or information sources with respect to our engagement or potential engagements by you, you agree to pay or reimburse us for our professional time (at then applicable hourly rates for personnel who have hourly rates and on a reasonable basis otherwise) and ancillary services and expenses as incurred in preparing and implementing a response to such a request or requirement.  As used in the preceding sentences, the term "files" includes all

**Arnold & Porter**

Beth Zelnick Kaufman
May 11, 2021
Page 2

documents and data in any form, including but not limited to original documents, physical copies, images and computer media.

You should know that we cannot make any promises or guarantees to you concerning the outcome of the matter for which you have retained us and nothing in the representation letter shall be construed as such a promise or guarantee. If the matter does not go forward or reach a successful conclusion for any reason, Akorn is still directly responsible for all fees and disbursements charged by the Firm in the representation. Additionally, your obligation to pay our fees and disbursements will not be affected by any agreement that you may have with another party to pay your legal fees and costs or any failure of that party to comply with that agreement.

2. <u>Reimbursement for Expenses</u>. In performing this engagement, we may make disbursements and incur internal charges on your behalf. These are likely to include disbursements or charges for such items as travel and transportation expenses (including subsistence expenses while on travel); express delivery and express postage charges; duplicating charges; expenses associated with overtime work; and any special computer, data processing, or similar expenses that are beyond the capacity of the Firm's existing system. We will bill you at cost for charges paid to third parties, and charges for internal services will be billed at the Firm's usual and customary rates for such services. Should our work include assistance from the Firm's internal e-Discovery + Data Analytics ("eData") group (formerly known as Litigation Support), in addition to charging hourly rates for project management and advisory support, we will charge certain monthly per unit amounts, including an inclusive $14.00 per GB for active e-Discovery hosting, data processing, analytics and document productions, $2.00 per GB for near-line hosting, $1.00 per GB for offline/archive storage and $75.00 per external Relativity user license. Data are measured at its peak level per month. This pricing is aimed at allowing the Firm to recoup its costs of providing the services, including the bundled e-Discovery infrastructure, software licensing, and technical services that have been purchased by the Firm. However, these unit-based rates incorporate certain estimates, and, subject to the variability of related costs and utilization of the service, the Firm may recognize a loss or a profit in providing the services. Please note that we do not pay third party vendor invoices in excess of $10,000 until we have received payment from you for such services. A schedule of our current charges for expenses is attached.

In the course of this engagement it may be appropriate to retain persons with special training or expertise to assist us in rendering legal services. Depending on the circumstances, it may be advisable for the Firm to assume responsibility for hiring such experts, with Akorn's prior consent. Notwithstanding that the contractual relationship may be with the Firm, however, you will bear responsibility directly to pay the invoices

**Arnold & Porter**

Beth Zelnick Kaufman
May 11, 2021
Page 3

for the fees and expenses charged by these persons, unless other arrangements are agreed to between us.

      3.    <u>Statements for Fees and Expenses</u>.  On a regular basis, generally every month, the Firm will send you a statement covering our fee charges and expenses, providing such reasonable detail as you may require.  All such statements are due and payable within thirty [30] days of receiving them.  We understand that internal accounts payable processing may occasionally cause delays in the payment of our statements, and I am sure that you understand that undue delays in the payment of our statements increase our costs in providing legal services to all of our clients.  For this reason, and in order to avoid burdening clients who pay our statements promptly with the costs we incur when others are late, the Firm reserves the right to impose an additional charge of one percent per month from the statement date if statements are not paid in a timely manner.  Furthermore, if our fees are not paid timely, we reserve the right to terminate our services and withdraw from any matter, proceeding or case then pending, so long as our withdrawal can be accomplished in accordance with applicable Rules of Professional Responsibility.  Additionally, should it become necessary, you will be responsible for any costs and attorneys' fees incurred by this Firm in collecting any unpaid and outstanding balances owed.  Except where prohibited, we shall have a lien on all of your documents, property, or money in our possession for the payment of all sums due us from you under the terms of this engagement.  The disadvantage of the lien to you is that, should we have a dispute over our fees and costs, it could delay your receipt of the funds that are in dispute.  However, we ask for such a lien to protect our right to payment of our fees and costs, and should a dispute over our fees or costs arise, we will make every effort to resolve that dispute promptly.

      Pursuant to Part 137 of the Rules of the Chief Administrator of the New York Courts, we advise all our clients that, if a dispute arises over our fees, and our representation has involved work by a New York attorney and a material amount of work in New York, Akorn may have the right to arbitration of this dispute.

      4.    <u>Waiver of Future Conflicts</u>.  The Firm is a national and international law firm that represents a diverse array of individuals, companies and other entities, including numerous brand pharmaceutical companies.  In addition, a summary of our current practice areas and the industries in which we represent clients can be found on our website at www.arnoldporter.com.  Some of our current or future clients may have matters in conflict with you, your company or one or more of its parent, subsidiary or affiliated entities.  Such matters could pose a variety of risks, direct or indirect, to your business, legal, financial or other interests.  So that we are not unnecessarily conflicted from representing you or our other clients, we routinely ask clients for advance waivers

**Arnold & Porter**

Beth Zelnick Kaufman
May 11, 2021
Page 4

of conflicts of interest in matters distinct from the matters on which we represent them. Thus, by accepting this letter, you agree that we will not be disqualified by reason of our representation of you from representing any client with interests adverse to you in litigation, transactions or other matters that are not substantially related to the matters on which we have been retained by you. Akorn also acknowledges that with respect to information that the Firm acquires during the representation of other clients, neither Akorn nor any other person or entity will have any right or expectation of access to or use of such information. And, of course, we will similarly hold your information and secrets in confidence.

The occasion might arise for us to consult regarding our engagement for you with our own counsel — our General Counsel or other Firm lawyers — or with our own outside counsel at our expense. To the extent that we are addressing our own rights or responsibilities, a conflict of interest might be deemed to exist between the Firm and you as to such consultation. Accordingly, a condition of this engagement is that you consent to such consultation occurring, and waive any claim of conflict of interest based on such consultation. You also acknowledge that such communications are protected by our own attorney-client privilege from disclosure to you.

In addition, this letter will confirm our understanding that, unless we reach an explicit understanding to the contrary, we are being engaged by, and will represent, Akorn and not any parent, subsidiary or affiliated entities.

5. <u>Guidelines for Outside Counsel</u>. To the extent Akorn has established its own legal retention agreement, billing policies and/or guidelines for outside counsel (collectively, the "Guidelines"), Akorn agrees that the terms and conditions of this engagement letter will control unless the Firm agrees to the terms of the Guidelines in writing.

6. <u>Electronic Data Communication and Use of Cloud Services</u>. The Firm may use reputable third-party service providers (including 'cloud' service providers such as Microsoft Teams or Google Cloud) to help us deliver efficient, cost-effective legal services. This may include document/information hosting, sharing, transfer, analysis, processing or storage. By entering into this agreement, you understand and consent to having communications, documents and other data pertinent to your matter so managed through such third-party technology, including where your confidential information may be stored on and accessed from such cloud-based computer servers located in a facility not directly controlled by the Firm. You acknowledge that the use of such services may be subject to the terms and conditions of the provider and accept that the Firm is not responsible for the security of the data, the provider's security standards, or the risk that

**Arnold & Porter**

Beth Zelnick Kaufman
May 11, 2021
Page 5

the security of information on such cloud-based platforms may be breached. You agree that the benefits of using such technology outweigh the risks, including risks related to confidentiality and security.

       7.    <u>Conclusion of Our Representation</u>. If, at any time we conclude that there are no active matters in which we are representing you, you will be considered a former, rather than a current client of the Firm, unless and until you ask us to perform additional services, and we agree to perform them.

       You are free, of course, to terminate our services at any time. In addition to the reasons described in Section 3, we reserve the same right so long as our withdrawal can be accomplished in accordance with applicable law.

       8.    <u>Retention of Records</u>. The Firm adopts policies from time to time concerning the retention or destruction of records relating to engagements by clients. When we complete a particular matter that you have assigned to us, we may destroy any records as we believe appropriate, absent a written agreement between us to the contrary. Subject to certain exceptions for particular types of materials, the current standard retention period is six years for paper files and twelve years for electronic files from the date that a matter is closed. If we are required by applicable law to retain records for a particular period of time, the applicable law will supersede this general rule. In referring to records, we include electronic and 'hard copy' records.

       9.    <u>Resolution of Disputes</u>. To the extent applicable law does not otherwise provide, any dispute, claim or controversy (a "Dispute") between or among Akorn, including any third party Akorn has agreed to pay the Firm to represent, and the Firm (including any of our partners, counsel, associates, employees, agents and representatives) arising out of or in any way relating to this agreement, any services we provide or our fees and costs for providing such services shall be determined by confidential, binding arbitration in Washington, D.C. before a panel of three neutral arbitrators. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures in force at the time the arbitration is commenced. The arbitrators shall decide any issue of the breach, termination, enforcement, interpretation or validity of this entire agreement, including the determination of the scope or applicability of the agreement to arbitrate. The parties adopt and agree to implement the JAMS Optional Arbitration Appeal Procedure (as it exists on the date of this agreement) with respect to any final arbitration award pursuant to this agreement. The language to be used in the arbitral proceedings will be English. Any court proceedings related to the arbitration shall take place in the state court (or federal court, if jurisdiction exists) located in Washington, D.C. This clause shall not

**Arnold & Porter**

Beth Zelnick Kaufman
May 11, 2021
Page 6

preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.

By agreeing to this binding arbitration provision, the parties understand that they are waiving certain important rights and protections that otherwise may have been available if a Dispute were determined by a judicial action including, without limitation, the extent of available discovery, the right to a jury trial, the recovery of attorney fees and certain rights of appeal.

The parties shall maintain the confidential nature of the arbitration proceedings and the arbitration award, including the hearing, except as may be necessary, to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision. Each party agrees that it shall use its reasonable best efforts to cause its directors, officers, partners, associates, employees, affiliates and agents to abide by this confidentiality agreement.

This agreement and the rights of the parties hereunder shall be governed by and construed in accordance with the laws of Washington, D.C., exclusive of conflict or choice of law rules. The parties acknowledge that this agreement evidences a transaction involving interstate commerce and, notwithstanding the provision in the preceding sentence, any arbitration conducted pursuant to the terms of this agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. §§1-16.

* * * *

If you have any questions about the matters described above, please let us know.

Once again, we appreciate the opportunity to work together.

Sincerely,

Daniel A. Kracov

# Arnold & Porter

Beth Zelnick Kaufman
May 11, 2021
Page 7


ACCEPTED AND AGREED TO:

AKORN OPERATING COMPANY LLC.

*DocuSigned by:*
*[signature]*                                      Beth Zelnick Kaufman
9EE5EA4B6CA34B5...

EVP, Chief Legal Officer and Corporate Secretary

06/10/2021 | 13:38:02 PDT

Attachment (Expenses Charged to Clients; Hourly Billing Rates)

**EXPENSES CHARGED TO CLIENTS**
**As of January 1, 2021**

**CHARGES PAID TO THIRD PARTIES**

| Disbursement Category | Standard Client Charge | Description |
|---|---|---|
| Transportation Allowance | cost | Taxi, Parking or Subway charge for employees who work in excess of 2 hours overtime |
| Meal Allowance | cost | Meal reimbursement (not to exceed $10 ($20 - NY) for staff) for meals incurred by employees who work in excess of 2 hours overtime |
| Other Computer Research | cost | Excludes Lexis and Westlaw; includes Dun & Bradstreet, Courthouse News Service, etc. |
| Telephone | n/c | No charge |
| Travel | cost | Costs of airfare, travel agency fees, meals, lodging, etc. |
| Local Transportation | cost | Costs of taxis, subways, etc. |
| Local Meals | cost | Costs of meals not incurred on travel status |
| Outside Duplicating | cost | Costs of duplicating jobs sent to outside vendors |
| Equipment & Furniture Rental | cost | Only charged when preauthorized by client |
| Postage | n/c | No charge |
| Air Delivery Services | cost | Includes Federal Express, DHL, etc. |
| Meetings & Functions | cost | Costs of meals and beverages provided at meetings |
| Local Counsel/Outside Counsel | cost | Cost of local/outside counsel fees and disbursements |
| Arbitrators | cost | Costs of arbitration fees |
| Consulting Fees | cost | Costs of consultants, outside experts, etc. |
| Depositions & Transcripts | cost | Costs of depositions, transcripts, etc. |
| Filing Fees | cost | Costs of court and agency, filing fees |
| Litigation Support | cost | Costs of third-party case technology/e-discovery |
| Witness Fees | cost | Costs of witness fees |

| **CHARGES FOR INTERNAL SERVICES** | |
|---|---|
| Category | Standard Client Charge |
| Lexis and Westlaw Computer Research | Clients benefit from the Firm's favorable fee arrangements with Lexis and Westlaw.<br><br>The Firm negotiates favorable rates for computerized Lexis and Westlaw research. The effective discount off the standard Lexis and Westlaw rates will, however, depend on actual usage. The Firm limits disbursements to the actual charges incurred on behalf of clients and applies discounts arising from the favorable negotiated rates. |
| Litigation Support (or e-Discovery + Data Analytics) | Data Hosting, Data Processing and Document Production: $14.00 per GB per month, all inclusive<br>Near-line Storage: $2.00 per GB per month<br>Offline/Archive Storage: $1.00 per GB per month<br>External Relativity User Fees: $75.00 per month |
| Duplicating | $0.10 per copy – Black & White<br>$0.75 per copy – Color<br>Note: Pricing for individual duplicating jobs in excess of 25,000 prints may be individually negotiated |
| Binding | No charge |
| Telecopy | No charge |

Attachment

## HOURLY BILLING RATES

| Timekeeper Name | 2021 Level | 2021 Rate (USD) | 2021 Rate at 15% Discount |
|---|---|---|---|
| Daniel Kracov | Partner | $1,320 | $1,122.00 |
| Howard Sklamberg | Partner | $1,185 | $1,007.20 |
| Jacqueline Mulryne | Partner | $1,110 | $943.50 |
| Mahnu Davar | Partner | $995 | $845.70 |
| Alexander Roussanov | Int'l Partner | $985 | $837.20 |
| Abeba Habtemariam | Counsel | $970 | $824.50 |
| Abraham Gitterman | Associate | $920 | $782.00 |
| Phillip DeFedele | Associate | $885 | $752.20 |
| Elizabeth Trentacost | Associate | $885 | $752.20 |
| Nathan Shiu | Associate | $845 | $718.20 |
| Ira Stup | Associate | $710 | $603.50 |
| Kasia Foster | Associate | $550 | $467.50 |

US 169806067v1