# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered)<br><br>Re: Docket No. 106 |

**RESERVATION OF RIGHTS OF THE CHUBB COMPANIES WITH RESPECT TO TRUSTEE'S MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS, (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE PROPOSED SALE, AND (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER (A) APPROVING THE SALE, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF**

ACE American Insurance Company, Illinois Union Insurance Company, Federal Insurance Company, Chubb Custom Insurance Company, and each of their respective U.S.-based affiliates and successors (collectively, the "Chubb Companies"), by and through their undersigned counsel, hereby file this Reservation of Rights (the "Reservation of Rights") with respect to the *Trustee's Motion For Entry Of (I) An Order (A) Approving Bidding Procedures In Connection With Sale Of Substantially All Of The Estates' Assets, (B) Scheduling An Auction And Hearing To Consider The Proposed Sale, And (C) Approving The Form And Manner Of Notice Thereof; And (II) An Order (A) Approving The Sale, (B) Authorizing The Assumption And Assignment Of Executory Contracts And Unexpired Leases, And (C) Granting Certain Related Relief* [Docket No. 106] (the

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

"Motion")[2], and in support of the Reservation of Rights, the Chubb Companies respectfully state as follows:

## BACKGROUND

### A. The Bankruptcy Case and Prior Proceedings

1. On February 23, 2023 (the "Petition Date"), each of the Debtors each filed a voluntary petition for bankruptcy relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

2. On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller (the "Trustee") as the chapter 7 trustee to the Debtors' estates.

#### i. The Prior Proceedings.

3. Prior to the Petition Date, and as discussed further in the Motion, the Debtors' predecessors commenced cases under chapter 11 of the Bankruptcy Code with the Bankruptcy Court, which cases were jointly administered at case number 20-11177 (KBO) (collectively the "Prior Proceedings").

4. The Prior Proceedings culminated in a going-concern sale of the substantially all of the Debtors' predecessors' assets, resulting in the formation of the Debtors, pursuant to the *Order (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief*, Case No. 20-11177 (KBO) (Bankr. D. Del. Sept. 2, 2020), Docket No. 656 (the "Chapter 11 Sale Order").

---

[2] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Motion.

5. Following entry of the Chapter 11 Sale Order, and pursuant to the terms thereof, the Bankruptcy Court entered the *Supplemental Order (A) Approving The Asset Purchase Agreement, (B) Authorizing The Sale Of Assets, (C) Authorizing The Assumption And Assignment Of Contracts And Leases, And (D) Granting Related Relief*, Case No. 20-11177 (KBO) (Bankr. D. Del. Oct. 13, 2020), Docket No. 772 (the "Chapter 11 Supplemental Sale Order").

6. Pursuant to the Chapter 11 Supplemental Sale Order, all rights and interests of the Debtors' predecessors under the Insurance Programs (as defined herein) other than the Chubb D&O Policy (as defined in the Chapter 11 Supplemental Sale Order) were transferred to the Purchaser (as defined in the Chapter 11 Supplemental Sale Order) and therefore the Purchaser, including the Debtors, are liable for any and all now existing or hereafter arising obligations, liabilities, duties, terms, provisions, and covenants of any of the Debtors' predecessors under the Insurance Programs (other than the Chubb D&O Policy), including without limitation any and all liability and obligation to pay or reimburse losses and expenses within the deductibles, provide collateral and/or security as required by the Chubb Companies, pay premiums to the Chubb Companies and pay service fees to any applicable third party claims administrators. *See* Chapter 11 Supplemental Sale Order at ¶ 1(c).

### ii. *The Motion*

7. On April 20, 2022, the Debtors filed the Motion seeking entry of an order authorizing and approve, *inter alia*, (i) the Bidding Procedures; (ii) the sale of substantially all of the Debtors' assets to the Successful Bidder; and (iii) the assumption and assignment of executory contracts and unexpired leases in connection with the Sale, including proposed Cure Amounts.

8. On April 28, 2023, the Court entered the *Order Granting Trustee's Motion For Entry Of An Order (A) Approving Bidding Procedures In Connection With Sale Of Substantially*

*All Of The Estates' Assets, (B) Scheduling An Auction And Hearing To Consider The Proposed Sale, (C) Approving The Form And Manner Of Notice Thereof, And (D) Granting Certain Related Relief* [Docket No. 137] (the "<u>Bidding Procedures Order</u>").

9. Pursuant to the Bidding Procedures Order, on May 1, 2023, the Trustee filed and served the Cure Notice [Docket No. 146] identifying certain contracts and leases that the Trustee intends to assume and assign to the Successful Bidder pursuant to any Sale. None of the Policies (defined herein) are listed on the Cure Notice.

10. As of the date hereof, a Successful Bidder has not yet been identified and a proposed asset purchase agreement has not yet been filed.

**B.     The Insurance Programs**

11. Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "<u>Policies</u>") to the Debtors, or their affiliates or predecessors, as named insureds.

12. Pursuant to certain Policies and any agreements related thereto (collectively, the "<u>ACE Insurance Program</u>"), ACE American Insurance Company and Illinois Union Insurance Company, provide, *inter alia*, certain international, products liability and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (the "<u>ACE Program Obligations</u>").

13. Pursuant to certain other Policies and any agreements related thereto (collectively, the "<u>Chubb Insurance Program</u>," and together with the ACE Insurance Program, the "<u>Insurance</u>

4

Programs"),³ Federal Insurance Company and Chubb Custom Insurance Company provide, *inter alia*, fiduciary liability, general liability, package, umbrella, workers' compensation, automobile liability, cargo, property, crime, cyber liability, employment practices liability and other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (the "Chubb Program Obligations," and collectively with the ACE Program Obligations, the "Obligations").

14. The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## RESERVATION OF RIGHTS

15. Although none of the Policies are listed on the Cure Notice, a Successful Bidder has not yet been identified and a proposed asset purchase agreement has not yet been provided. Accordingly, the Chubb Companies cannot determine or confirm at this time whether the Sale to a Successful Bidder contemplates the sale or other transfer of all or a portion of the Insurance Programs (and/or their proceeds). The Chubb Companies, therefore, reserve their rights with respect to any Sale to the extent that the Trustee seeks to assume and assign or otherwise transfer either or both of the Insurance Programs, and/or any rights thereunder or proceeds thereof.

---

³ The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive, any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

16. The Chubb Companies assert that (i) the Insurance Programs must each be assumed and assigned, if at all, as a whole, and in order to be entitled to any of the benefits of the Insurance Programs, a Successful Bidder must remain liable for all of the Obligations thereunder; (ii) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Programs, the Insurance Programs cannot be assigned or otherwise transferred without the consent of the Chubb Companies, which consent has not been sought or given; and (iii) the Chubb Companies should not be responsible for determining which entity, as between the Debtors and a Successful Bidder, is entitled to coverage or proceeds under the Insurance Programs.

**I.     Each of the Insurance Programs and the Obligations Thereunder Are Indivisible.**

17. To the extent that the Trustee purports to assign or transfer only a portion of either of the Insurance Programs (but not the entirety of such Insurance Program) to the Successful Bidder, such a potential split of the Insurance Programs is improper.

18. Each of the Insurance Programs, which are integrated insurance programs, must be read, interpreted and enforced together. *See Huron Consulting Servs., LLC v. Physiotherapy Hldgs., Inc. (In re Physiotherapy Hldgs., Inc.)*, 538 B.R. 225 (D. Del. 2015) (reversing bankruptcy court decision which permitted debtor to assume one agreement between itself and another party, and not the related agreements; holding that all agreements must be assumed or rejected together); *Allegheny Enters. v. J-W Operating Co.*, No. 10-02539, 2014 U.S. Dist. LEXIS 27998, at *18-19 (M.D. Pa. Mar. 5, 2014) (finding an integrated agreement where several contracts between the same parties govern the parties' relationship as to a particular subject); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which

6

are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

19. It is well-established that courts cannot alter terms of contracts, and must instead enforce them as written. *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) (a "court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court"); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D.N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

20. Similarly, it is well-established that a party cannot receive the benefits of a contract without being liable for the obligations thereunder. *See Tompkins* ex. rel. *A.T. v. Troy Sch. Dist.*, 199 Fed. App'x 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement);

*St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. App'x 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Tr. Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract"); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . . ."); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

21. Accordingly, any Sale or other transfer of only a portion of the Insurance Programs is improper. Any purported transfer of either of the Insurance Programs to the Successful Bidder must be in its entirety, and the Successful Bidder must remain liable for all of the Obligations thereunder.[4]

22. The Chubb Companies therefore reserve their rights with respect to any purported assumption and assignment or other transfer of any portion of the Insurance Programs in connection with the Motion and any proposed Sale.

II. **The Insurance Programs Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or Given.**

23. To the extent that the Trustee seeks to assign the Insurance Programs in connection with the Motion or any Sale, such assignment cannot occur without the express written consent of the Chubb Companies.

24. Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

25. Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits. Section

---

[4] Additionally, to the extent the Trustee seeks to assign or transfer the Insurance Programs pursuant to a Sale, any Cure Amount must be evaluated at the time of assumption. As more particularly described in the Insurance Programs, the Debtors are required to pay the Obligations, and therefore, amounts may become due and owing under the Insurance Programs either prior to or after the assumption thereof. The Chubb Companies have contingent, unliquidated claims against the Debtors for the Obligations, given the nature of the Insurance Programs and the Obligations. The amounts owed by the Debtors on account of the Obligations may vary from day to day, and are subject to ongoing reconciliation based on, among other things, claims funding provided by the Debtors and claims submitted to the Chubb Companies. Accordingly, any Cure Amount must be determined at the time of assumption and further, as a condition for the assignment of either of the Insurance Programs, the assignee must remain liable for all of the Debtors' obligations and liabilities (including the Obligations), whether now existing or hereafter arising, under such Insurance Program, including, without limitation, paying the Obligations as they become due.

365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

26. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

27. Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it. *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal prohibition against assignment' to a third party and the non-debtor party to the contract does no consent to assignment.").

28. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g., Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898, at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract

between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[5]

29. Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with."). Therefore, the Insurance Programs cannot be assigned without the prior written consent of the Chubb Companies.

30. As a condition precedent for any consent that may be given by the Chubb Companies to an assignment or other transfer of the Insurance Programs, the Trustee, the Debtors

---

[5] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g) nor an assignment under a plan.

11

and the assignee may be required to execute an assumption agreement, in form and substance acceptable to the Chubb Companies. In the event that the Trustee does attempt to transfer all or any part of the Insurance Programs in connection with the Motion, any proposed assignee will also need to satisfy the Chubb Companies' extensive underwriting and financial review process, which takes substantial time to complete.

31. Therefore, because the Chubb Companies have not consented to any proposed assignment of the Insurance Programs, the Chubb Companies reserve their rights with respect to any and all such assignments at this time.

### III. The Chubb Companies Are Not Required to Make Coverage Determinations Between the Debtors and A Successful Bidder.

32. As of the date hereof, it is not clear exactly what, if any, portions of the Insurance Programs the Trustee intends to transfer to the Successful Bidder pursuant to any Sale.

33. While it is improper, as discussed above, to split the Insurance Programs themselves, or to split the rights under the Insurance Programs from the Obligations thereunder, any transfer of only a certain (as yet unspecified) portion of the Insurance Programs in connection with any sale is likely to result in coverage disputes between the Successful Bidder and the Debtors.

34. To the extent that the Chubb Companies agree to the assignment of the Insurance Programs, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Successful Bidder, which entity is entitled to coverage thereunder in connection with a particular claim. Similarly, the Chubb Companies should not be put in the position of determining, as between the Debtors and the Successful Bidder, which entity is entitled to proceeds under the Insurance Programs.

WHEREFORE, the Chubb Companies reserve their rights with respect to the Motion and any proposed Sale in connection therewith.

Dated: May 3, 2023

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Drew S. McGehrin*
Drew S. McGehrin (DE 6508)
1201 North Market Street, Suite 501
Wilmington, DE 19801
Phone: (302) 657-4900
Fax: (303) 657-4901
E-mail: DSMcGehrin@duanemorris.com

and

Wendy M. Simkulak, Esq.
30 South 17th Street
Philadelphia, PA 19103
Phone: (215) 979-1000
Fax: (215) 979-1020
Email: WMSimkulak@duanemorris.com

*Counsel for the Chubb Companies*