**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 7 |
| AKORN HOLDING COMPANY LLC., *et al¹* | Case No. 23-10253-KBO |
| Debtor. | **Related to Docket Nos. 106, 137, 146** |

**McKESSON CORPORATION AND CERTAIN CORPORATE AFFILIATES'**
**OBJECTION TO PROPOSED ASSUMPTION AND ASSIGNMENT OF**
**EXECUTORY CONTRACTS AND RESERVATION OF RIGHTS**

McKesson Corporation, on behalf of itself and certain corporate affiliates (collectively, "McKesson"), by and through its undersigned counsel, hereby objects and reserves rights (the "Objection") with respect to the Trustee's *Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially all of the Debtors' Assets, and the Proposed Cure Amounts* [Docket No. 146] (the "Cure Notice").

Briefly, McKesson objects to protect its rights arising under the operative agreements with the Debtors and the proposed contract assumption assignment and cure amounts listed in the Cure Notice required to assume and assign its Agreements. The Cure Notice suggests that there are no defaults and no amounts owning under most of McKesson's agreements with the Debtors. That is simply untrue. To ensure McKesson's rights are protected and preserved under the proposed assumption and assignment and the correct cure amounts are accounted for, McKesson submits this Objection and respectfully states as follows:

---

¹ The case of Akorn Holding Company LLC (Case No. 23-10253) is being jointly administered with the cases of Akorn Intermediate Company LLC (Case No. 23-10254) and Akorn Operating Company LLC (Case No. 23-10255). Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC will hereinafter be referred to as the "Debtors."

1.      On February 23, 2023, the three debtors listed in footnote 3 (collectively, the "Debtors") each commenced their cases by filing a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court").

2.      On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee.

3.      On April 20, 2023, the Trustee filed a motion seeking authority to sell the Debtors' assets and approve bidding procedures (Docket No 106; the "Sale Motion").

4.      On April 28, 2023 the Court entered an order approving bidding procedures with respect to the Sale Motion (Docket No. 137; the "Bidding Procedures Order").

5.      On May 1, 2023, the Trustee filed the Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially all of the Debtors' Assets, and the Proposed Cure Amounts. [Docket No. 146].

6.      McKesson is the world's largest healthcare company. It supplies pharmaceutical, medical-surgical, and laboratory products to many thousands of medical providers. These providers span the entire healthcare spectrum—from hospitals, to nursing homes, to urgent care centers, to pharmacies, to government-sponsored medical institutions, and to individual physicians' offices. McKesson distributes these products throughout the United States and Canada. McKesson also owns and operates pharmacies in Canada.

7.      As shown in the Cure Notice, the Debtors and McKesson are parties to several product distribution agreements (which, together with the expressly incorporated McKesson Standard Supplier Terms and Conditions (the "Terms & Conditions,") constitutes the "Core

Distribution Agreements").   The Core Distribution Agreements detail McKesson's obligations to the Debtors, including but not limited to distributing their products, to pharmacies and medical providers throughout the United States (the end-customers) and the Debtors' obligations to McKesson including, but not limited to, repurchasing or replacing recalled or unsalable products and reimbursing McKesson for certain other amounts, such as the costs of destroying the products in strict accordance with applicable Federal and State laws and regulations (the "Product Destruction Costs").

8.      McKesson and the Debtors are parties to additional agreements (not included in the Cure Notice) whereby the Debtors committed to sell to McKesson numerous generic pharmaceutical products for periods of months and years, depending on the product.  By virtue of the Debtors' Chapter 7 filing and cessation of business, the Debtors breached those supply commitments and McKesson has incurred and is continuing to incur significant damages in obtaining substitute pharmaceutical products, all of which damages are recoverable against the Debtors under the parties' agreements and section 2-712(2) of the Uniform Commercial Code.

9.      Under the Core Distribution Agreements, McKesson has the right to deduct, setoff, and recoup such unsalable products and other amounts owed to McKesson, such as the Product Destruction Costs and its UCC § 2-712(2) damages.

10.      These amounts are subject to change, as McKesson holds additional claims, in amounts yet to be fixed, relating to or arising out of the Core Distribution, including, but not limited to i) claims resulting from price reductions of the wholesale acquisition cost ("WAC") of the inventory in the possession of McKesson; ii) claims resulting from returns and exchanges of product by McKesson's end-customers; iii) claims resulting from McKesson's inability to sell any of the inventory; iv) claims resulting from relabeling of the inventory; and v) the Product

Destruction Costs.  Certain of these yet-to-be determined claim amounts arise and accrue from time to time and can take a considerable amount of time to ascertain, such as returns of product from end-customers to McKesson.

11.   Section 365(b) of the Bankruptcy Code provides in pertinent part as follows:

> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
>   (A) cures, or provides adequate assurance that the trustee will promptly cure, such default….;
>
>   (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
>   (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).  It is blackletter bankruptcy law that upon assumption—or assumption and assignment—the debtor (or assignee) takes an executory contract subject to all of its burdens and obligations.  *See*, *e.g.*, *Enter. Energy Corp. v. United States* (*In re Columbia Gas Sys., Inc.*), 50 F.3d 233, 239 n.8 (3d Cir. 1995); *see also Fleming Cos., Inc.*, 499 F.3d at 308 ("If [the debtor] accepts the contract he accepts it *cum onere*.  If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.").

12.   Here, the Trustee seeks to assume and assign four McKesson executory contracts, with an statement that no amounts are owed under those contracts and that the cure amounts are $0.  That is simply not true.  McKesson is owed significant sums by virtue of product recalls initiated by the Trustee on behalf of the Debtors, the Debtors' cessation of business operations, and McKesson's "cover" damages under UCC § 2-712(2).

4

13.     Nevertheless, if any of the buyers are contemplating assuming or assigning any agreement with McKesson, McKesson is willing to  work with that buyer to determine the amounts owing under that contract through the sale closing date and curing the Debtors' other breaches under the Core Distribution Agreements and product supply commitments.

14.     McKesson hereby reserves its right to make such other and further objections as may be appropriate, including, *inter alia*, further objections regarding adequate assurance of future performance under section 365 of the Bankruptcy Code.

15.     Finally, any assignment and assumption of McKesson's contracts must be expressly conditioned upon any buyer expressly assuming all obligations thereunder, including, without limitation, curing the Debtors' other breaches under the Core Distribution Agreements and product supply commitments.

DATED:   May 16, 2023                                    **THE POWELL FIRM, LLC**


 /s/ Jason C. Powell
Jason C. Powell, Esquire (No. 3768)
1813 N. Franklin Street
P.O. Box 289
Wilmington, DE 19889-1150
Telephone:  (302) 650-1572
jpowell@delawarefirm.com

and

Jeffrey K. Garfinkle
(Cal. Bar No. 153496)
**BUCHALTER, P.C.**
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Tel: 949-760-1121
jgarfinkle@buchalter.com

*Counsel for McKesson Corporation on behalf of itself and certain corporate affiliates*