**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>**AKORN HOLDING COMPANY LLC et. al.,**<br><br>    Debtors. | ) **Chapter 7**<br>)<br>) **Case No. 23-10253 (KBO)**<br>)<br>) (Jointly Administered)<br>)<br>) Hearing Date: May 19, 2022 at 10:00 AM<br>) Objection Date: May 16, 2023<br>)<br>) Docket Nos. 106 and 146<br>) |

**GALENICUM HEALTH, S.L.U.'S RESERVATION OF RIGHTS**
**AND OBJECTION TO CURE AND ASSUMPTION AND ASSIGNMENT**

Galenicum Health, S.L.U. ("Galenicum) a creditor and contract counter party of the above captioned debtors ("Debtors") submits this reservation of rights and objection ("Objection") in response to (1) *Trustee's Motion for Entry of (I) An Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (C) Approving the Form and Manner of Notice Thereof; and (II) An Order (A) Approving the Sale, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* ("Sale Motion") [Docket No. 106] and (2) *Notice of Executory Contracts and Unexpired Leases That May Be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, in Connection with the Sale of Substantially all of the Debtors' Assets, and the Proposed Cure Amounts* ("Assumption Notice") [Docket No. 146], filed by George L. Miller, in his capacity as the Chapter 7 Trustee ("Trustee") for Akorn Holding Company LLC, *et al.* ("Debtors").

1

**OBJECTION AND RESERVATION OF RIGHTS**

1. The Debtors filed the above-captioned case on February 23, 2023 ("Petition Date") and the Trustee was appointed thereafter. The Trustee filed the Sale Motion on April 20, 2023. On May 1, 2023, the Trustee filed the Assumption Notice. Pursuant to the Sale Motion, the Trustee seeks approval to sell some or substantially all of the Debtors' assets to one or more purchasers. No stalking bidder has been identified. On April 28, 2023, the Court entered an Order [Docket No. 137] ("Order") approving certain bid procedures. Pursuant to the Order, an auction was scheduled for May 10th, 11th, and 12th.

2. There is a License and Supply Agreement ("Contract") between the Debtors and Galenicum. There is a cure amount of $250,000.00[1] accrued, due, and owing under the Contract. The Trustee, however, has identified the contract in the assumption notice with a cure amount of $0, which demonstrates that it does not intend to pay any cure in violation of 11 U.S.C. § 365(b)(1)(A). The Contract includes a license of technology which includes various trade secrets, scientific know-how, and confidential business information, which are not assignable absent Galenicum's consent under both the terms of the contract and applicable law.

3. Galenicum does not consent to the assumption and assignment of any of it's technology.[2]

---

[1] Galenicum also further reserves it's rights to further assert additional cure amounts related to multiple contractual covenants which Akorn had previously satisfied but the Trustee has not to date, as it has not communicated or consulted with Galenicum to date.

[2] Certainly, Galenicum would never consent without full payment and cure of any accruing and ongoing defaults and without adequate assurance of future performance, neither of which have been provided to Galenicum.

**ARGUMENT**

    **A. The Debtors May Not Assume And Assign Galenicum's Agreements Absent Galenicum's Consent Because They Pertain To Licenses Of Intellectual Property and Other Personal Services Obligations Which Cannot Be Assumed and Assigned.**

4. Section 365(c) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract … of the debtor … if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor …, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

5. The Contract contains various technologies, consisting of intellectual property and business information ("Technology") which is licensed by Galenicum to the Debtors, which, under applicable nonbankruptcy law, may not be assigned without consent of Galenicum. See, e.g., *In re Access Beyond Techs., Inc.*, 237 B.R. 32, 45 (Bankr. D. Del. 1999) ("The 'long standing federal rule of law with respect to the assignability of patent license agreements provides that these agreements are personal to the licensee and not assignable unless expressly made so in the agreement.'"). Additionally, because the technology may not be assigned without the consent of the Galenicum, they may not be assumed by the Trustee unless Galenicum consents to such assumption. See *Id*. at 48-49.

6. The Contract is a personal services agreement that is not assignable under Section 365(c). Section 365(c) provides that a contract cannot be assumed or assigned if applicable law would excuse a party from accepting or rendering performance to or from another entity other than the Debtor, whether or not the contract prohibits assignment of rights. The Contract contemplates a close working agreement between the Debtor and Galenicum to protect its

abbreviated new drug application ("ANDA") rights. Contract, Section 6.4. It contemplates that the parties would consult and notify each other regarding any regulatory activity that would affect Galenicum's ANDA rights. *Id*. at 6.5 and 6.6. The Debtors and Galenicum also are required to coordinate and notify each other regarding any product recalls. *Id*. at 6.7. Galenicum also has an obligation to facilitate and permit inspections of its manufacturing facility for any regulatory authority and open it's facilities for the Debtors site auditors and for document review. *Id*. at 6.9.

7.  There are countless other examples of the integrated personal services nature of the obligations between the parties, including quality agreement requirements, pharmacovigilance agreements, reporting, books and records audits, and protections of trade secrets. *Id*. at 6.10, 6.11, Article 7, and 9.5. The licensing of the Technology and the ANDA rights, including the ANDA Dossier and related business and marketing information are the hallmarks of a personal services agreement which cannot be assumed and assigned without Galenicum's permission. Thus, whether viewed as a personal services contract, or one where the parties reposed trust and confidence in each other, the contract is one that cannot be assigned without consent. See *Humanigen, Inc. v. Savant Neglected Diseases, LLC,* 238 A.3d 194, n. 71 (Del. 2020); *Great Am. Opportunities, Inc. v. Cherrydale Fundraising, LLC*, 2010 Del. Ch. LEXIS 15, 2010 WL 338219, at *11 (Del. Ch. Jan. 29, 2010; and *Grynberg v. Burke*, 1981 Del. Ch. LEXIS 475, 1981 WL 15118, at *1 (Del. Ch. May 20, 1981)).

8.  Furthermore, there was specific purpose in Galenicum's election to enter into this business relationship with the Debtor involving a license and transfer of its ANDA rights and Dossier. In addition to needing to find a partner who would protect the value of the intellectual property, including valuable trade secrets and confidential business information, Galenicum

recognized the value in the Debtor's subject matter expertise and business knowledge of the relevant market. The Debtor has responded and complied with its reporting, regulatory, and cooperation and coordination obligations under the contract. Given the highly specific and technical nature of these obligations, in a highly regulated and competitive business, very few assignees of this license, if any, would be able to comply with the personal services requirements of the Contract or in terms of adequate assurance of performance.

9. There are non-assignability provisions in the Contract due to the nature of the ANDA rights and the Dossier, among other aspects of the Technology. While there are not any active patents in the technology, patent licenses are analogous in that they are considered personal to the holder and are not assignable, at least where the license does not explicitly permit assignment. *In re Access Beyond Technologies, Inc.*, 237 B.R. 32 (Bankr. D. Del. 1999) (patent license agreement that did not explicitly grant power to assign could not be assigned under Section 365 and further could not be sold pursuant to Section 363); See also *In re Sunterra Corp.*, 361 F.3d 257, 271 (4th Cir. 2004) (holding that a debtor was statutorily barred by § 365(c)(1) from assuming a computer software license where contract counterparty did not consent to the assumption); *In re: West Elec., Inc.*, 852 F. 2d 79 (3d Cir. 1988) (holding that the "provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment."), *In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("[P]atent and copyright licenses create only personal and not property rights in the licensed intellectual property and so are not assignable."); *In re Rupari Holding Corp.*, 573 B.R. 111, 119 (Bankr. D. Del. 2017) (holding that the debtor could not assume and assign a trademark license without the consent of the non-debtor licensor).

10. Pursuant to Bankruptcy Code section 365, the Trustee may not assume and assign the Galenicum Agreements without Galenicum's consent.

11. For the reasons discussed herein, Galenicum does not consent to any proposed assumption and assignment.

      **B.    To The Extent the Trustee Seeks To Assume And Assign The Galenicum Agreements, the Cure Amount Must Be Paid in Full and Adequate Assurance Of Future Performance By The Purchaser(s) Must Be Provided.**

12. If one object of the Sale Motion is to authorize the Trustee to assume and assign the Galenicum Agreements, the Trustee cannot accomplish this unless all defaults are cured and adequate assurance of future performance by the purchaser(s) is provided. Before assuming and assigning any executory contract, the Trustee must cure any default. 11 U.S.C. § 365(b)(1)(A). A cure under 11 U.S.C. § 365 means that all unpaid amounts due under the agreement have been paid. *In re Network Access Solutions, Corp.*, 330 B.R. 67, 76 (Bankr. D. Del. 2005). At present, the Trustee or the purchaser(s) do not intend to pay any cure amount to Galenicum. As such, the Contract cannot be assumed.

13. Before assuming and assigning any executory contract, the Trustee must provide adequate assurance of future performance. 11 U.S.C. § 365(b)(1)(C). In the event the Trustee intends to assume and assign any Galenicum agreement, Galenicum requests that the Trustee provide the following information about the relevant purchaser(s): (a) financial bona fides; (b) confirmation that the purchaser(s) is not an Galenicum competitor; and (c) confirmation that the purchaser(s) will (i) execute an Galenicum Assignment Agreement and related documentation which identifies all of the Galenicum executory contracts to be assigned, and (ii) if appropriate, enter into any further agreements required by the Contract.

14. Absent these assurances, Galenicum cannot determine the purchaser(s)' creditworthiness, suitability as an Galenicum customer, or ability to adequately perform under the terms of the Galenicum Agreements. As the Contract was a personal contract in which the counterparty was carefully selected and vetted due the nature of the Technology, the lack of any information just further reinforces the fact that this is the type that cannot be assumed and assigned without Galenicum's consent. Until the information described above is provided, the Trustee has not complied with the requirements of section 365(b)(1).

## **RESERVATION OF RIGHTS**

15. As of the filing of this Objection, no successful bidder has been identified and no asset purchase agreement between the Trustee and any proposed purchaser(s) has been filed with the Court. Galenicum is therefore unable to determine if its rights may be affected by the sale or any asset purchase agreement or related agreement entered into between the Trustee and the purchaser(s). Galenicum accordingly reserves all rights to further object to the asset purchase agreement between the Trustee and the ultimate purchaser(s).

16. Galenicum does not release or waive any claim, right, or remedy under any of its purchase orders, the Bankruptcy Code, or other applicable law. Galenicum preserves all claims, whether known or unknown, whether contingent or matured, whether liquidated or unliquidated, in law or equity. Galenicum also has grave concerns that its trade secrets were compromised in the sales process as it was not consulted in any manner. Galenicum was not served a cure notice but did receive some documents filed in the bankruptcy in Spain after the auction had been completed. Only being able to secure counsel in the last few days, Galenicum has no idea what the Trustee has or has not done in terms of protecting trade secrets or highly sensitive commercial information and reserves all rights to address any damages or harm to its interests.

## **CONCLUSION**

17.   For the foregoing reasons, Galenicum respectfully requests that any request by the Trustee for authority to assume and assign, or transfer any Galenicum agreement, including the Contract, in the absence of Galenicum's consent be denied.

Date: May 16, 2023

Respectfully submitted,

/s/ Rafael X. Zahralddin-Aravena
Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
500 Delaware Ave. Ste. 700
Wilmington, DE 19801
Telephone: (302) 985-6000
Facsimile: (302) 985-6001
Rafael.Zahralddin@lewisbrisbois.com