UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ) | |
| ) | |
| ) | Chapter 7 |
| ) | Case Nos. 23-10253 (KBO), *et seq.* |
| In re: ) | |
| ) | (Jointly Administered) |
| AKORN HOLDING COMPANY LLC, *et* ) | |
| *al.*[1] ) | **Re: 106, 136, 137, 146** |
| Debtors. ) | |
| ) | Objection Deadline: May 16, 2023 |
| ) | Hearing Date: May 19, 2023 at 10:00 a.m. (ET) |
| ) | |
| ) | |

**CARDINAL HEALTH'S LIMITED OBJECTION TO AND RESERVATION OF
RIGHTS REGARDING THE TRUSTEE'S NOTICE OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED,
PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE, IN CONNECTION
WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,
AND THE PROPOSED CURE AMOUNTS**

Cardinal Health[2], by and through its undersigned counsel, hereby submits this

limited objection to and reservation of rights regarding (the "**Limited Objection**")[3] the

*Trustee's Notice of Assumption of Lease/Executory Contract Notice of Executory Contracts*

*and Unexpired Leases that May be Assumed and Assigned, Pursuant to Section 365 of the*

*Bankruptcy Code, in Connection with the Sale of Substantially all of the Debtors' Assets, and*

*the Proposed Cure Amounts* [Dkt. No. 146] (the "**Cure Notice**"), and in support of this Limited

Objection, states as follows:

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

[2] "Cardinal Health" means the following affiliated operating companies: A+ Secure Packaging, LLC; Cardinal Health 3, LLC; Cardinal Health 104 LP; Cardinal Health 107, LLC; Cardinal Health 108, LLC (f/k/a Cardinal Health 108, Inc.); Cardinal Health 110, LLC; Cardinal Health 112, LLC; Cardinal Health P.R. 120, Inc.; Cardinal Health 411; Inc.; Parmed Pharmaceuticals, Inc.; Kinray, LLC (f/k/a Kinray, Inc.);The Harvard Drug Group, L.L.C.; DK Drug Company, LLC; and any other affiliate of Cardinal Health, Inc., an Ohio corporation ("Cardinal Health Parent"), as may be designated from time to time by Cardinal Health Parent.

[3] Terms not otherwise defined herein shall the meanings ascribed to them in the Bidding Procedures Motion, defined below.

## RELEVANT BACKGROUND

**A.      The Chapter 11 Case.**

1.      On February 23, 2023, the Debtors commenced these jointly administered bankruptcy cases by each filing a voluntary petition in this Court for relief under chapter 7 of the Bankruptcy Code.

2.      On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the chapter 7 trustee (the "**Trustee**") for the Debtors' estates.

3.      Cardinal Health is one of the nation's leading distributors of healthcare products, including pharmaceuticals and medical devices.  Cardinal Health is party to numerous agreements with the Debtors, including, but no limited to, the various agreements described below, pursuant to which it distributes the Debtors' products and provides logistical and other related services.

**B.      The Sale Motion**

4.      On April 20, 2023, the Trustee filed a *Motion for Entry of (i) an Order (A) Approving Bidding Procedures in Connection with Sale of Substantially all of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (C) Approving the Form and Manner of Notice thereof; and (ii) An Order (A) Approving the Sale, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* (the "**Bidding Procedures Motion**") [Dkt. No. 106].

5.      On January 24, 2023, the Court entered the *Order Granting Trustee's Motion for Entry of an Order (a) Approving Bidding Procedures in Connection with Sale of Substantially all of the Estates' Assets, (b) Scheduling an Auction and Hearing to consider the*

*Proposed Sale, (c) Approving the Form and Manner of Notice Thereof, and (d) Granting Certain Related Relief* (the "**Bidding Procedures Order**") [Dkt. No. 137].

6.    The Bidding Procedures Order set forth Assumption Procedures regarding  the assumption and assignment of executory contracts proposed to be assumed by the Debtors pursuant to Bankruptcy Code Section 11 U.S.C. §365(b)(1)(B) and assigned to a Successful Bidder or Successful Bidders pursuant to Section 365(f) in connection with the Sale.

7.    On May 1, 2023, the Debtors filed the Cure Notice.

### C.  The Agreements between Cardinal Heath and the Debtors

8.    Cardinal Health and the Debtors are parties to that certain Supplier Agreement dated as of November 4, 2014, as amended (the **"Supplier Agreement"**), pursuant to which, *inter alia*, the Debtors sell certain products to Cardinal Health, and Cardinal Health purchases and takes title to those products, from the Debtors. In addition, under the Supplier Agreement, Cardinal Health provides certain logistical and inventory management services, administrative services and financial services to the Debtor.

9.    Cardinal Health and the Debtors are parties to that certain National Logistics Center/Brokerage Logistics Center Agreement ("**Logistics Agreement**"), effective as of September 19, 2016, as amended, pursuant to which, *inter alia*, the Debtors appointed Cardinal Health as an authorized distributor and logistics coordinator of certain healthcare products.

10.    Cardinal Health and the Debtors are parties to that certain Generic Wholesale Service Agreement ("**GWSA**"), dated as of January 1, 2017, as amended, pursuant to which,

*inter alia*, Cardinal Health purchases generic certain healthcare products, establishes pricing and distributes the various healthcare products on behalf the Debtors.

11.    Cardinal Health and the Debtors are parties to that certain Controlled Distribution Program under the Generic Wholesale Service Agreement ("**CDP-GWSA**"), dated as of January 1, 2005, as amended, pursuant to which, *inter alia*, Cardinal Health purchases and distributes certain controlled generic healthcare products and negotiates pricing for those products for the Debtors.

12.    Cardinal Health and the Debtors are parties to that certain Wholesale Purchase Agreement ("**WPA**", along with the Supplier Agreement, Logistics Agreement, GWSA and CDP- GWSA, the "**Agreements**"), dated December 18, 2014, as amended, pursuant to which Cardinal Heath purchases certain healthcare products from the Debtors.

13.    With respect to Cardinal Health, the Debtors list the following cure amounts in the Cure Notice (the "**Cardinal Health Cure Claims**"):

| Contract Name | Contract Date | Cure Amount as Per Debtors |
|---|---|---|
| Wholesale Purchase Agreement, by and between Akorn, Inc. and Cardinal Health, dated December 18, 2014, as amended | 12/18/2014 | $0.00 |
| Supplier Agreement, by and between Akorn, Inc. (on behalf of its subsidiaries Hi Tech Pharmacal and Versapharm Inc.) and Cardinal Health, Inc., dated November 4, 2014, as amended | 11/04/2014 | $0.00 |
| National Logistics Center/Broker Logistics Center Agreement, by and between Cardinal Health and Akorn, Inc. (by and o/b/o Hi Tech Pharmacal and Versapharm Inc.), | 09/19/2016 | $0.00 |

| | | |
|---|---|---|
| effective as September 19, 2016, as amended | | |
| Developing Suppliers[4] Distribution Services Agreement, by and between Akorn, Inc. and Cardinal Health, dated January 1, 2014, as amended | 01/01/2014 | $0.00 |
| Generic Wholesale Service Agreement, by and between Cardinal Health, Inc. and Akorn Operating Company, dated as of January 1, 2017, as amended | 01/01/2017 | $0.00 |
| Controlled Distribution Program - Wholesale Service Agreement, by and between Akorn, Inc. and Cardinal Health, dated, January 1, 2005, as amended | 01/01/2005 | $0.00 |

14. Cardinal Health disputes the amounts the Trustee lists in the Cure Notice.

15. As described, Cardinal Health did business with the Debtors under the Agreement by purchasing product from the Debtors and distributing it to retailers and others. Under some of the Agreements, Cardinal Health is entitled to certain claims and credits (the "**Agreement Credits**") including, but not limited to, prompt pay discounts, distribution fees, chargebacks, rejected inventory claims, inventory shortage claims, inventory price discrepancy claims, returned product claims, and recall claims.

16. Certain of the Agreement Credits arise and accrue from time to time and can take a considerable amount of time to discover, such as returns of product from the end-customer to Cardinal Heath. There may be significant amounts of Agreement Credits that become due that are not yet known, such as returns of products or recalls, and the amounts of

---

[4] Cardinal Health has not located this contract at this time, but in an abundance of caution, includes it in its list of potentially assumed and assigned Agreements.

Agreement Credits will continue to change prior to the closing of any sale. Notably, the Trustee has agreed to a voluntary recall of certain of Debtors' products that may result in significant amounts due from the Debtors to Cardinal Health. The total amount of such claims is not yet known and will likely not be known for some time. Cardinal Health reserves the right to update the demanded cure amount as more information becomes available.

17.    For the reasons set forth below, the Cardinal Health Cure Claims must be paid in full prior to the assumption, or assumption and assignment, of the Agreements.

## LIMITED OBJECTION AND RESERVATIONS OF RIGHTS

18.    Cardinal Health does not object to the relief requested in the Bidding Procedures Motion *per se*, but files this Limited Objection and reservation of rights to ensure it receives all amounts due and owing under the Agreements at the time of assumption and assignment, and to preserve its rights to modify this Limited Objection and to seek adequate assurances of future performance by any assignee.

### A.  Limited Objection and Reservation of Rights to Proposed Cure Amounts

19.    Pursuant to Section 365(b)(1)(A) of the Bankruptcy Code:

> If there has been a default in an executory contract or unexpired lease of the debtor, the [debtor-in-possession] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor-in-possession] . . . cures . . . such default . . . .

11 U.S.C. § 365(b)(1)(A).

20.    The Cardinal Health Cure Claims must be paid in full as a condition precedent to the assumption and/or the assumption and assignment of the Agreements to any potential purchaser, pursuant to Section 365(b)(1)(A) of the Bankruptcy Code. Cardinal Health also reserves the right to further contest the amounts set forth in the Cure Notice for any contracts,

including, but not limited to, those Agreements listed therein, the Debtors may seek to assume, and/or assume and assign, pursuant to the terms of any sale.

21.     Cardinal Health anticipates that the amount needed to satisfy the amounts due to Cardinal Health under the Agreements will continue to change prior to the Sale. To the extent any assignee does not agree to honor the ongoing setoff and recoupment of amounts under the Agreements regardless of when such amounts accrue, the full potential amount of the Agreements Credits must be reserved by Cardinal Health prior to the sale.

22.     The assumption and assignment of any agreements with Cardinal Health also cannot cutoff any of the Agreements Credits, including the direct right to payment for recall obligations. Even though a significant amount of these recall obligations may not be known until after the completion of a sale, the products giving rise to such recall obligations were purchased prior to the sale. Cardinal Health, therefore, reserves all recall rights it has under the Agreements.

**B.  Reservation of Rights Regarding Adequate Assurances of Future Performance**

23.     Pursuant to Section 365(b)(1) of the Bankruptcy Code,

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee-
>
> (A)   cures, or provides adequate assurance that the trustee will promptly cure, such default. . .
>
> (C)  provides adequate assurance of future performance under such contract or lease.

In addition, pursuant to 365(f)(2) of the Bankruptcy Code,

> (A) The trustee may assign an executory contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

24.     While the term "adequate assurance of future performance" is not defined in the Bankruptcy Code, it has been noted that "what constitutes adequate assurance of future performance must be determined by consideration of the facts of the proposed assumption." *See Cinicola v. Scharffenberger*, 248 F.3d 110 n. 10 (3d Cir. 2001). Relying on the meaning of "adequate assurance" applied under the Uniform Commercial Code, courts have held that the adequacy of the assurance must be based on "commercial reasonableness." *See In re DBSI, Inc.,* 405 B.R. 698, 708 (Bankr. D. Del. 2009).

25.     Here, the identity of the purchaser is yet unknown, and therefore it is unknown if the potential purchaser will be able to meet its financial obligations under the Agreements. Thus, Cardinal Health reserves its right to require adequate assurances once the identity of the successful purchaser or purchasers of the Debtors' assets are known and disclosed. Cardinal Health also reserves the right to object to the assumption and/or assumption and assignment of the Agreements based upon lack of adequate assurance of future performance by any potential purchaser of the Agreements.

26.     Further, any assignee must demonstrate that it will be able to perform under the Agreements and honor returns, chargebacks, rebates, recall obligations, and any other credits to which Cardinal Health is entitled regardless of whether those returns, chargebacks, rebates, recall obligations, or other credits emanate from transactions that occurred pre-petition, post-petition, before the sale or subsequent to the sale.

27. Cardinal Health further reserves the right to modify or supplement this objection and to present such evidence as it deems appropriate in connection with any hearing to consider this objection.

**CONCLUSION**

WHEREFORE, Cardinal Health respectfully requests that this Court enter an Order:

(a) Permitting Cardinal Health to (i) provide cure amounts upon assumption and assignment of the Agreements, and (ii) require the Debtors, or the ultimate purchasers of Debtors' assets, as set forth under any applicable asset purchase agreement, to pay to Cardinal Health the Cardinal Health Cure Claims (including any amounts due to Cardinal Health under the Agreements at the time of the actual assumption or assumption and assignment of the Agreements) as a condition precedent to the Debtors' assumption of the Agreements and/or assumption and assignment of the Agreements to the ultimate purchaser;

(b) Reserving its right to require the ultimate purchaser to provide the requisite proof regarding adequate financial ability prior to assumption and assignment of the Agreements; and

(c) Granting Cardinal Health such other or further relief as the Court deems appropriate.

Dated:    May 15, 2023
          Wilmington, Delaware

Respectfully submitted,

HILLER LAW, LLC

 /s/ Adam Hiller
Adam Hiller (DE No. 4105)
300 Delaware Avenue, Suite 210, #227
Wilmington, Delaware 19801
(302) 442-7677 telephone
ahiller@adamhillerlaw.com

-and-

Scott A. Zuber, Esq.(Admitted *Pro Hac Vice*)
Terri Jane Freedman, Esq. (Admitted *Pro Hac Vice*)
**CHIESA SHAHINIAN & GIANTOMASI PC**
105 Eisenhower Parkway
Roseland, NJ 07068
Tel: (973) 325-1500
Email:szuber@csglaw.com
Email: tfreedman@csglaw.com

*Attorneys for Cardinal Health*