IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | : Chapter 7 |
|---|---|
| In re: | : |
| | : Case No.: 23-10253 (KBO) |
| AKORN HOLDING COMPANY LLC, *et al.*,[1] | : |
| | : (Jointly Administered) |
| Debtors. | : |

**LEADIANT BIOSCIENCES INC.'S OBJECTION TO THE TRUSTEE'S
NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE
ASSUMED AND ASSIGNED, PURSUANT TO SECTION 365 OF THE BANKRUPTCY
CODE, IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS AND THE PROPOSED CURE AMOUNTS [ECF NO. 146]**

Leadiant Biosciences, Inc., f/k/a Sigma-Tau Pharmaceuticals, Inc. ("**Leadiant**"), pursuant to section 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), and the terms of this Court's Bidding Procedures Order (as defined below), hereby objects (the "**Objection**") to the *Notice of Executory Contracts and Unexpired Leases that May be Assumed and Assigned, pursuant to Section 365 of the Bankruptcy Code in Connection with the Sale of Substantially of the Debtors' Assets and the Proposed Cure Amounts* [ECF No. 146] (the "**Assumption Notice**"), filed by George L. Miller, in his capacity as the Chapter 7 Trustee (the "**Trustee**") for the estates of the above-captioned debtors (collectively, the "**Debtors**"). In support of the Objection, Leadiant respectfully states as follows:

---

[1] Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO) ("**Akorn Holding**"); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO) ("**Akorn Intermediate**"); and Akorn Operating Company LLC (6184), Case No. 23- 10255 ("**Akorn Operating**" and collectively, "**Debtors**"). Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

## RELEVANT BACKGROUND[2]

### The Business Relationship

1. Leadiant is a pharmaceutical company focusing on research, development, and distribution of patient-therapies for rare diseases.

2. Prior to the Petition Date, Leadiant and Akorn. Inc. ("**Akorn**") were parties to several agreements, including that certain *License Agreement* (the "**License Agreement**"), between Leadiant and Akorn as of April 1, 2016, to, among other things, supply Akorn with generic Levocarnitine tablets.

3. Under the License Agreement, Akorn was authorized to sell and distribute certain generic products produced by Leadiant, including Levocarnitine tablets (the "**Generic Tablets**"). The Generic Tablets were the authorized generic form of Leadiant's Carnitor® tablets manufactured under NDA N018948. The License Agreement also authorized Akorn to use Leadiant's active ingredient, know-how and trade secrets, to manufacture Levocarnitine oral solution (the "**Generic Oral Solution**"). The Generic Oral Solution is the authorized generic of Leadiant's Carnitor® Oral Solution manufactured under NDA N019257.

4. Pursuant to the terms of the License Agreement, Leadiant was authorized to modify the price for the sale of Generic Tablets once a year (upon a prior thirty (30) day notice to Akorn) as more specifically set forth in the License Agreement.

---

[2] Attached hereto is the Declaration of David Sandoval (the "**Sandoval Declaration**") in Support of the Objection as "**Exhibit 1**."

5. Prior to the Petition Date, Akorn's rights under the License Agreement were assigned to Akorn Operating in connection with the jointly-administered chapter 11 cases of Akorn, Inc. and its affiliated debtors.³

6. On October 22, 2021, Leadiant provided Akorn Operating with notice of its annual price adjustment for the price of Generic Tablets under the License Agreement (the "**Price Adjustment Notice**"), which was substantiated with confidential information relating to actual increases in Leadiant's cost relating to the API for the Generic Tablets for the period July 1, 2021 through June 30, 2022.

7. On March 7, 2022, Leadiant provided Akorn Operating with written notice of its decision not to renew the License Agreement beyond the expiration of the existing term on March 30, 2023 (the "**Termination Notice**"). A true and correct copy of the Termination Notice is attached as **Exhibit "A"** to the Sandoval Declaration. Accordingly, the License Agreement expired on its own terms on March 30, 2023.⁴

## Procedural History

8. On February 23, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions

---

[3] On May 20, 2020, the Debtors' predecessors in interest, including Akorn, Inc. (the "**Chapter 11 Debtors**"), commenced cases under chapter 11 of the Bankruptcy Code with the Bankruptcy Court, which cases were jointly administered at case number 20-11177 (KBO) (collectively the "**Chapter 11 Proceedings**"). The Chapter 11 Proceedings culminated in a sale of substantially all of the Chapter 11 Debtors' assets under section 363 of the Bankruptcy Code, *See* Case No.: 20-11177 [ECF No. 656] (the "Chapter 11 Sale Order") and [ECF No. 673] (the "Confirmed Plan").

[4] The License Agreement became effective on April 1, 2016 (the "Effective Date"). Pursuant to Section 12.1, the License Agreement had an initial term of three (3) consecutive calendar years after the Effective Date (the "Initial Term"), and was thereafter subject to extension (as an "Extension Term") for additional, successive two (2) year periods after the Initial Term, unless one Party provided the other Party a twelve (12) months prior written notice not to renew. The Initial Term of the License Agreement ran through March 30, 2019. The first Extension Term ran through March 30, 2021. The second Extension Term ran through March 30, 2023, after which the License Agreement expired as a result of Leadiant's prior notice of its intent not to renew.

for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

9. On or about the Petition Date, the Office of the United States Trustee appointed the Trustee for the estates of the Debtors.

10. On April 28, 2023, the Bankruptcy Court entered the *Order Granting Trustee's Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection with Sale of Substantially all of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (C) Approving the form and Manner of Notice Thereof, and (D) Granting Certain Related Relief* [ECF No. 137] (the "**Bidding Procedures Order**"). Among other things, the Bidding Procedures Order establishes procedures for the sale of the Debtors' business, for the assumption of executory contracts by the Debtors pursuant to section 365(b) of the Bankruptcy code and assignment of such executory contracts to [bidder] pursuant to section 365(f) of the Bankruptcy Code. The Bidding Procedures Order scheduled the auction of the Debtors' assets on **May 10, 2023 at 10:00 a.m. (ET), continuing through and including May 12, 2023.** [ECF No. 137].

11. The Bidding Procedures Order further provides that on or before May 1, 2023, "the Trustee shall file and serve upon counterparties to the Debtors' executory contracts and unexpired leases (the 'Counterparties') a notice informing Counterparties that the Debtors' executory contracts and unexpired leases may be assumed and assigned, and setting out what the Debtors' records show to be the applicable cure amounts, if any (the "Cure Notice")." [ECF No. 137, pg. 2 at ¶5]. Moreover, within twenty-four (24) hours of the Auction's conclusion, "the Trustee shall serve on each counterparty to the Potentially Assigned Contracts/Leases a packet including: (1) the applicable Notice of Successful Bidder, (2) the evidence of the Successful Bidder's (and, if

applicable, Alternate Bidder's) ability to perform future obligations under the applicable Potentially Assigned Contract(s)/Lease(s) previously submitted by such Successful Bidder (and, if applicable, Alternate Bidder) pursuant to section G (xiii) above; (3) any additional such evidence provided by the Successful Bidder (and, if applicable, Alternate Bidder); and (4) contact information for counsel for the Successful Bidder (and, if applicable, Alternate Bidder) and counsel for the Trustee." [ECF No. 137, pg. 8].

12. On or about May 1, 2023, the Trustee filed the Assumption Notice. [ECF No. 146]. Exhibit 1 to the Assumption Notice identifies one purported agreement between Leadiant and Akorn Operating, identified as follows:

| Name of Agreement | Counter Party | Debtor Party | Cure Amount |
|---|---|---|---|
| Supply Price Adjustment as of July 1, 2021 to June 30, 2022 | Leadiant Biosciences, Inc. | Akorn Operating Company LLC | $432,210.80 |

13. Although the Assumption Notice does not identify or seek to assume the License Agreement—which is now expired—it references the "Supply Price Adjustment," which appears to refer to Leadiant's Price Adjustment Notice, which (1) merely established the terms of a prior price increase under the License Agreement effective December 1, 2021, (2) itself is not an executory contract among the parties but rather business correspondence under the expired License Agreement, and (3) is no longer in effect due to the expiration of the underlying License Agreement to which it relates.

**OBJECTION**

14. Leadiant objects to the Trustee's Assumption Notice because: (1) the "Supply Price Adjustment" is not an executory contract, and Leadiant separately terminated the License Agreement to which it relates prior to the Petition Date; (2) the Trustee cannot sever indivisible Agreements; and (3) Debtors have failed to demonstrate adequate assurance of their or any

purchaser's future performance under any valid executory contract. Thus, the Objection should be sustained.

### A. The Trustee May Not Assume the "Supply Price Adjustment" as it is Not an Executory Contract, and Because the License Agreement to Which it Relates Was Terminated Prior to the Petition Date.

15. The "Supply Price Adjustment" referenced in the Assumption Notice is not an executory contract. Rather, it is a notice of price adjustment that was provided by Leadiant to Akorn Operating in connection with the now-expired License Agreement, which has been terminated as a result of Leadiant's pre-petition notice of intent not to renew.

16. By virtue of the Assumption Notice, the Trustee has not sought to assume the License Agreement, which is no longer in effect.

17. Based on the foregoing, the "Supply Price Adjustment" is outside the purview of section 365 because (i) it is not itself an executory contract, (ii) the License Agreement to which it relates has not been identified as a contract to be assumed in the Assumption Notice, and (ii) the License Agreement has expired pursuant to Leadiant's Termination Notice. Where, as here, a contract has "has been terminated [prepetition], there is nothing left for the trustee to assume or assign." *See Kopelman v. Halvajian (In re Triangle Laboratories, Inc.)*, 663 F.2d 463, 467 (3d Cir. 1981); *Counties Contracting & Constr. Co. v. Constitution Life Ins. Co. (In re Cost Cities Truck Sales, Inc.)*, 855 F.2d 1054, 1061 (3d Cir.1988) ("A contract may not be assumed under § 365 if it has already expired according to its terms.").

18. Nor does the filing of a bankruptcy petition alter the terms of an agreement or revive already-terminated contracts. *See, e.g., In re Triangle Labs.*, 663 F.2d at 467-68 (finding as a "recognized principle of bankruptcy law that an executory contract or lease validly terminated prior to the institution of the bankruptcy proceedings is not resurrected by the filing of the petition

in bankruptcy and cannot therefore be included among the debtor's assets"). Because Leadiant's Termination Notice occurred before the Petition Date, the License Agreement are/or any price adjustment that occurred thereafter are neither property of the estate nor executory contracts. *See Kopelman v. Halvajian (In re Triangle Labs., Inc.)*, 663 F.2d 463, 467–68 (3d Cir. 1981) ("If the contract or lease has expired by its own terms or has been terminated prior to the commencement of the bankruptcy case, then there is nothing left for the trustee to assume or assign.") (emphasis added); *In re Meridian Auto. Sys.-Composites Operations, Inc.*, 372 B.R. 710, 723 (Bankr. D. Del. 2007) (an agreement terminated pursuant to its terms prepetition was not an executory contract and could not be assumed by the debtors).

19. Even if the "Supply Price Adjustment" remained enforceable on the Petition Date, or until March 30, 2023, the Trustee cannot assume that agreement. The "Supply Price Adjustment" does not constitute an executory contract under section 365 of the Bankruptcy Code. Nor can the Trustee sever the "Supply Price Adjustment" (which is merely a notice, not a contract) from the License Agreement to which it related. *See Taylor-Wharton International LLC v. Blasingame (In re Taylor-Wharton Int'l LLC)*, 2010 WL 4862723, at *3 (Bankr. D. Del. Nov. 23, 2010); *In re Buffets Holdings*, 387 B.R. 115 (Bankr. D. Del. 2008) (holding that where several agreements are economically interdependent, and the parties' course of dealing demonstrates that the deal was meant to be indivisible, the agreements comprised one integrated agreement that the debtor cannot sever in order to assume, assign, or reject individually).

**B.** **Debtors Cannot Assume and Assign the "Supply Price Adjustment" Absent Leadiant's Consent.**

20. Even if the "Supply Price Adjustment" were an executory contract (which it is not) and even if the Assumption Notice sought to assume the License Agreement (it does not), any

7

rights under the License Agreement and/or "Supply Price Adjustment" are not subject to assumption absent Leadiant's consent.

21. The License Agreement contains provisions granting non-exclusive and expressly non-transferrable licenses to use, for certain identified purposes, Leadiant's intellectual property. As a result of these intellectual property licenses, the law is clear in the Third Circuit that, absent consent by Leadiant, Section 365(c)(1) of the Bankruptcy Code bars the assumption by the Debtors of the License Agreement and, by extension, the "Supply Price Adjustment."

22. Section 365(c)(1) of the Bankruptcy Code prevents trustees from assuming or assigning contracts where "applicable law excuses a party, other than the debtor . . . from accepting performance from or rendering performance to an entity other than the debtor" absent consent of the nondebtor counterparty). The "applicable law" at issue here is Federal intellectual property law, which "would require the consent of [Leadiant]" under Section 365(c)(1) "even if the [l]icense is exclusive." *In re Hernandez*, 285 B.R. 435, 440 (Bankr. D. Ariz. 2002) (assuming of exclusive patent licenses impermissible under non-bankruptcy law absent consent of licensor); *In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 125 (Bankr. D. Del. 2015) (requiring consent for assignment of trademark license); *see also In re West Elecs., Inc.*, 852 F.2d 79, 83 (3d Cir. 1988) (adopting "hypothetical rule": "if non-bankruptcy law provides that the government would have to consent to an assignment . . . then West, as the debtor in possession, cannot assume that contract. This provision limiting assumption of contracts is applicable to any contract subject to a legal prohibition against assignment.").

23. Here, Leadiant does not consent to the assumption of any rights under the "Sale Price Adjustment" or any other notice or agreement among the parties, including the underlying

License Agreement, which has not been listed in the Assumption Notice, and which has expired on its own terms. Thus, the Objection should be sustained.

### C. Leadiant Has Not Received Any Information Showing Adequate Assurance of Future Performance.

24. Although the "Supply Price Adjustment" is not an executory contract that is subject to assumption, Leadiant further notes that assumption of any "Supply Price Adjustment" would be improper on the additional ground that the Trustee has failed to demonstrate adequate assurance of future performance of any agreement. Section 365 of the Bankruptcy Code requires adequate assurance of future performance to ameliorate the harm to the non-debtor counterparty of being compelled into a contractual relationship with a stranger. 11 U.S.C. §§ 365(b)(1)(C), (b)(3)(A)-(D) and 365(f)(2)(B); *In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996).

25. To date, Leadiant has not received any information to (i) identify a valid contract among the parties that may be assumed and/or to (ii) determine whether any Purchaser can adequately assure future performance under any such purported agreement. The Sale Motion simply states that in response to any objection, the Trustee "will demonstrate" the "financial wherewithal of each Successful Bidder, and its willingness and ability to perform under the executory contract(s) or unexpired lease(s) in question." [ECF No. 106 at pg. 29, ¶72]. Because Leadiant cannot readily determine whether additional adequate assurance of future performance will be required, the Court should sustain Leadiant's Objection.

### RESERVATION OF RIGHTS

26. Leadiant reserves its right to amend, modify or supplement this Objection and to raise any additional arguments and objections under applicable law on or before the sale hearing on May 19, 2023, including, without limitation, any arguments or objections in regard to the Sale Motion. Leadiant also reserves its right to object to any amended notice seeking to assume and

assign the expired License Agreement, including with respect to any cure obligations that may be identified by the Debtors in connection therewith. Although not listed in the Assumption Notice, Akorn Operating owes amounts substantially in excess of the $432,210.80 under the expired License Agreement, including, but not limited to, with respect to unpaid minimum royalty guarantee payments, which remain unpaid for the last calendar year during which the License Agreement was in effect.

## CONCLUSION

**WHEREFORE**, Leadiant respectfully requests that the Court enter an Order (i) sustaining this Objection; and (ii) granting Leadiant such other and further relief as the Court deems proper.

Date: May 16, 2023          Respectfully submitted,

By:   *Michael Busenkell*
      Michael Busenkell, Esq. (DE 3933)
      GELLERT SCALI BUSENKELL &
      BROWN, LLC
      1201 North Orange Street, Suite 300
      Wilmington, DE 19801
      Phone: (302) 425-5800
      mbusenkell@gsbblaw.com

      and

      *Fernando J. Menendez*
      Fernando J. Menendez, Esq.
      Florida Bar No.: 18167
      SEQUOR LAW
      1111 Brickell Avenue, Suite 1250
      Miami, FL  33131
      Tel: (305) 372-8282
      Fax: (305) 372-8202
      E-mail: fmenendez@sequorlaw.com
      *Counsel for Leadiant Biosciences, Inc.*