**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| AKORN HOLDING COMPANY LLC, *et al.*,[1] | : Case No.: 23-10253 (KBO) |
| | : (Jointly Administered) |
| Debtors. | : |

**DECLARATION IN SUPPORT OF OBJECTION TO THE TRUSTEE'S
NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE
ASSUMED AND ASSIGNED, PURSUANT TO SECTION 365 OF THE BANKRUPTCY
CODE, IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS AND THE PROPOSED CURE AMOUNTS [ECF NO. 146]**

I, David Sandoval, hereby declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury:

1.      I am over 18 and competent to testify. I am currently the Chief Legal Officer (CLO) and Chief Compliance Officer (CCO) at Leadiant Biosciences, Inc., f/k/a Sigma-Tau Pharmaceuticals, Inc. ("**Leadiant**") and have served those capacities since January 2010.  Since 2013, I have also served as a member of the Board of Directors Governance Committee since 2013.  I submit this declaration (the "**Declaration**") in support of the *Objection to the Notice of Executory Contracts and Unexpired Leases that May be Assumed and Assigned, pursuant to Section 365 of the Bankruptcy Code in connection with the Sale of Substantially of the Debtors' Assets and the Proposed Cure Amounts* [ECF No. 146] (the "**Assumption Notice**").  The Objection is being filed contemporaneously with this Declaration.

---

[1] Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO) ("**Akorn Holding**"); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO) ("**Akorn Intermediate**"); and Akorn Operating Company LLC (6184), Case No. 23- 10255 ("**Akorn Operating**" and collectively, "**Debtors**");. Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

2.      Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge, my review of relevant documents, my knowledge of the Debtors' operations and financial condition, based on discussions with other employees of Leadiant, or information provided to me. If I were called upon to testify, I could and would testify to each of the facts set forth herein.

### Maintenance of Business Records

3.      In my official capacity, I have personal knowledge of the method by which Leadiant maintains records of its transactions with its vendors and customers. As a regular part of its business, Leadiant maintains permanent records of all its transactions in a computerized accounting system. All amounts due and owing to Leadiant by a party pursuant to these transactions including, but not limited to, payments related to products sold or services rendered or other agreement, taxes, interest, fees and other charges, are entered in this accounting system at, or near, the time such obligations are incurred. All payments made by a customer with respect to any obligations, and all other credits and debits related to such obligations, are entered in the accounting system at, or near, the time they are received and/or incurred. Each such entry is made in the regular course of business by employees of Leadiant who actually process these payments, receipts, credits and debits.

4.      I also have personal knowledge of the manner by which Leadiant maintains records of its written contracts and leases, other documents related to its contracts, license agreements, supply agreements, manufacturing contracts, and documents related to these agreements with its customers or vendors. As a regular part of its business, Leadiant maintains permanent records of all documents related to these agreements and these records are compiled at the time, or near the time, that the document and/or information was received, or the events or transactions occurred.

## **The Business Relationship**

5.     Leadiant is a pharmaceutical company focusing on research, development, and distribution of patient-therapies for rare diseases.

6.     Leadiant and Akorn. Inc. ("**Akorn**") were parties to that certain *License Agreement* (the "**License Agreement**"), between Leadiant and Akorn as of April 1, 2016, to, among other things, supply Akorn with generic Levocarnitine tablets.

7.     Under the License Agreement, Akorn was authorized to sell and distribute certain generic products produced by Leadiant, including Levocarnitine tablets (the "**Generic Tablets**"). The License Agreement also authorized Akorn to use Leadiant's active ingredient, know-how and trade secrets, to manufacture Levocarnitine oral solution (the "**Generic Oral Solution**").

8.     Pursuant to the terms of the License Agreement, Leadiant was authorized to modify the price for the sale of Generic Tablets once a year (upon a prior thirty (30) day notice to Akorn) as more specifically set forth in the License Agreement.

9.     Upon information and belief, prior to the Petition Date, Akorn's rights under the License Agreement were assigned to Akorn Operating in connection with the jointly-administered chapter 11 cases of Akorn, Inc. and its affiliated debtors.[2]

10.     On October 22, 2021, Leadiant provided Akorn Operating with notice of its annual price adjustment for the price of Generic Tablets under the License Agreement (the "**Price Adjustment Notice**"), which was substantiated with confidential information relating to actual

---

[2] On May 20, 2020, the Debtors' predecessors in interest, including Akorn, Inc. (the "**Chapter 11 Debtors**"), commenced cases under chapter 11 of the Bankruptcy Code with the Bankruptcy Court, which cases were jointly administered at case number 20-11177 (KBO) (collectively the "**Chapter 11 Proceedings**"). The Chapter 11 Proceedings culminated in a sale of substantially all of the Chapter 11 Debtors' assets under section 363 of the Bankruptcy Code, *See* Case No.: 20-11177 [ECF No. 656] (the "Chapter 11 Sale Order") and [ECF No. 673] (the "Confirmed Plan").

increases in Leadiant's cost relating to the API for the Generic Tablets for the period July 1, 2021 through June 30, 2022.

11.     On March 7, 2022, Leadiant provided Akorn Operating with written notice of its decision not to renew the License Agreement beyond the expiration of the existing term on March 30, 2023 (the "**Termination Notice**"). A true and correct copy of the Termination Notice is attached hereto as **Exhibit "A."**

12.     By electronic mail dated March 8, 2022, Leadiant also sent the Termination Notice to Kirk Tsahalis, Vice President of Global Procurement & Business Development at Akorn. Accordingly, the License Agreement expired on its own terms on March 30, 2023.[3]

13.     On or about May 1, 2023, the Trustee filed its Assumption Notice. [ECF No. 146], which identifies one purported agreement between Leadiant and Akorn Operating at Exhibit 1, identified as follows:

| Name of Agreement | Counter Party | Debtor Party | Cure Amount |
|---|---|---|---|
| Supply Price Adjustment as of July 1, 2021 to June 30, 2022 | Leadiant Biosciences, Inc. | Akorn Operating Company LLC | $432,210.80 |

14.     Upon information and belief, the "Supply Price Adjustment" is a reference to Leadiant's Price Adjustment Notice, which is not an executory contract among the parties.  The Price Adjustment Notice merely established the terms of a prior price increase under the License Agreement, which became effective December 1, 2021.  The Price Adjustment Notice is not an

---

[3] The License Agreement became effective on April 1, 2016 (the "Effective Date").  Pursuant to Section 12.1, the License Agreement had an initial term of three (3) consecutive calendar years after the Effective Date (the "Initial Term"), and was thereafter subject to extension (as an "Extension Term") for additional, successive two (2) year periods after the Initial Term, unless one Party provided the other Party a twelve (12) months prior written notice not to renew.  The Initial Term of the License Agreement ran through March 30, 2019.  The first Extension Term ran through March 30, 2021.  The second Extension Term ran through March 30, 2023, after which the License Agreement expired as a result of Leadiant's prior notice of its intent not to renew.

executory contract among the parties but rather business correspondence under the expired License Agreement. As noted above, the License Agreement—which is not referenced in the Assumption Notice—is no longer in effect due to the expiration of the underlying License Agreement to which it relates following Leadiant's prepetition Termination Notice.

15.     Although not listed in the Assumption Notice, Akorn Operating owes amounts substantially in excess of the $432,210.80 under the expired License Agreement, including, but not limited to, with respect to unpaid minimum royalty guarantee payments, which remain unpaid for the last calendar year during which the License Agreement was in effect.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __16__ day of __May_____ 2023, in __Washington, DC_____.


Signed:_____
            David Sandoval
            Leadiant Biosciences, Inc.
            Chief Legal Officer (CLO)
            Chief Compliance Officer (CCO)