## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| AKORN HOLDING COMPANY LLC, *et al.*, | Case No. 23-10253 (KBO) |
| Debtors.[1] | (Jointly Administered) |
| | Related Doc. Nos. 106 and 146 |

### LIMITED OBJECTION AND RESERVATION OF RIGHTS
### OF THEA PHARMA INC. AND LABORATOIRES THÉA SAS
### TO THE TRUSTEE'S (I) CURE NOTICE AND (II) SALE MOTION

Thea Pharma Inc. ("**TPI**") and Laboratoires Théa SAS ("**Théa SAS**" and together with TPI, the "**Théa Parties**"), by and through their undersigned counsel, hereby submit this limited objection (this "**Objection**") to the (i) *Notice of Executory Contracts and Unexpired Leases That May Be Assumed and Assigned, Pursuant to Section 365 of the Bankruptcy Code, In Connection With the Sale of Substantially All of the Debtors' Assets, and the Proposed Cure Amounts* [Docket No. 146] (the "**Cure Notice**") and (ii) *Trustee's Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (C) Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Approving the Sale, (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* [Docket No. 106] (the "**Sale Motion**"), and respectfully represents as follows:

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

**BACKGROUND**

*A.    Overview*

1.     The Théa Parties, together with their affiliates (the "**Théa Group**"), comprise an independent pharmaceutical company specializing in the research, development, and commercialization of eye-care products. The Théa Group is a leader in several therapeutic classes and its products are available in more than 70 countries. Consistent with its legacy of innovation dating back more than 150 years, the Théa Group is a pioneer in the worldwide preservative-free movement in eye care and is focused on making its high-quality products accessible and cost-effective for patients so that they have the opportunity to see the world through healthy eyes.

2.     On February 23, 2023 (the "**Petition Date**"), the Akorn Holding Company LLC ("**Akorn Holding**"), Akorn Intermediate Company LLC ("**Akorn Intermediate**"), and Akorn Operating Company LLC ("**Akorn Operating**" and together with Akorn Holding and Akorn Intermediate, the "**Debtors**") filed voluntary petitions for relief under chapter 7 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**"). On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the chapter 7 trustee (the "**Trustee**") of the Debtors' estates. The Debtors' chapter 7 cases are being jointly administered for procedural purposes only pursuant to Rule 1015 of the Federal Rules of Bankruptcy Procedures and Rule 1015-1 of the Local Rules for the United States Bankruptcy Court, District of Delaware.

3.     Although the Debtors' operations in the United States have ceased, non-debtor Akorn AG, the Debtors' Swiss affiliate, continues to operate. Akorn AG is wholly owned by non-debtor Akorn International S.á.r.l, which is based Luxembourg. In turn, Akorn International S.á.r.l is wholly owned by Debtor Akorn Operating. Akorn AG operates a manufacturing facility in Hettlingen, Switzerland, at which Akorn AG manufactures certain pharmaceutical products,

including TPI's proprietary products Cosopt®, Betimol®, and Akten® (each, a "**Product**" and collectively, the "**Products**"). Akorn AG has continued to manufacture the Products following the Petition Date.

4.   On April 20, 2023, the Trustee filed the Sale Motion. On April 28, 2023, the Court entered an *Order Granting Trustee's Motion for Entry of an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, (C) Approving the Form and Manner of Notice Thereof* [Docket No. 137] (the "**Bidding Procedures Order**"), establishing certain bidding procedures (the "**Bidding Procedures**") to govern the Trustee's sale of all or substantially all of the assets of the Debtors' estates (the "**Sale Process**"). In accordance with the Bidding Procedures, on May 1, 2023, the Trustee filed the Cure Notice, which contains a schedule (the "**Cure Schedule**") identifying, among other things, (i) those executory contracts and unexpired leases that may be assumed and assigned in connection with the Sale Process and (ii) the proposed amount necessary to cure any and all defaults with respect to each such contract or lease (each, a "**Proposed Cure Amount**"). As detailed herein, the Théa Parties are (a) counterparties to several agreements listed on the Cure Schedule and (b) the sole owners of other purported executory contracts also listed on the Cure Schedule.

B.   *The APA, Applicable Ancillary Agreements, and Purchased Assets*

5.   Prior to the Petition Date, on January 27, 2022, TPI, as "Buyer," Akorn Operating, as "Seller," and, solely for the purposes of Section 12.06, Théa SAS, as "Guarantor," entered into that certain Asset Purchase Agreement (collectively, with all ancillary agreements, schedules, and documents attached thereto and contemplated thereby, the "**APA**"),[2] pursuant to which TPI

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the APA. The APA contains confidential and sensitive commercial information, which, if disclosed, would likely cause

3

acquired the "Purchased Assets"[3] from Akorn Operating. The APA closed on March 8, 2022 (the "**Closing Date**"). As part of the closing, TPI, Akorn Operating, and Akorn AG, as applicable, entered into various ancillary agreements contemplated and required by the APA to facilitate the transactions thereunder.

6. The ancillary agreements listed on the Cure Schedule are as follows (collectively, the "**Applicable Ancillary Agreements**"):

- Manufacturing Agreement, by and among Akorn Operating, Akorn AG, and TPI, effective as of the Closing Date (the "**Manufacturing Agreement**");

- Quality Agreement, by and among Akorn Operating, Akorn AG, and TPI, effective as of the Closing Date (the "**Quality Agreement**");

- Safety Data Exchange / Pharmacovigilance Agreement, by and between Akorn Operating and TPI, dated as of the Closing Date (the "**Data Exchange Agreement**");

- Assignment of Intellectual Property Rights, by and between Akorn Operating and TPI, dated as of the Closing Date (the "**IP Rights Assignment**");

- Bill of Sale and Assumption Agreement, by and between Akorn Operating and TPI, dated as of the Closing Date (the "**Bill of Sale**"); and

- Transition Services Agreement, by and between Akorn Operating and TPI, effective as of the Closing Date (the "**Transition Services Agreement**").

7. Each of the Applicable Ancillary Agreements are listed on the Cure Schedule with a zero dollar Proposed Cure Amount. Additionally, the Cure Schedule lists certain Purchased Assets, which were acquired by TPI pursuant to the APA and which constitute TPI and/or the Théa Parties sole property. The identifiable Purchased Assets listed on the Cure Schedule (the "**Identified Théa Owned Assets**") are set forth on **Exhibit A** hereto (the "**Schedule of Identified Théa Owned Assets**").

---

substantial and irreparable injury to the Théa Parties. The Théa Parties believe that the Trustee is already in possession of the APA, but, to the extent reasonably necessary, the Théa Parties will make the APA available to the Trustee for inspection.

[3] The term "Purchased Assets" is defined in Section 2.01 of the APA, which is incorporated herein by reference.

**OBJECTION**

  A. *The Proposed Cure Amount set forth in the Cure Schedule Fails to Provide for All Obligations Due Under the Manufacturing Agreement*

  8. Pursuant to section 365(b) of the Bankruptcy Code, a trustee must cure existing defaults or provide adequate assurance of prompt cure to assume an executory contract or unexpired lease. *See* 11 U.S.C. § 365(b); *In re Weinstein Company Holdings LLC*, 997 F.3d 497, 505 (3d Cir. 2021) ("To assume a contract, the [trustee] or the buyer must cure all existing defaults (or provide adequate assurance of a cure), basically putting the contract in the same place as if the bankruptcy did not happen."); *In re Kiwi Int'l Air Lines, Inc.*, 344 F.3d 311, 318 (3d Cir. 2003) ("[T]he debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement."). As this Court has recognized, "[c]ure is a critical component of assumption." *In re Thane Int'l, Inc.*, 586 B.R. 540, 549 (Bankr. D. Del. 2018). Section 365(b) of the "Bankruptcy Code is clear—there simply *cannot* be an assumption without providing the necessary cure or adequate assurance of one." *Id.* (citing 11 U.S.C. § 365(b)(1)(A)–(C)) (emphasis in original).

  9. The Cure Schedule lists the Applicable Ancillary Agreements as executory contracts[4] that may be assumed and assigned to a potential purchaser in connection with the Sale Process, each with a zero dollar Proposed Cure Amount. The zero dollar Proposed Cure Amount is insufficient to cure existing defaults under the Manufacturing Agreement as required by section 365(b). On or around April 13, 2023, TPI transmitted a pre-payment in the amount of $442,000.00 (the "**Prepayment Amount**") under the Manufacturing Agreement to non-debtor Akorn AG for components on hand to facilitate the timely manufacture and delivery of certain

---

[4] By this Objection, the Théa Parties make no admissions as to the status of the Applicable Ancillary Agreements as executory contracts and reserve all of their rights to dispute or assert such status in the future.

Products. As previously noted, Debtor Akorn Operating and non-debtor Akorn AG are both parties to the Manufacturing Agreement. A copy of the invoice, dated as of March 23, 2023, evincing the obligations with respect to the Prepayment Amount in connection with the Manufacturing Agreement is attached hereto as **Exhibit B** (the "**Prepayment Invoice**").

10. To date, the Products have not been delivered under the Manufacturing Agreement. While the Théa Parties would prefer to receive the Products in accordance with the Manufacturing Agreement, obligations on account of the Prepayment Amount are due and owing as of the date hereof. If the Products purchased with the Prepayment Amount have not been delivered at the time of assumption, obligations on account of the Prepayment Amount will remain due and owing. Further, depending on the effective date of the assumption of the Manufacturing Agreement and the other Applicable Ancillary Agreements, additional amounts may become due and owing thereunder.[5] The Théa Parties expressly reserve their rights and remedies against Akorn Operating and Akorn AG with respect to additional amounts that become due and owing under the Applicable Ancillary Agreements, including, but not limited to, with respect to any indemnification obligations owed to the Théa Parties.

    ***B.    The Cure Schedule Improperly Includes the Identified Théa Owned Assets Which are not Property of the Debtors' Estates***

11. Section 541 of the Bankruptcy Code provides, in pertinent part, that "[t]he commencement of a case under . . . this title creates an estate" comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *see also Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001) ("The filing of a voluntary petition in bankruptcy court commences a bankruptcy case and creates

---

[5] In the event the Applicable Ancillary Agreements are not assumed, the Théa Parties expect that they will have substantial damages claims against the Debtors' estates under and arising from such agreements.

6

a bankruptcy estate comprised of the debtor's property as of the commencement of the case."). However, the "filing for bankruptcy does not create new property rights or value where there previously were none." *In re Majestic Star Casino, LLC*, 716 F.3d 736, 751 (3d Cir. 2013) (internal quotations and alterations omitted). "Consequently, '[t]he estate is determined at the time of the initial filing of the bankruptcy petition . . . .'" *Id.* (quoting *Kollar v. Miller*, 176 F.3d 175, 178 (3d Cir. 1999)) (alterations in original); *see also In re Triad Guaranty Inc.*, No. 14-1464 (GMS), 2016 WL 3523834, at *10 (D. Del. June 27, 2016) ("[T]he scope of [a] Debtor's property rights is determined as of the Petition Date and pursuant to applicable non-bankruptcy law.").

12. The Cure Schedule improperly lists the Identified Théa Owned Assets, which are not property of the Debtors' estates. As described herein, TPI acquired the Purchased Assets, including the Identified Théa Owned Assets, from Akorn Operating pursuant to the APA prior to the Petition Date. Section 2.01(a) of the APA provides, in pertinent part:

> Upon the terms and subject to the conditions of this Agreement, at the Closing, Seller shall, or shall cause its applicable Affiliate to, sell, assign, transfer, convey and deliver, or cause to be sold, assigned, transferred, conveyed and delivered, to Buyer, and Buyer shall purchase from Seller or such applicable Affiliates, free and clear of all Liens other than Permitted Liens, all of Seller's and such applicable Affiliates' right, title and interest in and to all of the assets, properties and rights thereof that are primarily related to the Business and that exist as of the Closing Date, other than the Excluded Assets[.]

APA § 2.01; *see also id.* at § 2.01(a)–(m) (describing Purchased Assets with additional specificity). The Purchased Assets acquired by TPI include, but are not limited to, those set forth in Schedules 1.01(g), 2.01(a), 4.04, 4.09(d), and 4.11(a) of the APA.

13. By its express terms, TPI acquired all of Akorn Operating's and its affiliates' "right, title and interest in and to all of" the Purchased Assets. As a result, Akorn Operating had no legal or equitable interest in the Purchased Assets as of the Petition Date. Accordingly, the Purchased

7

Assets are not property of Akorn Operating's bankruptcy estate pursuant to section 541(a) and the Trustee has improperly included certain Purchased Assets, including the Identified Théa Owned Assets, on the Cure Schedule.

14.     The Purchased Assets, including the Identified Théa Owned Assets, are the sole property of the Théa Parties—not the Debtors, who have no legal or equitable interest therein. As such, the Théa Parties expressly object to any attempt by the Trustee to sell, assume and assign, or otherwise transfer any of the Purchased Assets, including the Identified Théa Owned Assets. While the Théa Parties have made every effort to identify all of the Purchased Assets on the Cure Schedule, the Théa Parties are uncertain as to whether all of the Purchased Assets listed thereon are encompassed by the Identified Théa Owned Assets due to, among other things, differences in naming conventions.[6] The Théa Parties expressly reserve their rights and remedies against Akorn Operating and any other party in connection with any attempted or purported sale, assumption and assignment, or transfer of the Purchased Assets.

        *C.*      *No Successful Bidder Has Been Identified in Connection With the Sale Process*

15.     As of the filing of this Objection, the Trustee has not filed (i) notice(s) identifying a successful bidder or (ii) agreements relating to any proposed transaction(s) with any proposed purchaser(s) in connection with the Sale Process. The Théa Parties are therefore unable to determine whether and how their rights may be impacted by any proposed transaction or any agreement related thereto. Accordingly, the Théa Parties reserve all of their rights to object to the relief requested in the Sale Motion.

---

[6] For the avoidance of doubt, the Théa Parties' failure to identify or include any of the Purchased Assets as Identified Théa Owned Assets shall not be construed as an admission or waiver by the Théa Parties as to the status of any purported executory contract or unexpired lease listed on the Cure Schedule as a Purchased Assets. The Théa Parties expressly reserve all of their rights and remedies in connection with any attempt to sell, assume and assign, or otherwise transfer any of the Purchased Assets.

**RESERVATION OF RIGHTS**

16.     The Théa Parties submit this Objection without prejudice to, and with full reservation of, its rights to supplement this Objection in advance of or in connection with any hearing to consider the approval of the sale of all or substantially all of the Debtors' assets or the assumption and assignment of the Debtors' executory contracts.  The Théa Parties reserve (and nothing herein is or shall be construed as a waiver or release, expressly or implicitly, of) all rights under the Bankruptcy Code or applicable non-bankruptcy law, including rights to object to any subsequent amendments to the Cure Notice, Cure Schedule, Sale Motion, or any documents or pleadings filed in connection with the Trustee's Sale Process and seek any other or supplemental relief in respect of the Trustee's Sale Process or the Debtors' estates.  The Théa Parties expressly reserve their rights to assert their proposed cure amount or dispute the Proposed Cure Amounts prior to the assumption and assignment of any of the Applicable Ancillary Agreements, as additional obligations may be incurred subsequent to the filing of this Objection.  The Théa Parties further reserve their rights to amend, modify, and/or supplement this Objection and the Schedule of Identified Théa Owned Assets prior to the assumption and assignment of any of the Applicable Ancillary Agreements.  The Théa Parties also reserve all of their rights and remedies, at law or in equity, with respect to any attempted or purported sale, assumption and assignment, or transfer of any of the Purchased Assets, including, but not limited to, with respect to the Identified Théa Owned Assets.  Nothing herein is, or shall be construed as, (i) a waiver of any claim(s) that the Théa Parties have against the Debtors' estates, whether secured, administrative, priority, or unsecured, (ii) as a waiver or admission as to the status of any of the Applicable Ancillary Agreements as an executory contract, or (iii) as a waiver or admission as to the status of any purported executory contract or unexpired lease listed on the Cure Schedule as a Purchased Assets.

17. For the avoidance of doubt, the Théa Parties expressly preserve all rights related to any administrative expense claims arising out of the Applicable Ancillary Agreements. As of the filing date of this Objection, the Théa Parties' nonfiling of any request for allowance and payment of administrative expense claims shall not be deemed a release of any such claims or a waiver of any of the Théa Parties rights, including the right to later file such request and raise any arguments related to such claims.

Dated: May 16, 2023
      Wilmington, Delaware

*/s/ Sophie Rogers Churchill*
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Curtis S. Miller (No. 4583)
Sophie Rogers Churchill (No. 6905)
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email:   cmiller@morrisnichols.com
           srchurchill@morrisnichols.com

- and -

**WEIL, GOTSHAL & MANGES LLP**
Alfredo R. Pérez (*pro hac vice* forthcoming)
Theodore S. Heckel (*pro hac vice* forthcoming)
700 Louisiana Street, Suite 1700
Houston, TX 77002-2784
Telephone:   (713) 546-5000
Email: alfredo.perez@weil.com
       theodore.heckel@weil.com

*Attorneys for Laboratoires Théa SAS and Thea Pharma Inc.*