**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al.*[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br>(Jointly Administered)<br><br>**Re D.I. 106, 137** |

**PURCHASE AND SALE AGREEMENT**

**dated as of June 7, 2023**
BY AND BETWEEN
GEORGE L. MILLER, NOT INDIVIDUALLY BUT SOLELY IN HIS CAPACITY AS THE CHAPTER 7 TRUSTEE
OF THE ESTATES OF AKORN HOLDING COMPANY LLC, AKORN INTERMEDIATE COMPANY LLC AND
AKORN OPERATING COMPANY LLC AS SELLER
AND RISING NEWCO LLC
AS BUYER

Dated: June 7, 2023

COZEN O'CONNOR

*/s/ John T. Carroll III*
John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE 19801
(302) 295-2000 Phone
(302) 295-2013 Fax No.
jcarroll@cozen.com
sfraser@cozen.com

*Counsel for the Trustee*
*George L. Miller*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.
64081019\1

*Execution Version*

## PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (the "**Agreement**"), dated as of June 7, 2023, (the "**Effective Date**"), is entered into by and between **GEORGE L. MILLER**, not individually, but solely in his capacity as the chapter 7 trustee ("**Trustee**" or "**Seller**") of the bankruptcy estates (the "**Estates**") of **AKORN HOLDING COMPANY LLC**, a Delaware limited liability company ("**Holdings**"), **AKORN INTERMEDIATE COMPANY LLC**, a Delaware limited liability company ("**Intermediate**") and **AKORN OPERATING COMPANY LLC**, a Delaware limited liability company ("**Operating**", together with Holdings and Intermediate, the "**Debtors**" and each entity individually, a "**Debtor**", under the United States Bankruptcy Code (the "**Bankruptcy Code**") in cases pending before the United States Bankruptcy Court for the District of Delaware ("**Bankruptcy Court**") and jointly administered under Case No. 23-10253 (the "**Bankruptcy Cases**")) and Rising NewCo LLC (together with its permitted successors, designees and assigns, "**Buyer**").

### RECITALS

A.    On February 23, 2023 (the "**Petition Date**"), the Debtors commenced the Bankruptcy Cases by filing voluntary bankruptcy petitions under chapter 7 of the Bankruptcy Code in the Bankruptcy Court.

B.    On or about the Petition Date, the Office of the United States Trustee appointed Trustee as the chapter 7 trustee to the Estates.

C.    Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Property (as hereinafter defined) described in Section 1 below for the consideration and upon the terms and conditions set forth in this Agreement.  Buyer and Seller intend to effectuate the transactions contemplated by this Agreement through a sale of the Property pursuant to section 363 of the Bankruptcy Code.

**NOW, THEREFORE**, in consideration of the foregoing Recitals, which are hereby incorporated into this Agreement as if specifically set forth therein, and in consideration of the mutual representations, covenants, undertaking and agreements hereinafter contained, Seller and Buyer agree as follows:

### AGREEMENT

1.    <u>**Purchase and Sale of Property**</u>.  Subject to the terms and conditions of this Agreement, Seller agrees to sell, convey, assign, transfer and deliver to Buyer, and Buyer agrees to purchase, acquire and take from Seller, the Debtors' interest in the following property (collectively, the "**Property**"):

(a)    The parcels of land and associated rights commonly known as "1222 West Grand Avenue" and "150 and 140 S. Wyckles Road", as legally described on <u>Exhibit A</u> attached hereto and made a part hereof (the "**Land**");

(b)    All improvements located on the Land, including without limitation, any and all buildings (the "**Buildings**"), structures, facilities, amenities and other

improvements constructed or located on or under or affixed to the Land (the Buildings, together with such other improvements, collectively the "**Improvements**");

(c)     Any and all tangible personal property, fixtures, trade fixtures, or other furnishings used or located on the Property (the "**Personal Property**") (provided that, anything listed on Schedule 2.1(a) of the Asset Purchase Agreement shall be acquired pursuant to the Asset Purchase Agreement and not this Agreement);

(d)     Any and all of the rights and appurtenances to the Land and Improvements, including all right, title, and interest of the Estates in and to adjacent streets, easements and rights-of-way; and

(e)     Any and all leases, subleases, licenses, and other occupancy agreements relating to the Real Property pursuant to which Debtor grants a third party a right to use and occupy the Real Property (the "**Leases**"), and any and all existing permits, zoning, licenses, approvals, and authorizations issued by any governmental authority in connection with the Property pursuant to applicable law (the "**Permits and Approvals**"), as applicable.

2.     **Purchase Price**.

(a)     Amount; Payment.  The purchase price for the Property shall be one million two hundred and fifty thousand dollars ($1,250,000) (the "**Purchase Price**"), and shall be payable as follows: (i) the Required Deposit (as herein after defined) shall be paid by Buyer into escrow, as provided in Section 3 below, and (ii) the balance of the Purchase Price shall be paid at Closing (as hereinafter defined) by wire transfer in immediately available federal funds in U.S. Dollars.

(b)     Proration.  The following income and expenses shall be apportioned between Seller and Buyer, as of 11:59 p.m. of the date immediately preceding the Closing, and the parties agree to make the appropriate adjustment payment on the Closing Date (as hereinafter define), to the extent the same may be applicable: real property taxes and assessments; personal property taxes; rents and other income and expenses of the Property; and any other items which otherwise are customarily apportioned at real estate closings.  Any adjustments for charges to which this Section 2(b) would apply which would be billed after the Closing Date shall be made based upon the most recent billing received by Seller and shall be subject to re-proration after the Closing and this right shall survive the Closing, subject to Section 2(d).

(c)     Meter Reading.  Seller will obtain a final reading of the electric, gas, water and other utility meters no earlier than one (1) week prior to the Closing.  The Buyer shall not be responsible for any such amounts accruing prior to the Closing, adjusted on a per diem basis for each day prior to the Closing that the meter readings occur.  Seller shall retain all rights to all deposits made with any entity that provides or provided utilities to the Property.

(d)     Errors in Calculation.  Any errors or re-proration in the calculation of charges apportioned pursuant to Section 2(b) shall be corrected as soon as practicable after such error or actual cost has been ascertained, provided that any claim after the Closing Date for an adjustment in any of the charges thereunder shall be made in writing within sixty (60) days after the Closing Date, or be forever barred.  The provisions of this Section 2(d) shall survive the Closing.

(e)     Purchase Price Allocation.  The initial allocation of the Purchase Price shall be (i) $1,200,000.00 to the Property associated with the address 1222 West Grand Avenue, and (ii) $50,000.00 to the Property associated with the address 140 and 150 S. Wyckles Road. Within ninety (90) days after the Closing Date, Buyer shall prepare and deliver to Seller a statement allocating the sum of the Purchase Price, the relevant items among the Property Buyer purchased from the Seller pursuant to this Agreement in accordance with Section 1060 of the Internal Revenue Code of 1986, as amended (the "**IRS Code**") and the treasury regulations promulgated thereunder (such statement, the "**Allocation Statement**"), and the Allocation Statement shall be finalized upon reasonable consultation with Seller, and with Seller's consent, which consent shall not be unreasonably withheld or delayed.  The parties shall follow the Allocation Statement for purposes of filing IRS Form 8594 (and any supplements to such form) and all other tax returns, and shall not voluntarily take any position for tax purposes inconsistent therewith. If the U.S. Internal Revenue Service (the "**IRS**") or any other taxation authority proposes a different allocation, Seller or Buyer, as the case may be, shall promptly notify the other party of such proposed allocation.  Seller or Buyer, as the case may be, shall provide the other party with such information and shall take such actions (including executing documents and powers of attorney in connection with such proceedings) as may be reasonably requested by such other party to carry out the purposes of this Section 2(e). Except as otherwise required by applicable law or pursuant to a "determination" under Section 1313(a) of the IRS Code (or any comparable provision of United States state, local, or non-United States law), (i) the transactions contemplated by Article I of this Agreement shall be reported for all tax purposes in a manner consistent with the terms of this Section 2(e); and (ii) neither party (nor any of their affiliates) will take any position inconsistent with this Section 2(e) in any tax return or in any refund claim, except to the extent otherwise required in connection with the settlement or compromise of any applicable tax proceeding.  Notwithstanding the allocation of the Purchase Price set forth in the Allocation Statement, nothing in the foregoing shall be determinative of values ascribed to the Property Buyer purchased from the Seller pursuant to this Agreement or the allocation of the value of the Property Buyer purchased from the Seller pursuant to this Agreement by the Trustee for the purpose of his administration of the Bankruptcy Cases by way of liquidation, reorganization or otherwise.

3.     **Deposit**.

(a)     Deposit. In connection with or prior to the execution hereof, Buyer has or shall deliver to the Seller by wire transfer the aggregate sum of one hundred and twenty-five thousand dollars ($125,000) (the "**Required Deposit**").  For the avoidance of doubt, the Required Deposit shall be treated in accordance with the Bidding Procedures.

4.      **Remedies**.

    (a)      <u>Breach</u>.

        (i)      Subject to <u>Section 4(a)(ii)</u>, if either party fails to timely consummate the transaction contemplated by and pursuant to the terms and conditions of this Agreement for any reason other than the exercise by the other of its rights to terminate this Agreement pursuant to the provisions hereof (a "**Default**"), then the non-breaching party may, as its sole and exclusive remedy, either (1) terminate this Agreement and retain (if Seller) or receive (if Buyer) the Required Deposit and/or pursue monetary damages or (2) pursue specific performance of this Agreement by the non-breaching party.

        (ii)      Notwithstanding anything to the contrary in this Agreement, the Seller's right to (i) specific performance under this <u>Section 4(a)</u> and (ii) following the valid termination hereof, retain the Required Deposit and/or seek monetary damages for a pre-termination breach of this Agreement pursuant to <u>Section 4(a)(i)</u>, will be the sole and exclusive remedies available to the Seller or the Estates on behalf of the Debtors for any and all losses suffered or incurred by the Seller or the Estates on the Debtors arising out of or in connection with this Agreement, the transactions contemplated by this Agreement (or the abandonment or termination thereof) or any matter forming the basis for such termination and Purchaser will have no other obligation to make payments to the Seller or the Estates on the behalf of the Debtors; <u>provided</u> that, the parties agree that specific performance or similar injunctive relief shall not be available to the Seller or the Estates on the behalf of the Debtors if it has retained the Required Deposit or been awarded other monetary damages pursuant to <u>Section 4(a)(i)</u>.  For the avoidance of doubt, under no circumstances shall the Seller or the Estates on the behalf of the Debtors be permitted or entitled to receive both (x) a grant of specific performance that results in the Closing being consummated and (y) to retain the Required Deposit or obtain other monetary damages.

    (b)      <u>Termination of Agreement</u>.  Whenever one party has given the other notice of the termination of this Agreement in accordance with the terms hereof, the Required Deposit shall be disposed of in accordance with this Agreement, and with the Bidding Procedures (as defined below), and upon such disposition, this Agreement shall be conclusively deemed and construed to have been terminated and of no further force and effect and the parties shall be deemed released of all obligations under this Agreement and neither party shall have any other rights or obligations under this Agreement except as provided under <u>Section 4(a)</u> with respect to a breach or repudiation of this Agreement by Buyer or under any other provision of this Agreement which expressly survives the termination of this Agreement.  This <u>Section 4(b)</u> shall survive the termination of this Agreement.

5.      **Due Diligence**.

    (a)      <u>Title</u>.  Seller shall convey good and marketable fee simple title to the Land and the Improvements by Quit Claim Deed (collectively, the "**Deeds**").  Buyer has

received (or will receive) a Commitment for Owner's ALTA Title Insurance Owner's Policy (2016) (the "**Commitment**"), from Chicago Title Insurance Company (the "**Title Company**").

(b)    Due Diligence.  Buyer, its employees, agents and contractors have been given access to the Property for the purpose of making physical inspections thereof, including, but not limited to environmental and engineering studies.  Buyer acknowledges and agrees that its obligations under this Agreement are not subject to or conditioned upon any additional due diligence investigation, provided that, from and after the date hereof, Seller will use commercially reasonable efforts to deliver any information or materials in its possession or reasonable control related to the Property and requested by Buyer and will not unreasonable withhold its consent to any request of Buyer to access the Property during ordinary business hours.

6.    **Closing**.

(a)    Closing Date. The consummation of the transactions described herein (the "**Closing**") shall occur on or before close of business the THIRD business day following the date on which the order of the Bankruptcy Court, substantially in the form and substance of **Exhibit C** (with any changes or modifications thereto in form and substance acceptable to Buyer), with respect to the Property (the "**Sale Order**") shall (i) have become final and non-appealable and (ii) not have been stayed, vacated, modified or supplemented, or on such earlier date as Buyer shall determine following not less than five (5) business days' prior written notice to Seller, TIME BEING OF THE ESSENCE WITH RESPECT TO BUYER'S AND SELLER'S OBLIGATIONS TO CLOSE ON SUCH DATE (such date or any other date on which the Closing occurs, the "**Closing Date**") at Seller's option either (a) in the offices of Seller's counsel, or (b) in escrow through Title Company, or (c) at such other time and place as may be mutually agreed by the parties.

(b)    Buyer Deliveries.    At the Closing, Buyer shall fully execute and acknowledge, if necessary, and deliver to Seller the following:

(i)    the balance of the Purchase Price, after giving effect to the prorations and adjustments specified in this Agreement, by confirmed wire transfer of immediately available funds;

(ii)    all documents required by the title insurance company, and other documents which are customary and necessary to close this transaction in accordance with this Agreement, together with all resolutions, certificates of good standing, and such other organizational documents evidencing Buyer's authority to execute and deliver the Closing documents;

(iii)    a settlement statement detailing the amount due by Buyer giving effect to the Required Deposit and all prorations and adjustments specified in this Agreement;

(iv)    assignment and assumption agreements assigning Seller's right, title and interest in and to (1) the Leases and (2) the Permits and Approvals, substantially in the form attached as Exhibit B-2 of the Asset Purchase Agreement (the "**Assignment and Assumption Agreement**"); and

(v)    a bill of sale for all Personal Property to be conveyed hereunder, substantially in the form attached as Exhibit B-1 of the Asset Purchase Agreement (the "**Bill of Sale**").

(c)    <u>Seller Deliveries</u>.    At the Closing, Seller shall fully execute and acknowledge, if necessary, and deliver to Buyer, the following:

(i)    the Deeds conveying to Buyer good and marketable fee simple title to the Land and Improvements, free and clear of all liens except Permitted Liens;

(ii)    a properly completed and executed IRS Form W-9 from Seller;

(iii)    such documents required or reasonably requested by the title insurance company, which are customarily provided by sellers in analogous transactions; <u>provided</u> that, unless expressly set forth herein, Seller shall have no obligation to execute any affidavits, indemnities or other agreements in connection with the issuance of Buyer's title insurance policies other than (x) affidavits in form satisfactory to Seller as to authority and (y) such affidavits and/or lien waivers from Seller and the Broker (as hereinafter defined), in form acceptable to the Seller and the title insurance company to issue Buyer's title insurance policies without exception for any lien other than Permitted Liens;

(iv)    originals, if available, or copies, of all warranties, guarantees, operating manuals, as-built drawings, the certificate of occupancy and other documents relating to the Property and any keys therefor, to the extent any of the same are then in Seller's possession;

(v)    a settlement statement detailing the amount due by Buyer giving effect to all prorations and adjustments specified in this Agreement;

(vi)    any real estate transfer tax declaration or similar documents required under applicable law in connection with the conveyance of the Property;

(vii)    the Assignment and Assumption Agreement; and

(viii)    the Bill of Sale.

(d)    <u>Exceptions to Title</u>.    The consummation of the transactions contemplated hereby shall be subject only to any exceptions to title that constitutes a Permitted Lien and any matters that would be shown on a survey of the Property.    In addition, the consummation of the transaction shall be further subject to any other matters which may

affect the Property as of the Effective Date and to any exceptions to title and other matters which may affect the Property and which arise after the Effective Date other than as a result of the intentional acts or omissions of Seller after the date hereof, in each case, which constitute Permitted Liens.  For the purposes of this Agreement, "**Permitted Lien**" shall mean: (i) liens of all real estate taxes and assessments not yet due and payable as of the Closing Date, subject to adjustment as herein provided; and (ii) easements, rights of way, title restrictions, zoning ordinances and other similar encumbrances affecting the Property which are not violated in any material respect by the current use, occupancy or operation of such Property and which do not adversely affect the current value, use, occupancy or operation of such Property in each case in any material respect.

(e)     Taxes, etc.  If and to the extent that the transactions contemplated by this Agreement are found not to be exempt pursuant to section 1146(a) of the Bankruptcy Code, at the Closing, Buyer shall pay any applicable personal taxes, transfer taxes, gains taxes, recording taxes and fees and/or filing fees imposed as a result of Buyer's purchase of the Property from the Seller pursuant to this Agreement, excluding, for the avoidance of doubt, any income taxes or franchise taxes (however denominated).  Buyer shall indemnify, defend and hold harmless the Seller and its affiliate from any claims, loss, cost, damage or expense (including reasonable attorneys' fees and disbursements) suffered or incurred by Seller resulting from Buyer's failure to timely pay in full any such taxes and/or fees for which it has agreed to be responsible pursuant to this Section 6(e).  The provisions of this Section 6(e) shall survive the Closing.

7.     **Conditions of Closing**.

(a)     Performance of Obligations.  The obligations of each party to consummate the transactions described herein shall also be contingent upon (i) the prior or concurrent consummation of the transactions contemplated by that certain Asset Purchase Agreement, dated as of even date herewith, by and between the Trustee, as seller, not individually, but solely in his capacity as the chapter 7 trustee of the bankruptcy estates of Holdings, Intermediate and Operating, and Buyer, as buyer (the "**Asset Purchase Agreement**"), (ii) the issuance of the Sale Order and complete and timely performance in all material respects by the other party of each of such other party's obligations hereunder and (iii) the truth in all material respects of each of such other party's representations and warranties contained herein, if any, on and as of the Closing Date.

(b)     Failure of Conditions.  If any of the conditions to a party's obligation to consummate the transactions described herein specified in this Section 7 is not satisfied at or before the Closing, and not waived by the non-defaulting party, and at least five (5) business days' notice and opportunity to cure has been given to the defaulting party, the non-defaulting party may (without affecting such non-defaulting party's right to retain or receive the Required Deposit, as applicable, pursuant to Section 4) elect to cancel this Agreement by written notice.  If this Agreement is canceled by Buyer, Seller shall promptly deliver the Required Deposit to the Buyer, except to the extent that the Bidding Procedures, the Bidding Procedures Order, and/or any other order of the Bankruptcy Court may otherwise provide.

8.    **Warranties, Representations and Covenants**.

(a)    <u>Fulfillment of Seller's Obligations</u>.  Upon the execution and delivery by Seller of the Deeds and the other documents to be executed and delivered by Seller at the Closing and the fulfillment of the other conditions to Buyer's obligations to consummate the transactions provided for herein, Seller shall be deemed to have fully complied with and fulfilled all of the conditions, warranties, representations and covenants of this Agreement on the part of Seller.

(b)    <u>Seller's Representations</u>. Subject to requisite Bankruptcy Court approvals and except as a result of the commencement of the Bankruptcy Case, (i) the Estates own good and valid title to, or hold a valid leasehold interest in the Property, whether tangible or intangible, free and clear of all Liens (except for Permitted Liens), and (ii) at the Closing, Seller will cause the Estates transfer, convey and assign good and valid title to, or a valid leasehold interest in, all of the Property free and clear of all Liens (except for Permitted Liens) to Purchaser. To the Knowledge of Seller, the Property is not subject to any agreement, written or oral, for its sale or use by any Person other than Seller, excluding any Permitted Liens.

(c)    <u>Buyer's Representations</u>.  Buyer warrants, represents and covenants to Seller as of the Effective Date and on and as of the Closing Date that (i) Buyer is a corporation duly organized, validly existing and in good standing under the laws of Delaware; (ii) Buyer has full power and authority to execute and deliver this Agreement and to perform its obligations hereunder and has taken all necessary action to authorize the execution and performance of this Agreement and the consummation of the transactions contemplated herein, subject to the approval of the Bankruptcy Court; (iii) Buyer has the financial resources to consummate the transaction contemplated herein and pay the Purchase Price, and (iv) Buyer has knowledge and expertise in financial and business matters that enable Buyer to evaluate the merits and risks of the transaction contemplated by this Agreement and that Buyer is not in any disparate bargaining position. Without limiting the foregoing, Buyer has funds available to satisfy its obligations in this Agreement to pay the Purchase Price.

(d)    <u>Buyer's Obligations Regarding Drug Products</u>.  Buyer acknowledges that Seller currently stores drug products on the Property.  These drug products are subject to oversight and regulation by the U.S. Food and Drug Administration (the "**FDA**").  These drug products will remain on the Property and Buyer will take possession of the Property at the Closing subject to the drug products remaining on the Property.  The drug products are subject to a recall action as agreed upon with the FDA.  Buyer covenants and agrees to take all necessary actions (at its sole cost) to fully comply with the agreed upon recall of the drug products, including any agreement with respect to the destruction of the drug products remaining on the Property, and with any and all other obligations applicable to Buyer with respect to the drug products under applicable law.

(e)   Buyer's Acknowledgments.   **BUYER ACKNOWLEDGES THAT, SUBJECT TO AND EXCEPT AS SET FORTH IN SECTION 7 AND 8 HEREOF, ARTICLE V OF THE ASSET PURCHASE AGREEMENT, THE SALE ORDER OR ANY CERTIFICATE OR DOCUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH, IT IS ACCEPTING THE PROPERTY AS OF THE CLOSING DATE "AS IS, WHERE IS AND WITH ALL FAULTS." BUYER ACKNOWLEDGES THAT, SUBJECT TO AND EXCEPT AS SET FORTH IN SECTION 7 AND 8 HEREOF, ARTICLE V OF THE ASSET PURCHASE AGREEMENT, THE SALE ORDER OR ANY CERTIFICATE OR DOCUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH, SELLER HAS NOT MADE AND WILL NOT MAKE, NOR SHALL SELLER BE DEEMED TO HAVE MADE, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, AS TO (I) THE FITNESS, DESIGN OR CONDITION OF THE PROPERTY FOR ANY PARTICULAR USE OR PURPOSE, (II) THE QUALITY OF THE MATERIAL OR WORKMANSHIP THEREIN, (III) THE EXISTENCE OF ANY DEFECT, LATENT OR PATENT, (IV) COMPLIANCE WITH SPECIFICATIONS, (V) LOCATION, (VI) USE, (VII) CONDITION, (VIII) MERCHANTABILITY, (IX) QUALITY, (X) DESCRIPTION, (XI) DURABILITY, (XII) OPERATION, (XIII) VALUE, (XIV) SELLER'S TITLE THERETO, WHICH IS BEING CONVEYED AS IS WITH ALL DEFECTS AND OBJECTIONS (EXCEPT FOR ANY NON-PERMITTED LIENS), OR (XV) THE EXISTENCE OF ANY HAZARDOUS SUBSTANCE, AND ALL RISKS INCIDENT THERETO WHICH ARE TO BE BORNE BY BUYER. BUYER FURTHER ACKNOWLEDGES THAT SELLER HAS NOT MADE ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO ENVIRONMENTAL CONDITIONS ON OR AFFECTING THE PROPERTY, INCLUDING (1) WHETHER THE PROPERTY HAS BEEN OR IS CONTAMINATED BY OR WITH, OR HAS OR IS CONTAMINATING OR HAS OR IS CONTRIBUTING TO THE CONTAMINATION OF ANY OTHER PROPERTY WITH, ANY SUBSTANCE IN ANY MANNER WHICH COULD REQUIRE REMEDIATION UNDER ANY LAW OR REGULATION, INCLUDING LOCAL, STATE, FEDERAL OR COMMON LAW, (2) WHETHER THE PROPERTY CONTAINS OR HAS EVER CONTAINED ANY ENVIRONMENTALLY SENSITIVE AREAS IN WHICH DEVELOPMENT COULD BE PRECLUDED OR LIMITED UNDER ANY LAW OR REGULATION, INCLUDING LOCAL, STATE, FEDERAL OR COMMON LAW, OR WETLANDS OR FLOOD PLAINS REGULATIONS OR LAWS, (3) WHETHER THE PROPERTY CONTAINS OR HAS EVER CONTAINED ANY UNDERGROUND TANKS OR SUBSTANCES OF ANY KIND, INCLUDING ASBESTOS OR POLYCHLORINATED BIPHENYLS, WHOSE REMOVAL OR DISPOSAL IS SUBJECT TO OR HAS EVER BEEN SUBJECT TO SPECIAL REGULATIONS UNDER ANY LAW OR REGULATION, INCLUDING LOCAL, STATE, FEDERAL OR COMMON LAW, OR (4) WHETHER ANY ACTIVITIES ON THE PROPERTY HAVE BEEN CONDUCTED OR ARE BEING CONDUCTED IN VIOLATION OF ANY LAWS CONCERNING THE HANDLING OF ANY MATERIALS BY REASON OF THE HAZARDOUS OR**

**TOXIC CHARACTERISTICS OF SUCH MATERIALS OR THE DISPOSAL OF ANY WASTES, THE DISCHARGE OF ANY MATERIALS INTO THE SOIL, AIR, SURFACE, WATER, OR GROUNDWATER, OR THE CONDUCTING OF ACTIVITIES IN ENVIRONMENTALLY SENSITIVE AREAS.  IN THE EVENT OF ANY DEFECT OR DEFICIENCY IN ANY PORTION OF THE PROPERTY OF ANY NATURE, WHETHER LATENT OR PATENT, THE SELLER SHALL NOT HAVE ANY RESPONSIBILITY OR LIABILITY WITH RESPECT THERETO OR FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING STRICT LIABILITY IN TORT).  THE PROVISIONS OF THIS <u>SECTION 8(E)</u> HAVE BEEN NEGOTIATED WITH THE ADVICE OF COUNSEL, AND ARE INTENDED TO BE A COMPLETE EXCLUSION AND NEGATION OF ANY WARRANTIES BY SELLER, EXPRESS OR IMPLIED, WITH RESPECT TO THE PROPERTY, ARISING PURSUANT TO THE UNIFORM COMMERCIAL CODE OR ANY OTHER LAW NOW OR HEREAFTER IN EFFECT OR ARISING OTHERWISE, SUBJECT TO AND EXCEPT AS SET FORTH IN SECTION 7 AND 8 HEREOF, ARTICLE V OF THE ASSET PURCHASE AGREEMENT, THE SALE ORDER OR ANY CERTIFICATE OR DOCUMENT DELIVERED IN CONNECTION HEREWITH OR THEREWITH. THE PROVISIONS OF THIS <u>SECTION 8(E)</u> SHALL SURVIVE THE CLOSING OR THE TERMINATION OF THIS AGREEMENT.**

9.      **<u>Casualty and Condemnation</u>**.

(a)      <u>Risk of Loss</u>. The risk of loss or damage to the Property by fire or other casualty prior to Closing shall be on the Seller.

(b)      <u>Major Damage</u>.  In the event that the Property is damaged or destroyed by fire or other casualty prior to Closing and the cost of repair exceeds ten percent (10%) of the Purchase Price, then Seller shall have no obligation to repair such damage or destruction and shall notify Buyer in writing of same (the "**Damage Notice**").  Within ten (10) days following Buyer's receipt of the Damage Notice, Buyer may elect at its option to terminate this Agreement and receive a refund of the Required Deposit by delivering written notice to Seller.  In the event Buyer fails to terminate this Agreement within such ten-day period, this transaction shall be closed in accordance with the terms of this Agreement for the full Purchase Price, notwithstanding any such damage or destruction, and Buyer shall, at Closing, execute and deliver an assignment and assumption (in a form reasonably required by Seller) of Seller's rights and obligations with respect to the insurance policies and insurance claim related to such casualty, and thereafter Buyer shall receive all remaining insurance proceeds pertaining to such claim (plus a credit against the Purchase Price at Closing in the amount of any uninsured losses including any deductible payable by Seller in connection therewith and not spent by Seller for demolition, site cleaning, restoration or other repairs).

(c)      <u>Minor Damage</u>.  In the event that the Property is damaged or destroyed by fire or other casualty prior to the Closing, and the cost of repair is equal to or less than ten percent (10%) of the Purchase Price, this transaction shall be closed in accordance with

the terms of this Agreement, notwithstanding the damage or destruction; provided, however, Seller shall make such repairs to the extent of any recovery actually received by the Seller from insurance carried on the Property if such repairs can be reasonably effected before the Closing.  If Seller is unable to effect such repairs prior to Closing, then Buyer shall, at Closing, execute and deliver an assignment and assumption (in a form reasonably required by Seller) of Seller's rights and obligations with respect to the insurance policies and insurance claim related to such casualty, and thereafter Buyer shall receive all remaining insurance proceeds pertaining to such claim (plus a credit against the Purchase Price at Closing in the amount of any uninsured losses including any deductible payable by Seller in connection therewith and not spent by Seller for demolition, site cleaning, restoration or other repairs).

(d)    Repairs.    To the extent that Seller elects to commence any repair, replacement or restoration of the Property prior to Closing, then Seller shall be entitled to receive and apply available insurance proceeds to any portion of such repair, replacement or restoration completed or installed prior to Closing, with Buyer being responsible for completion of such repair, replacement or restoration after Closing from the balance of any available insurance proceeds.  To the extent that any repair, replacement or restoration of a casualty has been commenced prior to Closing, then Buyer shall have the right, but not the obligation, to assume at Closing, all construction and other contracts entered into by Seller in connection with such repair, replacement or restoration.

(e)    Condemnation.    If prior to Closing a taking of a material part of the Property pursuant to the power of eminent domain is proposed or occurs such that Buyer's use and enjoyment of the Property would be materially and adversely effected thereby, Buyer shall have the right, at Buyer's option, to terminate this Agreement and receive the Required Deposit by giving written notice within ten (10) days after Buyer's receipt from Seller of notice of the occurrence of such event.  If Buyer fails to terminate this Agreement within such ten (10) day period, this transaction shall be closed in accordance with the terms of this Agreement for the full Purchase Price and Buyer shall receive the full benefit of any condemnation award.

10.    **Broker**.  Buyer and Seller each represents to the other that it has not dealt with any party acting as a broker or sales agent in connection with the transactions described in this Agreement except for Greenhill & Co. (the "**Broker**").  The Broker shall be compensated by Seller in accordance with any order entered by the Bankruptcy Court authorizing the Seller's retention of the Broker.  Seller agrees to indemnify, defend and hold harmless Buyer from and against any and all claims, expenses, fees or costs, including reasonable attorney's fees and disbursements, as a result of claims made by any person other than Broker for brokerage commissions, or other fees, with respect to the transactions described in this Agreement, as a result of the untruth of the representations of the indemnifying party under this Section 10. The provisions of this Section 10 shall survive the Closing or termination of this Agreement.

11.    **Bankruptcy Court Matters.**

(a)    <u>Bankruptcy Actions</u>.  Seller shall use its reasonable best efforts to obtain the entry of the Sale Order within sixty (60) days of full execution hereof.  Buyer covenants and agrees that it shall cooperate with Seller as necessary to obtain entry of the Sale Order, including without limitation by furnishing information or documents to Seller to satisfy the requirements for obtaining Bankruptcy Court approval of the Sale Order.

(b)    <u>Bidding Procedures</u>.  The bidding procedures to be employed with respect to the auction process (the "**Bidding Procedures**") shall be those reflected in the Bidding Procedures Order in the form of Exhibit B hereto, or such form as approved by the Bankruptcy Court and reasonably acceptable to Buyer (the "**Bidding Procedures Order**").    Buyer agrees and acknowledges that Seller, including through his representatives, is and may continue soliciting inquiries, proposals or offers from third parties in connection with any alternative transaction for the Property.

(c)    <u>Approval</u>.  Seller's obligations under this Agreement and in connection with the transactions contemplated hereby are subject to entry of the Sale Order, and to the terms of the Sale Order and any other orders of the Bankruptcy Court applicable to the transactions contemplated in this Agreement.  Nothing in this Agreement shall require the Seller or its affiliates to give testimony to or submit a motion to the Bankruptcy Court that is untruthful or to violate any duty of candor or other fiduciary duty to the Bankruptcy Court or its stakeholders.

(d)    <u>Consultation with Buyer</u>.  Seller shall provide Buyer, at least two (2) business days in advance of filing with the Bankruptcy Court, a draft of any motions, orders or other pleadings that Seller proposes to file with the Bankruptcy Court seeking approval of this Agreement, excluding those already filed as of the execution of this Agreement.

(e)    <u>Alternate Bids</u>.

(i)    Buyer acknowledges that this Agreement and the sale of the Property are subject to higher and better bids and Bankruptcy Court approval, and subject to all of the provisions in the Bidding Procedures and Bidding Procedures Order.  Buyer acknowledges that Seller must take reasonable steps to demonstrate that it has sought to obtain the highest or otherwise best price for the Property, including giving notice of the opportunity to purchase the Property to other potential purchasers and certain parties in interest in the Bankruptcy Cases, providing information about the Debtors' assets to prospective bidders, entertaining higher and better offers from such prospective bidders for the Property, and, in the event that additional qualified prospective bidders desire to bid for the Property, conducting an auction regarding the Property.

(ii)    Notwithstanding any other provision of this Agreement to the contrary, Buyer acknowledges that Seller and its affiliates and advisors are and may continue soliciting and/or responding to inquiries, proposals or offers for the Property and may furnish any information with respect to, or assist or participate in, or facilitate in any

other manner, any effort or attempt by any person to do or seek to do any of the foregoing in connection with any alternative transaction.

    (iii) Subject to the terms and conditions of the Bidding Procedures Order, Purchase acknowledges and agrees to serve as an Alternate Bidder, if so selected by the Trustee in accordance with the Bidding Procedures.

   12. **Notices**.  All notices and other communications hereunder shall be in writing and shall be deemed given when mailed, delivered personally, telecopied (which is confirmed) or sent by an overnight courier service, such as Federal Express, to the parties at the following addresses:

| | |
|---|---|
| If to Seller: | George L. Miller, Trustee<br>1628 John F. Kennedy Blvd., Suite 950<br>Philadelphia, PA 19103-2110<br>Telephone: (215) 561-0950 Ext. 14<br>Facsimile: (215) 561-0330<br>Email:  gmiller@mctllp.com |
| with a copy to: | John T. Carroll, III<br>Cozen O'Connor<br>1201 North Market Street, Suite 1001<br>Wilmington, DE 19801<br>Telephone: (302) 295-2028<br>Facsimile: (302) 295-2013<br>Email: jcarroll@cozen.com |
| If to Buyer: | Rising NewCo LLC<br>2 Tower Center Boulevard, 11th Floor<br>East Brunswick, NJ 08816<br>Attn: CEO<br>Email: vkavuru@risingpharma.com |
| with a copy to: | Rising NewCo LLC c/o H.I.G. Capital, LLC<br>1450 Brickell Ave., 31st Floor<br>Miami, FL 33131<br>Attn:  Michael Gallagher<br>Richard Zhang<br>Email: mgallagher@higcapital.com<br>rzhang@higcapital.com |
| with a copy to: | Ropes & Gray LLP<br>1211 Avenue of the Americas<br>New York, NY 10036<br>Attn: Michael Roh<br>Email: michael.roh@ropesgray.com |

or to such other address as a party may from time to time designate in writing in accordance with this <u>Section 12</u>. Each notice or other communication given to any party hereto in accordance with the provisions of this Agreement shall be deemed to have been received (i) on the business day it is sent, if sent by personal delivery or email, or (ii) on the first business day after sending, if sent by overnight delivery, properly addressed and prepaid or (iii) upon receipt, if sent by mail (regular, certified or registered); provided, however, that notice of change of address shall be effective only upon receipt. The parties agree that delivery of process or other papers in connection with any such action or proceeding in the manner provided in this <u>Section 12</u>, or in such other manner as may be permitted by law, shall be valid and sufficient service thereof.

13. **<u>Miscellaneous</u>**.

(a) <u>Entire Agreement; Amendments</u>. This Agreement and the Asset Purchase Agreement, together with any and all exhibits hereto constitutes the complete and final expression of the agreement of the parties hereto and supersedes all previous agreements, either oral or written, with respect to the Property and the transactions described herein. This Agreement may not be modified, amended, discharged or terminated nor may any of the obligations of the parties hereunder be waived, except by a written instrument executed by the parties hereto.

(b) <u>No Assignment of Agreement</u>. Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by any of the parties hereto (whether by operation of law or otherwise) without the prior written content of the other party; <u>provided</u> that no such prior written consent shall be required for (i) an assignment by Buyer to any of its affiliates (i.e., an entity controlled by, controlling or under common control with Buyer), so long as Buyer remains liable hereunder or (ii) an assignment by Buyer of its rights and interests hereunder after the Closing. Subject to the first sentence of this <u>Section 13(b)</u>, this Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and permitted assigns.

(c) <u>No Recording</u>. Prior to Closing, Buyer shall not (i) record, or attempt to record, this Agreement or a memorandum hereof or (ii) place, or attempt to place, a vendee's lien upon the Property. Any breach of these covenants shall constitute a Default under <u>Section 4(a)</u> and Seller shall be entitled to exercise all of the rights and remedies set forth herein available to Seller as a result thereof. To the extent that such filing or recordation is made in violation of this Agreement, Buyer shall indemnify Seller against any damages (including consequential damages) incurred by Seller as a result thereof. The provisions of this <u>Section 13(c)</u> shall survive the termination of this Agreement.

(d) <u>Parties' Expenses</u>. Seller and Buyer shall pay their own respective expenses, costs and fees (including attorneys' fees and disbursements) incurred in connection with the negotiation, preparation, execution and delivery of this Agreement and the consummation of the transactions contemplated by this Agreement. Subject to the preceding sentence, Buyer shall pay all costs and expenses relating to the transaction contemplated by this Agreement with respect to all transfer taxes, recording fees, title insurance costs as well as all costs incurred in connection with the physical inspection of

the property, environmental reports and other such investigations, in each case, to the extent incurred by Buyer.

(e)     Construction; Headings.  When used herein, the term "including" shall mean "including without limitation" unless otherwise specifically provided; all other language in this Agreement shall be construed simply according to its fair meaning, and not strictly for or against any of the parties hereto.  The headings in this Agreement are for convenience only, and are not to be utilized in construing the content or meanings of any of the provisions hereof and shall not be deemed to constitute a part of this Agreement. All pronouns and any variations thereof shall be deemed to refer to the masculine, feminine, neuter, singular or plural, as the identity of the person or persons may require. Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning. Both parties to this Agreement having participated fully and equally in the negotiation and preparation hereof, this Agreement shall not be more strictly construed, or any ambiguities within this Agreement resolved, against either party hereto, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement. When a reference is made in this Agreement to a Section, Article, subsection, paragraph, item or Exhibit, such reference shall be to a Section, Article, subsection, paragraph, item or Exhibit of this Agreement unless clearly indicated to the contrary. The words "hereof," "herein" and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement. A reference to any party to this Agreement or any other agreement or document shall include such party's predecessors, successors and permitted assigns. A reference to any legislation or to any provision of any legislation shall include any amendment to, and any modification or re-enactment thereof, any legislative provision substituted therefore and all regulations and statutory instruments issued thereunder or pursuant thereto. References to $ are to United States Dollars.

(f)     Announcements.  Neither party shall make any press release or other public announcement or disclosure concerning this transaction without the prior written consent of the other party, which shall not be unreasonably withheld or delayed.  The foregoing shall not prohibit such announcements or disclosures as may be required by law. Appearances in, or filings with, the Bankruptcy Court, any dealings with the various creditor committees and notices to parties to any bankruptcy case involving the Seller, the Estates or the Debtors shall not be deemed a public announcement for purposes of this Section 13(f).  The provisions of this Section 13(f) shall survive Closing or the earlier termination of this Agreement.

(g)     Severability.  Any provision of this Agreement which is prohibited or deemed unenforceable shall be ineffective to the extent of such prohibition or enforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of any other provision of this Agreement.  Formal tender of an executed deed and purchase money is hereby waived.

(h)  <u>Governing Law</u>. This Agreement shall be governed and construed according to the laws of the State of Delaware and the applicable provisions of the Bankruptcy Code; provided that any provisions relating to the conveyance of interests in real property (including the validity, construction and enforcement of the Deeds) shall be governed by the laws of the State in which the applicable Land is located.

(i)  <u>Jurisdiction</u>.  The Bankruptcy Court shall retain exclusive jurisdiction over any matter arising from or relating to the sale of the Property and the enforcement of any rights and remedies of Seller or Buyer hereunder.  Buyer hereby consents to such jurisdiction.

(j)  <u>Not a Joint Venture</u>.  Seller and Buyer each acknowledge and agree that the relationship between them is that of seller and buyer and this Agreement does not constitute a partnership, joint venture or any other association between them.

(k)  <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which counterparts taken together shall constitute one and the same original.  Executed copies of this Agreement may be delivered electronically or by telecopy and, upon receipt, shall be deemed originals and binding upon the parties hereto.  Without limiting or otherwise affecting the validity of executed copies hereof that have been delivered electronically or by telecopy, the parties will use commercially reasonable efforts to deliver originals as promptly as possible following execution thereof.

(l)  <u>Time of the Essence</u>.  All times specified in this Agreement shall be of the essence of this Agreement.  If any date herein set forth for the performance of any obligations by Seller or Buyer or for the delivery of any instrument or notice as herein provided should be on a Saturday, Sunday or legal holiday, the compliance with such obligations or delivery shall be deemed acceptable on the next business day following such Saturday, Sunday or legal holiday.  As used herein, the term "legal holiday" means any state or federal holiday on which financial institutions or post offices are generally closed in the State of Delaware.

(m)  <u>Bulk Transfer Laws</u>. Buyer acknowledges that Seller will not comply with the provisions of any bulk transfer laws or similar laws of any jurisdiction in connection with the transactions contemplated by this Agreement, including the United Nations Convention on the Sale of Goods, and hereby waives all claims related to the non-compliance therewith.  Seller and Buyer have agreed to rely upon the adjustment provisions of this Agreement to address any matters that would otherwise be subject to such bulk sale requirements.

[Remainder of page intentionally left blank]

**IN WITNESS WHEREOF,** Seller and Buyer have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

**SELLER:**

**GEORGE L. MILLER, AS TRUSTEE FOR THE ESTATES**

By: _____

Name: George L. Miller

Title: Trustee

**IN WITNESS WHEREOF**, Seller and Buyer have executed this Agreement or caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first written above.

**SELLER:**

**GEORGE L. MILLER, AS TRUSTEE FOR THE ESTATES**

By: _____
    Name:
    Title:

**BUYER:**

RISING NEWCO LLC

By: Raisin Holdings, Inc.
Its: Managing Member

By: _____
    Name: Richard Zhang
    Title: Authorized Signatory

# EXHIBIT A

## Legal Description of the Land

"1222 West Grand Avenue"

LOT 1 IN AKORN SUBDIVISION, CITY OF DECATUR, MACON COUNTY, ILLINOIS, A PART OF THE SOUTHEAST 1/4 OF THE NORTHEAST 1/4 OF SECTION 9, TOWNSHIP 16 NORTH, RANGE 2 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED DECEMBER 10, 2015 AS DOCUMENT NUMBER 1897214, IN MACON COUNTY, ILLINOIS.

Property Address: 1222 West Grand Avenue, Decatur, Illinois and 1390 North Fairview Avenue, Decatur, Illinois

Permanent Tax Identification Number(s): 04-12-09-284-015

"150 and 140 S. Wyckles Road"

Parcel 1:

Part of the Southwest 1/4 of the Northwest 1/4 of Section Eighteen (18), Township Sixteen (16) North, Range Two (2) East of the 3rd P.M., described as follows:  Beginning at a point 40 feet East of the Southwest corner of the Northwest 1/4 of said Section 18, said point being on the East right-of-way line of (Wyckles Road) County Highway 41, thence North along said East right-of-way line 444.4 feet, thence East 155.57 feet, thence North 280 feet, thence East 215.02 feet; thence North 220.06 feet to the South right-of-way line of West Main Street (Old Route 36), thence Easterly along said right-of-way line 421.15 feet, thence South 983.9 feet, thence West 798.56 feet to the point of beginning. Situated in Macon County, Illinois.

Parcel 2:

Part of the Southwest 1/4 of the Northwest 1/4 of Section Eighteen (18), Township Sixteen (16) North, Range Two (2) East of the 3rd P.M., described as follows: Beginning at a point on the East right-of-way line of County Highway 41 (Wyckles Road), 724.4 feet North and 40.0 feet East of the Southwest corner Northwest 1/4 of Section 18, Township 16 North, Range 2 East of the 3rd P.M.; thence 155.57 feet; thence South 280.0 feet; thence West 155.57 feet to said East right-of-way line; thence North along said East right-of-way 280.0 feet to the point of beginning. Situated in Macon County, Illinois.

Property Address: 150 and 140 S. Wyckles Road, Decatur, Illinois

Permanent Tax Identification Number(s): 04-12-18-151-002; 04-12-18-151-003

**Exhibit B**

Bidding Procedures Order

(see attached)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| AKORN HOLDING COMPANY LLC, *et al.*[1] | Case No. 23-10253 (KBO) |
| Debtors. | (Jointly Administered) |
|  | **Re D.I. 106**, 136 |

## ORDER GRANTING TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (A) APPROVING BIDDING PROCEDURES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS, (B) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE PROPOSED SALE, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (D) GRANTING CERTAIN RELATED RELIEF

This matter comes before the Court upon consideration of the *Trustee's Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, and (C) Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Approving the Sale, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* (the "Sale Motion")[2] seeking, among other things, entry of an order: (i) approving the Bidding Procedures in connection with the Sale, (ii) scheduling an Auction and hearing to approve the Sale, (iii) approving the form and manner of notice thereof, and (iv) granting related relief. After due deliberation and having determined that

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

[2] All capitalized terms used, but not otherwise defined, in this Order shall have the meanings given in the Sale Motion.

the relief requested in the Sale Motion regarding the Sale Process is in the best interest of the Estates,

### THE COURT HEREBY FINDS THAT:[3]

A.     The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. § 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested in the Motion and granted herein include sections 105(a), 363(b) and (f), and 365 of the Bankruptcy Code, Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e) and (f), 6006(a) and (c), 9007, and 9014, and Local Rule 6004-1(c)(ii).

B.     Notice of the Sale Motion, having been given to the Notice Parties, is sufficient in light of the circumstances and the nature of the relief requested in the Sale Motion.

C.     The Trustee has articulated good and sufficient reasons for the Court to grant the relief requested in the Sale Motion regarding the Sale Process, including without limitation, (i) approval of the Bidding Procedures; and (ii) approval of, and authorization to serve, the Notice of Auction and Sale Hearing and the Cure Notice.

D.     The Notice of Auction and Sale Hearing and the service thereof, and the service of the Cure Notice on the Counterparties, are calculated to provide all interested parties with timely and proper notice of the Sale, the Sale Hearing, the Auction, and the Cure Amounts.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Bidding Procedures, substantially in the form attached hereto as <u>Exhibit 1</u>, are hereby approved and fully incorporated into this Order.  The Trustee is authorized to undertake any and all actions necessary or appropriate to implement the Bidding Procedures.

2.      Objections, if any, to the portion of the relief requested in the Sale Motion that is granted in this Order that have not been withdrawn, waived, or settled are hereby overruled.

3.      The Notice of Auction and Sale Hearing, substantially in the form attached hereto as <u>Exhibit 2</u>: (i) is hereby approved; and (ii) shall be served, together with a copy of this Order, upon each of the Notice Parties within three (3) days of the date of this Order.

4.      Subject to the Bidding Procedures, in the event that the Trustee does not receive more than one Qualified Bid, the Trustee will not hold the Auction.  If the Trustee does not receive any Qualified Bids, the Trustee shall report the same to the Court and declare the Auction a "failed auction."  In the event that the Trustee receives only one Qualified Bid, the Trustee will not hold the Auction and may instead seek approval of such Qualified Bid and the associated purchase agreement at the Sale Hearing.  However, in the event that only one Qualified Bid is received, the Trustee may determine in his business judgment that such Qualified Bid is insufficient, and shall have the right to either postpone the Auction and Bid Deadline or declare the Auction a "failed auction."  As further described in the Bidding Procedures, in the event that the Trustee timely receives two (2) or more Qualified Bids, the Trustee shall conduct the Auction commencing on **May 10, 2023 at 10:00 a.m. (ET), and, as may be necessary, continuing through and including May 12, 2023**, at the offices of Cozen O'Connor, One Liberty Place, 1650 Market Street, Suite 2800, Philadelphia, PA 19103, or such later time or other place or manner as the Trustee shall notify all Qualified Bidders.

5.      Any person wishing to submit a higher or better offer for the Purchased Assets must do so in accordance with the terms of the Bidding Procedures.

6.      All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of the Court with respect to all matters related to the Auction and the terms and conditions of the transfer of the Purchased Assets.

7.      The Trustee is hereby authorized to conduct the Sale without complying with any state or local bulk transfer law or requirements.

8.      Pursuant to Local Rule 6004-1(c)(ii): (a) each bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale; (b) the Auction will be conducted openly and all creditors will be permitted to attend (although only Qualified Bidders may bid); and (c) bidding at the Auction will be transcribed or videotaped.

9.      Within three (3) days of the date of this Order the Trustee shall file and serve the Cure Notice upon the Counterparties, which notice shall set out the applicable Cure Amounts, if any.  The Cure Notice shall be in substantially the form attached hereto as <u>Exhibit 3</u>, which form is hereby approved.

10.      Except as otherwise provided in this paragraph 10, objections, if any, to the Trustee's proposed Cure Amounts, and to the assumption and assignment of any executory contract and/or unexpired lease, must: (i) be in writing; (ii) state with specificity the grounds for such objection (with appropriate documentation in support thereof); (iii) comply with the Bankruptcy Rules and the Local Rules; and (iv) be filed with this Court and served upon (so as to be **<u>received</u>** by) the Service Parties on or before May 16, 2023  (the "<u>Objection Deadline</u>").

Provided, however, objections to the assignment of any executory contract and/or unexpired lease based on section 365(f)(2) of the Bankruptcy Code may be made at any time prior to, or at, the Sale Hearing.   Replies, if any, to any such objections shall be filed with the Court by May 18, 2023; provided however, replies to objections to the assignment of any executory contract and/or unexpired lease based on section 365(f)(2) of the Bankruptcy Code may be made at any time prior to, or at, the Sale Hearing.  The Court shall hold a hearing on May 19, 2023 at 10:00 a.m. (ET) (i.e., the Sale Hearing) regarding any objections to Cure Amounts and/or assumption and assignment of executory contracts and/or unexpired leases.

11.    Any party failing to timely file an objection to the Cure Amounts and/or assumption and/or assignment of any executory contract or unexpired lease shall be forever barred from objecting to the Cure Amounts and/or to such assumption and/or assignment, and will be deemed to consent to the Cure Amounts and/or assumption and assignment of such executory contract or unexpired lease.

12.    The Sale Hearing is scheduled to be held on May 19, 2023 at 10:00 a.m. (ET) before the Honorable Karen B. Owens, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801.  The Sale Hearing may be adjourned or rescheduled at the Trustee's sole discretion.  The Trustee will seek the entry of the Sale Order at the Sale Hearing approving and authorizing the Sale to each Successful Bidder or Alternate Bidder, on terms and conditions consistent with such party's asset purchase agreement, as may be amended and/or modified by agreement between the Trustee and a Successful Bidder or Alternate Bidder.

13.    Objections, if any, to the relief requested in the Sale Motion as it relates to the Sale must: (i) be in writing and filed with the Court; (ii) comply with the Bankruptcy Rules and

the Local Rules; and (iii) be filed and served upon, so as to be **received** by, the Service Parties on or before May 16, 2023.

14.    The failure of any person or entity to timely file an objection to the Sale Motion shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Sale of the Purchased Assets to each Successful Bidder or Alternate Bidder.

15.    Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

16.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

17.    To the extent that any provisions of this Order may be inconsistent with the Sale Motion, the terms of this Order shall control.

Dated: April 28th, 2023
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1</u>**

**Bidding Procedures**

# Bidding Procedures

George L. Miller, as chapter 7 trustee (the "**Trustee**") for the bankruptcy estates (the "**Estates**") of Akorn Holding Company LLC, *et al.*[1] (the "**Debtors**"), jointly administered debtors in Case No. 23-10253 (KBO) presently pending in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), contemplates the sale (the "**Sale**") of all or substantially all of the assets of the Estates (the "**Purchased Assets**") to one or more purchasers pursuant to section 363 of title 11 of the United States Code (the "**Bankruptcy Code**").   The proposed transaction is subject to approval by the Court.  In connection with the Sale, these bidding procedures (the "**Bidding Procedures**") were approved by order of the Court dated April 28, 2023 (the "**Bidding Procedures Order**").[2]

## A.   The Bidding Process

1.     These Bidding Procedures describe, among other things, the manner in which prospective bidders may gain access to due diligence materials concerning the Purchased Assets, the manner in which bidders and bids become Qualified Bidders (as defined below) and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any Auction (as defined below), the ultimate selection of a Successful Bidder and Successful Bid (each as defined below), and the Court's approval thereof (collectively, the "**Bidding Process**").

2.     Neither the Trustee nor his representatives shall be obligated to furnish any information of any kind whatsoever to any person who is not a Qualified Bidder (defined below). In the exercise of his reasonable business judgment, the Trustee may amend these Bidding Procedures in writing or orally at the Auction, so as to better promote the goals of the Bidding Process, so long as such changes are not inconsistent with any Court order, including the Bidding Procedures Order.

## B.   Sale on "as is, where is" Basis

The sale of the Purchased Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind by the Trustee or his agents.

## C.   Free and Clear of Any and All Claims and Interests

All of the Estates' right, title, and interest in and to the Purchased Assets, or any portion thereof, to be acquired, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "**Interests**"), with such Interests to attach to the net proceeds of the sale of such Purchased Assets, except, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant purchase agreement of such Successful Bidder.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.
[2] Capitalized terms used, but not otherwise defined, in these Bidding Procedures shall have the meanings given in the Bidding Procedures Order.

### D. <u>Participation Requirements</u>

1. To participate in the Bidding Process each interested person or entity must:

(i) deliver, unless previously delivered, to Greenhill an executed confidentiality agreement in form and substance satisfactory to the Trustee (to be delivered prior to the distribution of any confidential information by the Trustee to such person); and

(ii) be deemed by the Trustee, after consultation with his professionals, to be reasonably likely to be able to fund and complete the consummation of the proposed transaction within the time frame acceptable to the Trustee if selected as a Successful Bidder (as defined below).

2. Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Trustee and his professionals regarding the ability of such Potential Bidder, as applicable, to consummate its contemplated transaction.

3. As promptly as reasonably possible, the Trustee will determine (in consultation with the Consultation Parties)[3] if such person or entity is acceptable and deem such person or entity a "**Potential Bidder**."

### E. <u>Due Diligence</u>

1. The Trustee may, in his reasonable business judgment, afford each Potential Bidder such access to due diligence materials concerning the Purchased Assets as the Trustee deems appropriate. Due diligence access may include access to written materials, verbal discussions, on-site inspections, and other material that a Potential Bidder may reasonably request and as to which the Trustee, in his reasonable business judgment, may agree. The Trustee may, in the exercise of his reasonable business judgment (in consultation with the Consultation Parties), extend a Qualified Bidder's time to conduct due diligence after the Bid Deadline (as defined below) until the Auction. The Trustee may, in his reasonable business judgment, coordinate due diligence efforts such that multiple Potential Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at site inspections. The Trustee makes no representation or warranty as to the information to be provided through this due diligence process.

2. Each Qualified Bidder shall be deemed to acknowledge, and shall represent in any asset purchase agreement, that it has had an opportunity to inspect and examine the Purchased Assets and to conduct any and all due diligence prior to making its offer, that it has relied solely upon its own independent reviews, investigations, and/or inspections in submitting its Bid, and that it did not rely upon any written or oral statements, representations, promises, warranties, or

[3] Each reference in these Bidding Procedures to "consultation" (or similar phrase) shall mean consultation in good faith providing sufficient time for the applicable parties to confer with each other and their clients, as applicable. Except as otherwise provided herein, the following parties constitute the "**Consultation Parties**": (a) the ABL Lenders (including the ABL Lenders' advisors) and (b) the Required Lenders (as defined in the Senior Secured Term Loan Agreement), including the advisors to the Required Lenders.

guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the Bidding Process.

## F. Bid Deadline

A Potential Bidder that desires to make a Bid must deliver written copies of its Bid, via electronic mail, hand delivery or overnight mail, to: (i) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. John T. Carroll, III, Esq. (jcarroll@cozen.com) and Simon Fraser, Esq. (sfraser@cozen.com); (ii) MidCap Funding IV Trust, care of its counsel, Proskauer Rose LLP, One International Place, Boston, MA 02110, Attn: Charles A. Dale, Esq. (cdale@proskauer.com); (iii) WSFS Institutional Services, care of its counsel, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, Attn: Andrew N. Goldman, Esq. (andrew.goldman@wilmerhale.com) and Nathan J. Moore, Esq. (nathan.moore@wilmerhale.com); (iv) Ad Hoc TL Lender Group, care of their counsel, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166-0193, Attn: Matt J. Williams, Esq., (mjwilliams@gibsondunn.com) and AnnElyse Scarlett Gains, Esq., (agains@gibsondunn.com); and (v) Greenhill & Co., LLC, 1271 Avenue of the Americas, New York, NY 10020, Attn: Neil A. Augustine (neil.augustine@greenhill.com), Rupert Hill (rupert.hill@greenhill.com), Nicholas Drayson (nicholas.drayson@greenhill.com) and Sean Wright (sean.wright@greenhill.com) so that the Bid is actually received by **12:00 p.m. (Noon) (ET) on May 4, 2023** (the "Bid Deadline"). The Trustee may (in consultation with the Consultation Parties) extend the Bid Deadline once or successively but is not obligated to do so. If the Trustee extends the Bid Deadline, he shall promptly notify all Potential Bidders of such extension.

## G. Qualified Bid Requirements

1.      A proposal ("**Bid**") received from a Potential Bidder is a "**Qualified Bid**" if it complies with all of the following; provided that the Lenders shall be deemed a Qualified Bidder (and any bid submitted by them, a Qualified Bid) without the need to satisfy any of the other requirements placed on Qualified Bidders hereunder:

(i) is received by the Bid Deadline;

(ii) provides for the purchase of all or some portion of the Purchased Assets by the Potential Bidder on an "as is, where is" basis;

(iii) clearly identifies the particular Purchased Assets to be purchased

(iv) allocates value and/or a portion of the aggregate purchase price for each class of property (e.g. real estate, equipment, intellectual property, ANDAs, ANADAs and stock);

(v) if purchasing ANDAs or ANADAS on an individual basis, then must allocate purchase price per ANDA and ANADA;

(vi) includes a copy of a definitive asset purchase agreement (in substantially the form of one or more of the template asset purchase agreements posted in the data room maintained by Greenhill for Purchased Assets, as applicable (the "**Template Asset Purchase Agreements**"), signed by an authorized representative of such Potential Bidder;

(vii) is accompanied by a redline comparison showing any changes that the Potential Bidder has made to the applicable Template Purchase Agreement(s);

(viii) is not subject to any due diligence or financing conditions, board or other approval;

(ix) is accompanied by a cash deposit of not less than 10% of the proposed purchase price (the "**Required Deposit**"); *provided*, that any Bid by Lenders shall not be required to be accompanied by a deposit;

(x) includes written evidence of an unconditional commitment for financing (by a creditworthy bank or financial institution that shall provide such financing without alteration of conditions or delays) or other evidence of ability, as determined in the reasonable business judgment of the Trustee, in consultation with the Consultation Parties, to consummate the transaction. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions acceptable to the Trustee (in consultation with the Consultation Parties);

(xi) includes evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or comparable governing body) acceptable to the Trustee with respect to the submission, execution, and delivery of its Bid and Bid Documents, participation in the Auction, and closing of the proposed transaction(s) contemplated in such Bid. The Bid shall further state that any necessary filings under applicable regulatory, antitrust, and other laws will be made in a timely manner and that payment of the fees associated therewith shall be made by the Qualified Bidder;

(xii) disclaims any right to receive a fee analogous to a break-up fee, expense reimbursement, "topping" or termination fee, or any other similar form of compensation. For the avoidance of doubt, no Qualified Bidder  will be permitted to request, nor be granted by the Trustee, at any time, whether as part of the Auction or otherwise, a break-up fee, expense reimbursement, termination fee, or any other similar form of compensation, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for reimbursement on any basis, including under section 503(b) of the Bankruptcy Code;

(xiii) includes (if applicable) a designation of contracts and/or leases to be assumed and assigned to the Potential Bidder, agreement to pay in full any associated cure costs, and evidence of the Potential Bidder's ability to perform future obligations under such contracts and/or leases;

(xiv) is reasonably likely (based on availability of financing, regulatory issues, experience, and other considerations) to be consummated, if selected as a Successful Bid (as defined below), within a timeframe acceptable to the Trustee (with the consent of the Consultation Parties);

LEGAL\62787500\8 6010823/00574256
04/28/2023

(xv) contains a binding agreement by the Potential Bidder to serve as an "Alternate Bidder" (as defined below), if so selected by the Trustee in accordance with the Bidding Procedures; and

(xvi) is irrevocable until the earlier of: (a) thirty (30) days after the Bankruptcy Court authorizes and approves a Successful Bid, or Bids, for the Purchased Assets that are the subject of the Bid; and (b) the closing of the sale(s) for the Purchased Assets that are the subject of the Bid.

2.      A Potential Bidder that makes a Qualified Bid is referred to herein as a "**Qualified Bidder**."

3.      The Trustee, in his reasonable business judgment (in consultation with the Consultation Parties), shall determine whether the Bid of a Potential Bidder meets the foregoing requirements to become a Qualified Bid.

4.      Notwithstanding anything herein to the contrary, the Trustee reserves the right to work with Potential Bidders (in consultation with the Consultation Parties) to aggregate bids into a consolidated Qualified Bid, or otherwise improve bids to be Qualified Bids, prior to the Bid Deadline. Additionally, the Trustee will be authorized to approve joint Bids in his discretion (in consultation with the Consultation Parties) on a case-by-case basis.

5.      For the avoidance of doubt, any Bid that requires any form of future or current payment from the estate or the Lenders in the form of an expense reimbursement, purchase price adjustment or working capital adjustment, termination or breakup fee, or similar arrangement, shall not be considered a Qualified Bid until such concept is removed from the Bid.

6.      The Trustee, in his reasonable business judgment, may reject any proposal that entitles the Potential Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment that is not in conformity with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Local Rules for the United States Bankruptcy Court for the District of Delaware, or is contrary to the best interests of the Estates.

7.      A Qualified Bid shall be valued based upon various factors including, without limitation, the net value provided by such proposal, the timing and amount of any consideration received, and the likelihood and timing of consummation of such transaction.

## H.  Lenders' Right to Credit Bid

1.      The Lenders shall have the right to at the Auction to credit bid all or any portion of the aggregate amount of their applicable outstanding secured obligations pursuant to section 363(k) of the Bankruptcy Code, and any such credit bid will be considered a Qualified Bid to the extent such bid complies with section 363(k) of the Bankruptcy Code; provided that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, the carve-out amount as provided for in the Sharing Agreement as approved by the Court and all claims for which there are valid, perfected, and unavoidable liens on any assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such Lender consents to alternative treatment), if applicable.  There shall be no obligation for

any Lender to provide a Bid by the Bid Deadline if the full purchase price of the Bid is paid pursuant to a credit bid and such Lender shall be entitled to full participation at any future Auction (defined below) as a Qualified Bidder notwithstanding any requirement contained in the Bidding Procedures.

2.      Notwithstanding any other provisions herein to the contrary, in the event that a Lender wishes to submit a Bid, including without limitation a credit bid (any such bid and/or credit bid, a "Lender Bid"), the Lender shall notify the other parties listed in Section F above in writing by the Bid Deadline of its intent to submit such Lender Bid.  Absent such notification, the Lender shall not be permitted to submit or pursue in any way such Lender Bid.  Upon the transmission by a Lender of a notification of its intent to submit a Lender Bid, the Lender shall cease to be a Consultation Party with respect to all assets (including without limitation executory contracts and/or unexpired leases) subject to its Lender Bid, and the Trustee shall have no obligation otherwise to consult with such Lender regarding such assets.  For the avoidance of doubt, the Trustee is authorized to take any actions necessary to exclude such Lender from all discussions regarding any or all of the assets subject to the Lender's Lender Bid, except for discussions on the record at the Auction in which all other bidders are either present or able to be present if they so choose.

## I.  Template Asset Purchase Agreements

The Template Asset Purchase Agreement in the data room identified as "**General Asset Purchase Agreement**" should be used for the purchase of any or all assets with the exception of real property and Akorn Operating's equity interest in Akorn International S.á.r.l. The Template Asset Purchase Agreement in the data room identified as ("**Real Estate Asset Purchase Agreement**") should be used for real estate, and the Template Asset Purchase Agreement in the data room identified as ("**Stock Asset Purchase Agreement**") should be used for Akorn Operating's equity interest in Akorn International S.á.r.l.[4]

## J.  Modification of Bids

Without the prior written consent of the Trustee (in consultation with the Consultation Parties), a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; provided that any Qualified Bid may be improved at the Auction as set forth herein.  Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures.

## K.  No Qualified Bids

If the Trustee does not receive any Qualified Bids, the Trustee shall (i) report the same to the Court, and (ii) declare the auction to be a "failed auction."

---

[4] Word versions of the Template Asset Purchase Agreements are available from Greenhill upon request. Additionally, Greenhill shall post a Word version of each Template Asset Purchase Agreement in the data room.

## L.  Only One Qualified Bid

In the event that the Trustee receives only one Qualified Bid, the Trustee will not hold the Auction and may instead seek approval of such Qualified Bid and the associated asset purchase agreement at the Sale Hearing.  However, in the event that only one Qualified Bid is received, the Trustee may determine in his reasonable business judgment (in consultation with the Consultation Parties) that such Qualified Bid is insufficient, and shall have the right to either postpone the Auction and Bid Deadline or declare the Auction a "failed auction."

## M.  Auction

1.      If at least two (2) Qualified Bids have been received, the Trustee shall conduct an auction (the "**Auction**") commencing on **May 10, 2023 at 10:00 a.m. (ET), and, as may be necessary, continuing through and including May 12, 2023**, at the offices of Cozen O'Connor, One Liberty Place, 1650 Market Street, Suite 2800, Philadelphia, PA 19103, or such later time or other place or manner as the Trustee shall notify all Qualified Bidders.  Only Qualified Bidders shall be eligible to participate in the Auction and only Qualified Bidders shall be entitled to make any subsequent Qualified Bids at the Auction.  The Trustee shall not consider a particular Bid unless the bidding party has submitted a Qualified Bid and attends the Auction.

2.      Prior to the start of the Auction, the Trustee shall evaluate all Qualified Bids received and shall determine (in consultation with the Consultation Parties) which Qualified Bid(s) constitutes the best offer(s) for all, or for one or more lots (each, a "**Lot**") of, the Purchased Assets (the "**Starting Auction Bid(s)**"); provided that the Trustee shall consult with the Consultation Parties prior to making any decision on which Bid shall be the Starting Auction Bid(s).  The Trustee, in his discretion and in consultation with the Consultation Parties, may accept as a single Qualified Bid, multiple Bids for non-overlapping Lots.  The Trustee shall announce the Starting Auction Bid(s), and, if applicable, the make-up of each Lot, at the commencement of the Auction. The make-up of each Lot shall be within the discretion of the Trustee, in consultation with his professionals and the Consultation Parties.

3.      The Trustee, in his sole discretion, and in consultation with his professionals, may at any time during the Auction conduct separate rounds of bidding for different Lots.  The Trustee, in his sole discretion and in consultation with his counsel, may alter or combine one or more Lots, and/or divide the Purchased Assets into additional Lots, as he deems appropriate at any point during the Auction.

4.      The minimum initial overbid and any subsequent overbids must be in increments of at least $100,000 in cash consideration with respect to a single Lot, and at least $1,000,000 in cash consideration with respect to all of the Purchased Assets (which amount the Trustee, in his reasonable business judgment, may modify at the Auction with respect to all of the Purchased Assets and/or one or more Lots) until the Trustee declares a Successful Bidder or Bidders.

5.      Upon a Qualified Bidder's declaration of its Bid at the Auction, it must commit on the record to pay promptly following the Auction, if such Bid were to be the Successful Bid or the Alternate Bid, the incremental amount of its Required Deposit calculated based on the

7

increased purchase price of such Bid, if applicable; provided that this requirement shall not apply to any Bid by the Lenders.

6. The Trustee, after consultation with his professionals and the Consultation Parties, may employ and announce at the Auction additional and/or modified rules or procedures for conducting the Auction, provided that such rules are (i) not inconsistent with the Bidding Procedures Order or any other order of the Court, or the Bankruptcy Code, and (ii) disclosed to each Qualified Bidder at the Auction.

7. At the conclusion of the Auction, the Trustee, in consultation with his counsel and in consultation with the Consultation Parties, shall (i) review each Qualified Bid (as may have been increased and/or modified at the Auction) on the basis of financial and contractual terms and the factors relevant to the Sale Process, including those factors affecting the speed and certainty of consummating the Qualified Bid, and (ii) identify the best bid or bids for either all of the Purchased Assets or for each Lot, as applicable (each such bid, a "**Successful Bid**") and the bidder making such best bid or bids (each such bidder, a "**Successful Bidder**").  The Trustee, in his discretion and in consultation with the Consultation Parties, may group as a single Qualified Bid the Successful Bids for non-overlapping Lots to participate in an Auction for such non-overlapping Lots as a single Lot, or to participate in an Auction for all of the Purchased Assets as a single Lot.  Promptly following the conclusion of the Auction the Trustee shall file on the docket of the Debtors' bankruptcy cases one or more "Notice(s) of Successful Bidder(s)" identifying each Successful Bidder and, for each, identifying the Purchased Assets (including executory contracts and/or unexpired leases) proposed to be sold to such Successful Bidder, and the purchase price.  If applicable, the Notice shall also identify the Alternate Bidder.

8. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes related to the Auction, and the construction and enforcement of the Qualified Bidder's proposed purchase agreement.

### N. **Notice to Counterparties to Executory Contracts and/or Unexpired Leases**

If any Successful Bid or Alternate Bid includes executory contracts and/or unexpired leases to be assigned to such Bidder (each, a "Potentially Assigned Contract/Lease"), then within twenty-four (24) hours following the conclusion of the Auction, the Trustee shall serve on each counterparty to the Potentially Assigned Contracts/Leases a packet including: (1) the applicable Notice of Successful Bidder, (2) the evidence of the Successful Bidder's (and, if applicable, Alternate Bidder's) ability to perform future obligations under the applicable Potentially Assigned Contract(s)/Lease(s) previously submitted by such Successful Bidder (and, if applicable, Alternate Bidder) pursuant to section G(xiii) above; (3) any additional such evidence provided by the Successful Bidder (and, if applicable, Alternate Bidder); and (4) contact information for counsel for the Successful Bidder (and, if applicable, Alternate Bidder) and counsel for the Trustee.

## O.  The Sale Hearing

1.      A hearing is presently scheduled to take place on **May 19, 2023 at 10:00 a.m. (ET)** (the "**Sale Hearing**").  At the Sale Hearing, the Trustee shall seek entry of the Sale Order, among other things, authorizing and approving the Sale(s) of the Purchased Assets to the Successful Bidder(s) pursuant to the terms and conditions set forth in the respective Successful Bid(s).  The Trustee, in his reasonable business judgment, may adjourn or reschedule the Sale Hearing.  The Trustee shall notify all relevant parties of such adjournment or rescheduling in an appropriate manner.

2.      If the Trustee receives more than one Qualified Bid either for all of the Purchased Assets or for a given Lot, as applicable, then, at the Sale Hearing, the Trustee will seek approval of the Successful Bids, and, at the Trustee's election, in consultation with the Consultation Parties, the next best Qualified Bid(s) (the "**Alternate Bid(s)**" and the bidder(s) making such Alternate Bid(s), the "**Alternate Bidder(s)**").  The Trustee's presentation to the Court of the Successful Bid(s) and, if applicable, the Alternate Bid(s) will not constitute the Trustee's acceptance of such Bids until such Bids are approved by the Court at the Sale Hearing.  Following approval of the Sale to a Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the applicable Alternate Bid will be deemed to be the Successful Bid and the Trustee will be authorized, but not directed, to effect the Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Court. The Alternate Bid shall remain open until the earlier of (a) thirty (30) days following the entry of the Sale Order or (b) the consummation of the Sale to the Successful Bidder unless further extended by agreement of the Trustee and Alternate Bidder.

3.      All Required Deposits, but excluding the Required Deposits of a Successful Bidder and Alternate Bidder (which, in the case of the Required Deposit of the Alternate Bidder, shall be returned within three (3) business days of the closing of the Sale to the Successful Bidder), shall be returned to Qualified Bidders within five (5) business days after the date of the Auction. The Trustee shall be required to maintain Required Deposits in a non-interest bearing account. Required Deposits may only be used in accordance with the provisions of these Bidding Procedures. The Trustee shall not have any liability with respect to any Required Deposits. If a Successful Bidder fails to consummate an approved sale as a result of its own default or the terms of the relevant asset purchase agreement between the Trustee and such Successful Bidder would allow the Trustee to retain such Successful Bidder's Required Deposit, the Trustee will not have any obligation to return the Required Deposit of such Successful Bidder, and such Required Deposit will become property of the Estates.

## P.  Reservation of Rights

The Trustee reserves his right, in the exercise of his fiduciary obligations, after consultation with his professionals, subject to the terms and conditions in the Sharing Agreement as approved by the Court, and in the exercise of his reasonable business judgment, to: (a) determine which Qualified Bid(s), if any, are the highest or otherwise best offer, either for all of the Purchased Assets or for each Lot, as applicable; (b) reject, at any time, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, the Bidding Procedures Order or any other orders applicable to the

9

Estates or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Estates; and (c) modify the Bidding Procedures, including, without limitation, by (1) extending any of the deadlines set forth above for the Bidding Process, (2) modifying bidding increments, (3) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without prior notice, (4) withdrawing from the Auction the Purchased Assets, or any Lot or portion thereof, at any time prior to or during the Auction, and/or (5) canceling the Auction, and rejecting all Qualified Bids if, in the Trustee's reasonable business judgment, and in consultation with his counsel, no such bid is for a fair and adequate price. Notwithstanding the forgoing, the Trustee shall consult with the Consultation Parties on each of the determinations above and shall not agree to any modifications of the Bidding Procedures or other terms and conditions of any Sale that conflict with the Sharing Agreement as approved by the Court absent the consent of the Consultation Parties.

**Exhibit 2**

**Notice of Auction and Sale Hearing**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| AKORN HOLDING COMPANY LLC, *et al.*[1] | Case No. 23-10253 (KBO) |
| Debtors. | (Jointly Administered) |

### NOTICE OF SALE OF ASSETS, AUCTION, AND SALE HEARING

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.      On April 28, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an *Order Granting the Trustee's Motion for Entry of an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale and (C) Approving the Form and Manner of Notice Thereof* (the "Bidding Procedures Order"), which, among other things, establishes bidding procedures (the "Bidding Procedures") that govern the manner in which all or substantially all of the assets (the "Purchased Assets") of the above-captioned debtors (the "Debtors") are to be sold.  All capitalized terms used but not defined herein shall have the meanings assigned to them in the Bidding Procedures Order.  A copy of the Bidding Procedures is being served on you concurrently with this Notice.

2.      All interested parties are invited to make offers to purchase all or some portion of the Purchased Assets, in accordance with the terms and conditions of the Bidding Procedures.

3.      Pursuant to the Bidding Procedures, in the event that the Trustee timely receives more than one Qualified Bid (as defined in the Bidding Procedures) the Trustee will conduct an auction for the Purchased Assets (the "Auction") commencing on **May 10, 2023 at 10:00 a.m. (ET), and, as may be necessary, continuing through and including May 12, 2023**, at the offices of Cozen O'Connor, One Liberty Place, 1650 Market Street, Suite 2800, Philadelphia, PA 19103, or such later time or other place or manner as the Trustee shall notify all Qualified Bidders.

4.      Participation at the Auction is subject to the Bidding Procedures and the Bidding Procedures Order.  Any person wishing to participate in the Bidding Process must become a "Qualified Bidder."  The procedures for becoming a Qualified Bidder are contained in the Bidding Procedures.  A Potential Bidder that desires to make a Bid must deliver written copies of

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

its Bid, via electronic mail, hand delivery or overnight mail, to: (i) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. John T. Carroll, III, Esq. (jcarroll@cozen.com) and Simon Fraser, Esq. (sfraser@cozen.com); (ii) MidCap Funding IV Trust, care of its counsel, Proskauer Rose LLP, One International Place, Boston, MA 02110, Attn: Charles A. Dale, Esq. (cdale@proskauer.com); (iii) WSFS Institutional Services, care of its counsel, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, Attn: Andrew N. Goldman, Esq. (andrew.goldman@wilmerhale.com) and Nathan J. Moore, Esq. (nathan.moore@wilmerhale.com); (iv) Ad Hoc TL Lender Group, care of their counsel, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166-0193, Attn: Matt J. Williams, Esq., (mjwilliams@gibsondunn.com) and AnnElyse Scarlett Gains, Esq., (agains@gibsondunn.com); and (v) Greenhill & Co., LLC, 1271 Avenue of the Americas, New York, NY 10020, Attn: Neil A. Augustine (neil.augustine@greenhill.com), Rupert Hill (rupert.hill@greenhill.com), Nicholas Drayson (nicholas.drayson@greenhill.com) and Sean Wright (sean.wright@greenhill.com) so that the Bid is actually received by **12:00 p.m. (Noon) (ET) on May 4, 2023** (the "Bid Deadline"). The Trustee may (in consultation with the Consultation Parties) extend the Bid Deadline once or successively but is not obligated to do so. If the Trustee extends the Bid Deadline, he shall promptly notify all Potential Bidders of such extension.

5.      A hearing at which the Trustee will seek approval and authorization of the Sale to the Successful Bidders (the "Sale Hearing") is scheduled to be held on **May 19, 2023 at 10:00 a.m. (ET)**, unless otherwise continued by the Trustee pursuant to terms of the Bidding Procedures Order, before the Honorable Karen B. Owens, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, Courtroom No. 3, 824 North Market Street, Wilmington, Delaware 19801. By **May 1, 2023**, the Trustee shall file and serve upon counterparties to the Debtors' executory contracts and unexpired leases (the "Counterparties") a notice informing Counterparties that the Debtors' executory contracts and unexpired leases may be assumed and assigned, and setting out what the Debtors' records show to be the applicable cure amounts, if any (the "Cure Notice"). If any Counterparty wishes to assert an objection or other response to the Cure Notice, it must file and serve such objection or other response upon the parties listed in paragraph 6 below on or before **May 16, 2023** (the "Objection Deadline"). The Court shall hold a hearing at the Sale Hearing regarding any objections to cure amounts and/or assumption and assignment of executory contracts and/or unexpired leases.

6.      Objections, if any, to the relief requested at the Sale Hearing as it relates to the Sale, must: (a) be in writing and filed with the Court, (b) comply with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, and (c) be filed and served on the following parties by the Objection Deadline (except that objections pursuant to 11 U.S.C. §365(f) may be made at any time prior to, or at, the Sale Hearing): (i) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. John T. Carroll, III, Esq. (jcarroll@cozen.com) and Simon Fraser, Esq. (sfraser@cozen.com); (ii) MidCap Funding IV Trust, as ABL Agent care of its counsel, Proskauer Rose LLP, One International Place, Boston, MA 02110, Attn: Charles A. Dale, Esq. (cdale@proskauer.com); (iii) WSFS Institutional Services as TL Agent, care of its counsel, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, Attn: Andrew N. Goldman, Esq.

2

(andrew.goldman@wilmerhale.com) and Nathan J. Moore, Esq. (nathan.moore@wilmerhale.com); (iv) Ad Hoc TL Lender Group, care of their counsel, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166-0193, Attn: Matt J. Williams, Esq., (mjwilliams@gibsondunn.com) and AnnElyse Scarlett Gains, Esq. (agains@gibsondunn.com); and (v) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081, Attn: Richard Schepacarter, Esq. (Richard.Schepacarter@usdoj.gov) (collectively, the "Service Parties").

      7.     This Notice is qualified in its entirety by the Bidding Procedures Order.


Dated:  April \_\_\_\_ 2023          COZEN O'CONNOR


                   By:   /s/                       
                           John T. Carroll, III (DE No. 4060)
                           Simon E. Fraser (DE No. 5335)
                           1201 N. Market Street
                           Suite 1001
                           Wilmington, DE 19801
                           (302) 295-2000 Phone
                           (302) 295-2013 Fax No.
                           jcarroll@cozen.com
                           sfraser@cozen.com

                           *Counsel for the Trustee,*
                           *George L. Miller*

LEGAL\62787564\5 6010823/00574256
04/28/2023

**Exhibit 3**

**Cure Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 7 |
| AKORN HOLDING COMPANY LLC, *et al.*[1] | Case No. 23-10253 (KBO) |
|  | (Jointly Administered) |
| Debtors. |  |

## NOTICE OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT MAY BE ASSUMED AND ASSIGNED, PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE, IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, AND THE PROPOSED CURE AMOUNTS

PLEASE TAKE NOTICE OF THE FOLLOWING:

1. On April 28, 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an *Order Granting Trustee's Motion for Entry of an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially All of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale and (C) Approving the Form and Manner of Notice Thereof* (the "Bidding Procedures Order"), which, among other things, establishes bidding procedures (the "Bidding Procedures") that govern the manner in which all or substantially all of the assets (the "Purchased Assets") of the above-captioned debtors (the "Debtors") are to be sold. All capitalized terms used but not defined herein shall have the meanings assigned to them in the Bidding Procedures Order.

2. In accordance with the Bidding Procedures, the Trustee hereby file this Notice (the "Cure Notice") identifying: (i) those executory contracts and unexpired leases that may be assumed and assigned to a potential purchaser in connection with the Trustee's sale of the Purchased Assets (the "Executory Contracts and Unexpired Leases"); and (ii) the proposed cure amount to cure any and all defaults associated with each Executory Contract and Unexpired Lease (the "Cure Amount").

3. A list of the Executory Contracts and Unexpired Leases, together with the Cure Amount for each, is attached to this Cure Notice as Exhibit 1.

4. You have been identified as possibly being a party to an Executory Contract or Unexpired Lease.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

5.      Timely objections to the Trustee's proposed Cure Amounts, if any, will be heard at a hearing scheduled to take place on **May 19, 2023 at 10:00 a.m. (ET)** before the Honorable Karen B. Owens, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, Courtroom No. 3, Floor, 824 North Market Street, Wilmington, Delaware 19801.  This hearing may be adjourned, in which case you will be informed of the new date and time.

6.      **If you wish to assert an objection to the proposed Cure Amount associated with the particular Executory Contract or Unexpired Lease to which you are a party, you must do so in accordance with the instructions in this Cure Notice, on or before May 16, 2023 (the "Objection Deadline").**

7.      In order to be considered, objections (if any) must: (i) be in writing; (ii) state with specificity the grounds for such objection (with appropriate documentation in support thereof); (iii) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the District of Delaware; (iv) be filed with the Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, DE 19801 by the Objection Deadline; and (v) be served on the following parties via electronic mail, hand delivery or overnight mail (so as to be **received** by such parties) by the Objection Deadline: (1) the Trustee, care of his counsel, Cozen O'Connor, 1201 N. Market St., Ste. 1001, Wilmington, DE 19801, Attn. John T. Carroll, III, Esq. (jcarroll@cozen.com) and Simon Fraser, Esq. (sfraser@cozen.com); (2) MidCap Funding IV Trust, as ABL Agent care of its counsel, Proskauer Rose LLP, One International Place, Boston, MA 02110, Attn: Charles A. Dale, Esq. (cdale@proskauer.com); (3) WSFS Institutional Services as TL Agent, care of its counsel, Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, NY 10007, Attn: Andrew N. Goldman, Esq. (andrew.goldman@wilmerhale.com) and Nathan J. Moore, Esq. (nathan.moore@wilmerhale.com); (4) Ad Hoc TL Lender Group, care of their counsel, Gibson, Dunn & Crutcher LLP, 200 Park Avenue, New York, NY 10166-0193, Attn: Matt J. Williams, Esq., (mjwilliams@gibsondunn.com) and AnnElyse Scarlett Gains, Esq. (agains@gibsondunn.com); and (5) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19081, Attn: Richard Schepacarter, Esq. (Richard.Schepacarter@usdoj.gov) (collectively, the "Service Parties").

8.      **If you do not file and serve a timely objection to a proposed Cure Amount listed on Exhibit 1 to this Cure Notice pursuant to the instructions set out in this Cure Notice, you shall be forever barred from objecting to such Cure Amount, and you shall be deemed to consent to such Cure Amount.**

9.      The presence of a contract or agreement on Exhibit 1 attached hereto does not constitute an admission that such contract or agreement is an executory contract, and does not constitute a representation that such contract or agreement will be assumed and assigned to any Successful Bidder.  The Trustee reserves all of his rights, claims, and causes of action with respect to the contracts and agreements listed on Exhibit 1 attached hereto.

10.     This Cure Notice is qualified in its entirety by the Bidding Procedures Order.


Dated:   April _ 2023                                      COZEN O'CONNOR


                                              By:    /s/
                                                     _____
                                                     John T. Carroll, III (DE No. 4060)
                                                     Simon E. Fraser (DE No. 5335)
                                                     1201 N. Market Street
                                                     Suite 1001
                                                     Wilmington, DE  19801
                                                     (302) 295-2000 Phone
                                                     (302) 295-2013 Fax No.
                                                     jcarroll@cozen.com
                                                     sfraser@cozen.com

                                                     *Counsel for the Trustee,*
                                                     *George L. Miller*

Exhibit 1

**Exhibit C**

Sale Order

(see attached)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC,<br>*et al.*[1]<br><br>                    Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered)<br><br>**Re D.I.  106, 137** |

**ORDER (A) APPROVING THE SALE OF ESTATES' ASSETS TO RAISIN HOLDINGS, INC., (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, AND (C) GRANTING CERTAIN RELATED RELIEF**

This matter is before the Court on the Trustee's *Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially all of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale and (C) Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Approving the Sale, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* (the "Sale Motion") [D.I. 106],[2] seeking, among other things: (a) approval of the asset purchase agreements with Raisin Holdings, Inc. (the "Purchaser"), attached hereto as Exhibits A and B (collectively the "Purchase Agreement"); (b) authority to sell the Purchased Assets (as defined in Exhibit A) and the Property (as defined in Exhibit B) (collectively, the "Purchased Assets") free and clear of Liens (as defined below), Claims (as defined below), and other interests, (c) authority to assume and assign the executory contracts and/or unexpired leases

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

[2] Unless otherwise defined in this Order, all capitalized terms shall have the meanings provided in the Sale Motion and/or the Purchase Agreement.

identified as Purchased Assets in the Purchase Agreement (together, the "<u>Assigned Contracts/Leases</u>") to the Purchaser, and (d) related relief; and this Court, in furtherance of the Sale Motion, having entered an order on April 28, 2023 (the "<u>Bidding Procedures Order</u>") [D.I. 137] approving, among other things, the Bidding Procedures and the Notice Procedures; and the Trustee having determined, after an extensive marketing process, that the Purchaser has submitted the highest and best bid for the Purchased Assets; and adequate and sufficient notice of the Bidding Procedures, the Purchase Agreement, and all transactions contemplated thereunder and in this Order having been given in the manner directed by the Court in the Bidding Procedures Order; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered the Sale Motion and all relief related thereto, and having held a hearing regarding the Sale Motion (the "<u>Sale Hearing</u>"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation; and good and sufficient cause appearing,

### **THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

### **<u>Jurisdiction, Final Order, and Statutory Predicates</u>**

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] These findings and conclusions constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute

B.     The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014.

C.     This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

### Notice of the Sale and Auction

D.     Actual written notice of the Sale Motion was provided to the Notice Parties.

E.     The Trustee's Notice of Auction and Sale Hearing was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, Sale Hearing, and Auction.

F.     As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, Sale, and the transactions contemplated thereby have been provided in accordance with the Bidding Procedures Order, sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9007.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, Sale, and assumption and assignment of the Assigned Contracts/Leases is or shall be required.

---

conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

G. The disclosures made by the Trustee concerning the Sale Motion, Auction, Purchase Agreement, Sale, assumption and assignment of the Assigned Contracts/Leases, and Sale Hearing were good, complete, and adequate.

H. A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein (including the assumption and assignment of the Assigned Contracts/Leases), has been afforded to all interested persons and entities, including but not necessarily limited to the Notice Parties.

**Good Faith of Purchaser**

I. The Purchase Agreement was negotiated, proposed, and entered into by the Trustee and the Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

J. Neither the Trustee nor the Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Purchaser has not acted in a collusive manner with any person and the Purchase Price as not controlled by any agreements among the bidders.

K. The Purchaser is purchasing the Purchased Assets in good faith, and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) the Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Purchased Assets; (b) the Purchaser complied with the provisions in the Bidding Procedures Order; (c) the Purchaser agreed to subject its bids to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) the Purchaser in no way induced or caused the filing of the Bankruptcy Cases; and (e) all payments to be made by the Purchaser in connection with the Sale have been disclosed.

**Highest and Best Offer**

L.      The Trustee conducted an auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order.  The auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Purchased Assets.  The auction process was duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity was given to any interested party to make a higher and better offer for the Purchased Assets.

M.      The Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Estates with respect to the Purchased Assets than would be provided by any other available alternative.  The Trustee's determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

**No Fraudulent Transfer**

N.      The consideration provided by the Purchaser pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) constitutes the highest and/or best offers for the Purchased Assets, and (iii) constitutes reasonably equivalent value and fair consideration for the Purchased Assets. No other person or entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Estates than the Purchaser.  Approval of the Sale Motion and the Purchase Agreement, and the consummation of the transactions contemplated thereby are in the best interests of the Estates.

O.      The Purchaser is not mere continuations of the Debtors or the Estates, and no continuity of enterprise exists between the Purchaser and the Debtors or the Estates.  The Purchaser

is not holding itself out to the public as a continuation of the Debtors or the Estates.  The Purchaser is not a successor to the Debtors or the Estates, and the Sale does not amount to a consolidation, merger, or de facto merger of the Purchaser and the Debtors or the Estates.

**Validity of Transfer**

P.      The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors.  Neither the Trustee nor the Purchaser are entering into the transactions contemplated by the Purchase Agreement fraudulently for purposes of statutory and/or common law fraudulent conveyance and fraudulent transfer laws.

Q.      The Estates are the sole and lawful owners of the Purchased Assets.  Subject to section 363(f) of the Bankruptcy Code, the transfers of the Purchased Assets to the Purchaser will be, as of the Closing Date, legal, valid, and effective transfers of the Purchased Assets, which transfer will vest the Purchaser with all right, title, and interest of the Estates to the Purchased Assets free and clear of: (a) all liens and encumbrances relating to, accruing or arising any time prior to the Closing Date (collectively, "Liens"), and (b) all claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims and Liens (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Estates' or the Purchaser's interests in the Purchased Assets, or any similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any

restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership) (collectively, as defined in this clause (b), "<u>Claims</u>"), relating to, accruing, or arising any time prior to the Closing Date.

<p align="center"><u>**Section 363(f) is Satisfied**</u></p>

R.     The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Trustee may sell the Purchased Assets free and clear of any interest in the property.

S.     The Purchaser would not have entered into the Purchase Agreement, and would not consummate the transactions contemplated thereby, if the sale of the Purchased Assets to the Purchaser was not free and clear of all Liens and Claims.  The Purchaser shall not be responsible for any Liens or Claims other than Liabilities which have been expressly assumed by the Purchaser pursuant to the Purchase Agreement.

T.     The Trustee may sell the Purchased Assets free and clear of all Liens and Claims against the Estates and/or any of the Purchased Assets because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those holders of Liens or Claims against the Estates or any of the Purchased Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens or Claims are adequately protected by having their Liens or Claims, if any, in each instance against the Estates or any of the Purchased Assets, attach to the net cash proceeds of the Sale ultimately attributable to the particular Purchased Assets in which such creditor alleges a Lien or Claim, in the same order of priority, with the same validity, force and effect that such Lien or Claim had prior to the Sale, subject to any claims and defenses that the Estates may possess with respect thereto.

**Cure/Adequate Protection**

U.      The assumption and assignment of the Assigned Contracts/Leases is integral to the Purchase Agreement, is in the best interests of the Estates, and represents a reasonable exercise of sound and prudent judgment by the Trustee.  The Purchaser's promises to perform the obligations under the Assigned Contracts/Leases after the Closing Date shall constitute adequate assurance of future performance within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.

V.      Any objections to the assumption and assignment of the Assigned Contracts/Leases are hereby overruled.

**Compelling Circumstances for an Immediate Sale**

W.      Good and sufficient reasons for approval of the Purchase Agreement and the Sale have been articulated.  The relief requested in the Sale Motion with respect to the Purchase Agreement is in the best interests of the Estates.  The Trustee has demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for a Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code in that, among other things, the immediate consummation of the Sale to the Purchaser is necessary and appropriate to maximize the value of the Estates.  Time is of the essence in consummating the Sale.

X.      Given all of the circumstances of the Bankruptcy Cases and the adequacy and fair value of the Purchase Price under the Purchase Agreement, the proposed Sale of the Purchased Assets to the Purchaser constitutes a reasonable and sound exercise of the Trustee's business judgment and should be approved.

Y.      The consummation of the Sale and the assumption and assignment of the Assigned Contracts/Leases is legal, valid, and properly authorized under all applicable provisions of the

Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

**General Provisions**

1.      The relief requested in the Sale Motion is granted and approved with respect to the sale of the Purchased Assets to the Purchaser, and the assumption and assignment to the Purchaser of the Assigned Contracts/Leases, as set forth herein, and the Sale contemplated in the Sale Motion is approved with respect to the Purchaser, the Purchased Assets, and the Assigned Contracts/Leases.

2.      All objections to the Sale Motion or the relief requested therein with respect to the Purchase Agreement, the sale of the Purchased Assets to the Purchaser, and the assumption and assignment to the Purchaser of the Assigned Contracts/Leases, that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice.

**Approval of the Purchase Agreement**

3.      The Purchase Agreement (and all schedules and exhibits affixed thereto) and all other ancillary documents, all of the terms and conditions thereof, and the transactions contemplated therein are hereby approved and authorized.

4.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to: (i) consummate the Sale of the Purchased Assets to the Purchaser pursuant to and in accordance with the terms and

conditions of the Purchase Agreement and this Order; (ii) close the Sale as contemplated in the Purchase Agreement and this Order; and (iii) execute and deliver, perform under, consummate, implement, and close fully the Purchase Agreement, including the assumption and assignment to the Purchaser of the Assigned Contracts/Leases, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale.

5.     This Order shall be binding in all respects upon the Trustee, the Estates, the Debtors, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens, Claims, or other interests in, against, or on all or any portion of the Purchased Assets (whether known or unknown), the Purchaser and all successors and assigns of the Purchaser, and the Purchased Assets. This Order and the Purchase Agreement shall inure to the benefit of the Estates and their creditors, the Purchaser, and the respective successors and assigns of each of the foregoing.

## Transfer of the Purchased Assets

6.     Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to transfer the Purchased Assets to the Purchaser on the Closing Date and, upon the Closing under the Purchase Agreement, such transfers shall constitute legal, valid, binding, and effective transfers of such Purchased Assets and shall vest the Purchaser with title to the Purchased Assets and, upon the Trustee's receipt of the full Purchase Price, shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims, with all such Liens, Claims or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or interests are asserted, subject to the terms thereof, with the same validity, force and

effect, and in the same order of priority, that such Liens, Claims, or interests now have against the Purchased Assets.  Upon the Closing, the Purchaser shall take title to and possession of the Purchased Assets.

7.        In accordance with the written Sharing Agreement by and among the Trustee, the ABL Agent and TL Agent, to the extent approved by the Court or as modified by later Order of the Court (the "Sharing Agreement"), upon consummation of the Sale approved hereby, the Trustee is authorized to indefeasibly pay via wire transfer  the allowed ABL Claim Amount and allowed TL Claim Amount (as such terms are defined in the Sharing Agreement); provided that if one or more additional Sale transactions must be consummated before full payment of such allowed claims is feasible, then the Trustee is authorized to make such payments as and when such other transactions are consummated.

8.        All persons and entities in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Purchaser or its assignee at the Closing.  On the Closing Date, each of the Estates' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims, or other interests in the Purchased Assets, if any, as such Liens, Claims, or interests may have been recorded or may otherwise exist.

9.        On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Estates' interests in the Purchased Assets.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

10.     A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any liens and other encumbrances of record.

11.     If any person or entity that has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Purchased Assets shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, Claims, or other interests that the person or entity has or may assert with respect to all or any portion of the Purchased Assets, the Trustee is hereby authorized and directed, and the Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Purchased Assets.

12.     This Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims, or other interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing Date, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.  This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to

accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

<u>**Assumption and Assignment of Assigned Contracts/Leases**</u>

13.     The Trustee is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Purchaser, effective upon the Closing of the Sale, the Assigned Contracts/Leases free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, and (b) execute and deliver to the Purchaser such documents or other instruments as the Purchaser reasonably deems necessary to assign and transfer the Assigned Contracts/Leases.

14.     The counterparties to the Assigned Contracts/Leases (the "<u>Counterparties</u>") shall each look solely to the Purchaser for any amounts payable under the Assigned Contracts/Leases from and after the Closing Date.

15.     The Assigned Contracts/Leases are executory contracts under section 365 of the Bankruptcy Code.  The Trustee may assume the Assigned Contracts/Leases in accordance with section 365 of the Bankruptcy Code.  The Trustee may assign the Assigned Contracts/Leases in accordance with sections 363 and 365 of the Bankruptcy Code.  Any provisions in the Assigned Contracts/Leases that purport to prohibit or condition the assignment of the Assigned Contracts/Leases or allow the Counterparties to terminate, recapture, impose any penalty, or modify any term or condition upon the assignment of the Assigned Contracts/Leases, constitute unenforceable anti-assignment provisions that are void and of no force and effect; all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment to the Purchaser of the Assigned Contracts/Leases have been satisfied.  The Assigned Contracts/Leases shall be transferred and assigned to, and following

the closing of the Sale remain in full force and effect for the benefit of, the Purchaser, notwithstanding any provision in the Assigned Contracts/Leases (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that purports to prohibit, restrict, or condition such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Estates shall be relieved from any further liability with respect to the Assigned Contracts/Leases after such assignment to and assumption by the Purchaser. Upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested in all rights and title to the applicable Assigned Contracts/Leases.

16.     The amounts necessary to cure any defaults existing as of the Closing Date under the Assigned Contracts/Leases are the amounts listed on the Trustee's Cure Notice filed and served in the Bankruptcy Cases, or, if applicable, such other amount(s) upon which the Trustee and any of the Counterparties may have agreed (the "Cure Amounts"). The Purchaser shall pay the applicable Cure Amounts at Closing, or at such later time as may be mutually agreed upon by the Purchaser and any applicable Counterparties. No other defaults exist under the Assigned Contracts/Leases. The Counterparties waive, release, and are hereby precluded from asserting any claims against the Debtors, the Trustee or the Estates for any claims arising out of or in connection with the Assigned Contracts/Leases. The Purchaser shall pay the Cure Amounts to the Counterparties in full satisfaction of the Counterparties' claims for defaults that may have arisen under the Assigned Contracts/Leases.

## Prohibition of Actions against the Purchaser

17.     Except as otherwise provided in this Order or the Purchase Agreement, the Purchaser shall not have any liability or other obligation to the Estates arising under or related to any of the Purchased Assets. Without limiting the generality of the foregoing, and except as

otherwise provided herein or in the Purchase Agreement, the Purchaser shall not be liable for any Claims against the Estates, and the Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability (including, for the avoidance of doubt, any Claims arising from the release or migration of any hazardous substance or other contamination beyond the boundaries of the Debtors' real property interests prior to the Closing Date), labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated.

18.     All persons and entities holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser, its Affiliates, its successors or assigns, its property, or the Purchased Assets, such persons' or entities' Liens, Claims, or interests in and to the Purchased Assets, including, without limitation, the following actions:   (i) commencing or continuing in any manner any action or other proceeding against the Purchaser, its Affiliates, its successors, assets or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Purchaser, is Affiliates, its successors, assets or properties; (iii) creating, perfecting, or enforcing any Lien or other Claim against the Purchaser, its Affiliates, its successors, assets, or properties; (iv) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Purchaser, its Affiliates, or its successors; (v) commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (vi) revoking, terminating or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Purchased Assets or conduct any of the businesses operated with the Purchased Assets. On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release Liens, Claims, and other interests in or on the Purchased Assets, if any, as provided for herein, as such Liens, Claims, or interests may have been recorded or may otherwise exist.

19.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Purchased Assets to the Purchaser in accordance with the terms of the Purchase Agreement and this Order.

20.     The Purchaser has given substantial consideration under the Purchase Agreement for the benefit of the Estates. The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the Purchaser by all holders of Liens against or interests in, or Claims against, the Estates or any of the Purchased Assets. The consideration provided by the Purchaser for the Purchased Assets under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

21.     Nothing in this Order or the Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order. Nothing in this Order or the Purchase Agreement authorizes the transfer or

assignment to the Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without the Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

### **Other Provisions**

22.    The transactions contemplated by the Purchase Agreement are undertaken by the Purchaser without collusion and in good faith, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and the Sale are duly stayed pending such appeal.  The Purchaser is a good faith buyer and, as such, shall have the full protections of section 363(m) of the Bankruptcy Code.

23.    Pursuant to Federal Rules of Bankruptcy Procedure 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and the Trustee and the Purchaser are authorized to close the Sale immediately upon entry of this Order.

24.    Nothing in this Order or the Purchase Agreement approves or provides for the transfer to the Purchaser of any avoidance claims (whether under chapter 5 of the Bankruptcy Code or otherwise) of the Estates.

25.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

26.    The failure specifically to reference any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement is authorized and approved in its entirety; provided, however, that this Order shall govern if any inconsistency exists between the Purchase

Agreement (including all ancillary documents executed in connection therewith) and this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

27.    The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Estates.

28.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is party or which has been assigned by the Trustee to the Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Purchased Assets to the Purchaser; (b) interpret, implement, and enforce the provisions of this Order; (c) protect the Purchaser against any alleged Liens, Claims, or other interests in or against the Purchased Assets of any kind or nature whatsoever; and (d) enter any orders under sections 363 and/or 365 of the Bankruptcy Code with respect to the Assigned Contracts/Leases.

29.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

30.    To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion, the terms of this Order shall govern.

## Exhibit A

**Asset Purchase Agreement**

## **Exhibit B**

**Purchase and Sale Agreement**