**EXHIBIT "E"**

**PROPOSED SALE ORDER**

**EPIC PHARMA LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| AKORN HOLDING COMPANY LLC, *et al.*[1] | Case No. 23-10253 (KBO) |
| | (Jointly Administered) |
| Debtors. | **Re D.I.  106, 137, 273, 283** |

**ORDER (A) APPROVING THE SALE OF CERTAIN
OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
ENCUMBRANCES AND INTERESTS, (B) AUTHORIZING THE TRUSTEE TO ENTER
INTO AND PERFORM HIS OBLIGATIONS TO EPIC PHARMA LLC UNDER THE
MASTER ASSET PURCHASE AGREEMENT, (C) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, AND (D) GRANTING CERTAIN RELATED RELIEF
(THE "EPIC SALE ORDER")**

This matter is before the Court on the Trustee's *Motion for Entry of (I) an Order (A) Approving Bidding Procedures in Connection With Sale of Substantially all of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale and (C) Approving the Form and Manner of Notice Thereof; and (II) an Order (A) Approving the Sale, (B) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* (the "Sale Motion") [D.I. 106],[2] seeking, among other things: (a) approval of the Asset Purchase Agreement dated May 25, 2023 filed on the docket in these Bankruptcy Cases at D.I. No. 273 (together with all exhibits, schedules, and other documents ancillary thereto, the "Purchase Agreement"); (b) authority to sell the Purchased Assets designated in the

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

[2] Unless otherwise defined in this Order, all capitalized terms shall have the meanings provided in the Sale Motion and/or the Purchase Agreement.

"Epic Schedule 2.1(a)" attached to the Purchase Agreement (the "Epic Purchased Assets") to Epic Pharma LLC (the "Epic Purchaser") as set forth in the Purchase Agreement, free and clear of Liens (as defined below), Claims (as defined below), and other interests, (c) authority to assume and assign the executory contracts and/or unexpired leases designated by the Epic Purchaser as Assigned Contracts/Leases (the "Epic Assigned Contracts/Leases") in the Purchase Agreement to the Epic Purchaser, and (d) related relief; and this Court, in furtherance of the Sale Motion, having entered an order on April 28, 2023 (the "Bidding Procedures Order") [D.I. 137] approving, among other things, the Bidding Procedures and the Notice Procedures; and the Trustee having determined, after an extensive marketing process, that the Epic Purchaser has submitted the highest and best bid for the Epic Purchased Assets; and adequate and sufficient notice of the Bidding Procedures, the Purchase Agreement, and all transactions contemplated thereunder and in this Order having been given in the manner directed by the Court in the Bidding Procedures Order; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered the Sale Motion and all relief related thereto, and all objections thereto having been withdrawn, waived, settled or overruled, and having held a hearing regarding the Sale Motion on June 8, 2023 (the "Sale Hearing"); and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation; and good and sufficient cause appearing,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[3]

**Jurisdiction, Final Order, and Statutory Predicates**

A.      This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. § 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2), 6004, 6006, 9007, and 9014.

C.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Federal Rule of Civil Procedure 54(b), as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

**Notice of the Sale and Auction**

D.      Actual written notice of the Sale Motion was provided to the Notice Parties.

E.      The Trustee's Notice of Auction and Sale Hearing was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, Sale Hearing, and Auction.

---

[3] These findings and conclusions constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F.      As evidenced by the certificates of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, Auction, Sale Hearing, Sale, the Purchase Agreement and the transactions contemplated thereby, including the assumption and assignment of the Epic Assigned Contracts/Leases (collectively, the "Epic Transaction") have been provided in accordance with the Bidding Procedures Order, sections 105(a), 363, and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006, and 9007.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, Auction, Sale Hearing, Sale, and assumption and assignment of the Epic Assigned Contracts/Leases is or shall be required.

G.      The disclosures made by the Trustee concerning the Sale Motion, Auction, Purchase Agreement, Sale, assumption and assignment of the Epic Assigned Contracts/Leases, and Sale Hearing were good, complete, and adequate.

H.      A reasonable opportunity to object and be heard with respect to the Sale and the Sale Motion and the relief requested therein (including the assumption and assignment of the Assigned Contracts/Leases), has been afforded to all interested persons and entities, including but not necessarily limited to the Notice Parties.

I.      This Order relates only to the Epic Purchased Assets and the Epic Transaction. This Order is separate from and unrelated to any other order entered by this Court in connection with the Sale Hearing approving the sale of any assets of the Debtors to other purchasers pursuant to the Purchase Agreement or any other asset purchase agreement other than the Epic Purchased Assets (the "Other Assets").  Any order related to the Other Assets shall be equally treated as granting the relief requested in the Sale Motion only as it related to such Other Assets, except to the extent expressly provided therein.  The relief granted in any order related to the

Other Assets shall not derogate from the relief granted by this Order and, in the event of any conflict between any such order and this Order, this Order shall control with respect to the Epic Purchased Assets and the Epic Transaction.  The relief sought in the Sale Motion relating to the Epic Purchased Assets, the Purchase Agreement and the Epic Transaction as to the Epic Purchased Assets and the Epic Transaction shall be deemed as severed from all other relief sought in the Sale Motion so that this Order shall constitute a separate final order for all purposes related to the Epic Purchased Assets, Purchase Agreement, and the Epic Transaction.  Any appeal from or request for reconsideration, rehearing, or reargument of, or for relief from, any order entered in connection with the Sale Motion and relating to the sale of any Other Assets, or any transaction other than the Epic Transaction regardless if pursuant to the Purchase Agreement or another asset purchase agreement, shall not affect or otherwise impact this Order or the finality hereof in any manner whatsoever.

### **Good Faith of Purchaser**

J.      The Purchase Agreement was negotiated, proposed, and entered into by the Trustee and the Epic Purchaser without collusion, in good faith, and from arm's-length bargaining positions.

K.      Neither the Trustee nor the Epic Purchaser has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Epic Purchaser has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreements among the bidders.

L.      The Epic Purchaser is purchasing the Epic Purchased Assets in good faith, and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by that provision, and otherwise has

proceeded in good faith in all respects in connection with this proceeding in that, *inter alia*: (a) the Epic Purchaser recognized that the Trustee was free to deal with any other party interested in acquiring the Epic Purchased Assets; (b) the Epic Purchaser complied with the provisions in the Bidding Procedures Order; (c) the Epic Purchaser agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) the Epic Purchaser in no way induced or caused the filing of the Bankruptcy Cases; and (e) all payments to be made by the Epic Purchaser in connection with the Sale have been disclosed.

M.      The form and total consideration to be realized by the Estates under the Purchase Agreement constitutes fair value, fair, full, and adequate consideration, reasonably equivalent value, and reasonable market value for the Epic Purchased Assets.

N.      Neither the Epic Purchaser nor any of its Affiliates, officers, directors, managers, shareholders, members or any of their respective successors or assigns is an "insider" of the Debtors, as that term is defined under section 101(31) of the Bankruptcy Code. No common identity of directors, managers, controlling shareholders, or members exists between the Debtors, Trustee or the Epic Purchaser.

**<u>Highest and Best Offer</u>**

O.      The Trustee conducted an auction process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order.  The auction process set forth in the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Epic Purchased Assets.  The auction process was duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity was given to any interested party to make a higher and better offer for the Epic Purchased Assets.

P.      The Epic Purchase Price (as defined in the Purchase Agreement) constitutes the highest and best offer for the Epic Purchased Assets, and will provide a greater recovery for the Estates than would be provided by any other available alternative.  The Trustee's determination that the Epic Purchase Price constitutes the highest and best offer for the Epic Purchased Assets constitutes a valid and sound exercise of the Trustee's business judgment.

Q.      The Epic  Purchaser is the Successful Bidder for the Epic Purchased Assets in accordance with the Bidding Procedures Order.  The Epic Purchaser has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the Purchase Agreement, and the sale and the Purchase Agreement likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

## No Fraudulent Transfer

R.      The consideration provided by the Epic Purchaser pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) constitutes the highest and/or best offer for the Epic Purchased Assets, and (iii) constitutes reasonably equivalent value and fair consideration for the Epic Purchased Assets under the Bankruptcy Code and applicable law, including, without limitation, under the laws of the United States, and each State, territory, possession, and the District of Columbia or any other applicable jurisdiction with laws similar to the foregoing, including, without limitation, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and the Uniform Voidable Transactions Act.  No other person or entity or group of entities has offered to purchase the Epic Purchased Assets for greater economic value to the Estates than the Epic Purchaser.  Approval of the Sale Motion and the Purchase Agreement (solely as to the Epic Purchaser), and the consummation of the transactions contemplated thereby to which the Epic Purchaser is a party are in the best interests of the Estates.

S.     The Epic Purchaser is not a mere continuation of the Debtors or the Estates, and no continuity of enterprise exists between the Epic Purchaser and the Debtors or the Estates. The Epic Purchaser is not holding itself out to the public as a continuation of the Debtors or the Estates. The Epic Purchaser is not a successor to the Debtors or the Estates, and the Sale of the Epic Purchased Assets to the Epic Purchaser does not amount to a consolidation, merger, or de facto merger of the Epic Purchaser and the Debtors or the Estates.

## Validity of Transfer

T.     The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors. Neither the Trustee nor the Epic Purchaser is entering into the transactions contemplated by the Purchase Agreement to which the Epic Purchaser is a party fraudulently for purposes of statutory and/or common law fraudulent conveyance and fraudulent transfer laws.

U.     The Estates are the sole and lawful owners of the Epic Purchased Assets. Subject to section 363(f) of the Bankruptcy Code, the transfers of the Epic Purchased Assets to the Epic Purchaser will be, as of the Closing Date, legal, valid, and effective transfers of the Epic Purchased Assets, which transfer will vest the Epic Purchaser with all right, title, and interest of the Estates to the Epic Purchased Assets free and clear of: (a) all Liens (as defined in the Purchase Agreement), accruing or arising any time prior to the Closing Date, and (b) all claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, interests, and matters of any kind and nature, whether arising prior to or subsequent to the Petition Date, and whether imposed by agreement, understanding, law, equity, or otherwise (including, without limitation, rights with respect to Claims and Liens (i) that purport to give to any party a right of setoff or

recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Estates' or the Epic Purchaser's interests in the Epic Purchased Assets, or any similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership), whether known or unknown, disclosed or undisclosed, matured or unmatured, fixed or contingent, asserted or unasserted, liquidated or unliquidated (collectively, as defined in this clause (b), "Claims"), relating to, accruing, or arising any time prior to the Closing Date.

### Section 363(f) is Satisfied

V.       The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Trustee may sell the Epic Purchased Assets free and clear of any interest in the property.

W.       The Epic Purchaser would not have entered into the Purchase Agreement, and would not consummate the transactions contemplated thereby, if the sale of the Epic Purchased Assets to the Epic Purchaser were not free and clear of all Liens and Claims.  The Epic Purchaser shall not be responsible for any Liens or Claims other than Assumed Liabilities (as defined in the Purchase Agreement) which have been expressly assumed by the Epic Purchaser pursuant to the Purchase Agreement.

X.       The Trustee may sell the Epic Purchased Assets free and clear of all Liens and Claims against the Estates and/or any of the Epic Purchased Assets because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those holders of Liens or Claims against the Estates or any of the Epic Purchased

Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens or Claims are adequately protected by having their Liens or Claims, if any, in each instance against the Estates or any of the Epic Purchased Assets, attach to the net cash proceeds of the Sale ultimately attributable to the particular Epic Purchased Assets in which such creditor alleges a Lien or Claim, in the same order of priority, with the same validity, force and effect that such Lien or Claim had prior to the Sale, subject to any claims and defenses that the Estates may possess with respect thereto.

### Cure/Adequate Protection

Y.    The assumption and assignment of the Epic Assigned Contracts/Leases is integral to the transactions to which the Epic Purchaser is a party under the Purchase Agreement, is in the best interests of the Estates, and represents a reasonable exercise of sound and prudent judgment by the Trustee.  The Epic Purchaser's promise to perform the obligations under the Epic Assigned Contracts/Leases after the Closing Date shall constitute adequate assurance of future performance within the meaning of section 365(f)(2)(B) of the Bankruptcy Code.

Z.    Any objections to the assumption and assignment of the Epic Assigned Contracts/Leases are hereby overruled.

### Compelling Circumstances for an Immediate Sale

AA.    Good and sufficient reasons for approval of the Purchase Agreement (solely as to the Epic Purchaser) and the Sale have been articulated.  The relief requested in the Sale Motion is in the best interests of the Estates.  The Trustee has demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code in

that, among other things, the immediate consummation of the Sale of the Epic Purchased Assets

to the Epic Purchaser is necessary and appropriate to maximize the value of the Estates.  Time is

of the essence in consummating the Sale.

BB.    Given all of the circumstances of the Bankruptcy Cases and the adequacy and fair

value of the Epic Purchase Price under the Purchase Agreement, the proposed Sale of the Epic

Purchased Assets to the Epic Purchaser constitutes a reasonable and sound exercise of the

Trustee's business judgment and should be approved.

CC.    The consummation of the Sale of the Epic Purchased Assets to the Epic Purchaser

and the assumption and assignment of the Epic Assigned Contracts/Leases is legal, valid, and

properly authorized under all applicable provisions of the Bankruptcy Code, including, without

limitation, sections 105(a), 363(b), 363(f), 363(m), and 365, and all of the applicable

requirements of such sections have been complied with in respect of the transaction.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

**General Provisions**

1.    The relief requested in the Sale Motion, as it pertains to the Epic Transaction, is

granted and approved as set forth herein. The Trustee is authorized to sell the Epic Purchased

Assets to the Epic Purchaser and transfer, assign and convey the Epic Purchased Assets,

including but not limited to the Epic Assigned Contracts/Leases to the Epic Purchaser on the

Closing Date. For the avoidance of doubt, this Order relates only to the Epic Transaction, and is

independent of any other order approving or disapproving any other transactions with any other

purchaser under the Purchase Agreement or any other asset purchase agreement.

2.    All objections or responses to the Sale Motion or the relief requested therein as to

the Epic Transaction and the Epic Purchaser that have not been withdrawn, waived, or settled as

announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included therein, are hereby denied and overruled with prejudice. All non-Debtor counterparties to the Epic Assigned Contracts/Leases given notice of the Sale Motion that failed to timely object thereto are deemed to consent to the relief sought therein. All persons and entities given notice of the Sale Motion that failed to timely object thereto are deemed to consent to the Epic Transaction, for all purposes, including for purposes of sections 363(f)(2), 365(c)(1), and 365(e)(2) of the Bankruptcy Code.

### Approval of the Purchase Agreement

3.      The Purchase Agreement (and all schedules and exhibits affixed thereto relating to the Epic Purchaser) and all other ancillary documents, all of the terms and conditions thereof, and the transactions contemplated therein to which the Epic Purchaser is a party are hereby approved and authorized.

4.      Pursuant to sections 363(b) and (f) of the Bankruptcy Code, the Trustee is authorized and empowered to take any and all actions necessary or appropriate to: (i) consummate the Sale of the Epic Purchased Assets to the Epic Purchaser pursuant to and in accordance with the terms and conditions of the Purchase Agreement and this Order; (ii) close the Sale of the Epic Purchased Assets to the Epic Purchaser as contemplated in the Purchase Agreement and this Order; and (iii) execute and deliver, perform under, consummate, implement, and close fully the Purchase Agreement as to the Epic Purchaser, including the assumption and assignment to the Epic Purchaser of the Epic Assigned Contracts/Leases, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale with respect to the Epic Purchaser and the Epic Purchased Assets.

5.      This Order shall be binding in all respects upon the Trustee, the Estates, the Debtors, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens, Claims, or other interests in, against, or on all or any portion of the Epic Purchased Assets (whether known or unknown), the Epic Purchaser and all successors and assigns of the Epic Purchaser, and the Epic Purchased Assets.  This Order and the Purchase Agreement shall inure to the benefit of the Estates and their creditors, the Epic Purchaser, and the respective successors and assigns of each of the foregoing.

6.      Subject to the terms, conditions, and provisions of this Order, all persons and entities are hereby forever prohibited, enjoined and barred from taking any action that would adversely affect or interfere, or that would be inconsistent (i) with the ability of the Trustee to sell and transfer the Epic Purchased Assets to the Epic Purchaser free and clear of all Claims in accordance with the terms of the Purchase Agreement and this Order and (ii) with the ability of the Epic Purchaser to acquire, take possession of, use and operate the Epic Purchased Assets in accordance with the terms of the Purchase Agreement and this Order.

7.      The Sale of the Epic Purchased Assets to the Epic Purchaser under the Purchase Agreement constitutes a transfer for reasonably equivalent value, fair value and fair consideration under the Bankruptcy Code and applicable law, including, without limitation, the laws of each jurisdiction in which the Epic Purchased Assets are located, and the Sale of the Epic Purchased Assets to the Epic Purchaser may not be avoided under any statutory or common law fraudulent conveyance and fraudulent transfer theories whether under the Bankruptcy Code or under the laws of the United States, any state, territory, possession thereof or the District of Columbia or any other applicable jurisdiction with laws substantially similar to the foregoing including the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, the

Uniform Voidable Transactions Act and any other applicable law.  The Sale shall not be subject to avoidance or rejected by any person, and costs or damages shall not be imposed or awarded against the Epic Purchaser under section 363(m) or any other provision of the Bankruptcy Code or applicable State or other law.

## Transfer of the Epic Purchased Assets

8.      Pursuant to sections 105(a), 363(b), and 363(f) of the Bankruptcy Code, the Trustee is authorized to transfer the Epic Purchased Assets to the Epic Purchaser on the Closing Date and, upon the Closing with the Epic Purchaser under the Purchase Agreement, such transfers shall constitute legal, valid, binding, and effective transfers of such Epic Purchased Assets and shall vest the Epic Purchaser with title to the Epic Purchased Assets and, upon the Trustee's receipt of the full Epic Purchase Price from the Epic Purchaser on account of the Epic Purchased Assets, shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, including but not limited to, successor or successor-in-interest liability and Claims, with all such Liens, Claims or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or interests are asserted, subject to the terms thereof, with the same validity, force and effect, and in the same order of priority, that such Liens, Claims, or interests now have against the Epic Purchased Assets.  Upon the Closing, the Epic Purchaser shall take title to and possession of the Epic Purchased Assets.

9.      In accordance with the written Sharing Agreement by and among the Trustee, the ABL Agent and TL Agent, to the extent approved by the Court or as modified by later Order of the Court (the "Sharing Agreement"), upon consummation of the Sale approved hereby, the Trustee is authorized to indefeasibly pay via wire transfer  the allowed ABL Claim Amount and allowed TL Claim Amount (as such terms are defined in the Sharing Agreement); provided that

if one or more additional Sale transactions must be consummated before full payment of such allowed claims is feasible, then the Trustee is authorized to make such payments as and when such other transactions are consummated.

10.    All persons and entities in possession of some or all of the Epic Purchased Assets on the Closing Date are directed to surrender possession of such Epic Purchased Assets to the Epic Purchaser or its assignee at the Closing.  On the Closing Date, each of the Estates' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims, or other interests in the Epic Purchased Assets, if any, as such Liens, Claims, or interests may have been recorded or may otherwise exist.

11.    On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Estates' interests in the Epic Purchased Assets.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the Epic Transaction.

12.    A certified copy of this Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Liens and other encumbrances of record.

13.    If any person or entity that has filed statements or other documents or agreements evidencing Liens on, or interests in, all or any portion of the Epic Purchased Assets shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens, Claims, or other interests that the person or entity has or may assert with respect to all or any portion of the Epic Purchased Assets, the Trustee is hereby authorized and directed, and the

15

Epic Purchaser is hereby authorized, to execute and file such statements, instruments, releases, and other documents on behalf of such person or entity with respect to the Epic Purchased Assets.

14.     This Order is and shall be effective as a determination that, on the Closing Date, all Liens, Claims, or other interests of any kind or nature whatsoever existing as to the Epic Purchased Assets prior to the Closing Date, shall have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected.  This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement to which the Epic Purchaser is a party.

15.     No governmental unit (as defined in section 101(27) of the Bankruptcy Code) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Epic Purchased Assets on account of the filing or pendency of the chapter 7 case or the consummation of the Sale to the extent that any such action by a governmental unit or any representative thereof would violate section 525 of the Bankruptcy Code.

16. The Epic Purchaser is hereby authorized, in connection with the consummation of the Epic Transaction, to allocate the Epic Purchased Assets, Assumed Liabilities, and the Epic Assigned Contracts/Leases among its Affiliates, designees, assignees, or successors in a manner as it, in its sole discretion, deems appropriate, and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Epic Assets or the rights under any Epic Assigned Contract/Leases to its Affiliates, designees, assignees, or successors with all of the rights and protections accorded under this Order and the Purchase Agreement, and the Trustee shall cooperate with and take all actions reasonably requested by the Epic Purchaser to effectuate any of the foregoing. For the avoidance of confusion, nothing in this paragraph shall excuse the Epic Purchaser from any of its obligations to the Trustee under this or any other order of the Court, or under the Purchase Agreement.

### Assumption and Assignment of Assigned Contracts/Leases

17. The Trustee is hereby authorized and directed in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Epic Purchaser, effective upon the Closing of the Sales, the Epic Assigned Contracts/Leases, free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever, and (b) execute and deliver to the Epic Purchaser such documents or other instruments as the Epic Purchaser reasonably deems necessary to assign and transfer the Epic Assigned Contracts/Leases.

18. The counterparties to the Epic Assigned Contracts/Leases (the "Counterparties") shall each look solely to the Epic Purchaser for any amounts payable under the Epic Assigned Contracts/Leases from and after the Closing Date.

19. The Epic Assigned Contracts/Leases are executory contracts under section 365 of the Bankruptcy Code. The Trustee may assume the Epic Assigned Contracts/Leases in

accordance with section 365 of the Bankruptcy Code.  The Trustee may assign the Epic Assigned Contracts/Leases in accordance with sections 363 and 365 of the Bankruptcy Code.  Any provisions in the Epic Assigned Contracts/Leases that purport to prohibit or condition the assignment of the Epic Assigned Contracts/Leases or allow the Counterparties to terminate, recapture, impose any penalty, or modify any term or condition upon the assignment of the Epic Assigned Contracts/Leases, constitute unenforceable anti-assignment provisions that are void and of no force and effect; all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Trustee and assignment to the Epic Purchaser of the Epic Assigned Contracts/Leases have been satisfied.  The Epic Assigned Contracts/Leases shall be transferred and assigned to, and following the closing of the Sale remain in full force and effect for the benefit of, the Epic Purchaser, notwithstanding any provision in the Epic Assigned Contracts/Leases (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that purports to prohibit, restrict, or condition such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Estates shall be relieved from any further liability with respect to the Epic Assigned Contracts/Leases after such assignment to and assumption by the Epic Purchaser.  Upon Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Epic Purchaser shall be fully and irrevocably vested in all rights and title to the Epic Assigned Contracts/Leases.

20.    The amounts necessary to cure any defaults existing as of the Closing Date under the Epic Assigned Contracts/Leases are the amounts listed on the Trustee's Cure Notice filed and served in the Bankruptcy Cases, or, if applicable, such other amount(s) upon which the Trustee, the Epic Purchaser and any of the Counterparties may have agreed (the "Cure Amounts").  The Epic Purchaser shall pay the Cure Amounts at Closing, or at such later time as may be mutually

agreed upon by the Epic Purchaser and any applicable Counterparties. No other defaults exist under the Epic Assigned Contracts/Leases. The Counterparties waive, release, and are hereby precluded from asserting any claims against the Debtors, the Trustee or the Estates for any claims arising out of or in connection with the Epic Assigned Contracts/Leases. The Epic Purchaser shall pay the Cure Amounts to the Counterparties in full satisfaction of the Counterparties' claims for defaults that may have arisen under the Epic Assigned Contracts/Leases.

21.    The assignments of each of the Epic Assigned Contracts/Leases are made in good faith under sections 363(b) and (m) of the Bankruptcy Code and shall be free and clear of all Claims and Liens pursuant to section 363(f) of the Bankruptcy Code.

## Prohibition of Actions against the Purchaser

22.    Except as otherwise provided in this Order or the Purchase Agreement, the Epic Purchaser shall not have any liability or other obligation to the Estates arising under or related to any of the Epic Purchased Assets. Without limiting the generality of the foregoing, and except as otherwise provided herein or in the Purchase Agreement, the Epic Purchaser shall not be liable for any Claims against the Estates, and the Epic Purchaser shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation, or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated.

23.    All persons and entities holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Epic Purchased Assets (whether legal or

19

equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), including, without limitation, the Debtors, Estates, any and all debt security holders, equity security holders, governmental tax and regulatory authorities, lenders, customers, vendors, employees, former employees, litigation claimants, trustees, trade creditors, and any other creditors (or agent of any of the foregoing) who may or do hold Claims against the Debtors or the Epic Purchased Assets, arising under or out of, in connection with, or in any way relating to, the Debtors, the Epic Purchased Assets, the operation or ownership of the Epic Purchased Assets by the Debtors prior to the Closing Date, or the Sale, are hereby prohibited, hereby are forever barred, estopped, and permanently enjoined from asserting against the Epic Purchaser, its Affiliates, its successors or assigns, its property, or the Epic Purchased Assets, such persons' or entities' Liens, Claims, or interests in and to the Epic Purchased Assets, including, without limitation, the following actions: (i) commencing or continuing in any manner any action, whether at law or in equity, in any judicial, administrative, arbitral, or any other proceeding, against the Epic Purchaser, its affiliates, successors, assigns, Epic Purchased Assets, and/or properties; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Epic Purchaser, its affiliates, successors, assigns, the Epic Purchased Assets, and/or properties; (iii) asserting or prosecuting any cause of action, any process or other act seeking to collect, offset, setoff, recoup or recover on account of any Claims against the Epic Purchaser, its affiliates, successors, assigns, assets (including the Epic Purchased Assets), and/or properties; (d) creating, perfecting, or enforcing any Claim against the Epic Purchaser, its affiliates, any of its respective successors, assigns, the Epic Purchased Assets, and/or properties; (e) asserting a Claim as a setoff, right of subrogation, or recoupment of any kind against any obligation due against the Epic Purchaser, its affiliates or

any of its respective successors or assigns; (f) commencing or continuing any action in any manner or place that does not comply, or is inconsistent, with the provisions of this Order, the Purchase Agreement, or the agreements or actions contemplated or taken in respect thereof, including the Trustee's ability to transfer the Epic Purchased Assets to the Epic Purchaser in accordance with the terms of this Order and the Purchase Agreement, or (g) revoking, terminating, or failing or refusing to renew any license, permit, or authorization to operate any of the Epic Purchased Assets or conduct any of the businesses operated with such assets.

24.     No Person shall assert or pursue any such Claim against the Epic Purchaser or its affiliates, successors or assigns nor shall such Person interfere with the Epic Purchaser's title to or use and enjoyment of the Epic Purchased Assets based on or related to any such Claim, or based on any act or omission of the Debtors or Trustee, including in the Bankruptcy Case.

25.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Trustee to sell and transfer the Epic Purchased Assets to the Epic Purchaser in accordance with the terms of the Purchase Agreement and this Order.

26.     Neither the Epic Purchaser nor its Affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by the Debtors, Trustee or any of their estates, predecessors, successors, or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Purchase Agreement and the ancillary agreements and the entry into and consummation of the Sale of the Epic Purchased Assets, except as expressly provided in the Purchase Agreement and this Order.

27.     Neither the Trustee, the Epic Purchaser, nor any affiliate of either the Trustee or the Epic Purchaser have engaged in any collusion with other bidders or other parties or have

taken any other action or inaction that would cause or permit the Epic Transaction to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code or otherwise. The Epic Purchaser has given substantial consideration under the Purchase Agreement for the benefit of the Estates.  The consideration given by the Epic Purchaser shall constitute valid and valuable consideration for the releases of any potential Claims and Liens pursuant to this Order, which releases shall be deemed to have been given in favor of the Epic Purchaser by all holders of Liens against or interests in, or Claims against, the Estates or any of the Epic Purchased Assets.  The consideration provided by the Epic Purchaser for the Epic Purchased Assets under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

28.    Nothing in this Order or the Purchase Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; *provided, however,* that the foregoing shall not limit, diminish or otherwise alter the Trustee's or the Epic Purchaser's defenses, claims, causes of action, or other rights under applicable non-bankruptcy law with respect to any liability that may exist to a governmental unit at such owned or operated property.  Nothing in this Order or the Purchase Agreement authorizes the transfer or assignment to the Epic Purchaser of any license, permit, registration, authorization, or approval of or with respect to a governmental unit without the Epic Purchaser's complying with all applicable legal requirements under non-bankruptcy law governing such transfers or assignments.

**Other Provisions**

29.     The Epic Transaction is undertaken by the Epic Purchaser without collusion and in good faith, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale of the Epic Purchased Assets shall not affect the validity of such Sale, unless such authorization and the Sale are duly stayed pending such appeal.  The Epic Purchaser is a good faith buyer and, as such, shall have the full protections of section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the Epic Transaction (including the assumption and assignment of the Epic Assigned Contracts/Leases), unless such authorization and consummation of the sale are duly and properly stayed pending such appeal before the occurrence of the Closing.

30.     The Epic Purchaser is not an "insider" of any of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

31.     Pursuant to Federal Rules of Bankruptcy Procedure 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and the Trustee and the Epic Purchaser are authorized to close the Sale of the Epic Purchased Assets to the Epic Purchaser immediately upon entry of this Order.

32.     No bulk sales law or any similar law of any state or other jurisdiction (including those relating to taxes other than Transfer Taxes) shall apply in any way to the transactions authorized herein, including, without limitation, the Purchase Agreement and the Epic Transaction, and the Epic Purchaser shall have no liability in respect thereof.

33.     The failure specifically to reference any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being

the intent of the Court that the Purchase Agreement is authorized and approved in its entirety as to the Epic Purchaser and the Epic Purchased Assets; provided, however, that this Order shall govern if any inconsistency exists between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

34.    The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented as to the Epic Purchaser or the Epic Purchased Assets by the Trustee and the Epic Purchaser and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Estates.

35.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Trustee is party or which has been assigned by the Trustee to the Epic Purchaser, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale of the Epic Purchased Assets to the Epic Purchaser, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Epic Purchased Assets to the Epic Purchaser; (b) interpret, implement, and enforce the provisions of this Order; (c) protect the Epic Purchaser against any alleged Liens, Claims, or other interests in or against the Epic Purchased Assets of any kind or nature whatsoever; and (d) enter any orders under sections 363 and/or 365 of the Bankruptcy Code with respect to the Epic Assigned Contracts/Leases.

36.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

37.     To the extent that this Order is inconsistent or conflicts with the Bidding Procedures Order, any prior order or pleading with respect to the Sale Motion, or the terms of the Purchase Agreement, the terms of this Order shall govern and control.