IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, et al.[1]<br>　　　　　　　　　Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br>(Jointly Administered)<br><br>**Re D.I. 150** |

## SUPPLEMENTAL DECLARATION OF GEORGE L. MILLER IN SUPPORT OF TRUSTEE'S APPLICATION FOR APPROVAL OF RETENTION OF ARNOLD & PORTER, KAYE SCHOLER LLP AS SPECIAL COUNSEL FOR REGULATORY AND COMPLIANCE MATTERS

I, George L. Miller, declare under penalty of perjury that:

1. I am the duly appointed chapter 7 trustee (the "Trustee") for the estates of the above-captioned Debtors (collectively, the "Debtors" or "Estates") and was appointed on or about February 23, 2023 and became permanent Trustee upon the conclusion of the meeting of creditors on April 7, 2023.

2. I submit this supplemental declaration (the "Declaration") in support of the *Trustee's Application to Employ Arnold & Porter, Kaye Scholer LLP as Special Counsel* [D.I. No. 150] for regulatory and compliance matters relating to drug and pharmaceutical products (the "Application").[2] Except as otherwise indicated, this Declaration is based upon my personal knowledge of the facts as set forth below and in the Application which are incorporated herein by reference.

3. The Debtors' businesses included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

[2] Capitalized terms not otherwise defined in this Declaration shall have the meanings provided in the Application.

1

The Debtors were a large industry leader in branded and generic products in alternate dosage forms such as ophthalmics, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors were operating until the filing of the Chapter 7 Petition on February 23, 2023 (the "Petition Date") at numerous locations in the United States, both owned and leased, and were headquartered in Gurnee, Illinois.

4. The Debtors' operations in the U.S. have all ceased. However, their Swiss affiliate, non-Debtor Akorn AG, continues to operate. Debtor Akorn Operating Company LLC ("Akorn Operating") owns 100% of the equity in Akorn International S.á.r.l, a non-debtor based in Luxembourg. Akorn International S.á.r.l, in turn, owns 100% of the equity in Akorn AG.

5. Prior to the commencement of these bankruptcy cases, the Debtors launched a sale process for substantially all of their assets as a going-concern. To assist with the sale effort, the Debtors retained an investment bank and numerous consultants who were former employees of the Debtors. The Debtors thoroughly marketed their assets and solicited bids over a period of approximately seven months. Ultimately however, the Debtors prior to the Petition Date did not receive any bids exceeding the aggregate amount of their secured debt, due in material part to a lack of liquidity and a series of regulatory issues that impaired the Debtors' ability to sell their U.S. based operations on a going-concern basis.

6. Prior to the Petition Date, the Debtors retained Arnold & Porter Kaye Scholer LLP ("Arnold & Porter") as their counsel in the ordinary course of business to provide legal services in connection with regulatory and compliance matters for drugs and pharmaceutical products, including, but not limited to, compliance with FDA requirements.

7. Immediately upon my appointment as Trustee, on an emergency basis I evaluated the composition of the Estates and based upon my discussions with former employees and other

2

parties-in-interest determined that an extraordinary liquidation process needed to be commenced as promptly as possible. Perhaps most importantly of all, some of the Debtors' abbreviated new drug applications ("ANDAs") required to be sold as part of the Estates' assets related to drugs which were presently in very short supply in the marketplace in the United States and had been manufactured in the Debtors' now closed U.S. facilities. Because those facilities were now shuttered as a result of the Chapter 7 bankruptcy, these drugs were not being actively manufactured, which exacerbated the drug shortages in the United States. As I was faced as Trustee with an extraordinary emergency situation in which the transfer of the Debtors' ANDAs to an operating purchaser (or purchasers), as soon as possible needed to be completed so production of these shortage drugs could resume by drug manufacturers operating in compliance with applicable Food and Drug Administration ("FDA") and other safety regulations and standards, and by so doing, supply chain disruptions in the delivery of these needed drugs to the public could be minimized. It was imperative that I effectuate these transfers of the ANDAs and related assets as soon as possible to stem and ameliorate the aforesaid drug shortages. As a matter of fact, in my capacity as Trustee I was contacted by The White House Office of Public Engagement concerning these supply chain issues relating to the drug products manufactured by the Debtors and needed to maintain an ongoing dialogue with the FDA concerning drugs in short supply (the "Shortage Drugs"). As a result of this ongoing dialogue with the FDA, the FDA has ultimately exercised regulatory discretion in a manner to facilitate the ability of the Estates to move swiftly on the disposition of property of the estate. Unfortunately, the FDA pursuant to applicable drug regulations also mandated that the Estates proceed with a prompt recall of certain drug products of the Debtors due to the inability to comply with ongoing regulatory testing and reporting requirements.

8. As previously mentioned, the Debtors' U.S. operations had entirely shut down as of the Petition Date. The rate of depreciation for static and idle assets in the pharmaceutical industry is extremely steep, and the Debtors' ongoing storage costs are high. These costs ran in excess of $1.0 million per month. These high carrying costs of the Estates included costs related to complying with regulatory requirements, including but not limited to maintaining regulatory reporting and required reporting of controlled substances, security and destruction protocols. The regulatory matters required emergency attention to not only protect the value of property of the Estates but also to project to the health and safety of the American public who relied on many of these drug products.

9. As Estates under chapter 7 of the Bankruptcy Code, as opposed to chapter 11, the Debtors' Estates have limited wherewithal. If the Estates were to exhaust their available cash they would no longer have the ability to pay any carrying costs, and would no longer be able to maintain their assets, which also would pose a real and imminent danger to the public to the extent of a failure to comply with regulatory requirements for drug product, controlled substances and their active pharmaceutical ingredients.

10. Being intimately familiar with the Debtor's products and regulatory and compliance matters the efforts of Arnold & Porter in addressing the emergency regulatory issues with the FDA concerning shortage products and my issuance of the FDA mandated drug product recall at the outset of the Chapter 7 case were critical to enabling the swift transfer of ANDAs to minimize the above-referenced drug shortage and ensure compliance with regulations to protect the health and safety of the public at large.

11. Given the aforesaid extraordinary and exigent circumstances with which I was confronted by a drug manufacturer directly filing a Chapter 7 case, the immediate assistance of

4

the Arnold & Porter was needed to ensure regulatory compliance was maintained with respect to the Debtors' drug products and related assets. The freefall of a drug manufacturer into a Chapter 7 case is unprecedented and extraordinary by its very nature. All of the efforts of myself and my team were of necessity forced to be focused at the outset of the case on making sure to protect the public from the real and acute dangers posed by the failure of a manufacturer of pharmaceutical drugs and controlled substances. Arnold & Porter prior to the bankruptcy filing had served as a consultant to the Debtors on regulatory matters and possessed a high pre-existing level of knowledge, familiarity and expertise in the FDA regulatory matters of the Debtors and the time constraints and exigent circumstances facing the Estates, it was under these extraordinary circumstances vital to have received the services of the Arnold & Porter in regulatory drug matters.

12. Arnold & Porter through the month of May has provided post-petition services to the Estates of $36,311.18 for which Arnold & Porter holds an unused pre-petition retainer amount of $35,000.00 leaving the modest amount of approximately $1,311.18 outstanding for post-petition services through May. The efforts of Arnold & Porter in providing regulatory advice under exigent circumstances was of critical importance in greatly contributing to the Estates being able to generate the extraordinary result of ANDA sales in excess of $300 million which is projected to enable all secured debt of the Estates to be paid in full with a significant distribution to unsecured creditors also being made.

13. The confluence of these extraordinary and exigent circumstances required the immediate attention on an emergency basis to ensure compliance with applicable regulations relating to drug manufacturing which had been conducted by the Debtors. I respectfully submit

LEGAL\64315609\2 6010823/00574256

that the *nunc pro tunc* employment of 100 days of the Arnold & Porter is warranted under the exigent and extraordinary circumstances and request that the Court grant the Application.

Dated: July 11, 2023

*[signature]*
George L. Miller, in his capacity as the
Chapter 7 Trustee for the Estates of the
Debtors