IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al.*[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered)<br><br>Hearing Date: March 20, 2024 at 10:30 a.m. (ET)<br>Objection Date: February 21, 2024 at 4:00 p.m. (ET) |

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS TO OPHTAPHARM AG (II) APPROVING ASSIGNMENT CONDITIONS, (III) AUTHORIZING REJECTION OF CERTAIN EXECUTORY CONTRACTS, (IV) AUTHORIZING THE TRANSFER OF TSA ASSETS, AND (V) GRANTING RELATED RELIEF**

George L. Miller, as chapter 7 trustee (the "Trustee") of the estates (the "Estates") of the above-captioned debtors (the "Debtors"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby moves (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing the assumption and assignment of certain executory contracts identified on Schedule I to the Proposed Order (each, an "Assigned Contract," and collectively, the "Assigned Contracts") to Ophtapharm AG (f/k/a Akorn AG), a company formed under the laws of Switzerland ("Assignee") which is a wholly-owned subsidiary of Sentiss AG (the "Purchaser" or "Sentiss" (as defined in the Sale Orders and the Purchase Agreements (each as defined below)); (ii) approving Assignment Conditions (as defined below); (iii) authorizing the rejection of certain

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

other executory contracts identified herein, effective as of the date of this Motion; (iv) authorizing the Trustee to transfer the TSA Assets (as defined below) to the Assignee in accordance with the terms of the TSA (as defined below), and (v) providing certain related relief. In support of the Motion, the Trustee respectfully states as follows:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (M), and pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

**A. Overview**

2. On February 23, 2023 (the "Petition Date"), each of the affiliated Debtors Akorn Holding Company LLC ("Akorn Holding"), Case No. 23-10253; Akorn Intermediate Company LLC ("Akorn Intermediate"), Case No. 23-10254 and Akorn Operating Company, LLC ("Akorn Operating"), Case No. 23-10255 (collectively, the "Bankruptcy Cases"), filed a voluntary petition in the Bankruptcy Court for relief under chapter 7 of the Bankruptcy Code.

3. On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the chapter 7 Trustee to the Estates of each of the Debtors.

4. The Debtors' businesses included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products. The Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmics, injectables, oral liquids, topicals, inhalants and nasal sprays. The Debtors operated at numerous locations in the United States, both owned and leased, and were headquartered in Gurnee, Illinois.

**B.     The Sale**

5. On April 28, 2023, the Court entered its *Order Granting Trustee's Motion for Entry of an Order (A) Approving Bidding Procedures in Connection with Sale of Substantially All of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, (C) Approving the Form and Manner of Notice Thereof, and (B) Granting Certain Related Relief* [D.I. 137] (the "Bidding Procedures Order").  In the Bidding Procedures Order, the Court approved bidding and sale procedures in connection with the Trustee's sale of certain of the Debtors' assets.

6. On May 19, 2023, the Bankruptcy Court entered its *Order (A) Approving the Sale of Certain of the Estates' Assets (Specific "ANDAs" and Shares) to Sentiss AG or its Assigns, (B) Approving the Asset and Share Purchase Agreement between the Trustee and Sentiss AG, and (C) Granting Certain Related Relief* [D.I. 214] (the "First Sale Order").  The First Sale Order approved the sale to the Purchaser (the "First Sale") of certain of the Estates' assets, including the equity in Akorn International S.á.r.l. (which was the sole shareholder of Akorn AG n/k/a Ophtapharm AG), certain ANDAs, and certain documents and records pursuant to that certain Asset and Share Purchase Agreement, dated as of May 18, 2023 (the "ASPA"), together with all ancillary documents executed in conjunction therewith or as a consequence of the ASPA (collectively, the "ASPA Documents").

7. On June 8, 2023, the Bankruptcy Court entered its *Order (A) Approving the Sale of the Estates' Assets Free and Clear of all Liens, Claims, Encumbrances and Interests, (B) Authorizing the Trustee to Enter into and Perform His Obligations to Sentiss AG under the Master Asset Purchase Agreement, (C) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (D) Granting Certain Related Relief* [D.I. 361] (the "Second Sale Order" and together with the First Sale Order, the "Sale Orders"), which approved the sale (the "Second Sale," and together with the First Sale, the "Sale") of certain of the Estates' assets to the Purchaser pursuant to that certain Asset Purchase Agreement, dated as of May 25, 2023 (the "APA," and together with the ASPA Documents, the "Purchase Agreements").[2]

8. The Second Sale Order also authorized the assumption and assignment to the Purchaser and/or its affiliates, designees, assignees or successors of certain executory contracts and unexpired leases. At the time the Second Sale Order was entered, the Assigned Contracts were not designated as contracts to be assumed and assigned to the Purchaser.

C. **The Transition Services Agreement**

9. The First Sale closed on June 26, 2023. On the same date, the Trustee entered into a Transition Services Agreement with the Purchaser, dated as of June 26, 2023 (the "TSA"), which was Exhibit D of the ASPA and approved pursuant to the First Sale Order. A copy of the TSA is attached hereto, incorporated herein and marked as Exhibit "B." Under the TSA, the Trustee agreed to provide certain transition and support services as described in the TSA (the "Transition Services") to Purchaser for a period of time following closing of the Sale in order to facilitate the transition of the operations of Akorn AG and the transition away from the Debtors' IT system to Purchaser's own system. In order for the Trustee to provide the agreed-upon Transition Services

---

[2] All undefined terms herein shall carry the meanings set forth in the Purchase Agreements.

to Purchaser under the TSA, the Trustee and the Purchaser identified certain executory vendor contracts of the Debtors which would need to be temporarily retained and maintained in effect by the Trustee (the "IT Contracts"). In accordance with the TSA, the Purchaser has been making payment to the Estates for the Transition Services to maintain the IT Contracts.

10. Upon expiration of the TSA, Section 6(c)(ii) of the TSA provides for the Trustee to transfer the hardware specifically described under the heading "Specified Tangible Assets" on Exhibit B to the TSA (the "Tangible Assets") and intangible assets specifically described under the heading of Specified Intangible Assets on Exhibit "C" to the TSA (the "Intangible Assets," and collectively with the Tangible Assets, the "TSA Assets") to the Purchaser or its designee for no additional consideration, subject to Court approval.

11. The Trustee and Sentiss have agreed to (i) extend the current term of the TSA to February 27, 2024, upon which date it will expire unless further extended by agreement of both parties and (ii) that the cost of the Transition Services provided by the Estate during the term of the TSA shall be reimbursed by Sentiss and/or the Assignee through termination or expiration of the TSA.

**D.     The Assigned Contracts**

12. The TSA requires Sentiss to transition each Transition Service provided by the Trustee to its own internal organization or an alternate, third-party source. In the event that a provider of Transition Services set forth on Exhibit A-2 of the TSA declines to enter into a new agreement with Sentiss, the TSA in section 1(f) provides that Sentiss may request that the Trustee seek assumption and assignment of the applicable contracts to Sentiss or its designee. In late December 2023, the Purchaser requested that the Trustee assume and assign the Assigned Contracts to the Assignee, and accordingly, the Trustee has proceeded to file the instant Motion.

13. Pursuant to that certain *Order Granting Trustee's Motion for Entry of an Order Further Extending Time to Assume or Reject Certain Executory Contracts and Unexpired Leases of Personal Property Pursuant to 11 U.S.C. § 365(d)(1)* [D.I. 665] (the "IT Contracts Extension Order"), the Trustee on December 29, 2023 filed Trustee's Supplemental Motion for Entry of an Order Further Extending Time to Assume or Reject Certain Executory Contracts and Unexpired Leases of Personal Property Pursuant to 11 U.S.C. §365(d)(1) [D.I. 712] to further extend the time period to assume or reject the Assigned Contracts until February 27, 2024.

### i. The Oracle Agreements

14. Akorn Operating is a party with Oracle America, Inc. ("Oracle") to that certain *License and Services Agreement* (together with all associated licenses for servers and workstations and all associated orders, work orders, or similar documents as well as all amendments thereto, if any, and including technical support service agreements and orders, the "Oracle Agreements"). Among the Oracle Agreements are certain licenses for software, in addition to certain maintenance agreements, in each case, more particularly set forth under the heading of "Assigned Oracle Contracts") on Schedule I to the Proposed Order (collectively, the "Assigned Oracle Contracts"), which Purchaser has determined it requires in connection with its ownership of the Purchased Assets. Accordingly, the Purchaser has requested that the Trustee assume and assign the Assigned Oracle Contracts to the Assignee, its wholly-owned subsidiary, in furtherance of the Sale.

15. The Purchaser has advised the Trustee that Oracle has consented in writing to the assumption and assignment of the Assigned Oracle Contracts to the Assignee.

16. Upon approval of the Assignment of the Assigned Oracle Contracts to the Assignee, the Trustee will no longer have a need for any remaining Oracle Agreements for maintenance (the "Remaining Oracle Maintenance Agreements"), and therefore, the Trustee requests authority to

reject, to the extent not previously rejected, the Remaining Oracle Maintenance Agreements, effective as of the date of filing this Motion.

### ii. Other Software Licenses

17. Imbedded or installed on, or otherwise used in connection with the operation of, the TSA Assets are various software programs, licenses, service agreements, support services, and subscriptions that the Purchaser has determined that it requires, which are listed on Schedule I to the Proposed Order under the heading of "Assigned Programs" (collectively, the "Assigned Programs"). In connection with the proposed transfer of the TSA Assets to the Assignee, the Purchaser has requested that the Trustee assume and assign or otherwise transfer the Assigned Programs to the Assignee concurrently therewith.

### E. Consideration for Assumption and Assignment

18. As consideration for the Estates' agreement to assume and assign the Assigned Contracts, and in addition to the other provisions set forth in the Purchase Agreements, the TSA, this Motion, and the Proposed Order, the Purchaser and the Trustee have agreed to certain terms and conditions to be memorialized in the Proposed Order (the "Assignment Conditions").

19. The Assignment Conditions are as follows:

   a. The Purchaser and/or the Assignee shall pay the Cure Costs (defined below) to the applicable counterparties to the Assigned Contracts.

   b. Upon entry of an order granting the relief requested by this Motion, the Purchaser and/or the Assignee shall pay to the Estates the amount of $50,000.00 (the "Assignment Fee") by wire transfer of immediately available funds to an account or accounts designated in writing by the Trustee. The parties agree that the Assignment Fee to be paid to the Trustee is inclusive of reimbursement of the Trustee's legal fees as set forth in the TSA, but in addition to payment of the Cure Costs by the Purchaser and/or Assignee.

   c. The Purchaser and the Assignee shall indemnify and hold harmless the Estates in connection with any and all claims, damages and costs that may be asserted by any counterparty against the Estates relating to the Assigned Contracts and/or Remaining Oracle Maintenance Agreements, including but not limited

7

to any and all claims asserted under sections 365 and 503 of the Bankruptcy Code (collectively, the "Counterparty Claims"), as well as all attorney's fees and costs incurred by the Estates in (i) defending the Counterparty Claims that are deemed to arise with respect to the Assigned Contracts, and (ii) in defending any Counterparty Claims with respect to the Remaining Oracle Maintenance Agreements arising prior to the date the Remaining Oracle Maintenance Agreements are deemed rejected (but excluding any claims asserted under section 365(g) of the Bankruptcy Code as a result of being rejected); provided, that the Trustee shall first provide written notice to the Purchaser and the Assignee promptly upon becoming aware of any such Counterparty Claim and allow the Purchaser and the Assignee a reasonable opportunity, without interference from the Trustee, to defend against, settle, and take all other reasonable action in response to such Counterparty Claim.

d. In connection with the administration of the Estates, the Trustee may require records, documents and other data currently stored on the TSA Assets, software, programs, cloud services, applications, accounts and any other system or platform being transferred to the Purchaser and Assignee pursuant to the TSA and the assignment of the Assigned Contracts (collectively, the "Records and Data"). Upon request of the Trustee, the Purchaser and the Assignee shall provide prompt access to the Records and Data to the Trustee and his professionals until June 30, 2024 (the "Access Period") at no cost to the Estates. The Purchaser and the Assignee shall not use for any purpose whatsoever any documentation, data or other information remaining on or within the TSA Assets which is related to an asset of the Estates sold to a third party (the "Excluded Assets"). Upon expiration of the Access Period the Purchaser and Assignee shall remove, delete or otherwise destroy from the TSA Assets any documentation, data or other information remaining on or within the TSA Assets which is related to the Excluded Assets and the Purchaser shall pay the costs of third party service providers for such removal, or, reimburse the Trustee for such costs to extent the Trustee has directly paid third party service providers for such removal.

## SUMMARY OF RELIEF REQUESTED

20. By this Motion, the Trustee respectfully requests entry of an order, substantially in the form of the Proposed Order: (i) authorizing the assumption and assignment to the Assignee of the Assigned Contracts identified on Schedule I to the Proposed Order, including, but not limited to, the Assigned Oracle Contracts and the Assigned Programs; (ii) approving the Assignment Conditions; (iii) authorizing the rejection of the Remaining Oracle Maintenance Agreements,

effective as of the date of this Motion; (iv) authorizing the Trustee to transfer the TSA Assets to the Assignee pursuant to the TSA; and (v) granting related relief.

## RELIEF REQUESTED AND APPLICABLE AUTHORITY

**I.   The Trustee requests that the Court authorize the assumption and assignment of the Assigned Contracts.**

21.   Section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the court's approval, may assume . . . any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

22.   The standard governing bankruptcy court approval of a trustee's decision to assume or reject an executory contract or unexpired lease is whether the trustee's reasonable business judgment supports assumption or rejection. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.* (*In re Sharon Steel Corp.*), 872 F.2d 36, 39-40 (3d Cir. 1989). The business judgment test "requires only that the trustee demonstrate that [assumption or] rejection of the executory contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp. v. W. Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) (quoting *In re Stable Mews Assoc., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984)). Any more exacting scrutiny would hinder the administration of the estate and increase costs. *See Richmond Leasing Co. v. Capital Bank N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

23.   In order to assign an executory contract, a trustee must first assume it. In order to assume a contract, a trustee must "cure, or provide adequate assurance that [he] will promptly cure," any default, including compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1).

24.   Once an executory contract is assumed, the trustee may then seek to assign the contract. Pursuant to section 365(f) of the Bankruptcy Code, a trustee may assign an assumed

9

contract only if "adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *See Carlisle Homes. Inc. v. Arrari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989); *see also In re Natco Indus., Inc.,* 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that the debtor will thrive and pay rent). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and wherewithal to manage the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance is present when prospective assignee of lease from the debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

25. Here, the Assigned Contracts proposed to be assumed and assigned to the Assignee, together with corresponding proposed cure amounts for any obligations outstanding under the Assigned Contracts (the "Cure Costs"), are set forth on Schedule I to the Proposed Order as of January 31, 2024. The Cure Costs set forth on Schedule 1 of the Proposed Order accurately reflect the amounts due pursuant to the Estate's records and all Cure Costs through the date of assignment will be paid by the Purchaser and/or the Assignee as a condition to assumption and assignment. Service of this Motion and the Proposed Order will provide the relevant counterparties with sufficient opportunity to assess the proposed Cure Costs and assert any objections thereto. The Trustee requests that the Proposed Order provide that, other than the Cure Costs for each Assigned

Contract set forth on Schedule 1, the counterparty to each Assigned Contract be barred from asserting any additional cure costs with respect to the Assigned Contracts.

26. Further, the Trustee has already presented facts demonstrating the Purchaser's financial wherewithal at the hearings in connection with the Sale. The Trustee and Assignee will present such further evidence as may be necessary at any hearing on this Motion and/or in response to requests from the applicable counterparties in order to demonstrate and provide adequate assurance of the Purchaser's and the Assignee's willingness and ability to perform under the Assigned Contracts.

**II. The Trustee requests that the Court approve the rejection of the Remaining Oracle Maintenance Agreements.**

27. Section 365(a) of the Bankruptcy Code provides that a trustee, "subject to the court's approval, may . . . reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the Trustee. *See Nat'l Labor Relations Bd. v. Bildisco & Bildisco* (*In re Bildisco*), 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test." (citation omitted)); *see also Glenstone Lodge, Inc. v. Buckhead Am. Corp.* (*In re Buckhead Am. Corp.*), 180 B.R. 83, 88 (Bankr. D. Del. 1995). Application of the business judgment standard requires a court to approve a trustee's business decision unless the decision is the product of bad faith, whim, or caprice. *See Lubrizol Enters., Inc. v. Richmond Metal Finishes*, 756 F.2d 1043, 1047 (4th Cir. 1985). Further, "[t]his provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 741 (5th Cir. 1996) (citation omitted).

11

28. Rejection of an unexpired contract is appropriate where such rejection would benefit the estate. *See Sharon Steel Corp.*, 872 F.2d at 39–40. Upon finding that a trustee has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a). *See In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed,* 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

29. Here, upon the expiration of the TSA and the assumption and assignment of the Assigned Oracle Contracts, the Estates will have no further use for the Remaining Oracle Maintenance Agreements, and the Remaining Oracle Maintenance Agreements will no longer provide any ongoing benefit to the Estates. Moreover, no party has approached the Trustee with an interest in receiving an assignment of the Remaining Oracle Maintenance Agreements. Accordingly, in an effort to reduce potential administrative costs, and in the exercise of the Trustee's sound business judgment, the Trustee has determined that rejecting the Remaining Oracle Maintenance Agreements which have not been previously rejected is in the best interests of the Estates and their creditors.

### III. The Trustee requests that rejection of the Remaining Oracle Maintenance Agreements take effect as of the date of this Motion.

30. Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively. *See, e.g., In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that

section 365 "does not prohibit the bankruptcy court from allowing the rejection . . . to apply retroactively"). Courts have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of an order authorizing such rejection where the balance of equities favors such relief. *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028–29 (1st Cir. 1995) (stating that "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating that "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *CCI Wireless*, 297 B.R. at 140 (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *see also In re At Home Corp.*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (holding "that a bankruptcy court may approve retroactively the rejection of an unexpired nonresidential lease").

31. "To grant *nunc pro tunc* rejection, the [Trustee] must have stated an unequivocal intent to reject the leases." *In re Fleming Companies, Inc.,* 304 B.R. 85, 96 (Bankr. D. Del. 2003); *see Chi-Chi's*, 305 B.R. at 399 (authorizing rejection as of date debtors surrendered possession to landlord). "Courts have further held that the retroactive rejection of executory contracts and unexpired leases may be approved 'after balancing the equities' of a case and concluding that such equities weigh in favor of the debtor." *In re Extraction Oil & Gas,* 622 B.R. 608, 630 (Bankr. D. Del. 2020) (authorizing retroactive rejection where debtors sought relief as soon as they determined that lease rejection was in the best interest of their estates, and where failing to authorize retroactive rejection would force debtors to "incur unnecessary administrative charges . . . that do not provide an equivalent benefit to the Debtors' estates").

32. Here, the balance of equities favors the retroactive relief requested. Without this relief, the Estates may incur unnecessary administrative expenses related to the Remaining Oracle Maintenance Agreements while receiving no corresponding benefit. Contemporaneously with the filing of this Motion, the Trustee will cause notice of this Motion to be served on Oracle, thereby allowing it sufficient opportunity to respond.

33. The Court has routinely approved similar relief in the past. *See In re Cosi, Inc.*, Case No. 20-10417 (BLS) (Bankr. D. Del. Aug. 10, 2020) (authorizing retroactive rejection of lease as of specified date); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (authorizing debtors' rejection of certain license agreements *nunc pro tunc* to prior notice date); *In re Charming Charlie Holdings Inc*., No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (authorizing rejection of unexpired leases *nunc pro tunc* to prior notice date); *In re Quicksilver Res. Inc.*, No. 15-10585 (LSS) (Bankr. D. Del. Apr. 15, 2015) (authorizing rejection of executory contracts effective as of specified dates); *In re QCE Fin. LLC*, No. 14-10543 (PJW) (Bankr. D. Del. Apr. 9, 2014) (authorizing rejection of unexpired leases *nunc pro tunc* to the petition date); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Feb. 26, 2014) (authorizing rejection of unexpired leases *nunc pro tunc* to prior notice date).

34. Accordingly, the Trustee respectfully request that the Court deem the Remaining Oracle Maintenance Agreements rejected effective as of the date of this Motion.

**IV. The Trustee requests that the Court authorize the Trustee to transfer the TSA Assets to the Assignee pursuant to the TSA.**

35. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Courts have held that a proposed use of property pursuant to section 363(b) should be approved upon a finding that the decision to enter into the transaction represents a reasonable

14

LEGAL\67659028\8 6010823\00574256
02/06/2024

business judgment. *E.g., In re Filene's Basement, LLC,* No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("Transactions under § 363 must be based upon the sound business judgment of the debtor or trustee."); *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that sale outside ordinary course of business should be approved if "(1) there is a sound business purpose for the sale; (2) the proposed sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the buyer has acted in good faith."). Sales of property outside of the ordinary course of business may be by private sale. See Federal Rule of Bankruptcy Procedure 6004(f)(1).

36. Here, the proposed transfer of the TSA Assets to the Assignee pursuant to the TSA makes good business sense. The Tangible Assets consist primarily of servers and hard drives that are located at Akorn AG's former facilities in Switzerland and a third party data center in Chicago and are thus already in the possession or control of the Assignee. As noted above, the Assignee has agreed to provide the Trustee access to necessary Records and Data stored on the hardware constituting Tangible Assets until June 30, 2024, at which point the Trustee does not anticipate requiring further access. The Tangible Assets and Intangible Assets do not have any material resale value, particularly given the expected cost of disposal, and would otherwise be abandoned. Accordingly, the Trustee respectfully submits that the proposed transfer of the Tangible Assets in accordance with the TSA is a reasonable exercise of his business judgment and should be approved.

## COMPLIANCE WITH BANKRUPTCY RULE 6006 AND REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY

37. Bankruptcy Rule 6006(f) establishes requirements for a motion to assume and assign multiple executory contracts that are not between the same parties. The relief requested in this Motion complies with the requirements of Bankruptcy Rule 6006(f).

15

38. Pursuant to Bankruptcy Rule 6006(d), the Trustee requests that the Court waive any stay of the effectiveness of an order granting this Motion, including, but not limited to, the stay provided for under Bankruptcy Rule 6006(d). The Sale to the Purchaser has already been approved and has closed. The relief requested herein is necessary to complete consummation of the Sale, and it avoids the potential accrual of additional administrative expenses. Accordingly, the Trustee submits that cause exists to waive the fourteen-day stay provided for under Bankruptcy Rule 6006(d).

## NOTICE

39. Notice of this Motion together with a copy of the Motion will be given to the following parties: (a) the Office of the United States Trustee; (b) the Debtors' counsel; (c) known counsel to the Purchaser and Assignee; (d) known counterparties to the Assigned Contracts; (e) the ABL Administrative Agent; (f) the TL Administrative Agent; (g) known counsel to the ABL Lenders; (h) the largest thirty (30) unsecured creditors with names and addresses appearing in Schedule F of the Schedules of Assets and Liabilities prepared by the Debtors; and (i) all parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002. The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the assumption and assignment to the Assignee of the Assigned Contracts identified on Schedule I to the Proposed Order, including, but not limited to, the Assigned Oracle Contracts and the Assigned Programs; (ii) approving the Assignment Conditions; (iii) authorizing the rejection of the Remaining Oracle Maintenance Agreements, effective as of the date of filing this Motion; (iv) authorizing the transfer of the TSA Assets; and (v) granting such other relief as is just and proper.

LEGAL\67659028\8 6010823\00574256
02/06/2024

Dated: February 6, 2024                    COZEN O'CONNOR

                                  By:   */s/ John T. Carroll, III*
                                        John T. Carroll, III (DE No. 4060)
                                        Simon E. Fraser (DE No. 5335)
                                        1201 N. Market Street, Suite 1001
                                        Wilmington, DE 19801
                                        (302) 295-2000 Phone
                                        (302) 295-2013 Fax No.
                                        jcarroll@cozen.com
                                        sfraser@cozen.com

                                        David R. Doyle (IL ARDC 6303215)
                                        (Admitted in IL/Not admitted in DE)
                                        123 N. Wacker Drive, Suite 1800
                                        Chicago, IL 60606
                                        (312) 474-1648 Phone
                                        (312) 382-8910 Fax No.
                                        daviddoyle@cozen.com

                                        *Counsel to George L. Miller, Chapter 7 Trustee*