# Exhibit 1

**Agreement**

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

This Confidentiality and Non-Disclosure Agreement (this "Agreement") is made and entered into as of the last signature set forth below, by and between Thea Pharma Inc. and its affiliates (collectively, "Thea"), and George L. Miller as Chapter 7 Trustee (the "Trustee") in the case captioned *In re Akorn Holding Company LLC*, Case No. 23-10253 (KBO) (the "Bankruptcy Case") filed on February 23, 2023 and pending in the United States Bankruptcy Court for the District of Delaware (the "Court"). For purposes of this Agreement, Thea and the Trustee may be referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

A. The Parties possess certain confidential information relating to that certain Asset Purchase Agreement between Thea Pharma Inc. and Akorn Operating Company, LLC dated as of January 27, 2022 (the "APA") and the Ancillary Agreements (as defined in the APA), Thea Pharma, Inc.'s proof of claim, related documents, and such other documents or information which the Parties may elect to disclose to each other orally, in writing, or by any other media, for the purpose of facilitating negotiations between the Parties relating to Thea's claims in the Bankruptcy Case.

B. The Parties are willing to provide such Confidential Information subject to the terms and conditions set forth below.

C. The Parties have sought or will seek Court approval of this Agreement.

NOW, THEREFORE, for and in consideration of the mutual promises and benefits set forth in this Agreement, the Parties hereby agree as follows:

1. **Definition of Confidential Information.** "Confidential Information" means any confidential information, financial information, intellectual property, sales information, documents, technical data, or know-how, including, but not limited to, that which relates to research, product or service plans, business practices, agreement terms, products, services, employees, suppliers, customers, technology or other strategic partners, shareholders, markets, software, developments, inventions, processes, designs, engineering, hardware configuration information, marketing, finances, notes, analyses or studies and all tangible and intangible embodiments thereof of any kind whatsoever, whether conveyed in writing or orally by a Party or its Representatives (as defined below), which is designated in writing to be confidential or propriety (or if given orally, is confirmed in writing as having been disclosed as confidential or proprietary within a reasonably time after the oral disclosure). The term "Confidential Information" shall be deemed to include those portions of any notes, analyses, compilations, studies, interpretations, memoranda or other documents (regardless of the form thereof) prepared by the receiving Party or its Representatives which contain, reflect or are based upon, in whole or in part, any information covered by the first sentence of this Section. Confidential Information may also include information of third parties that is in the possession of a Party and is disclosed to the other Party under this Agreement. The term "Confidential Information" does not include information that (a) is known to the receiving Party prior to the disclosure of such information to the receiving Party by the disclosing Party or its Representatives, or is information generally available to the public prior to such disclosure; (b) becomes hereafter, through no act on the part of the receiving Party or its Representatives in violation of this Agreement, information generally available to the public; (c) is or becomes available to the receiving Party or its Representatives from a third party that, to receiving Party's or its Representatives' knowledge, is not bound by an obligation of confidentiality to the disclosing Party with respect to such information; or (d) was developed by, or for, the receiving Party without use of or reference to the Confidential Information.

2. **Designation of Confidential Information for Professional Eyes Only.** Certain Confidential Information to be provided by one Party to another is particularly sensitive or otherwise restricted in its ability to be shared with third parties. Therefore, the disclosing Party shall have the right to designate in writing such Confidential Information, as identified in the disclosing Party's reasonable discretion, as "for Professionals' Eyes Only" and any such Confidential Information may be inspected and reviewed by the receiving Party's professionals and advisors, and not by the receiving Party. Such designation shall be accomplished by clearly labeling such documents with a watermark or other legend "Professionals' Eyes Only" or by similar designation in a transmittal email or letter.

3. **Disclosure of Confidential Information.** The Parties are willing to disclose Confidential Information to each other on the following terms:

    a. The receiving Party agrees to take precautions at least as great as the precautions it takes to protect its own Confidential Information, but in no case less than reasonable precautions, to safeguard the Confidential Information of the disclosing Party;

    b. The receiving Party agrees not to disclose the Confidential Information to third parties except to its Representatives as provided in Section 3(c) or as provided in Section 4, without first having obtained the disclosing Party's prior written consent thereto; and

    c. The receiving Party may disclose the Confidential Information only to his professional advisers, professional consultants, or other independent contractors (collectively, to the extent Confidential Information is made available to the foregoing, the receiving Party's "Representatives") on a strict need-to-know basis, provided that each such Representative shall, unless already bound by confidentiality obligations to the receiving Party, be instructed to comply with the terms of this Agreement and the receiving Party shall be liable for any breach of this Agreement by such Representative.

4. **Confidential Information Required to be Disclosed by Law.** Notwithstanding any other provision in this Agreement (a) in the event that the receiving Party or any of its Representatives is requested or required by law, regulation, legal or regulatory process, court order, or other governmental or stock exchange requirement (each a "Governmental Requirement") to disclose any Confidential Information of the disclosing Party, the receiving Party shall, to the extent permitted by law and except in the case of a regulatory request not specifically directed toward the disclosing Party, provide the disclosing Party with notice of any such request or requirement so that the disclosing Party may seek a protective order or other appropriate remedy (and the receiving Party will reasonably cooperate with the disclosing Party in such efforts, at the disclosing Party's request and expense) and/or waive compliance with the provisions of this Agreement and (b) if, in the absence of a protective order or other remedy or the receipt of a waiver from the disclosing Party, the receiving Party or its Representative, as applicable, is advised by legal counsel that it is nonetheless required to disclose Confidential Information, the receiving Party or its Representative, as applicable, may, without liability hereunder, disclose that portion of the Confidential Information required to be disclosed (provided that the receiving Party will cooperate with the disclosing Party, at the disclosing Party's request and expense, to obtain assurance that confidential treatment will be accorded such disclosed information).

5. **No Grant of Rights.** Nothing in this Agreement, nor any disclosure made under this Agreement, shall be construed to grant the receiving Party any rights by license or otherwise, either express or implied, in any patent, copyright, trademark, trade secret or other form of intellectual property now or hereafter owned, obtained or licensed by the disclosing Party, or any other ownership rights of any kind. The Parties

acknowledge that the Confidential Information of the disclosing Party is, and remains, the exclusive property of the disclosing Party at all times throughout the world.

6. **No Representations or Warranties.** Nothing in this Agreement shall be deemed to be a representation or warranty by the disclosing Party about the Confidential Information, including without limitation the validity, strength, scope, nature, applicability, or breadth of the Confidential Information. The receiving Party acknowledges that the disclosing Party has not made any representation or warranty, express or implied, as to the accuracy or completeness of the Confidential Information.

7. **Return or Destruction of Confidential Information.** The receiving Party shall, at the disclosing Party's written request, return all originals, copies, summaries and any other form(s) or embodiment(s) made by the receiving Party of the Confidential Information in any tangible media as promptly as practicable following such request or, at the receiving Party's option, confirm destruction of the same as promptly as practicable of such request, and at the same time shall delete any Confidential Information from all computer files and from all computer archives or back-up media and if so requested in writing by disclosing Party, shall confirm to the disclosing Party in writing that it has done so. That portion of the Confidential Information or any modification thereof which is included in analyses, compilations, studies or other documents prepared by the receiving Party or its Representatives and that is not returned to the disclosing Party shall be destroyed and no copy thereof shall be retained and the receiving Party shall confirm that such destruction has occurred. The receiving Party's obligation to return or destroy copies of Confidential Information does not apply to copies of Confidential Information stored in system-type media (e.g., server system caches and backup tapes) or stored pursuant to internal compliance policies, provided that (a) such media are only accessible to the receiving Party's compliance, legal and information security personnel and (b) the receiving Party will be subject to the confidentiality obligations of this Agreement with respect to such retained Confidential Information.

8. **Equitable Relief.** The Parties agree that in the event of any breach or threatened breach by the receiving Party, the disclosing Party may seek and obtain, in addition to any other legal remedies which may be available, such equitable relief as may be necessary to protect the disclosing Party against such breach or threatened breach.

9. **Fees and Costs.** If any civil action, arbitration or other legal proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provision of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees, sales and use taxes, court costs and all expenses even if not taxable as court costs (including, without limitation, all such fees, taxes, costs and expenses incident to arbitration, appellate, bankruptcy and post-judgment proceedings), incurred in that civil action, arbitration or legal proceeding, in addition to any other relief to which such party or parties may be entitled. Attorneys' fees shall include, without limitation, paralegal fees, investigative fees, administrative costs, sales and use taxes and all other charges billed by the attorney to the prevailing party.

10. **Assignment.** Neither Party may assign this Agreement or any interest herein without the other Party's prior express written consent. Any attempted assignment or transfer by either Party not in accordance herewith shall be null and void.

11. **Severability.** If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining unaffected terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

**12.    Waiver.** No failure or delay by a Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege hereunder.

**13.    Governing Law, Jurisdiction and Venue.** The Parties agree that this Agreement shall be construed and controlled by the laws of the State of Delaware, without giving effect to the principles of choice of law of such State. Any civil action or legal proceeding arising out of or relating to this Agreement shall be brought exclusively in the United States Bankruptcy Court for the District of Delaware, or, if such court refuses jurisdiction, in the federal and state courts of Delaware. Each Party consents to the jurisdiction of such courts in any such civil action or legal proceeding and waives any objection to the laying of venue of any such civil action or legal proceeding in such courts.

**14.    Entire Agreement.** This Agreement is the only agreement between the Parties on this subject and supersedes all prior or contemporaneous agreements regarding its subject matter. In the event any website is used to provide any Confidential Information which contains a "click through" confidentiality agreement, the provisions of this Agreement shall supersede any such click through agreement. Any modifications to this Agreement shall not be effective unless they are communicated in writing and signed by both Parties.

**15.    Term.** This Agreement shall terminate and cease to have any force and effect on the date that is three (3) years from the date of this Agreement; provided that (a) such termination shall not relieve either Party of any liability for any breach of this Agreement by such Party or such Party's Representatives prior to such termination and (b) Section 7 of this Agreement shall survive such termination.

**16.    Miscellaneous.** The headings contained in this Agreement are for convenience only. The headings are not considered a part of this Agreement and will not limit or affect in any way the meaning or interpretation of this Agreement. This Agreement shall be construed without regard to any presumption or rule requiring construction or interpretation against the Party drafting or causing any instrument to be drafted. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but both of which shall constitute the same agreement. Signatures to this Agreement transmitted by electronic mail in "portable document format" (.pdf) form, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing the original signature.

*[Signatures follow on the next page.]*

Each of the Parties has executed this Agreement as of the date set forth below its signature.

**GEORGE L. MILLER**
**Chapter 7 Trustee for**
**Akorn Operating Company LLC**

Name: GEORGE L. MILLER
Title: CHAPTER 7 TRUSTEE
Date: 4/22/2024

**THEA PHARMA INC.**

DocuSigned by:
Susan Benton
49593C6C9E02425...
Name:
Title:
Date: 4/22/2024

5