IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al* [1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered)<br><br>**Objection Date:** August 5, 2024 at 4:00 p.m. (ET)<br>**Hearing Date:** August 12, 2024 at 1:30 p.m. (ET) |

**TRUSTEE'S MOTION FOR ENTRY OF ORDER (I) APPROVING SETTLEMENT WITH THEA PHARMA INC. AND (II) GRANTING RELATED RELIEF**

George L. Miller, the duly appointed chapter 7 trustee (the "Trustee") for the estates of the above-captioned debtors (collectively, the "Debtors" or "Estates"), pursuant to section 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully moves (the "Motion") for entry of an order (i) approving the *Settlement Agreement*, dated as of July 19, 2024, by and between Thea Pharma Inc. ("TPI"), and the Trustee, a copy of which is attached hereto as **Exhibit A** (the "Settlement Agreement"),[2] and (ii) granting related relief. In support of the Motion, the Trustee respectfully states as follows:

**JURISDICTION AND VENUE**

1.  The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

[2] All undefined terms herein shall carry the meanings given them in the Settlement Agreement.

*Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a Final Order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

## BACKGROUND

### A. Overview

3. On February 23, 2023 (the "Petition Date"), each of the affiliated Debtors Akorn Holding Company LLC, Case No. 23-10253; Akorn Intermediate Company LLC, Case No. 23-10254 and Akorn Operating Company, LLC, Case No. 23-10255 (collectively the "Bankruptcy Cases") filed a voluntary petition in the Bankruptcy Court for relief under chapter 7 of the Bankruptcy Code.

4. On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the chapter 7 Trustee to the Estates of each of the Debtors.

5. The Debtors' businesses included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products. The Debtors were an industry leader in branded and generic products in alternate dosage forms such as ophthalmics, injectables, oral liquids, topicals, inhalants and nasal sprays. The Debtors operated at numerous locations in the United States.

### B. The Asset Purchase Agreement and TPI's Claim Notice

6. Prior to the Petition Date, on January 27, 2022, TPI, as "Buyer," Debtor, Akorn Operating Company LLC ("Akorn Operating"), as "Seller," and solely for the purposes of Section

12.06 thereof, Laboratoires Théa SAS ("Théa SAS" and, together with TPI, the "Théa Parties"), as "Guarantor," entered into that certain Asset Purchase Agreement (collectively, with all ancillary agreements, schedules, and documents attached thereto and contemplated thereby, the "Asset Purchase Agreement" or "APA"), pursuant to which TPI acquired the "Purchased Assets"[3] from Akorn Operating.

7. The consummation of the transactions contemplated by the Asset Purchase Agreement (the "Closing") occurred on March 8, 2022 (the "Closing Date"). In connection with the Closing, TPI, Théa SAS, Akorn Operating, and the Debtors' non-debtor Swiss affiliate (as of the Petition Date), Akorn AG, as applicable, entered into various Ancillary Agreements[4], as contemplated by the Asset Purchase Agreement to facilitate the transactions thereunder, including that certain Escrow Agreement, by and among TPI, Akorn Operating, and JPMorgan Chase Bank, N.A. (the "Escrow Agent") dated as of the Closing Date (the "Escrow Agreement").

8. Pursuant to the Escrow Agreement, TPI and Akorn Operating deposited $6,750,000 into the Escrow Account[5], to serve as security for, and be available to TPI, to pay amounts owed to TPI in respect of Akorn Operating's indemnification obligations set forth in Article X of the APA. The representations and warranties and covenants to be performed prior to closing contained in the Asset Purchase Agreement, as well as the liability for the breach thereof, survived until the date fifteen (15) months following the Closing Date, which was June 8, 2023. To assert an indemnification claim against the Escrow Amount, TPI must transmit written notice (a "Claim

---

[3] The term "Purchased Assets" is defined in Section 2.01 of the APA, and such definition is incorporated herein by reference.
[4] The term "Ancillary Agreements" is defined in Section 1.01 of the APA, and such definition is incorporated herein by reference.
[5] As defined in Section 2(a) of the Escrow Agreement.

Notice") to the Escrow Agent and, contemporaneously therewith, Akorn Operating by no later than June 8, 2023.

9. On May 30, 2023, TPI filed the *Motion for the Entry of an Order (I) Determining that the Automatic Stay Does Not Apply to Certain Funds Held in Escrow or, (II) In the Alternative, Granting Limited Relief from the Automatic Stay* [Docket No. 297], seeking a determination that the automatic stay did not prevent TPI from delivering a Claim Notice to Akorn Operating under the Escrow Agreement.

10. On June 2, 2023, TPI filed the *Certification of Counsel Regarding Order Approving Stipulation Granting Limited Relief from the Automatic Stay* [Docket No. 308], in which TPI and the Trustee stipulated to relief from the automatic stay to permit TPI to submit the Claim Notice under the Escrow Agreement (the "Stipulation").

11. On June 2, 2023, the Court entered the *Order Approving Stipulation Granting Limited Relief from the Automatic Stay* [Docket No. 309], approving the Stipulation.

12. On June 6, 2023, TPI delivered the Claim Notice under the Escrow Agreement to the Trustee.

13. On March 23, 2023, the Trustee filed the *Notice of Change From No-Asset to Asset and Request to the Clerk to Fix Bar Date to File Claims Against the Estate* [Docket No. 48], which, among other things, provided notice that the Trustee had discovered assets and requested that the Clerk of Court set a deadline to file proofs of claim against the Debtors' estates.

14. On March 24, 2023, the Clerk of Court filed the *Notice That There are Assets From Which a Dividend Might Possibly be Paid to Creditors* [Docket No. 52], which, among other things, established the deadline to file proofs of claims against the Debtors' estates as June 26, 2023.

4

15.     On June 26, 2023, TPI filed a proof of claim against Akorn Operating identified as Claim No. 412 in Akorn Operating's claims register (Case No. 23-10255) (the "Claim"), asserting a claim in the amount of $24,873,595.10 and reserving the right to amend, clarify, or supplement the Claim at any time, manner, and for any reason. The stated bases for the Claim include, but are not limited to, claims relating to indemnification obligations allegedly owed by Akorn Operating to TPI under the Asset Purchase Agreement.

C.     **The Settlement Agreement**

16.    After arm's length negotiations conducted in good faith, TPI and the Trustee have reached an agreement to resolve TPI's Claim and the Claim Notice. Subject to Bankruptcy Court approval, the Parties have agreed, in summary,[6] as follows:

(a)  TPI's Claim has been settled for an amount of $5,734,555 (the "Settlement Amount"), which will consist of the following components: (i) TPI shall be paid $4,393,496 through a release of funds from the Escrow Account (the "Escrow Amount") to TPI, and (ii) TPI shall receive an allowed general unsecured non-priority claim in the amount of $1,341,059 against the estate of Akorn Operating (the "GUC Claim").

(b)  Any remaining amount in the Escrow Account (after accounting for the payment of the Escrow Amount to TPI) shall be distributed to the Trustee.

(c)  The Trustee and TPI shall cause to be executed all documentation required to facilitate the distributions from the Escrow Amount to TPI and to the Trustee, including, without limitation, within two (2) business days of the approval of the Settlement Agreement by the Court, a joint written instruction to the Escrow Agent authorizing the immediate release of the Escrow Amount to TPI and any remaining amount in the Escrow Account (after accounting for the payment of the Escrow Amount to TPI) to the Trustee.

(d)  The Parties agree to release all claims against each other arising from the Asset Purchase Agreement and the Ancillary Agreements.

---

[6] The following is intended merely as a summary of certain provisions in the Settlement Agreement. The summary should not be construed as a waiver or limitation of any of the terms of the Settlement Agreement. To the extent of any inconsistency between the terms of the Settlement Agreement and the Motion, the terms of the Settlement Agreement shall apply.

5

**RELIEF REQUESTED**

17. By this Motion, the Trustee seeks the entry of an order, substantially in the form attached hereto, approving the terms of the Settlement Agreement, and authorizing the Trustee to take any and all actions as may be necessary and appropriate to implement the provisions of the Settlement Agreement.

**BASIS FOR RELIEF REQUESTED**

**I. The Trustee requests that the Bankruptcy Court approve the Settlement Agreement.**

18. This Bankruptcy Court has the authority to grant the relief requested in this Motion pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a). Bankruptcy Rule 9019 governs the approval of compromises and settlements, and provides as follows:

> On motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019. In addition, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

19. Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). In addition, this district has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

20. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entm't*

6

*Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (*quoting Louise's*, 211 B.R. at 801). The Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors. *See Martin*, 91 F.3d at 393 (*citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).

21.   Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425. The *TMT* rule does not require the Bankruptcy Court to hold a full evidentiary hearing before a compromise can be approved, but rather the Bankruptcy Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'"

22.   The Trustee's agreement to release the Escrow Amount to TPI is further authorized by section 363(b)(1) of the Bankruptcy Code. Under section 363(b)(1), the Trustee, "after notice and a hearing, may use . . . other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts have held that proposed uses of estate property pursuant to section 363(b)(1) should be approved upon a finding that the decision to enter into the transaction represents a reasonable business judgment. *E.g., In re Filene's Basement,* LLC, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("Transactions under § 363 must be based upon the sound business judgment of the debtor or trustee.").

23.   The Trustee submits in the exercise of his business judgment that the Settlement Agreement and the proposed settlement embodied therein meets all of the above criteria. TPI has

asserted a Claim in excess of $24 million based on Akorn Operating's indemnification obligations under and breaches of the pre-petition APA. Given the amounts at issue, it makes good business sense to resolve the matter consensually and to avoid costly litigation. By entering into the Settlement Agreement, the Trustee has efficiently reconciled TPI's Claim in return for a release of any and all claims arising from the Asset Purchase Agreement and the Ancillary Agreements. Moreover, the agreed upon Settlement Amount is a fraction of the asserted Claim amount, and the proposed Settlement will allow the Trustee to recover funds from the Escrow Account for the benefit of the estates. The Trustee respectfully submits that the terms of the Settlement Agreement fall well within the range of reasonable litigation outcomes and should be approved.

24. For these reasons, the Settlement Agreement is fair, reasonable and well within the Trustee's reasonable business judgment. Accordingly, the Trustee respectfully submits that the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019 and section 363(b)(1) of the Bankruptcy Code.

## II. The Trustee requests that the stay of Bankruptcy Rule 6004(h) not apply.

25. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The Trustee requests that the Bankruptcy Court waive this fourteen day stay, and that the order approving this Motion be effective immediately.

26. The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Although the Rules and the Advisory Committee Notes are silent as to when a court should "order otherwise" and waive the fourteen day stay, the leading bankruptcy treatise suggests that the 14-day stay period should be eliminated to allow a transaction to close immediately "where there has been no objection to the procedure." 10 Collier on Bankruptcy ¶ 6004.11 (16th ed. 2023).

The treatise further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.

27.     The terms of the Settlement Agreement require the Parties to submit joint written instruction to the Escrow Agent within two (2) business days of the approval of the Settlement Agreement by this Court. Consequently, a waiver of the Rule 6004(h) stay is necessary in order to effectuate the terms of the Settlement Agreement.

## NOTICE

28.     Notice of this Motion will be given to the following parties (the "Notice Parties"): (i) the Office of the United States Trustee; (ii) counsel to TPI; (iii) counsel to the Debtors Young, Conaway, Stargatt & Taylor LLP; (iv) the largest thirty (30) unsecured creditors with names and addresses appearing in Schedule F of the Schedules of Assets and Liabilities prepared by the Debtors; and (v) all parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002.   The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court enter an order granting the relief requested by this Motion, as well as any additional relief as is just and proper.

Dated: July 22, 2024                                                                COZEN O'CONNOR

By: */s/ John T. Carroll, III*
John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE 19801
Tel: (302) 295-2000
jcarroll@cozen.com
sfraser@cozen.com

Christina M. Sanfelippo
123 North Wacker Drive
Suite 1800
Chicago, IL 60606
(312) 382-3100 Telephone
csanfelippo@cozen.com

*Counsel to George L. Miller, Chapter 7 Trustee*

10

LEGAL\71653573\4