# EXHIBIT "A"

SETTLEMENT AGREEMENT

[Execution Version]

# SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "Agreement"), dated July 19, 2024, is made by and between (1) George L. Miller, the chapter 7 trustee (the "Trustee") appointed for the estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") in the chapter 7 cases (the "Chapter 7 Cases") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and jointly administered under the case caption *In re Akorn Holding Company LLC, et al.*, Case No. 23-10253 (KBO); and (2) Thea Pharma Inc. ("TPI"). Hereinafter, the Trustee and TPI are referred to collectively as the "Parties."

**WHEREAS**, on February 23, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 7 of title 11 of the United States Code in the Bankruptcy Court, thereby commencing the Chapter 7 Cases.

**WHEREAS**, prior to the Petition Date, on January 27, 2022, TPI, as "Buyer," Debtor, Akorn Operating Company LLC ("Akorn Operating"), as "Seller," and solely for the purposes of Section 12.06 thereof, Laboratoires Théa SAS ("Théa SAS" and, together with TPI, the "Théa Parties"), as "Guarantor," entered into that certain Asset Purchase Agreement (collectively, with all ancillary agreements, schedules, and documents attached thereto and contemplated thereby, the "Asset Purchase Agreement" or "APA"),[1] pursuant to which TPI acquired the "Purchased Assets"[2] from Akorn Operating. The consummation of the transactions

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the APA. The Asset Purchase Agreement contains confidential and sensitive commercial information, which, if disclosed, would likely cause substantial and irreparable injury to the Théa Parties. The Théa Parties have previously provided the Trustee with a copy of the Asset Purchase Agreement.

[2] The term "Purchased Assets" is defined in Section 2.01 of the APA, and such definition is incorporated herein by reference.

contemplated by the Asset Purchase Agreement (the "Closing") occurred on March 8, 2022 (the "Closing Date").  In connection with the Closing, TPI, Théa SAS, Akorn Operating, and the Debtors' non-debtor Swiss affiliate (as of the Petition Date), Akorn AG, as applicable, entered into various Ancillary Agreements[3], as contemplated by the Asset Purchase Agreement to facilitate the transactions thereunder, including that certain Escrow Agreement, by and among TPI, Akorn Operating, and JPMorgan Chase Bank, N.A. (the "Escrow Agent") dated as of the Closing Date (the "Escrow Agreement").

**WHEREAS**, pursuant to the Escrow Agreement, TPI and Akorn Operating deposited $6,750,000 into the Escrow Account, to serve as security for, and be available to TPI, to pay amounts owed to TPI in respect of Akorn Operating's indemnification obligations set forth in Article X of the APA.

**WHEREAS**, on May 30, 2023, TPI filed the *Motion for the Entry of an Order (I) Determining that the Automatic Stay Does Not Apply to Certain Funds Held in Escrow or, (II) In the Alternative, Granting Limited Relief from the Automatic Stay* [Docket No. 297] to deliver a claim notice under the Escrow Agreement.

**WHEREAS**, on June 2, 2023, TPI filed the *Certification of Counsel Regarding Order Approving Stipulation Granting Limited Relief from the Automatic Stay* [Docket No. 308], in which TPI and the Trustee stipulated to relief from the automatic stay to permit TPI to submit the claim notice under the Escrow Agreement.  On June 2, 2023, the Court entered the *Order Approving Stipulation Granting Limited Relief from the Automatic Stay* [Docket No. 309], approving the stipulation.

---

[3] The term "Ancillary Agreements" is defined in Section 1.01 of the APA, and such definition is incorporated herein by reference.

WHEREAS, on June 6, 2023, TPI delivered the claim notice under the Escrow Agreement to the Trustee.

WHEREAS, on March 23, 2023, the Trustee filed the *Notice of Change From No-Asset to Asset and Request to the Clerk to Fix Bar Date to File Claims Against the Estate* [Docket No. 48], which, among other things, provided notice that the Trustee had discovered assets and requested that the Clerk of Court set a deadline to file proofs of claim against the Debtors' estate. On March 24, 2023, the Clerk of Court filed the *Notice That There are Assets From Which a Dividend Might Possibly be Paid to Creditors* [Docket No. 52], which, among other things, established the deadline to file proofs of claims against the Debtors' estates as June 26, 2023 (the "Bar Date").

WHEREAS, on June 26, 2023, TPI filed a proof of claim against Akorn Operating identified as Claim No. 412 in Akorn Operating's claims register (Case No. 23-10255) (the "Claim"), asserting a claim in the amount of $24,873,595.10 and reserving the right to amend, clarify, or supplement the Proof of Claim at any time, manner, and for any reason.

WHEREAS, the Parties have engaged in arm's-length negotiations and now desire to resolve their disputes regarding the Claim and all related matters, pursuant to the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the foregoing recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1. **Recitals.** The recitals set forth above are expressly incorporated herein and are made an integral part of this Agreement.

2. **Counterparts; Settlement Effective Date.** This Agreement may be executed in one or more counterparts and by electronic means, all of which shall be considered one and the same agreement, and shall become effective on the date that (a) one or more such counterparts have been signed by each of the Parties and delivered to all Parties, and (b) the Bankruptcy Court has approved this Agreement. Electronic signatures shall be deemed original signatures.

3. **Claim Amount.** The Parties hereby agree that the Claim has been settled for an amount of $5,734,555 (the "Settlement Amount"), which will consist of the following components: (i) TPI shall be paid $4,393,496 through a release of funds from the Escrow Account[4] (the "Escrow Amount") to TPI and (ii) TPI shall receive an allowed general unsecured non-priority claim in the amount of $1,341,059 against the estate of Akorn Operating (the "GUC Claim").

4. **Joint Direction to Escrow Agent.** The Trustee and TPI agree to cause to be executed all documentation required to facilitate the distribution of the Escrow Amount to TPI and any remaining amount in the Escrow Account (after accounting for the payment of the Escrow Amount to TPI) to the Trustee, which shall include, without limitation, within two (2) business days of the approval of this Agreement by the Court, a joint written instruction to the Escrow Agent, executed by each of the Trustee and TPI, respectively, authorizing the immediate release of the Escrow Amount to TPI and any remaining amount in the Escrow Account (after accounting for the payment of the Escrow Amount to TPI) to the Trustee, in accordance with the terms of this Agreement.

---

[4] As defined in Section 2(a) of the Escrow Agreement.

5. **Full Satisfaction.** The Claim shall be deemed fully satisfied upon (a) TPI's receipt of the Escrow Amount and (b) allowance of the GUC Claim. Except as expressly provided herein, TPI shall have no other claims against the Debtors or the Trustee.

6. **Mutual Releases.** The following mutual releases shall become effective upon (a) Court approval of this Agreement, and (b) (i) TPI's receipt of the Escrow Amount, and (ii) allowance of the GUC Claim:

(a) TPI, on behalf of itself and any and all agents, attorneys, beneficiaries, directors, officers, employees, members, managers, trustees, affiliates, subsidiaries, successors, and assigns of TPI (collectively, the "Claimant Parties") hereby releases, remises and forever discharges the Debtors and the Trustee, and any and all agents, attorneys, advisors, beneficiaries, directors, officers, employees, members, managers, trustees, affiliates, subsidiaries, successors, and assigns of the Debtors and the Trustee (collectively, the "Debtor Parties"), of and from any and all claims, debts, refunds, demands, liabilities, agreements, obligations, controversies, actions, causes of action, suits, costs, attorneys' fees, expenses, damages, liens, and judgments, of any nature whatsoever, at law or in equity or otherwise, whether asserted or unasserted, whether known or unknown, that the Claimant Parties may have against any or all of the Debtor Parties, including any claims or amounts owed under the Asset Purchase Agreement or Ancillary Agreements, subject only to the Trustee's obligations under this Agreement.

(b) The Trustee, on behalf of itself and the Debtor Parties hereby releases, remises and forever discharges TPI and the Claimant Parties, of and from any and all claims, debts, refunds, demands, liabilities, agreements, obligations, controversies, actions, causes of action, suits, costs, attorneys' fees, expenses, damages, liens, and judgments, of any nature whatsoever, at law or in equity or otherwise, whether asserted or unasserted, whether known or unknown, that the Debtor Parties may have against any or all of the Claimant Parties, including any claims or amounts owed under the Asset Purchase Agreement or Ancillary Agreements.

7. **Binding Effect.** This Agreement shall inure to the benefit of, and shall be binding upon, the Parties hereto and their respective successors and assigns, including any debtor in a subsequently converted case under Chapter 11 of the Bankruptcy Code.

8. **Transfer of Claim.** TPI represents and warrants that it has not transferred or assigned, or purported to transfer or assign the Claim, or any other claim against any of the Debtors or the Debtor Parties.

9. **No Admission.** Each Party acknowledges and agrees that nothing in this Agreement constitutes an admission or concession of any legal or factual issue raised, referred to, or contained in this Agreement.

10. **Expenses.** Each Party agrees to bear its own costs, expenses, and attorneys' fees incurred in connection with the negotiations related to and preparation of this Agreement and to not seek from each other reimbursement of any such costs, expenses, or attorneys' fees.

11. **Authority.** Each Party represents and warrants that each individual signing the Agreement on behalf of such Party is fully authorized to sign on behalf of said Party. Each Party represents and warrants that it has read and understands the terms of this Agreement.

12. **Good Faith.** Each Party covenants that it has entered into this Agreement in good faith, and agrees to do all things necessary or convenient to carry out and effectuate the terms of this Agreement, including, without limitation, the execution of all further and additional documents and authorization of all transfers of funds necessary to implement the terms of this Agreement.

13. **Further Assurances.** The Parties hereby agree to execute such further documents or instruments as may be necessary or appropriate to carry out the intention of this Agreement.

14. **Bankruptcy Court Approval.** Promptly upon the execution of this Agreement, the Trustee shall file and serve a motion (the "Approval Motion") with the Bankruptcy Court seeking entry of an order (the "Approval Order") approving this Agreement pursuant to

Bankruptcy Rule 9019. The Approval Motion and Approval Order shall be in form and substance acceptable to TPI. For the avoidance of doubt, upon entry of the Approval Order, the GUC Claim will be allowed.

15. **Governing Law.** This Agreement shall be governed and construed under the laws of the State of Delaware.

16. **Entire Agreement; No Modification.** No representations, warranties, covenants or agreements have been made concerning or affecting the subject matter of this Agreement, except as are contained herein. This Agreement may not be changed orally, but only by an agreement in writing signed by the Party against whom enforcement of any change is sought.

17. **Jurisdiction.** The Parties hereby irrevocably consent to the jurisdiction of the Bankruptcy Court with respect to any action to enforce the terms and provisions of this Agreement and, so long as the Bankruptcy Court has and agrees to exercise such jurisdiction, expressly waive any right to commence any such action in any other forum. In the event the Bankruptcy Court determines that it does not have such jurisdiction or declines to exercise such jurisdiction, then the Parties hereby irrevocably consent to the jurisdiction of the state and federal courts of Delaware with respect to any action to enforce the terms and provisions of this Agreement and expressly waive any right to commence any such action in any other forum.

18. **Non-Severable.** The provisions of this Agreement are non-severable.

19. **Headings.** The headings of this Agreement are for convenience of reference and shall not form part of, or affect the interpretation of, this Agreement.

*[Signatures Pages Follow]*

[Execution Version]

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be executed on their behalf as of the date listed below.

**CHAPTER 7 TRUSTEE**

By: *[signature]*
Name: George L. Miller
Title: Chapter 7 Trustee
Date: July 19, 2024

IN WITNESS WHEREOF, the undersigned has caused this Agreement to be executed on their behalf as of the date listed below.

**THEA PHARMA INC.**

By: _____*David PONCHON*_____

Name: David Ponchon
Title: President
Date: July 22, 2024

*Signature Page to Settlement Agreement Between Trustee and Thea Pharma Inc.*