EXHIBIT "A"

Sur-Reply in Support of Chapter 7 Trustee's Objection to Debtors' Motion for Entry of an Order Authorizing and Approving the Conversion of These Chapter 7 Cases to Cases under Chapter 11

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al.* [1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br>(Jointly Administered)<br><br>**Re D.I. 832, 858, 909** |

**SUR-REPLY IN SUPPORT OF CHAPTER 7 TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE CONVERSION OF THESE CHAPTER 7 CASES TO CASES UNDER CHAPTER 11**

George L. Miller, as chapter 7 trustee (the "Trustee") of the estates (the "Estates") of the above-captioned debtors (the "Debtors"), through his undersigned counsel, submits this Sur-reply in support of his *Objection to Debtors' Motion for Entry of an Order Authorizing and Approving the Conversion of These Chapter 7 Cases to Cases Under Chapter 11* [D.I. 858] (the "Objection"),[2] and in response to the *Debtors' Reply in Further Support of Motion for Entry of an Order Authorizing and Approving the Conversion of These Chapter 7 Cases to Cases under Chapter 11* [D.I. 909] (the "Reply"), and respectfully states:

1. In their Reply, among other things, the Movants misinterpret, and or ignore, a large body of uncontroverted caselaw holding that a chapter 7 debtor's right to convert its case to a case under chapter 11 is not absolute – including binding precedent from the Supreme Court of the United States and an opinion of this Court published just last year. As the Trustee set forth in detail in his Objection, the caselaw, including this Court's 2023 decision in In re NLG, LLC, No.

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

[2] Capitalized terms not otherwise defined in this Sur-reply shall have the meanings provided in the Objection.

21-11269, 2023 WL 2053920 (Bankr. D. Del. Feb. 16, 2023), sets out clearly and in detail the governing standard for such a request from a chapter 7 debtor. Rather than reiterating his prior discussion of the caselaw, the Trustee will focus this Sur-reply only on several discrete issues of corporate law raised in the Reply.

2. In the Objection, the Trustee noted that the Delaware Secretary of State had cancelled Akorn Holding's certificate of formation in July of 2023. Also in July of 2023, Akorn Holding's governing operating agreement, the *Amended & Restated Limited Liability Company Agreement of Akorn Holding Company LLC, a Delaware limited liability company* (the "Holding Operating Agreement") terminated by its own terms. Section 9.8 of the Holding Operating Agreement provides:

> Subject to Section 11.13, this Agreement shall terminate automatically and be of no further force and effect (provided, that no such termination shall relieve any party of any liability for any breach of this Agreement by such party prior to such date and time of termination) immediately prior to (i) the effectiveness of an Initial Public Offering, or (ii) **upon the consummation of a Sale of the Company**.

(Holding Operating Agm't § 9.8) (emphasis added). The Holding Operating Agreement defines the term "Sale of the Company" to include "a sale of assets constituting all or substantially all of the assets of the Company [Akorn Holding] and its Subsidiaries [Akorn Intermediate and Akorn Operating]." (*Id.* at § 1.1, p. 9.) And here, it is undisputed that substantially all of the Debtors' assets have been sold, with the majority of the proceeds already distributed to creditors. (*See* Objection pp. 6-8).

3. In their Reply, the Movants do not contest the fact that Akorn Holding's certificate of formation was cancelled, and make no mention of the fact that the Holding Operating Agreement terminated more than a year ago. Nor do they dispute the effect of the cancellation of

2

Akorn Holdings' certificate of formation – that any purported actions taken by the company are invalid and without effect. (*See* Objection pp. 29-31).

4. Instead, the Movants blame the Trustee, arguing that the "party with the purse strings" – as they refer to the Trustee – had an "obligation" to spend the Estates' money to maintain the Debtors' good standing. (Reply p. 2). The argument is frivolous. The notion that the Trustee should spend the Estates' assets to maintain the corporate shell of a defunct and terminated company reveals their misunderstanding of fiduciary obligations, as well as section 363(b) of the Bankruptcy Code.

5. In their Reply, the Movants also disclosed their recent, futile attempt to resurrect Akorn Holding. They state that after the Objection was filed, on July 24, 2024, the Limited Director filed a purported "Certificate of Revival" for Akorn Holding with the Delaware Secretary of State. *See* Reply, Ex. A. In this document, the Limited Director certified, under penalty of perjury,[3] that this document had been filed "by one or more persons authorized to execute and file this certificate in order to revive [Akorn Holding]." (*See* Reply, Ex. A.). According to the Movants, the filing of the Certificate of Revival acts to revive Akorn Holding's good standing under Delaware law.

6. In reality, the Limited Director had (and still has) no authority to either sign or file the purported Certificate of Revival on behalf of Akorn Holding. The Purported Consent appointing the Limited Director, attached as Exhibit "<u>B</u>," (the "<u>Purported Consent</u>") to the *Debtors' Motion for Entry of an Order Authorizing and Approving the Conversion of These*

---

[3] Del. Code Ann. tit. 6, § 18-204 ("The execution of a certificate by a person who is authorized by this chapter [the Delaware Limited Liability Company Act] to execute such certificate constitutes an oath or affirmation, under the penalties of perjury in the third degree, that, to the best of such person's knowledge and belief, the facts stated therein shall be true at the time such certificate becomes effective as provided in this chapter.").

*Chapter 7 Cases to Cases Under Chapter 11* [D.I. 832] (the "Conversion Motion") says nothing about authority to file a Certificate of Revival.[4]  As the Purported Consent makes abundantly clear, the Limited Director was appointed "for the limited and exclusive purpose of authorizing and approving the filing of [the Conversion Motion]." (Purported Consent) (emphasis added). Nowhere does the Purported Consent authorize the Limited Director to file the Certificate of Revival. Rather, his "limited and exclusive purpose" was solely to approve the filing of the Conversion Motion. Once it was filed, the authority of the Limited Director ceased.[5]

7.  The Movants also incorrectly claim to have resurrected the good standing of <u>all</u> of the Debtors. (*See* Reply p. 2) ("The Debtors . . . have revived their good standing."). In reality, the Movants have never even *attempted* to revive the good standing of Akorn Intermediate or Akorn Operating, much less succeeded in doing so. This was actually prudent on the part of the Movants because any such act purportedly taken on behalf of Akorn Intermediate or Akorn Operating would have further violated the automatic stay.

8.  On the topic of the automatic stay, contrary to the Movants' two pages of argument (Reply pp. 13-15), the Trustee <u>did not</u> argue in the Objection that the Movants violated the

---

[4] Despite having drafted it, the Movants misunderstand other aspects of the Purported Consent. For example, according to the Movants, the Limited Director has not delegated to counsel all decision-making in a hypothetical chapter 11 case – only the ability to prosecute the Conversion Motion. (Reply p. 16). Again, this is simply incorrect. The Purported Consent purports to grant the Movants' counsel authority to "take all actions necessary and appropriate to prosecute the Chapter 11 Cases of the Company and its Subsidiaries." *See* the Purported Consent. The Trustee's concerns about an abdication of fiduciary responsibility is thus not a "wild overstatement," as suggested by the Movants, but a valid question about how the Movants intend to make business decisions in a hypothetical chapter 11. The Movants' counsel has unlimited discretion, while no one at the companies – including the Limited Director – has authority to do a single thing. The Movants' attempt to quell these concerns by noting that the Holding Operating Agreement waives director fiduciary duties only exacerbates them.

[5] The Movants also appear to suggest that the Board of Akorn Holding "delegated" to the Limited Director the responsibility of filing the Certificate of Revival. (Reply p. 16) ("The LLC agreement . . . expressly provides the board with the power to delegate"). But of course, there is no Board that could have delegated this task to the Limited Director, all of the Board members having resigned. (*See* Objection p. 11).

automatic stay by controlling Akorn Holding. Rather, it is the Movants' attempt to control *Akorn Intermediate* and *Akorn Operating* that violated – and continues to violate – the automatic stay.[6] *See* Objection pp. 12 (arguing that Purported Consent and Conversion Motion "constitute violations of the automatic stay with respect to the Estates' 100% ownership interest in Akorn Intermediate and Akorn Operating"), 26 ("Akorn Intermediate and Akorn Operating are member-managed, meaning that the Trustee has the sole right to manage those companies. The Movants' attempt to manage and control the companies is invalid and a violation of the automatic stay.").

9. The Movants' tortured argument about Akorn Holding and a "corporate governance exception" to the automatic stay is simply a distraction from their ongoing stay violations with respect to Akorn Intermediate and Akorn Operating. Simply put, they are attempting to "exercise control over property of the estate[s]" in violation of section 362(a)(3) of the Bankruptcy Code (among other things). The only party who has authority to "control" Akorn Intermediate or Akorn Operating is their single member-manager – the Trustee. The Movants' attempt to assume control over these companies is a violation of the automatic stay. (*See* Objection p. 26). The Movants' one-sentence argument on the merits – effectively, that the appointment of the Limited Director of Akorn Holding *ipso facto* gives them control of its subsidiaries – addresses none of the arguments in the Objection. *See* Reply p. 18.

---

[6] The Trustee reserves all rights regarding the Movants' ongoing violations of the automatic stay, including without limitation his right to seek sanctions including without limitations attorneys' fees.

WHEREFORE, the Trustee respectfully requests the Court enter an order denying the Conversion Motion in its entirety, and granting such other and further relief as the Court deems just.

Dated:  September 4, 2024                               COZEN O'CONNOR

                                                        By:    /s/ John T. Carroll, III
                                                            John T. Carroll, III (DE No. 4060)
                                                            Simon E. Fraser (DE No. 5335)
                                                            1201 N. Market Street
                                                            Suite 1001
                                                            Wilmington, DE  19801
                                                            (302) 295-2000 Phone
                                                            (302) 295-2013 Fax No.
                                                            jcarroll@cozen.com
                                                            sfraser@cozen.com

                                                            David R. Doyle (IL ARDC 6303215)
                                                            (Admitted in IL/Not admitted in DE)
                                                            123 N. Wacker Drive
                                                            Suite 1800
                                                            Chicago, IL  60606
                                                            (312) 474-1648 Phone
                                                            (312) 382-8910 Fax
                                                            daviddoyle@cozen.com

                                                            *Counsel to George L. Miller,*
                                                            *Chapter 7 Trustee*