**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC,<br>*et al* [1]<br>                Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered)<br><br>**Objection Date:**   November 13, 2024 at 4:00 p.m. ET<br>**Hearing Date:**    November 20, 2024 at 9:30 a.m. ET |

**TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING SETTLEMENT
OF CONVERSION MOTION PURSUANT TO FED. R. BANKR. P. 9019
AND (II) GRANTING RELATED RELIEF**

      George L. Miller, the duly appointed chapter 7 trustee (the "Trustee") for the estates of the above-captioned debtors (the "Estates"), pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), through his undersigned counsel, respectfully moves (the "Motion") for the entry of an order (i) approving the settlement of the Conversion Motion (as defined below) embodied in the Akorn – Settlement Term Sheet, dated as of October 17, 2024, by and between the Trustee, on the one hand, and the Debtor Movants (as defined below) and the controlling members of Debtor Akorn Holding Company, LLC ("Holdco"), on the other hand, a copy of which is attached hereto as Exhibit "A" (the "Settlement Agreement"), and (ii) authorizing the Trustee to take any and all actions as may be necessary and appropriate to implement the provisions of the Settlement Agreement. In support of the Motion, the Trustee respectfully states as follows:

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a Final Order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**BACKGROUND**

A. Overview

3. On February 23, 2023 (the "Petition Date"), each of the affiliated Debtors Akorn Holding Company LLC, Case No. 23-10253; Akorn Intermediate Company LLC, Case No. 23-10254 and Akorn Operating Company, LLC, Case No. 23-10255 (collectively the "Bankruptcy Cases") filed a voluntary petition in the Bankruptcy Court for relief under chapter 7 of the Bankruptcy Code.

4. On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the chapter 7 Trustee to the Estates of each of the Debtors.

5. Prior to the Petition Date, the Debtors' businesses included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products. The Debtors were an industry leader in branded and generic products

in alternate dosage forms such as ophthalmics, injectables, oral liquids, topicals, inhalants and nasal sprays. The Debtors operated at numerous locations in the United States.

6. On April 28, 2023, the Court entered its *Order Granting Trustee's Motion for Entry of an Order (A) Approving Bidding Procedures in Connection with Sale of Substantially All of the Estates' Assets, (B) Scheduling an Auction and Hearing to Consider the Proposed Sale, (C) Approving the Form and Manner of Notice Thereof, and (B) Granting Certain Related Relief* [Dkt. No. 137] (the "Bidding Procedures Order"). In the Bidding Procedures Order, the Court approved bidding procedures in connection with the Trustee's sale of substantially all of the Debtors' assets, including the Estates' interests in certain abbreviated new drug applications ("ANDAs"), real estate and equipment. Beginning on May 10, 2023, the Trustee conducted an auction as provided for in the Bidding Procedures Order.

7. Following the auction conducted in accordance with the Bidding Procedures Order, the Court subsequently entered a series of orders approving the sales to the Successful Bidders (the "Auction Sales"). *See* [Dkt. Nos. 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 368, 369, 370, 371, 376, 382]. In addition, the Court entered orders approving the Trustee's private sales of assets not sold via auction (the "Private Sales," and together with the Auction Sales, the "Asset Sales") of the Estates' interests in certain ANDAs, inventory, raw materials and equipment. See [Dkt. Nos. 216, 220, 300, 560, 624, 628, 662, 684].

8. All of the Asset Sales subsequently closed successfully by the Trustee. On or about July 6, 2023, the Trustee distributed approximately $204 million in sale proceeds to the lenders under both of the Debtors' secured credit facilities, which repaid the Debtors' secured debt in full. Almost all of the Estates' assets have been liquidated and a majority of the proceeds have been

distributed. In the aggregate, the Trustee has distributed a total of approximately $250,035,985.99, leaving approximately $86,696,692.24 remaining in the Estates for distribution to other creditors.

9. The Trustee is currently in the process of making interim distributions to holders of administrative and priority claims. The assets remaining in the Estates consist primarily of certain accounts receivable, a potential tax refund that may be paid from the Debtors' predecessors' pending chapter 11 bankruptcy cases (the "Prior Chapter 11 Cases"), potential D&O claims that may exist, and any chapter 5 avoidance actions that the Trustee may determine should be commenced. The Trustee has retained special counsel and commenced adversary proceedings to collect the aforesaid accounts receivable. The Trustee is similarly in the process of pursuing the tax refund in connection with the Prior Chapter 11 Cases.

10. In addition to monetizing the aforesaid assets, the Trustee in the administration of the Estates is completing a claims review process involving in excess of 1,400 filed claims and anticipates proceeding with claims objections before December 31, 2024.

**B. The Conversion Motion and Settlement**

11. On June 21, 2024, the *Debtors' Motion for Entry of an Order Authorizing and Approving the Conversion of These Chapter 7 Cases to Cases under Chapter 11* [Dkt. No. 832] (the "Conversion Motion") was filed. In the Conversion Motion, the movants identified therein (the "Debtor Movants") requested that the Court convert the Bankruptcy Cases to chapter 11 of the Bankruptcy Code. The Debtor Movants stated that, upon conversion, they intended to propose a chapter 11 plan of liquidation to reconcile claims, collect accounts receivable, sell the remainder of the Debtor Movants' assets, prosecute litigation against former directors and officers and distribute cash through a plan of liquidation.

12. The Trustee opposes the Conversion Motion, for the reasons set forth in the Trustee's objection to the Conversion Motion [Dkt. No. 858] (the "Trustee's Objection") and sur-reply [Dkt. No. 909] (the "Sur-Reply"). Among other reasons, the Trustee believes the Debtor Movants cannot meet their burden of proof under section 706(a) of the Bankruptcy Code to show that, upon conversion, "cause" would not exist to re-convert the Bankruptcy Cases back to chapter 7. *See* Trustee's Objection at ¶¶ 38-45. Additionally, the Trustee believes that conversion of these Bankruptcy Cases to cases under chapter 11 would prejudice the creditor body and negatively impact the administration of the Estates. *Id.* at ¶¶ 46-69.

### C. The Settlement

13. Subsequent to the Conversion Motion being filed, the Trustee and the Debtor Movants engaged in discovery and good faith, arm's length settlement negotiations, which eventually culminated in the Settlement.

14. The complete terms and conditions of the Trustee's settlement with the Debtor Movants (the "Settlement") are fully set forth in the Settlement Agreement attached hereto as Exhibit A and should be referred to in their entirety.[2] The terms of the Settlement Agreement are set forth below:

> **Conversion**. The Debtors shall withdraw the Conversion Motion [D.I. 832] with prejudice and the Debtors' bankruptcy cases shall remain in Chapter 7 subject to the terms and conditions set forth in this settlement term sheet (the "Term Sheet"). The Debtors and their Controlling Members who consented to the Conversion Motion shall (i) not file any additional motions to convert to Chapter 11, and (ii) not object to the payment to the Chapter 7 Trustee of a commission on all monies disbursed or turned over in the Chapter 7 Cases by the Chapter 7 Trustee to parties in interest, excluding the

---

[2] For ease of reference, the Trustee has summarized to some extent the terms of the Settlement Agreement in this Motion. To the extent of any inconsistency between the summary set forth herein and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control and govern.

5

Debtors, but including the holders of secured claims calculated at the maximum percentage rates set forth in 11 U.S.C. § 326(a).

**D&O Claims**.  At Holdco's election to be made on or before December 30, 2024 and subject to the terms of a subsequent stipulation among Holdco and the Chapter 7 Trustee, the Debtors' claims against any of their former directors and officers (the "D&O Litigation") shall either: (i) be abandoned by the Chapter 7 Trustee to Akorn Holding Company LLC ("Holdco") for exclusive prosecution by Holdco, subject to the rights any of the Debtors' creditors may have against the out-of-possession Debtors; or (ii) Holdco shall be granted derivative standing to prosecute the D&O Litigation on behalf of the Debtors' Estates in the Bankruptcy Court (as defined below), subject to the rights any of the Debtors' creditors may have against the Estates.  In either of the foregoing scenarios, all professional fees and expenses incurred by Holdco in prosecution of D&O Litigation are to be paid by Holdco and not from the Debtors' Chapter 7 Estates.

**Insider Claims**.  Holdco shall have the right to object to all claims filed against the Debtors by former directors and officers of the Debtors (the "Insider Claims").  Holdco shall be entitled to reimbursement of reasonable professional fees and expenses, subject to Bankruptcy Court (as defined below) approval, incurred in the prosecution of any objections by Holdco to Insider Claims, except to the extent that such objections relate to the fact that they would be offset by the D&O Litigation.  The Chapter 7 Trustee shall cooperate reasonably with Holdco in respect of the prosecution of such objections.

**Other Claim Objections**.  The Chapter 7 Trustee shall consult regularly with Holdco concerning the status and strategy of the claims reconciliation process, including the allowance of and/or objection to any and all claims.  In addition to Holdco's right to object to any and all Insider Claims in accordance with Section III of this Term Sheet, Holdco shall also have the right to object to any claim asserted against the Debtors in excess of $1 million in the event that the Chapter 7 Trustee declines to object to any such claims in whole or in part, and in such event Holdco shall be entitled to reimbursement from the Debtors' Chapter 7 Estates of reasonable professional fees and expenses, subject to Bankruptcy Court approval, incurred in the prosecution of any such objections by Holdco.  The Chapter 7 Trustee shall cooperate with Holdco and take other actions reasonably requested by Holdco in respect of the claims reconciliation process and the objection by Holdco to any claims.

**McKesson/Amerisource Litigation**.  The Chapter 7 Trustee shall consult regularly with Holdco concerning the status, strategy and settlement of the lawsuits filed against McKesson Corp. and Amerisource Bergen.  If Holdco does not consent to the amount of any settlement proposed by the Chapter 7 Trustee of the lawsuits against McKesson Corp. and/or Amerisource Bergen, then Holdco shall have the right to acquire such claims upon payment to the Debtors' Chapter 7 Estates of a sum equal to the value to the Debtors' Chapter 7 Estates of the Chapter 7 Trustee's proposed settlement.

**Information Access**.  The Chapter 7 Trustee shall cooperate with Holdco regarding the prosecution of the D&O Litigation and any claims objections filed by Holdco in accordance herewith, and shall afford Holdco with reasonable access to the Debtors' books and records in connection with such matters.  The Chapter 7 Trustee shall make himself and his advisors available to representatives of Holdco for periodic updates concerning the status of the Debtors and the Chapter 7 cases.  Holdco and its advisors shall consult regularly with the Chapter 7 Trustee and his advisors regarding the status and strategy with respect to the prosecution of any D&O Litigation and any claims objections filed by Holdco.

**Governance of Holdco**.  The Chapter 7 Trustee shall not object to, or interfere with, the governance of Holdco, and Holdco shall not object to or interfere with, the administration of the Debtors' Chapter 7 Estates by the Chapter 7 Trustee.  Notwithstanding the foregoing, all references herein to the governance of Holdco, including, but not limited to, Holdco consent to the transfer of its equity interests as provided by Article VIII of Holdco's Amended and Restated Limited Liability Agreement, dated as of October 1, 2020 (the "LLC Agreement"), shall be conducted by the Members holding a minimum of 51% of the outstanding Membership Interests of Holdco (as such capitalized terms are defined in the LLC Agreement).

**Settlement of Equity Trades**.  Holdco may proceed to approve and settle all open and future equity trades of common units of Holdco in accordance with Holdco's governing documents on a commercially reasonable basis by a transfer agent or designee of Holdco as determined by the Holdco Members holding a minimum of 51% of the outstanding Membership Interests of Holdco.  The Chapter 7 Trustee's consent shall not be required for such transfers (whether such trades are pending now or executed hereafter).

LEGAL\72890110\7 6010823/00574256
10/17/2024

**Reimbursement of Professional Fees**. The Debtors shall reimburse the reasonable professional fees and expenses subject to Bankruptcy Court approval which were incurred by Glenn Agre Bergman & Fuentes LLP in an amount not to exceed $320,000, Morris Nichols Arsht & Tunnel LLP in an amount not to exceed $160,000, and LAS Advisors LLC in an amount not to exceed $15,000 in connection with the Conversion Motion.

**Bankruptcy Court Jurisdiction**. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") shall retain and have sole and exclusive jurisdiction of all matters and disputes related to this settlement.

## RELIEF REQUESTED

15. By this Motion, the Trustee seeks the entry of an order, substantially in the form attached hereto, (a) approving the terms of the Settlement Agreement and (b) authorizing the Trustee to take any and all actions that may be necessary and appropriate to implement the provisions of the Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

16. The Court has the authority to grant the relief requested in this Motion pursuant to Bankruptcy Rule 9019(a). Bankruptcy Rule 9019 governs the approval of settlements and provides as follows:

> On motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019. In addition, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

17. Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in

bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, this district has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

18.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (*quoting Louise's*, 211 B.R. at 801). The Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors.  *See Martin*, 91 F.3d at 393 (*citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).

19.     Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425.  The *TMT* rule does not require the Bankruptcy Court to hold a full evidentiary hearing before a compromise can be approved, but rather the Bankruptcy Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 Collier on Bankruptcy ¶ 9019.2 (16th 2024) (*quoting In re Drexel Lambert Grp., Inc.*, 134 B.R. 493 (Bankr. S.D.N.Y. 1991)).

20.     Moreover, the Court can give weight to a trustee's informed business judgment that a settlement is fair and reasonable.  *See In re Nordlicht,* No. 22-1223-BK, --- F.4th ----, 2024 WL 3818696, at *17 (2d Cir. Aug. 15, 2024) (noting that bankruptcy court can "give weight to the

Trustee's informed judgment that a compromise is fair and equitable"); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 93 (Bankr. D. Del. 2005), aff'd, No. 03-10323 (MFW), 2006 WL 2842462 (D. Del. Oct. 2, 2006) ("While a court generally gives deference to a debtor's business judgment in deciding whether to settle a matter, the debtors have the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved.").

21. Here, the Trustee submits in the exercise of his business judgment that the Settlement is fair and reasonable. As addressed in the Trustee's Objection, the Trustee believes that conversion to chapter 11 is not in the best interest of the Debtor' Estates. The Settlement ensures that the Estates remain in chapter 7 and provides that the Trustee – as the fiduciary to the Debtors' Estates – stays in control of the administration of the Estates, including the processes for resolving claims and making distributions. Additionally, by avoiding conversion of the Bankruptcy Cases to chapter 11, the Settlement furthers the Estates' interests by (i) preventing the Estates from incurring millions of dollars in additional (and, from the Trustee's view, duplicative) attorney's fees and expenses, and (ii) avoiding the inevitable delays and procedural issues that would arise from conversion to chapter 11.

22. The concessions made by the Trustee are fair and reasonable under the circumstances. The primary concession is the Trustee's agreement to either abandon the D&O Litigation to Holdco for exclusive prosecution by Holdco or afford Holdco standing to prosecute the D&O Litigation on behalf of the Estates in the Bankruptcy Court, with all professional fees and expenses incurred by Holdco in the prosecution of the D&O Litigation to be paid by Holdco and not by the Estates. The Settlement is a valid exercise of the Trustee's business judgment. Contrary to the opinion of the Trustee, the Debtor Movants believe that the D&O Litigation may result in sufficient value being realized to allow creditors of the Debtors to be paid

in full and result in a surplus being available for equity.  The Settlement has the additional benefit of shifting the cost of the D&O Litigation to Holdco, thereby minimizing the expenses of the Estates and the associated risk of depletion of sums available for distribution to creditors of the Estates.

23. The Trustee has also agreed that Holdco shall have certain standing, consultation rights, and information access, as set forth in the Settlement Agreement.  These concessions are reasonable and consistent with the Bankruptcy Code, particularly given the Debtor Movants' strenuous contentions that there will be a surplus in the Holdco Estate.

24. Finally, the outcome of the Conversion Motion is uncertain.  Although the Trustee is confident in the arguments made in the Trustee's Objection and Sur-Reply, relatively few courts have addressed a chapter 7 business debtor's right to convert after substantially all of its assets are liquidated.  Absent the Settlement, the administration of the Estates would continue to be delayed and the Estates would continue to incur attorney's fees and expenses in connection with litigation (including, as seems likely, an appeal).

25. Under these circumstances, the Settlement is well within the range of reasonable litigation outcomes and in the best interest of the entire creditor body.  The Trustee respectfully submits that the Settlement Agreement is a reasonable and prudent exercise of his business judgment and should be approved.

## NOTICE

26. Notice of this Motion together with a copy of the Motion will be given to the following parties (the "Notice Parties"): (a) the Office of the United States Trustee; (b) the largest thirty (30) unsecured creditors with names and addresses appearing in Schedule F of the Schedules of Assets and Liabilities prepared by the Debtors; (c) counsel to the Debtor Movants; (d) counsel

to the Debtors; and (e) all parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002. The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order granting the relief requested by this Motion, as well as any additional relief as is just and proper.

Dated: October 17, 2024

COZEN O'CONNOR

By: /s/ *John T. Carroll, III*
John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE 19801
(302) 295-2000 Phone
(302) 295-2013 Fax No.
jcarroll@cozen.com
sfraser@cozen.com

David R. Doyle (IL ARDC 6303215)
(Admitted in IL/Not admitted in DE)
123 N. Wacker Drive, Suite 1800
Chicago, IL 60606
Telephone: (312) 474-1648
Facsimile: (312) 382-8910
daviddoyle@cozen.com

*Counsel to George L. Miller,
Chapter 7 Trustee*