## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:**<br><br>AKORN HOLDING COMPANY LLC, *et al.* [1]<br><br>Debtors**.**<br><br>-------------------------------------------------------<br><br>LISHA ABRAHAM, SUSAN BERRY and BENJAMIN SUMMERS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AKORN OPERATING COMPANY LLC, AKORN INTERMEDIATE COMPANY LLC and AKORN HOLDING COMPANY LLC<br><br>Defendants. | Chapter 7<br>Case No. 23-10253 (KBO)<br>(Jointly Administered)<br><br><br><br>Adversary Proceeding No.: 23-50117-KBO<br><br>**Objection Deadline:**<br>**November 13, 2024 at 4:00 p.m. ET**<br><br>**Hearing Date:**<br>**November 20, 2024 at 9:30 a.m. ET** |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION OF CHAPTER 7 TRUSTEE AND PROPOSED CLASS REPRESENTATIVES, PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 9019 AND 7023 TO: (I) APPROVE THE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 9019, (II) PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT PURSUANT TO BANKRUPTCY RULE 7023, (III) CERTIFY THE WARN CLASS FOR SETTLEMENT PURPOSES, INCLUDING THE APPOINTMENT OF CLASS COUNSEL AND THE CLASS REPRESENTATIVES,  (IV) APPROVE THE FORM AND MANNER OF NOTICE TO CLASS MEMBERS OF THE SETTLEMENT, (V) SCHEDULE A FAIRNESS HEARING TO CONSIDER FINAL APPROVAL OF THE SETTLEMENT AGREEMENT, (VI) FINALLY APPROVE THE SETTLEMENT AGREEMENT FOLLOWING THE FAIRNESS HEARING, AND (VII) GRANT <u>RELATED RELIEF</u>**

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255 (KBO). The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

Plaintiffs Lisha Abraham, Susan Berry and Benjamin Summers (the "Plaintiffs" or the "Proposed Class Representatives"), together with George L. Miller, in his capacity as the chapter 7 trustee (the "Trustee" and together with the Plaintiffs, the "Parties") for the bankruptcy estates (the "Estates") of debtors Akorn Operating Company LLC, Akorn Intermediate Company LLC and Akorn Holding Company LLC  (collectively, the "Debtors" or "Defendants"), by and through their respective counsel, hereby jointly submit this Memorandum of Law in support of their Motion, pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 23 of the Federal Rules of Civil Procedure (the "Civil Rules"), applicable hereto by Bankruptcy Rule 7023, for the entry of an Order: (1)  approving the *Settlement, Release and Allowance of Claim Agreement* (the "Settlement Agreement")[2] pursuant to Bankruptcy Rule 9019; (2) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (3) certifying the Class for settlement purposes only, including the appointment of The Gardner Firm, P.C., Lankenau & Miller, LLP, and Margolis Edelstein as Class Counsel and Lisha Abraham, Susan Berry and Benjamin Summers as Class Representatives; (4) approving the form and manner of notice of the Settlement to the members of the Class (the "Class Notice"); (5) scheduling a fairness hearing to consider final approval of the Settlement Agreement (the "Fairness Hearing"); (6) finally approving the Settlement Agreement following the fairness hearing (the "Final Settlement Order"); and (7) granting related relief (the "Joint Motion").  In support of the Joint Motion, the Parties respectfully state:

---

[2] A copy of the Settlement Agreement is attached hereto as Exhibit A.  Unless otherwise defined herein, capitalized terms have the meanings provided in the Settlement Agreement.

## INTRODUCTION

1.     The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") should approve the Settlement Agreement.  The Plaintiffs have sued the Debtors in the above-captioned adversary proceeding (the "WARN Action") for allegedly failing to provide notice required by the Worker Adjustment and Retraining Notification, or "WARN," Act, 29 U.S.C. § 2101 *et seq.* ("Federal WARN Act") and the New York Worker Adjustment and Retraining Notification Act ("NY WARN Act") New York Labor Law ("NYLL") § 860 et seq. (collectively, the "WARN Acts"), before ordering mass layoffs and/or plant closings on or about February 22, 2023, within thirty days of that date, and thereafter.  In exchange for a full release of any claims for damages under the WARN Acts or any other federal, state, or local laws or regulations of similar effect, the Trustee has agreed to certain allowed claims, as described herein, in full and final settlement of the WARN Action and the WARN Class POCs, on account of which the Trustee will make the applicable distributions to a Qualified Settlement Fund established by Class Counsel in accordance with the terms of the Settlement Agreement.

2.     From the perspective of each of the Parties, the Settlement Agreement is fair and reasonable.  Further litigation of the WARN Action would be protracted and expensive, and the outcome uncertain.

3.     Plaintiffs contend that Defendants, as a single employer, shutdown the Facilities, resulting in employment losses suffered by the Plaintiffs and the hundreds of other similarly situated former employees without notice that complied with the WARN Act and that none of the WARN Acts' affirmative defenses apply.

4.     A trial on the merits would require both sides to engage in extensive expert and non-expert discovery at significant expense, with inherently uncertain results at trial.

5.      In light of these factors, the Parties have determined that the terms of the settlement, set forth in the Settlement Agreement, are well within the range of reasonableness. Accordingly, the Parties respectfully submit that the Bankruptcy Court should approve the settlement under Bankruptcy Rule 9019.

6.      For essentially the same reasons, the Settlement Agreement is also fair and reasonable to the Class Members.  In addition, the Settlement Agreement provides for a speedier payment to the Class Members.  There are sufficient funds in the Estates to fully fund the Allowed Priority WARN Claims Distribution and the Trustee requests permission to pay the Allowed Priority WARN Claims Distribution promptly following the Effective Date of the Settlement and in accordance with the terms of the Settlement.  Without the Settlement, the Class Members could wait many more years for any payment on their alleged WARN claims, even if they prevail at trial and appeal.

7.      Further, it is appropriate to certify the Class for settlement purposes and appoint Class Counsel.  As set forth below, for purposes of the settlement, the Parties agree that the Class meets all of the requirements of Civil Rule 23 and that Class Counsel is competent and experienced.

8.      Finally, the Parties request a two-step approval process to facilitate notice to Class Members.  After preliminary approval of the Settlement Agreement and the form of the Class Notice, Class Counsel, or the Administrator, will provide the Class Notice to each Class Member, which describes the Settlement Agreement, and informs the Class Members of their right to opt-out of the Class or object to the Settlement Agreement, and of the deadlines for opting-out and/or objecting.

9.      After service of the Class Notice, the Parties request that the Bankruptcy Court hold a Fairness Hearing within sixty days of entry of the preliminary approval order, at which the Parties will request final approval of the Settlement Agreement.

10.     Based on the foregoing, and as set forth more fully below, the Parties submit that the Bankruptcy Court should approve the Settlement Agreement and the procedures proposed in this Joint Motion.

## JURISDICTION

11.     The Bankruptcy Court has jurisdiction over the Motion under 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are section 105 of the Bankruptcy Code, and Bankruptcy Rules 9019 and 7023.

## BACKGROUND

12.     On February 23, 2023 (the "Petition Date"), Defendants simultaneously filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, thereby commencing these chapter 7 bankruptcy cases (the "Chapter 7 Cases").

13.     The Plaintiffs allege that on or about February 22, 2023, and thereafter, the Debtors, as a single employer, terminated the Plaintiffs and over 900 similarly situated employees who worked at or reported to Debtors' facilities ("Facilities"), without notice that complied with the WARN Acts.

14.     On the Petition Date, the Plaintiffs commenced the WARN Action by filing a Class Action Adversary Proceeding Complaint (as amended, the "Complaint"), asserting claims against Debtors under the "single employer" theory of liability.  Plaintiffs alleged that Debtors, as a single employer, shutdown the Facilities, resulting in employment losses suffered by the

Plaintiffs and the hundreds of other similarly situated former employees, without notice that complied with the WARN Act. Plaintiffs alleged that, as a consequence of Defendants' failure to give the Plaintiffs and the putative class members any advance written notice of termination, much less sixty days' notice, the Plaintiffs seek 60 days' priority wages and benefits for each putative Class Member, with any spillover beyond the cap of section 507(a)(4) of the Bankruptcy Code to be allowed as a general unsecured claim.

15.    The claims bar date in the Chapter 7 Cases was June 26, 2023 (the "Bar Date"). On the Bar Date, Plaintiffs filed a timely Class Proof of Claim against each of the Defendants asserting the class WARN claim. ("WARN Class POCs"). No objections have been filed concerning the WARN Class POCs. Also on the Bar Date, Plaintiffs filed a motion seeking (A) Class Certification, (B) Appointment of Class Representatives, (C) Appointment of Class Counsel, (D) Approval of the Form and Manner of Class Notice, and (E) Such Other and Further Relief as this Court May Deem Appropriate (the "Class Motion"). The Plaintiffs provided declarations supporting their claims that they each worked at one of the Facilities and were terminated, without cause on their part, during the relevant period. The Plaintiffs have no conflict of interest with other Class members. The Class Motion is unopposed.

## ESSENTIAL TERMS OF THE PROPOSED SETTLEMENT

16.    The Parties mediated the claims in this matter on July 25 and 30, 2024, and following good faith and arms' length negotiations, the Parties reached agreement on a compromise that will resolve the WARN Action and the WARN Class POCSs, subject to Bankruptcy Court approval, the terms of which have been set out in the Settlement Agreement.[3] In general, the Settlement Agreement provides that upon the Effective Date, the Class shall be

---

[3] This Memorandum of Law contains a summary of certain provisions of the Settlement Agreement. In the event of any conflict, the Settlement Agreement itself shall govern over any description contained in this Memorandum of Law.

granted: (i) allowed priority claims jointly and severally against Defendants pursuant to 11 U.S.C. § 507(a)(4) in the aggregate amount shown on Schedule 1 in the column titled "Allowed Priority Claims," subject to reduction to account for Opt-Outs (as defined below), Previous Releasors, Section 502(d) Parties, and Allowed Non-WARN Priority Claims[4] (the "Allowed Priority WARN Claims"); and (ii) allowed non-priority general unsecured claims jointly and severally against Defendants in the aggregate amount shown on Schedule 1 in the column titled "Allowed GUC Claims," subject to reduction to account for Opt-Outs (as defined below), Previous Releasors, and Section 502(d) Parties, and to adjustment to account for Allowed Non-WARN Priority Claims (the "Allowed GUC WARN Claims" and collectively with the Allowed Priority WARN Claims, the "Allowed WARN Claims").[5]  The amounts attributable to any Opt-Outs (as defined below), Previous Releasors, and Section 502(d) Parties will be deducted from the amounts of the Allowed Priority WARN Claims and the Allowed GUC WARN Claims, and such amounts shall be adjusted to account for Allowed Non-WARN Priority Claims.  Promptly following the Effective Date, the Trustee shall forward a distribution from the Estates in the aggregate amount of the Allowed Priority WARN Claims, adjusted as provided herein (the "Allowed Priority WARN Claims Distribution"), and a separate distribution to be determined in accordance with the priority scheme of the Bankruptcy Code on account of the Allowed GUC WARN Claims adjusted as provided herein (the "Allowed GUC WARN Claims Distribution"),[6] to a qualified settlement fund to be established by Class Counsel, or their designee, in conformity

---

[4] To the extent any Class Member has an allowed non-WARN related Section 507(a)(4) claim in the Bankruptcy Cases (an "Allowed Non-WARN Priority Claim"), then in such event any portion of the Allowed Priority WARN Claim for such Class Member which exceeds $15,150 when added to the Allowed Non-WARN Priority Claim, shall be classified as an Allowed GUC WARN Claim.  For avoidance of doubt, no Class Member's combined allowed Section 507(a)(4) claims shall exceed the priority maximum of $15,150 permitted under the Bankruptcy Code.

[5] All references in this Settlement Agreement to information provided on Schedule 1 shall be interpreted to refer to Schedule 1, and/or such information, as adjusted to account for Opt-Outs (as defined below), Previous Releasors, Section 502(d) Parties, and Allowed Non-WARN Priority Claims (as defined below).

[6] The Trustee will make the Allowed GUC WARN Claims Distribution at the same time as he makes distributions on account of allowed general unsecured (non-priority) claims in these Bankruptcy Cases generally.

with Internal Revenue Code §468B (the "Qualified Settlement Fund"), pursuant to written

instructions to be provided by Class Counsel.[7]   Other essential terms of the Settlement

Agreement are as follows:

   i.   The Parties consent to the certification of a class, for settlement purposes only pursuant to Federal Rule 23(e), in connection with the WARN Action and the Settlement Motion, consisting of the following individuals (the "Class Members" and, together, the "Class"): the individuals listed on Schedule 1 to this Settlement Agreement, who have been identified from the Defendants' records as former employees of one or more Defendants, who worked at or reported to any of the Facilities and who were terminated without cause on their part on or about February 22, 2023, within thirty days of that date, and thereafter, as part of or as the result of the shutdown of the Facilities; provided however, that the Class shall not include individuals (whether presently listed on Schedule 1 or otherwise): (i) who are found by the Trustee to have previously released any WARN Act claims which they may otherwise have been entitled to assert in this WARN Action ("Previous Releasors"); (ii) who become Opt-Outs (as defined below); and/or (iii) whose claims the Trustee identifies as being subject to disallowance pursuant to section 502(d) of the Bankruptcy Code unless and until such individual has paid the amount or turned over such property for which such individual is liable under section 502(d) ("Section 502(d) Parties").   The Trustee represents that, to the best of his knowledge, information, and belief and based solely upon the Debtors' books and records, all of the former employees (along with their last known addresses and wage information) who satisfy the criteria above, and no other former employees, are listed on Schedule 1 hereto (except that Schedule 1 may include Opt-Outs, Previous Releasors, and/or Section 502(d) Parties, who shall not be Class Members).   The Trustee makes no representation regarding the accuracy of the Debtors' books and records.   The Gardner Firm, P.C., Lankenau & Miller, LLP, and Margolis Edelstein shall be appointed class counsel ("Class Counsel") for the Class.   Lisha Abraham, Susan Berry, and Benjamin Summers shall be appointed Class Representatives for the Class.

   ii.   Upon the Effective Date of the Settlement Agreement, any and all individual claims asserted by Class Members against the Debtors related in any way to the WARN Acts or any comparable state and local laws requiring notice prior to a shutdown shall be deemed satisfied and expunged, and payment on account of such claims shall be limited solely to the Allowed WARN Claims provided for in the Settlement Agreement.

   iii.   Class Counsel may retain the services of an Administrator to act as its agent for purposes of administering and distributing the Settlement.   The costs of the Administrator shall be paid from the Qualified Settlement Fund.   Class Counsel, or its designee, the Administrator, as fiduciary on behalf of the Qualified Settlement Fund, shall be responsible for making distributions from the Qualified Settlement Fund of any amounts required by the Settlement Agreement pursuant to applicable law.

---

[7] As noted above, there are sufficient funds in the Estates to fully fund the Allowed Priority WARN Claims Distribution  and the Trustee requests the Court's permission to pay it promptly following the Effective Date, and in accordance with the terms of the Settlement.

iv.   The Class Representatives shall receive an aggregate one-time payment from the first distribution from the Qualified Settlement Fund on the Allowed Priority WARN Claims Distribution of $30,000, to be allocated as follows:  $10,000 each to Lisha Abraham, Susan Berry and Benjamin Summers for their service in this matter (the "<u>Class Representative Service Payments</u>").

v.    Class Counsel is entitled to attorneys' fees ("<u>Class Counsel's Fees</u>") in the amount of one-third (1/3) of each distribution on the Allowed WARN Claims, net of the one-time $30,000 payment for Class Representative Service Payments.  In addition, Class Counsel is entitled to its litigation expenses (including costs associated with the production and mailing of the Class Notice) ("<u>Class Counsel's Expenses</u>") which have been projected to be $50,000 per distribution.  Class Counsel's Fees and Class Counsel's Expenses, as well as the Representative Service Payments, shall be paid exclusively by the Qualified Settlement Fund, and Class Counsel shall have no right to payment, either as an administrative expense, unsecured claim, or otherwise, from the Estates for any reason at any time.  Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

vi.   Class Counsel, as fiduciary for the Qualified Settlement Fund, or, if applicable, the Administrator, will make the Class Member distributions from the Qualified Settlement Fund from the distributions on the Allowed WARN Claims (after being reduced on account of the Class Representative Service Payments, Class Counsel's Fees, and Class Counsel's Expenses). Such distributions shall be allocated to each Class Member in accordance with the Settlement.

vii.  Issuance of Class Notice:  the Administrator shall send the Class Notice by first class mail to each Class Member's last known address, and the Class Notice shall state:

   a.   That each Class Member has the right to opt out of the Class and preserve all of his or her rights against Debtors, if any, including the Released Claims, as defined below (all such Class Members timely electing to opt out of the Class, the "<u>Opt-Outs</u>");

   b.   That the Settlement shall become effective only if it is finally approved by the Bankruptcy Court under Rules 7023 and Rule 9019 of the Federal Rules of Bankruptcy Procedure, and Rule 23 of the Federal Rules of Civil Procedure, as made applicable by Rule 7023 of the Federal Rules of Bankruptcy Procedure;

   c.   That, if so approved,  the Settlement shall be effective as to all Class Members who did not timely elect to opt out of the Class; and

   d.   The projected net dollar amounts such Class Member would receive under this Settlement, as shown on Schedule 1, assuming full funding of the Allowed WARN Claims.

   e.   That such Class Member who does not opt out has the right to object to this Settlement either in person or through counsel and be heard at the Fairness Hearing; and

      f.      That all Released Claims of a Class Member (other than claims with respect to amounts to be paid under the terms of this Settlement) shall be waived and any individual claim of Class Members against the Debtors related to or based upon the WARN Acts or any comparable state and local laws requiring notice prior to a shutdown shall be deemed satisfied and expunged from the applicable claims registers maintained by the Bankruptcy Court, and that no person, including the Class Member, shall be entitled to any further distribution thereon.

viii.    The Settlement Agreement shall become effective only if it is approved by a final order entered by the Bankruptcy Court; and

ix.    Except for the rights expressly arising out of, provided for, or reserved in the Settlement Agreement, upon the Effective Date, the Class Members, for and on behalf of themselves, and their respective predecessors, successors, assigns, heirs, personal representatives and estates (collectively, the "Releasing Parties"), do hereby fully and forever release and discharge the Trustee, each of the Estates and Debtors, and each of their respective current and former members, subsidiaries and affiliated entities, and each of their respective officers, directors, shareholders, agents, employees, partners, members, accountants, attorneys, representatives and other agents, and all of their respective predecessors, successors and assigns (collectively, the "Released Parties"), of and from any and all claims, demands, debts, liabilities, obligations, liens, actions and causes of action, costs, expenses, attorneys' fees and damages of whatever kind or nature, at law, in equity and otherwise, whether known or unknown, anticipated, suspected or disclosed, that the Releasing Parties may now have or hereafter may have against the Released Parties related to and/or based upon the WARN Acts or any other federal, state, or local laws or regulations of similar effect (the "Released Claims"). The Released Parties expressly reserve the right to object to, offset or oppose any and all claims, obligations, or causes of action, of any type, except those claims expressly allowed hereunder. Upon the Effective Date, the Class Members agree that any Released Claims shall be deemed waived without need for further Bankruptcy Court order, and the Class Members agree that any Released Claims that have been scheduled on behalf of, or filed by, any Class Members in any of the Bankruptcy Cases are disallowed in their entirety and shall be deemed expunged from the applicable schedule(s) or claims register(s) without any further action needed by the Trustee or the Bankruptcy Court. In addition, each Releasing Party shall be deemed upon the Effective Date to have released each of the Class Representatives from any and all claims whether liquidated or unliquidated, contingent or non-contingent, asserted or unasserted, fixed or not, matured or unmatured, disputed or undisputed, legal or equitable, known or unknown that he or she may have against the Class Representatives, any successors or assignees to their legal interests, or any of their present or former agents, attorneys or consultants arising out of any Released Claim or the terms of this Settlement.

LEGAL\72405965\3 6010823\00574256

## RELIEF REQUESTED

17.    By this Joint Motion, the Parties request that the Bankruptcy Court enter orders: (1) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019; (2) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (3) certifying the Class for settlement purposes only, including the appointment of The Gardner Firm, P.C., Lankenau & Miller, LLP and Margolis Edelstein as Class Counsel and Lisha Abraham, Susan Berry and Benjamin Summers as Class Representatives; (4) approving the form and manner of the Class Notice; (5) scheduling the Fairness Hearing; (6) finally approving the Settlement Agreement following the Fairness Hearing; and (7) granting related relief.

## BASIS FOR RELIEF REQUESTED

### A.    The Bankruptcy Court Should Approve the Settlement Pursuant to Rule 9019 of the Bankruptcy Rules.

18.    The United States Court of Appeals for the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate 'compromises are favored in bankruptcy.'"  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also*, *In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990) ("[C]ompromises are favored in bankruptcy and … much of litigation in bankruptcy estates results in settlements").  Bankruptcy Rule 9019 authorizes a bankruptcy court to approve a compromise or settlement after notice and a hearing, Fed. R. Bankr. P. 9019(a), and section 105 of the Bankruptcy Code, empower a court to issue any order that is "necessary or appropriate."  11 U.S.C. § 105(a).

19.    "[T]he authority to approve a compromise settlement is within the sound discretion of the bankruptcy court."  *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005); *see also*, In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).  When exercising

such discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interest [sic] of the estate." *Key3Media,* 336 B.R. 87, 92; *see also, Fry's Metals, Inc. v. Gibbons (In re RFE Industries, Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re Louise's, Inc.*, 211 B.R. at 801; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998).

20.     The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *In re Key3Media Group*, 336 B.R. at 92-93 (citing *In re Coram Healthcare Corp.,* 315 B.R. 321, 329 (Bankr. D. Del. 2004)).  Rather, the settlement should be approved as long as it does not fall below the lowest point in the range of reasonableness. *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983).  In this respect, it is unnecessary for the court to consider the information necessary to resolve the factual dispute, nor is it necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media Group*, 336 B.R. at 92 (quoting *In re Martin*, 212 B.R. 316, 319 (BAP 8th Cir. B.A.P. 1997)).

21.     Courts consider the following four factors when determining whether a settlement is in the best interests of the estate: (i) the probability of success in the litigation; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; and (iv) the paramount interest of the creditors and a proper deference to their reasonable opinions. *Martin*, 91 F.3d at 393; *Aetna Casulaty & Surety v. Jasmine, Ltd. (In re Jasmine, Ltd.)*, 258 B.R. 119, 123 (Bankr. D.N.J. 1999); *Key3Media Group*, 336 B.R. at 93; Marvel, 222 B.R. at 249.

22.     In addition to these criteria, courts have also scrutinized additional factors, such as (i) the competency and experience of counsel who support the settlement; (ii) the relative benefits to be received by individuals or groups within the class; (iii) the nature and breadth of

releases to be obtained by the parties to the settlement; and (iv) the extent to which the settlement is the product of arm's length bargaining.  *See Fischer v. Pereira (In re 47-49 Charles Street, Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. S.D.N.Y. 1997); *In re Dow Corning Corp.*, 198 B.R. 214, 223 (Bankr. E.D. Mich. 1996).

23.     The results of a trial are uncertain and the litigation here is complex.  The WARN Action involves numerous legal issues regarding the application of the WARN Acts and their statutory and other legal defenses to complex facts.  These issues include, *inter alia*, (i) whether the Debtors provided adequate notice to the Class Members under the WARN Acts; (ii) whether the Debtors can be held liable under the WARN Acts in connection with the alleged acts/omissions of the Debtors; (iii) whether the Debtors were entitled to give fewer than sixty days' notice because of statutory exceptions under the WARN Acts; (iv) the computation of the amount of damages, (v) whether the putative class may recover collectively from the Estates, and (vi) whether attorneys' fees are to be awarded to the Class Members if they prevail and whether such fees are entitled to administrative priority.

24.     Continued litigation would be costly and time-consuming and expose the Parties to significant litigation risks.  Class Counsel has asserted that the aggregated WARN Act liability of sixty (60) days' damages and benefits is significant.  The settlement provides for allowance of the Allowed WARN Claims as shown for each individual Plaintiff and Class Member on Schedule 1, in the full amount of each Class Member's WARN damages, and eliminates any further accrual of the substantial litigation expenses, which have been associated with the WARN Action.  Accordingly, the Parties respectfully submit that approval of the Settlement Agreement is warranted.[8]

---

[8]  In the event that the Settlement Agreement is not approved by the Bankruptcy Court or the Settlement Agreement does not become binding and enforceable for any reason, the Parties reserve all of their rights.

25.     In the exercise of his reasonable business judgment, the Trustee submits that the Settlement Agreement is in the best interest of creditors and the Estates.  When determining whether a compromise is in the best interests of an estate, the Bankruptcy Court must "'assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal.'"  *In re Key3Media Group*, 336 B.R. at 93 (quoting *In re Martin*, 91 F.3d at 393 (citing *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968))); *see also*, *In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 460 (Bankr. E.D. Pa. 1998) ("[I]n deciding whether to approve a particular compromise, courts utilize various criteria designed to achieve the objective of having the Trustee or debtor in possession act in [the] best interests of the estate").  To properly balance these values, the Court should consider all factors "relevant to a full and fair assessment of the wisdom of the proposed compromise."  *In re Marvel*, 222 B.R. at 249 (quoting *TMT Trailer Ferry, Inc.*, 390 U.S. at 424); *see also*, *Key3Media Group*, 336 B.R. at 92 ("[t]he bankruptcy court must be "apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.") (quoting *In re Martin*, 91 F.3d at 393).

26.     The paramount interest of creditors and reasonable deference to their views also favors approval of the Settlement Agreement.  Moreover, as set forth above, the Settlement Agreement spares the Estates the significant expense and uncertainty associated with the litigation of the myriad of issues in the WARN Action.

27.     Accordingly, in light of each of the *Martin* factors, the Settlement Agreement should be approved.

**B.**     **The Bankruptcy Court Should Certify the Class for Settlement Purposes Pursuant to Civil Rule 23(e), Appoint Class Counsel, and Preliminarily Approve the Settlement Agreement Pursuant to Civil Rule 23.[9]**

28.     Where, as in this case, the Bankruptcy Court has not already certified a class, before approving a class settlement pursuant to Civil Rule 23, the Bankruptcy Court must determine whether the proposed settlement class satisfies the certification requirements of Civil Rule 23.  *Amchem v. Windsor*, 521 U.S. 591, 620 (1997); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 300 (3rd Cir. 2005).

29.     "[A]ll Federal Circuits recognize the utility of Rule 23(b)(3) settlement classes." *Amchem*, 521 U.S. at 618.  *Accord Community Bank*, 418 F.3d at 299.  "The settlement class action device offers defendants the opportunity to engage in settlement negotiations without conceding any of the arguments they may have against class certification."  *Community Bank*, 418 F.3d at 299.  *See also*, *General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Lit*ig., 55 F.3d 768, 786 (3rd Cir. 1995) ("By specifying certification for settlement purposes only . . . the court preserves the defendant's ability to contest certification should the settlement fall apart.").

30.     Subdivisions (a) and (b) of Rule 23 "focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class Representatives." *Amchem*, 521 U.S. at 621.

### a.     The Bankruptcy Court Should Conditionally Certify the Settlement Class.

31.     To be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  FED. R. CIV. P.

---

[9]  The positions taken in this section B (para 28-61) of the Joint Memorandum of Law are those of Class Counsel only.  The Trustee on behalf of the Estates takes no position on these matters other than to support approval of the Settlement Agreement and Class Certifications for purposes of settlement only.  In the event that the Settlement Agreement does not become effective, the Parties would be restored to the same positions that they were in prior to the filing of the Joint Motion and the execution of the Settlement Agreement.

23; *Community Bank*, 418 F.3d at 302.  In addition, the class must satisfy the requirements of Rule 23(b)(1), (2), or (3).  In this case, the Parties have agreed to request conditional certification under Rule 23(b)(3), "the customary vehicle for damage actions."  *Id.*  In order to certify a class under Rule 23(b)(3), the court must make two additional findings:  predominance and superiority.  That is, "[i]ssues common to the class must predominate over individual issues, and the class action device must be superior to other means of handling the litigation."  *Gates v. Rohm & Hass Co.*, 248 F.R.D. 434, 442-43 (E.D. Pa 2008).

32.     The proposed settlement Class meets each of the foregoing elements.

## (i) The Rule 23(a) Criteria

33.     Numerosity requires a finding that the putative class is "so numerous that joinder of all members is impracticable."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001).  "No single magic number exists satisfying the numerosity requirement."  *Beherend v. Comcast Corp.*, 245 F.R.D. 195, 202 (E.D. Pa. 2007) (citing *Moskovitz v. Loop*, 128 F.R.D. 624, 628 (E.D. Pa. 1989).  However, the Third Circuit "typically has approved classes numbering 40 or more."  *Gates*, 248 F.R.D. at 440 (citing *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

34.     The proposed class of approximately nine hundred Class Members meets the numerosity requirement and joinder of all Class Members is impractical.  The class is sufficiently numerous to make joinder of all members impractical, and thus satisfy the numerosity requirement.  *See Gates*, 248 F.R.D. at 440 (finding that two classes made up of 400 and 1,000, respectively, satisfied the numerosity requirement).  Accordingly, the Court should find that the numerosity requirement is met.

35.     The commonality requirement requires existence of at least one question of law or fact common to the Class.  FED. R. CIV. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*,

265 F.3d 178, 184 (3d Cir. 2001).  The commonality threshold is low, (*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202.  Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory.

36.    Here, fundamental issues of law and fact regarding notice of termination, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Class Members.[10]

37.    Typicality requires that the "named plaintiffs" claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class."  FED. R. CIV. P. 23(a)(3); *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-296 (3d Cir. 2006) (quoting *Baby Neal*, 43 F.3d at 55).  "Typicality requires a strong similarity of legal theories to ensure that the class Representatives' pursuit of their own goals will work to benefit the entire class."  *Powers*, 245 F.R.D. at 236.  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory."  *Beck*, 457 F.3d at 295-296 (quoting *Baby Neal*, 43 F.3d at 55).

38.    The Class Representatives do not allege that they were singled out for disparate treatment in the manner in which they were terminated.  Instead, they allege that they suffered harm as a result of the same conduct that allegedly injured the absentee Class Members – they were allegedly terminated on or about February 22, 2023 without receiving notice that complied with the WARN Act.    Accordingly, the Bankruptcy Court should find that the typicality

---

[10] Class Counsel recognizes that the amount of damages is particular to each Class Member.  However, individualized damages calculations do not defeat commonality, "so long as the plaintiffs allege harm under the same legal theory."  *Baby Neal v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994).

LEGAL\72405965\3 6010823/00574256

requirement is met.

39.     With respect to adequacy, class Representatives must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *Gates*, 248 F.R.D at 441.  The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class Representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296.  Thus, the court must determine "whether the Representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185.

40.     The Court should find that the Class Representatives and Class Counsel adequately represent the interests of the Class Members based on the Declarations of Mary E. Olsen and the Class Representatives (the "Class Motion Declarations" Docs. 6-2 and 6-3).  As demonstrated by the Class Motion Declarations, Class Counsel are well qualified and experienced to represent the Class Members.  Collectively, they have been appointed as class counsel in more than one hundred WARN actions, many of which were in bankruptcy cases.

41.     Incentive or service payment awards to Class Representatives are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded").

42.     In this case, the Class Representatives performed important services for the benefit of the Class by commencing the litigation and willingly assisting counsel throughout the

litigation.  The Plaintiffs stepped forward to bring the WARN Action in their names on behalf of their former co-workers at a time when no one else had. Plaintiffs were willing to be deposed and testify if there were hearings or a trial. They agreed to do so at a point when their future was uncertain and employment prospects potentially dimmed by suing their former employer. Ultimately, without the efforts of Plaintiffs, there would not have been any recovery for the Class. As the Court is likely aware, this lawsuit is searchable on the Internet and may become known to prospective employers evaluating the Plaintiffs for employment. Further Plaintiff expended time and effort to assist with this matter, including providing sworn declarations in support of class certification and assisting in the settlement of this matter.

43.    The amount of the service awards agreed to here is also consistent and on scale with amounts awarded in WARN class actions in bankruptcy courts here and across the country. *See*, *D'Amico, et al. v. Tweeter, OPCO, LLC* and *Schultze Asset Management, LLC*, Adv. Pro. No. 08-51800 (Del. Bankr. 2008) (one class representative who was deposed received $15,000, the other two received $10,000 each. Service payments were approximately 3% of common fund); *Kettell v. Bill Heard Enterprises, Inc.*, Adv. Pro. No. 08-80153 (N.D. Ala. Bankr. 2008) (court approved service payments for two class representatives in the amount of $10,000 each. Service payments were approximately 1% of common fund); *Kohlstadt, et al, v. Solyndra*, Adv. Pro. No. 11-53155 (Del. Bankr. 2011)(class representatives received $7500 and $12,500, respectively, as service payments, which were approximately .6% of common fund); *Capizzi, et al., v. AWTR Liquidation Inc., f/k/a Rhythm and Hues, Inc.*, Adv. Pro. No. 2:13-ap-01209-NB (C.D. Cal. Bankr. 2013)(class representatives received $10,000 each as service payments, which were approximately 2% of the common fund).

44.    Accordingly, the $30,000 payment is appropriate and justified as part of the overall Settlement in light of the value of the Class Representatives' services to the Class and

risks taken on behalf of the Class.[11]  Moreover, the Trustee has agreed to the proposed award of

the service payments to the Class Representatives, so long as such service payments are payable

solely from the Qualified Settlement Fund from the Allowed Priority WARN Claims Estate

Distribution.

### (ii) The Rule 23(b)(3) Criteria

45.     Common questions of law and fact predominate over the individual issues (which

appear to be limited to each Class Members' pay and benefits under the WARN Act).

Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication

by representation.  *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09.  The

proper predominance inquiry "trains on the legal or factual questions that qualify each member's

case as a genuine controversy, questions that preexist any settlement."  *Amchem*, 521 U.S. at

623.  "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that

claims or defenses of the named Representatives must be typical of the claims or defenses of the

classes."  *Community Bank*, 418 F.3d at 309.

46.     Just as typicality exists, predominance also exists.  All of the claims arise from an

alleged violation of the WARN Act resulting from the terminations that occurred on or about

February 22, 2023.  Accordingly, the Court should find that the predominance requirement is

met.

47.     Rule 23(b)(3) also requires a determination that "a class action is superior to other

available methods for the fair and efficient adjudication of the controversy."  FED. R. CIV. P.

23(b)(3); *Gates*, 248 F.R.D. at 443.  In effect, "[t]he superiority requirement asks the court to

balance, in terms of fairness and efficiency, the merits of a class action against those of

---

[11]  In addition to the service payment, the Class Representatives shall be authorized to participate in the settlement as
Class Members.

alternative available methods of adjudication." *Krell v. Prudential Inc. Co. (In re Prudential Inc. Co.)*, 148 F.3d at 283, 316 (3d Cir. 1998).

48.    Rule 23 sets forth several factors relevant to the superiority inquiry:  "(A) the class members interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  FED. R. CIV. P. 23(b)(3); *Gates*, 248 F.R.D. at 443.   However, when a class certification is being considered for settlement purposes only, the difficulties in managing a class action are not considered.  *Gates*, 248 F.R.D. at 443.

49.    Here, a class action is superior to individual actions.  First, the amount of each Class Member's claim is relatively small.  Individually, there is little incentive in controlling the prosecution of separate actions.  *See Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.  A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.")  (quotation and citation omitted).  It is appropriate that all the claims against the Debtors arising from the Class Representatives' allegations should be concentrated in this Court.  In addition, determining the claims of some Class Members, but not all, could prejudice the claims of the remaining Class Members.  Accordingly, the Bankruptcy Court should find that the superiority element is met.

50.    Based on the foregoing, the Bankruptcy Court should certify the Class for settlement purposes only, appoint Plaintiffs Lisha Abraham, Susan Berry and Benjamin Summers  as the Class Representatives, and appoint The Gardner Firm, P.C., Lankenau & Miller,

LLP and Margolis Edelstein as Class Counsel.

        **b.**      **The Bankruptcy Court Should Preliminarily Approve the Settlement.**

      51.     After class certification, approval of a class settlement generally requires two hearings: one preliminary approval hearing and one final "fairness" hearing. *Gates*, 248 F.R.D. 434. "The preliminary approval decision is not a commitment [to] approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" *Gates v. Rohm & Haas Co,* 248 F.R.D. 434, 438 (E.D. Pa. 2008) quoting *Smith v. Professional Billing & Mgmt. Sys., Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *see also*, *In re Community Bank of Northern Virginia*, 2008 WL 3833271 (W.D. Pa. Aug. 15, 2008). The preliminary approval determination requires the Bankruptcy Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re General Motors Corp.*, 55 F.3d 768, 785-86 (3d Cir. 1995). When class certification is sought in conjunction with preliminary approval, then class member objections are not relevant. *Gates*, 248 F. R. D. at 444.

      52.     The Settlement Agreement has no obvious deficiencies and falls well within the range of reason. Each of the above-cited factors favors preliminary approval of the Settlement Agreement.

      53.     First, the settlement is the result of good faith, arm's length negotiations between capable adversaries, both before, during and after the mediation.

      54.     Second, Class Counsel conducted both formal and informal discovery, analyzed the applicable law and weighed the likelihood of success during the course of the litigation and settlement negotiations.

      55.     Third, counsel for all Parties, and Class Counsel in particular, has the experience

and the skill to both vigorously litigate WARN Act claims and to determine when and to what extent settlement is appropriate.  Class Counsel has been collectively been appointed as class counsel in over one hundred WARN cases..

56.     In light of the foregoing, the Bankruptcy Court should preliminarily approve the Settlement Agreement.

### c. **The Bankruptcy Court Should Approve the Form and Manner of the Proposed Notice of the WARN Settlement.**

57.     Once a settlement is preliminarily approved, notice of the proposed settlement and of the fairness hearing is provided to class members.  Federal Rule of Civil Procedure 23(e) requires that all members of the class be notified of the terms of any proposed settlement.  Civil Rule 23(e) requirements is "designed to summarize the litigation and the settlement and to apprise class members of the right and opportunity to inspect the complete settlement documents, papers and pleadings filed in the litigation." *In re Prudential*, 148 F.3d at 326-27.

58.     Because the Settlement Agreement in this case will be preliminarily approved pursuant to this Joint Motion, notice of the class certification and proposed settlement can be combined in one notice.  *Gates*, 248 F.R.D. at 445; *Collier v. Montgomery County Housing Authority*, 192 F.R.D. 176, 186 (E.D. Pa. 2000) (citing MANUAL FOR COMPLEX LITIGATION § 30.212, at 226).  At the subsequent fairness hearing, class members may formally object to the proposed settlement.  *Gates*, 248 F.R.D. at 439.

59.     Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may

> enter an appearance through an attorney if the member so desires; (v) that the court will exclude form the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and, (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

FED. R. CIV. P. 23(c)(2)(B).

60.     The proposed Class Notice and Opt-Out Notice Form, which are attached to the Settlement as <u>Exhibit B</u>, will be served by the Administrator upon each Class Member.  Class Counsel proposes that within five business days following entry of the order certifying the Class for settlement purposes and preliminarily approving the Settlement Agreement, the administrator will serve the Notice and Opt-Out Notice Form substantially in the form attached hereto, upon each Class Member at the last known addresses of each Class Member according to the relevant books and records.  *Cf. Prudential*, 148 F.3d at 327 (holding that mailings to last known addresses of class members and publication in national newspapers sufficient to provide notice to large, multi-state class).

61.     The Class Notice includes each of the facts required by Rule 23(c)(2)(B).  The Class Notice also outlines the terms of the Settlement Agreement, including the attorneys' fees and costs proposed to be paid to Class Counsel, describes how each Class Member may obtain a copy of the Settlement Agreement and provides each Class Member with a personalized projection of the net pre-tax dollar amount they would receive under the Settlement, assuming full funding of the Allowed WARN Claims.  The Class Notice also states the date, time, location and purpose of the Fairness Hearing, informs Class Members of their right to appear at the Fairness Hearing, and describes the procedure for opting-out or objecting to the Settlement Agreement. Accordingly, the form and manner of the Class Notice is sufficient and should be approved.

**C.      The Bankruptcy Court Should Finally Approve the Settlement at the Fairness Hearing.**

62.      The Parties request the Bankruptcy Court to hold a Fairness Hearing within sixty days of entry of the preliminary approval order.  At the Fairness Hearing, the Bankruptcy Court should finally approve the Settlement Agreement.

63.      Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed or compromised only with the court's approval."  *Id.*  Final approval of a settlement pursuant to Rule 23(e) turns on whether the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001).  "This inquiry requires the court's independent and objective analysis of the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished."  *Community Bank*, 2008 WL 3833271 at * 5 (quoting *General Motors*, 55 F.3d at 785.).

64.      The Third Circuit has held that the following nine factors are relevant in determining whether a proposed class settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).  This list is not exhaustive.  *Community Bank*, 2008 WL 3833272 at *6.

65.     The following *Girsh* factors strongly support approval of the Settlement Agreement.

> a.    As discussed, continued litigation of the WARN Action will be complicated, protracted and expensive.

> b.    The Class Representatives support the Settlement Agreement and Class Counsel believe that the bulk of the other Class Members will have a favorable reaction to the Settlement Agreement and will neither object to it nor opt out of it.

> c.    The Settlement Agreement was reached after Class Counsel conducted both formal and informal discovery, analyzed the applicable law and weighed the likelihood of success.  Further, the parties had shared their respective views of the case during informal settlement negotiations and mediation.

> a.    The Settlement eliminates risk, provides for a near-term, payment to Class Members on the Allowed Priority WARN Claims Estate Distribution Payment, if approved, and the Estates will benefit from conserving the litigation expenses that would otherwise be expended.

> b.    When considered in light of the best possible recovery and the attendant risks, the settlement, as described herein, and shown on the attached, falls well within the range of reasonableness.

66.     Based on the foregoing, the Bankruptcy Court should finally approve the Settlement Agreement.

## **CONCLUSION**

WHEREFORE, the Parties respectfully request that the Bankruptcy Court enter an order, in substantially the form of the Preliminary Settlement Order attached to the Settlement Agreement: (i) approving the Settlement Agreement pursuant to Bankruptcy Rule 9019; (ii) preliminarily approving the Settlement Agreement pursuant to Bankruptcy Rule 7023; (iii) certifying the Class for settlement purposes only, including the appointment of The Gardner Firm, P.C., Lankenau & Miller, LLP and Margolis Edelstein as Class Counsel and Lisha

Abraham, Susan Berry and Benjamin Summers as Class Representatives; (iv) approving the form and manner of the Class Notice; (v) scheduling the Fairness Hearing; (vi) providing related relief; and (vii) providing any such further relief as may be appropriate.  The Parties further request that, following the Fairness Hearing, the Bankruptcy Court enter an order, in substantially the form of the Final Settlement Order attached to the Settlement Agreement: (i) approving the Settlement Agreement on a final basis; (ii) granting related relief; and (iii) providing any such further relief as may be appropriate.

Dated: October 18, 2024

MARGOLIS EDELSTEIN

By:   /s/ James E. Huggett
James E. Huggett
300 Delaware Ave., Ste. 800
Wilmington, DE 19801
Telephone: (302) 888-1112
Facsimile: (302) 888-1119

—and—

THE GARDNER FIRM, P.C.
Mary E. Olsen (OLSEM4818)
M. Vance McCrary (MCCRM4402)
The Gardner Firm, P.C.
182 St. Francis Street, Suite 103
Mobile, AL 36602
Telephone: (251) 433-8100
Facsimile: (251) 433-8181

—and—

LANKENAU & MILLER, LLP
Stuart J. Miller (SJM 4276)
100 Church Street, 8th FL
New York, NY 10007
P: (212) 581-5005
F: (212) 581-2122

*Counsel for Plaintiffs and the Putative Class*

COZEN O'CONNOR

By:    */s/ John T. Carroll, III*
        John T. Carroll III (DE 4060)
        Simon E. Fraser (DE 5335)
        1201 North Market Street, Ste 1001
        Wilmington, DE 19801
        Telephone: (302) 295-2000
        Facsimile: (302) 295-2013
        jcarroll@cozen.com
        sfraser@cozen.com

        *Counsel for George L. Miller,*
        *Chapter 7 Trustee*