IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:**<br><br>AKORN HOLDING COMPANY LLC, *et al.* [1]<br>Debtors. | **Chapter 7**<br><br>**Case No. 23-10253 (KBO)**<br><br>**(Jointly Administered)** |
| LISHA ABRAHAM, SUSAN BERRY and BENJAMIN SUMMERS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AKORN OPERATING COMPANY LLC, AKORN INTERMEDIATE COMPANY LLC and AKORN HOLDING COMPANY LLC<br><br>Defendants. | **Adversary Proceeding No.: 23-50117-KBO** |

## DECLARATION OF MARY E. OLSEN

I, Mary E. Olsen, declare as follows:

1. I am a member of The Gardner Firm, PC, one of the law firms that represent Lisha Abraham, Susan Berry and Benjamin Summers (the "Plaintiffs" or the "Class Representatives"), on their own behalves and on behalf of all other similarly situated employees.

2. This action arises out of the termination of Plaintiffs and more than nine hundred other similarly situated putative Class Members who contend they were abruptly separated from their employment as a result of the mass layoffs and/or plant closings ordered and implemented

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255 (KBO). The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

simultaneously by Defendants Akorn Operating Company LLC, Akorn Intermediate Company LLC and Akorn Holding Company LLC (collectively, "Defendants" or "Debtors") beginning on or about February 22, 2023 at their facilities (the "Facilities").

3. On February 23, 2023 (the "Petition Date"), Defendants simultaneously filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court"), thereby commencing these chapter 7 bankruptcy cases (the "Chapter 7 Cases").

4. On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the chapter 7 Trustee to the Estates of each of the Debtors.

5. The cases were administratively consolidated by order of the Court on March 20, 2023 with Case No. 23-10245 (KBO) (Akorn Holding Company, LLC, et al.) designated as the lead case.

6. On the Petition Date, and as amended thereafter, Plaintiffs commenced a class action adversary proceeding under the Worker Adjustment and Retraining Notification, or "WARN," Act, 29 U.S.C. § 2101 *et seq.* ("Federal WARN Act") and the New York Worker Adjustment and Retraining Notification Act ("NY WARN Act") New York Labor Law ("NYLL") § 860 et seq. (collectively, the "WARN Acts") (the "WARN Action"), asserting claims against Defendants under the "single employer" theory of liability. Plaintiffs alleged that Defendants, as a single employer, shutdown the Facilities, resulting in employment losses suffered by the Plaintiffs and the hundreds of other similarly situated former employees, without notice that complied with the WARN Act. Plaintiffs alleged that, as a consequence of Defendants' failure to give the Plaintiffs and the putative class members any advance written notice of termination, much less sixty days'

notice, the Plaintiffs seek 60 days' priority wages and benefits for each putative Class Member, with any spillover as a general unsecured claim.

7. The claims bar date in this matter was June 26, 2023 (the "Bar Date").

8. On the Bar Date, Plaintiffs filed a timely Class Proof of Claim against each of the Defendants asserting the class WARN claim. ("WARN Class POCs"). No objections have been filed concerning the WARN Class POCs.

9. Also on the Bar Date, Plaintiffs filed a motion seeking (A) Class Certification, (B) Appointment of Class Representatives, (C) Appointment of Class Counsel, (D) Approval of the Form and Manner of Class Notice, and (E) Such Other and Further Relief as this Court May Deem Appropriate (the "Class Motion"). The Plaintiffs provided declarations supporting their claims that they each worked at one of the Facilities and were terminated, without cause on their part, during the relevant period. The Plaintiffs have no conflict of interest with other Class members. The Class Motion is unopposed.

10. On July 21, 2023, the Trustee filed an answer to the WARN Action.

11. On July 31, 2023, and as amended on May 3, 2024, the Court entered a scheduling order setting September 24, 2024 as the cutoff date for fact discovery.

12. Following entry of the Scheduling Order, Plaintiffs conducted discovery and engaged in motion practice to secure certain responsive information.

13. On June 21, 2024 and as amended on June 24, 2024, the Court assigned this adversary proceeding to mediation and appointed Frank Monaco as the mediator.

14. The parties mediated the claims in this matter on July 25 and 30, 2024, and following good faith and arms' length negotiations, the Parties reached agreement on a compromise that will resolve the WARN Action.

15. The parties agree that the Adversary Proceeding and the WARN Class POCs present significant and complex legal and factual issues regarding the application of the WARN Act. In an attempt to preserve the Estates' assets by avoiding extensive and costly litigation, and the risks attendant thereto, the Parties reached a settlement, subject to Bankruptcy Court approval, the terms of which have been set out in the Settlement,[2] which contemplates the certification of the Class for settlement purposes pursuant to Federal Rule 23(e), as further described herein.

16. As noted above, the Settlement provides for certification of the Class, for settlement purposes only pursuant to Federal Rule 23(e), in connection with the WARN Action and the Settlement Motion, consisting of the following individuals (the "Class Members" and, together, the "Class"): the individuals listed on Schedule 1 to this Settlement Agreement, who have been identified from the Defendants' records as former employees of one or more Defendants, who worked at or reported to any of the Facilities and who were terminated without cause on their part on or about February 22, 2023, within thirty days of that date, and thereafter, as part of or as the result of the shutdown of the Facilities; provided however, that the Class shall not include individuals (whether presently listed on Schedule 1 or otherwise): (i) who are found by the Trustee to have previously released any WARN Act claims which they may otherwise have been entitled to assert in this WARN Action ("Previous Releasors"); (ii) who become Opt-Outs (as defined below); and/or (iii) whose claims the Trustee identifies as being subject to disallowance pursuant

[2] This declaration contains a summary of certain provisions of the Settlement. In the event of any conflict, the Settlement itself shall govern over any description contained herein.

to section 502(d) of the Bankruptcy Code unless and until such individual has paid the amount or turned over such property for which such individual is liable under section 502(d) ("Section 502(d) Parties"). The Gardner Firm, P.C., Lankenau & Miller, LLP, and Margolis Edelstein shall be appointed class counsel ("Class Counsel") for the Class. Lisha Abraham, Susan Berry, and Benjamin Summers shall be appointed Class Representatives for the Class. The Settlement also provides that upon the Effective Date, the Class shall be granted: (i) allowed priority claims jointly and severally against Defendants pursuant to 11 U.S.C. § 507(a)(4) in the aggregate amount shown on Schedule 1 in the column titled "Allowed Priority Claims," subject to reduction to account for Opt-Outs (as defined below), Previous Releasors, Section 502(d) Parties, and Allowed Non-WARN Priority Claims[3] (the "Allowed Priority WARN Claims"); and (ii) allowed non-priority general unsecured claims jointly and severally against Defendants in the aggregate amount shown on Schedule 1 in the column titled "Allowed GUC Claims," subject to reduction to account for Opt-Outs (as defined below), Previous Releasors, and Section 502(d) Parties, and to adjustment to account for Allowed Non-WARN Priority Claims (the "Allowed GUC WARN Claims" and collectively with the Allowed Priority WARN Claims, the "Allowed WARN Claims").[4] The amounts attributable to any Opt-Outs (as defined below), Previous Releasors, and Section 502(d) Parties will be deducted from the amounts of the Allowed Priority WARN Claims and the Allowed GUC WARN Claims, and such amounts shall be adjusted to account for Allowed Non-WARN Priority Claims. Promptly following the Effective Date, the Trustee shall forward a distribution

[3] To the extent any Class Member has an allowed non-WARN related Section 507(a)(4) claim in the Bankruptcy Cases (an "Allowed Non-WARN Priority Claim"), then in such event any portion of the Allowed Priority WARN Claim for such Class Member which exceeds $15,150 when added to the Allowed Non-WARN Priority Claim, shall be classified as an Allowed GUC WARN Claim. For avoidance of doubt, no Class Member's combined allowed Section 507(a)(4) claims shall exceed the priority maximum of $15,150 permitted under the Bankruptcy Code.

[4] All references in this Settlement Agreement to information provided on Schedule 1 shall be interpreted to refer to Schedule 1, and/or such information, as adjusted to account for Opt-Outs (as defined below), Previous Releasors, Section 502(d) Parties, and Allowed Non-WARN Priority Claims.

from the Estates in the aggregate amount of the Allowed Priority WARN Claims, adjusted as provided herein (the "Allowed Priority WARN Claims Distribution"), and a separate distribution to be determined in accordance with the priority scheme of the Bankruptcy Code on account of the Allowed GUC WARN Claims adjusted as provided herein (the "Allowed GUC WARN Claims Distribution"),[5] to a qualified settlement fund to be established by Class Counsel, or their designee, in conformity with Internal Revenue Code §468B (the "Qualified Settlement Fund"), pursuant to written instructions to be provided by Class Counsel.

17. Class Counsel may retain the services of an Administrator to act as its agent for purposes of administering and distributing the Settlement. The costs of the Administrator shall be paid from the Qualified Settlement Fund. Class Counsel, or its designee, the Administrator, as fiduciary on behalf of the Qualified Settlement Fund, shall be responsible for making distributions from the Qualified Settlement Fund of any amounts required by the Settlement Agreement pursuant to applicable law. The Class Representatives shall receive an aggregate one-time payment from the first distribution from the Qualified Settlement Fund of $30,000, to be allocated as follows: $10,000 each to Lisha Abraham, Susan Berry and Benjamin Summers for their service in this matter (the "Class Representative Service Payments"). Class Counsel is entitled to attorneys' fees ("Class Counsel's Fees") in the amount of one-third (1/3) of each distribution on the Allowed WARN Claims, net of the one-time $30,000 payment for Class Representative Service Payments. In addition, Class Counsel is entitled to its litigation expenses (including costs associated with the production and mailing of the Class Notice) ("Class Counsel's Expenses") which have been projected to be $50,000 per distribution. Class Counsel's Fees and Class Counsel's Expenses, as well as the Representative Service Payments, shall be paid exclusively by the Qualified Settlement

[5] The Trustee will make the Allowed GUC WARN Claims Distribution at the same time as he makes distributions on account of allowed general unsecured (non-priority) claims in these Bankruptcy Cases generally.

Fund, and Class Counsel shall have no right to payment, either as an administrative expense, unsecured claim, or otherwise, from the Estates for any reason at any time. Class Counsel's Fees and Class Counsel's Expenses shall be payment in full for Class Counsel's work and expenses in connection with this matter.

18. Upon the Effective Date of the Settlement Agreement, any and all individual claims asserted by Class Members against the Debtors related in any way to the WARN Acts or any comparable state and local laws requiring notice prior to a shutdown shall be disallowed and expunged, and payment on account of such claims shall be limited solely to the Allowed WARN Claims provided for in the Settlement Agreement. Further, all Released Claims of a Class Member (other than claims with respect to amounts to be paid under the terms of the Settlement) shall be waived upon the Effective Date.

19. If a Class Member decides not to participate in the Settlement, the Class Member need only fill out and submit the "opt-out" form and submit it according to the instructions and within the time limits approved by this Court.

20. As set forth in the Joint Motion, and as further supported by this declaration, and legal arguments set forth in the Joint Motion, I submit that the proposed Class meets the requirements of Rule 7023 of the Federal Rules of Bankruptcy and Rule 23 of the Federal Rules of Civil Procedure.

21. I submit that the proposed class of approximately nine hundred Class Members meets the numerosity requirement and joinder of all Class Members is impractical. The class is sufficiently numerous to make joinder of all members impractical, and thus satisfy the numerosity requirement. *See Gates*, 248 F.R.D. at 440 (finding that two classes made up of 400 and 1,000, respectively, satisfied the numerosity requirement).

22. The commonality requirement requires existence of at least one question of law or fact common to the Class. Fed. R. Civ. P. 23(a)(2); *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). The commonality threshold is low, (*Powers v. Lycoming Engines*, 245 F.R.D. 226, 236 (E.D. Pa. 2007)), and does not require "an identity of claims or facts among class members," *Behrend*, 245 F.R.D. at 202. Further, the existence of individual facts and circumstances will not defeat commonality so long as the Class Members allege harm under the same legal theory. Here, fundamental issues of law and fact regarding notice of termination, applicability of several defenses, measure of damages and priority of claims and attorneys' fees are common to all Class Members For these reasons, I submit that the commonality factor of Fed. R. Civ. P. 23(a)(2) is met.

23. Typicality requires that the "named plaintiffs' claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc*., 457 F.3d 291, 295-296 (3d Cir. 2006) (*quoting Baby Neal*, 43 F.3d at 55); *see* Fed. R. Civ. P. 23(a)(3). "Typicality requires a strong similarity of legal theories to ensure that the class representatives' pursuit of their own goals will work to benefit the entire class." *Powers*, 245 F.R.D. at 236. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Beck*, 457 F.3d at 295-96 (*quoting Baby Neal*, 43 F.3d at 55). The Class Representatives do not allege that they were singled out for disparate treatment in the manner in which they were terminated. Instead, they allege that they suffered harm as a result of the same conduct that allegedly injured the absentee Class Members – they were allegedly terminated on or about February 22, 2023 without receiving notice that complied with the WARN Act. Accordingly, the Bankruptcy Court should find that the typicality requirement is met.

24. In my experience, and having been appointed as class counsel in more than seventy-five (75) WARN class actions, commonality has been found for class certification where class members had different degrees of injury or even where defenses might exist only as to particular individuals.

25. In my experience, class action suits under the WARN Act almost always involve a class of plaintiffs who held different positions, were paid different amounts and frequently were terminated on different dates.

26. With respect to adequacy, class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Gates*, 248 F.R.D. at 441. The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck*, 457 F.3d at 296. Thus, the court must determine "whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class." *Johnston*, 265 F.3d at 185. I submit that the requirements of Fed. R. Civ. P. 23(a)(4) are met here based on the following. I submit that the Plaintiffs have no conflict of interest with other Class Members and have and will diligently prosecute the WARN claims and represent the interests of the Class. I submit that the Class Representatives are suitable to serve as the representatives for the Class. I submit that the Class Representatives were terminated during the relevant period and without sixty days advance written notice of termination. I submit that the Class Representatives had no involvement in any decision to terminate the employees, nor did they have any involvement in the decision regarding the provision of WARN notices to the employees. The Class Representatives have engaged counsel who have extensive experience in WARN class action litigation, having collectively been appointed class counsel in well over 100 WARN Act

cases. The Class Representatives' counsel have diligently investigated the facts relating to the alleged "plant closings" in this matter. I submit that the Court should find that the Class Representatives and Class Counsel adequately represent the interests of the Class Members

27. I submit that the proposed Class meets the requirements of Fed. R. Civ. P. 23(b)(3). I submit that common questions of law and fact predominate over the individual issues. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623-24; *Community Bank*, 418 F.3d at 308-09. The proper predominance inquiry "trains on the legal and factual questions that qualify each member's case as a genuine controversy, questions that preexist any settlement." *Amchem*, 521 U.S. at 623. "In this vein a predominance analysis is similar to the requirement of Rule 23(a)(3) that claims or defenses of the named representatives must be typical of the claims or defenses of the classes." *Community Ban*k, 418 F.3d at 309.

28. I submit that, just as typicality exists, predominance also exists. All of the claims arise from alleged violations of the WARN Act resulting from the shutdown of the Facilities on or about February 22, 2023. Accordingly, the Court should find that the predominance requirement is met

29. I submit that the "superiority" element of Fed. R. Civ. P. 23(b) is met. I submit that the common questions of law and fact detailed that affect all members of the proposed Class predominate over any questions affecting only individual members. I submit that a class action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons: no proposed Class member has an interest in individually controlling the prosecution of a separate action under the WARN Act; no other Class Member has commenced a lawsuit other than the one filed by Plaintiffs concerning the WARN Act rights of any proposed Class Member; concentrating all potential litigation concerning the WARN Act rights of the

proposed Class Members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all proposed Class Members and administration of this action as a class action will not be complicated or difficult.

30. I, along with the following attorneys, have had and will have responsibility for this matter: Vance McCrary (The Gardner Firm, PC), Stuart Miller (Lankenau & Miller, LLP), and James Huggett (Margolis Edelstein).

31. I am a 1990 graduate of the University of Alabama and a 1994 graduate of the University of Alabama School of Law. I was admitted to practice law before the courts of the State of Alabama in 1994 and the State of Florida in 1995. I am a partner at The Gardner Firm, PC. During my twenty-four years of law practice, I have been engaged primarily as a litigator handling cases including trials and hearings on a variety of legal matters including WARN and other employment rights matters. Over the last eighteen years, I have been appointed and served as class counsel in well over seventy-five (75) WARN Act class actions nationwide.

32. M. Vance McCrary is also a partner with The Gardner Firm, P.C. He attended the University of Alabama School of Law, graduating in 2001. He is admitted to practice law in the state and federal courts of Alabama, as well as the Eleventh Circuit U.S. Court of Appeals and the U.S. Supreme Court. Mr. McCrary's practice focuses on the litigation of mass tort, class action, toxic tort and complex product liability claims. Mr. McCrary regularly litigates labor and employment cases before state and federal courts. Mr. McCrary has been lead class counsel in several state court class actions in Alabama. He has also served as co-lead class counsel in more than sixty (60) WARN Act cases on a nationwide basis.

33. Stuart Miller is a 1982 graduate of Brooklyn College and a 1987 graduate of Columbia Law School. He was admitted to practice before the courts of the State of New York in 1988. He has been engaged primarily as a litigator handling cases including trials and hearings on a variety of legal matters including WARN and other employment rights matters. Since August 1997, he has been appointed and has served as class counsel in more than one hundred (100) WARN Act cases.

34. James Huggett of Margolis Edelstein in Wilmington, Delaware, has over 15 years experience in complex bankruptcy litigation and has served as counsel to numerous creditors and debtors. The law firm of Margolis Edelstein has extensive experience in handling bankruptcy adversarial complaints and, as here, has acted as local counsel in numerous WARN class actions.

35. I submit that the above-referenced counsel are well-suited to serve as Class Counsel, they have no conflict of interest, and, as shown herein, have diligently prosecuted the Adversary Proceeding and should be appointed Class Counsel.

36. I submit that the Class Notice attached to the Settlement will fairly apprise the Class members of the nature of the dispute, the terms of the Settlement, of their right to opt-out of the Class, and of the effect of their decision not to opt-out of the class, namely, that they will be bound by terms of the proposed Settlement, including the releases of claims therein. The Class Notice also includes my firm's number so that Class Members can call me, should they have any questions about the Settlement.

37. The parties seek approval of service of the Class Notice by first class mail sent to the address of each Class Member as shown in the records of the Debtor-Defendants (or to such other address as the Class Members may indicate to Class Counsel). As discussed in the Joint Motion, I submit that service in this manner, and according to the proposed schedule, is proper.

38. In view of the foregoing and the Joint Motion, and the Settlement and exhibits attached thereto, I ask the Bankruptcy Court to enter an order for the relief requested in the Joint Motion, and to approve all aspects of the Settlement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on August 23, 2024 in Mobile, Alabama.

/s/ Mary E. Olsen
Mary E. Olsen