# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | : | Chapter 7 |
|---|---|---|
| In re: | : | |
| | : | Case No.: 23-10253 (KBO) |
| AKORN HOLDING COMPANY LLC, *et al.*,[1] | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Related to Docket No. 972 |
| | : | |

**LEADIANT BIOSCIENCES INC.'S OBJECTION TO TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (I) APPROVING SETTLEMENT OF CONVERSION MOTION PURSUANT TO FED. R. BANK. P. 9019; AND (II) GRANTING RELATED RELIEF**

Creditor, Leadiant Biosciences, Inc., f/k/a Sigma-Tau Pharmaceuticals, Inc. ("**Leadiant**"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), hereby objects (the "**Objection**") to the *Motion for Entry of an Order: (I) Approving Settlement of Conversion Motion Pursuant to Fed. R. Bank. P. 9019; and (II) Granting Related Relief* [ECF No. 972] (the "**Motion**"), filed by George L. Miller, in his capacity as the Chapter 7 Trustee (the "**Trustee**") for the estates of the above-captioned debtors (collectively, the "**Debtors**"), seeking entry of an order denying the proposed settlement on the Debtors' *Motion for Entry of an Order Authorizing and Approving the Conversion of these Chapter 7 Cases to Cases under Chapter 11* [ECF. No. 832] (the "**Conversion Motion**") under the terms of the Akorn – Settlement Term Sheet, dated October 17, 2024 (the "**Settlement**"), by and among the Trustee, the Debtors, and the controlling members of Akorn Holding (the "**Controlling Members**"), and a

---

[1] Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO) ("**Akorn Holding**"); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO) ("**Akorn Intermediate**"); and Akorn Operating Company LLC (6184), Case No. 23- 10255 ("**Akorn Operating**" and collectively, "**Debtors**"). Debtors' headquarters are located at 5605 CenterPoint Court, Gurnee, IL 60031.

copy of which is attached as Exhibit "A" to the Motion. In support of the Objection, Leadiant respectfully states as follows:

**PRELIMINARY STATEMENT**

1.     The Trustee's Motion should be denied for two reasons. First, the Trustee's Motion contains insufficient information and/or evidentiary support for this Court to approve it. The Motion contains material gaps in information necessary for creditors and/or the Bankruptcy Court to determine whether the Settlement is fair, equitable, and in the best interests of the estate. Further, no affidavit is presented to justify the reasonableness of either the economic or non-economic terms of the Settlement, which provides for the direct transfer of assets (which are not valued or attributed to any particular debtor estate) to the last-in-line, junior-most stakeholders of the Akorn entities—*i.e.*, the equity-holders of the non-operating holding company. The Trustee fails to identify the specific type(s) of causes of action against the former directors and officers, much less their value or to which of the Debtors the claims belong.

2.     Additionally, the Motion provides no information on the availability and extent of insurance coverage that may be available as it relates to the claims against the Debtors' directors and officers and, again, which Debtor holds those the rights under any applicable policies. It is also unclear whether the Settlement includes the proposed transfer of avoidance actions or business torts and whether such claims are direct, derivative, or even double derivative in nature.

3.     *Second,* the Settlement is neither fair, reasonable, nor in the best interest of the estate. To the extent the claims belong to Akorn Operating, for example, it remains unclear precisely what Akorn Holding's Controlling Shareholders have or will provide to Akorn Operating (or to any other debtor) in exchange for the transfer of that entity's valuable assets—which, by the Settlement's terms, would be transferred to the equity of another estate (an apparent sale, which is described as "abandonment") absent a valid explanation or basis. Although described as a

settlement, the proposed agreement is actually a direct distribution to the junior-most stakeholders in this non-consolidated enterprise in direct contravention of the Bankruptcy Code's priority scheme. Worse, if the Akorn Holding Controlling Shareholders elect (as is their sole and exclusive right under the Settlement) to take the assets via "abandonment", the processes through which creditors would potentially assert claims against recoveries, or even have the right to information or disclosure about recoveries—much less an opportunity to object to settlements—remains entirely speculative and unclear.

4. Other than withdrawing their Motion, it is unclear what the Akorn Holding Controlling Shareholders are transferring to the estates and/or creditors for the rights they are receiving. It is further unclear that the concessions proposed in the Settlement (*e.g.*, overriding provisions governing the priority of distribution; providing for *direct* abandonment of assets of an undisclosed value and ownership to a particular creditor (as opposed to a debtor); transferring assets at the election of a non-estate creditor without any payment or motion for sale; and/or requesting an advisory opinion on the standing of non-creditor parties to assert claim objections and/or to assert administrative claims for work that is otherwise within the exclusive purview of the Trustee) represents an exchange of something (*i.e.*, Bankruptcy Code rights) that these estates are entitled to give.

5. In short, the Settlement—while undoubtedly beneficial to Akorn Holding's Controlling Members—is not properly supported and by all indications is to the substantial detriment of the senior creditors of these estates.

6. In exchange for not pursuing conversion (which is the only concession to the estate and of dubious benefit to creditors), the Controlling Members receive the sole and absolute discretion to elect a (i) priority distribution of an unknown amount, (ii) from the assets of an

unspecified Debtor against which they may have no claim, and (iii) standing to object to the claims of creditors in any of the Akorn estates (against which they may have no rights or claims) and to have such objections fully funded by those creditors on an administrative priority basis—all in total contravention of well-settled rules regarding all of the foregoing and the Bankruptcy Code's priority distribution scheme.

7. While Leadiant does not object to the Controlling Shareholders being granted derivative standing to pursue D&O Claims (provided all such claims are adjudicated in bankruptcy, remain assets of the debtor to which they belong, and remain subject to this Court's jurisdiction and the Bankruptcy Code's distribution provisions), the other relief sought in the Motion—including the wholesale transfer of unspecified claims to Akorn Holding's Controlling Shareholders *at their election*—is not acceptable and not sufficiently supported to be approved.

## GENERAL BACKGROUND

8. On February 23, 2023 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in this Court. On or about the Petition Date, the Office of the United States Trustee appointed the Trustee for the estates of the Debtors.

9. Following his appointment, the Trustee has represented that he has engaged in the marketing and sale of substantially all of the Estates' assets, , paid the claims of secured creditors in full, and is currently holding approximately $87 million in the Chapter 7 Estates for distribution to other creditors.

### The Controlling Shareholders Move to Convert the Cases from Chapter 7 to Cases under Chapter 11 of the Bankruptcy Code.

10. On June 21, 2024, the Controlling Shareholders[2] filed the Conversion Motion

---

[2] The term Controlling Shareholders is defined in neither the Motion nor the Settlement. However, each member comprising the Controlling Shareholders is listed in the *Action by Written Consent of the Board of Directors and*

4

seeking to convert the cases from Chapter 7 to Chapter 11 under the Bankruptcy Code.

11. The Conversion Motion stated that in response to growing frustration over the lack of progress in these cases, the Controlling Shareholders elected Lloyd Sprung as sole director of Akorn Holding and authorized the Debtors to move for conversion of these cases to Chapter 11. Conversion Mtn., at pg. 2. The Conversion Motion further represented that, upon conversion, the Debtors intended to propose a chapter 11 plan of liquidation to reconcile claims, collect accounts receivable, sell the remainder of the Debtors' assets, prosecute litigation against former directors and officers and distribute cash through a liquidating plan. *Id.*

12. The Trustee opposed the Conversion Motion [ECF Nos. 858 and 955]. Among other reasons, the Trustee argues that conversion is improper because the Debtors cannot meet their burden of proof under Section 706(a) of the Bankruptcy Code and show that, upon conversion, "cause" would not exist to re-convert the Bankruptcy Cases back to Chapter 7. *See* Trustee's Objection at ¶¶ 38-45. Additionally, the Trustee believes that conversion of these Bankruptcy Cases to cases under chapter 11 would prejudice the creditor body and negatively impact the administration of the Estates. *Id.* at ¶¶ 46-69.

**The Trustee, the Debtors, and the Controlling Shareholders Propose a
Settlement on the Conversion Motion Resulting in More Questions than Answers.**

13. On October 17, 2024, the Trustee filed the Motion seeking approval of the Settlement by and among the Debtors, the Controlling Members, and the Trustee on the Conversion Motion. The key provisions of the Settlement at issue are as follows:

14. **Conversion.** Article I of the Settlement calls for the Debtors and the Controlling Members to withdraw the Conversion Motion with *prejudice* and their agreement to not contest

---

*Members of Akorn Holding Company LLC in Lieu of Meeting* dated June 17, 2024, and a copy of which is attached as Exhibit B to the Conversion Motion.

5

payments to the Trustee for commissions on monies disbursed or turned over to parties in interest, excluding the Debtors, but including the holders of secured claims calculated at the maximum percentage rates set forth in 11 U.S.C. § 326(a). [Mtn., Ex. B at pg. 2].

15. **D&O Claims**. Article II of the Settlement grants Akorn Holding and, by extension, the Controlling Shareholders, the sole and absolute discretion to elect one of two options with regard to the prosecution of the D&O Claims by December 30, 2024 — acquire direct standing by operation of the claims transfer(s) labeled as "abandonment" and exclusively prosecute the D&O Claims for its own benefit subject to the unspecified rights of creditors against the Debtors; or, alternatively, acquire derivative standing to prosecute the D&O Claims on behalf of the Debtors' estates and subject to the right of creditors against the estate; provided, however, all professional fees and expenses incurred in the prosecution of D&O Litigation will be paid by Akorn Holding. [*Id.*]

16. **Insider Claims**. Article III of the Settlement purports to grant Akorn Holding standing to object to all claims filed by former directors and officers against the Debtors (the "Insider Claims"), together with the right to be reimbursed for all reasonable professional fees and expenses incurred from prosecuting objections to Insider Claims from the Chapter 7 estates, and requires that the Trustee cooperate reasonably with Akorn Holding in respect of the prosecution of such objections. [*Id.*]

17. **Other Claims Objections**. Article IV of the Settlement mandates that the Trustee regularly consult with Akorn Holding regarding the status and strategy of the claims reconciliation process and purports to grant Akorn Holding standing to object to any claim against the Debtors in excess of USD $ 1 million in the event the Trustee refuses or declines to file an objection, *together with the right to be reimbursed for reasonable professional fees and expenses incurred in*

6

*prosecuting objections from the Chapter 7 estates*, and requires the Trustee to cooperate with Akorn Holding and take action reasonably requested by Akorn Holding in respect of the claims reconciliation process and the objection by Holdco to any claims. [*Id.*]

18. Leadiant files this Objection in response.

## ARGUMENT

19. The Court should deny the Trustee's Motion because: (i) the Settlement lacks sufficient information for the Bankruptcy Court to properly determine whether the terms are fair, equitable, and in the best interests of the estates; and (ii) the Settlement, to the extent it vests the Controlling Shareholders with the right to elect direct transfer of an asset—*i.e.*, the D&O Claims—contemplates a sale in violation of the disclosure and notice requirements of Section 363 of the Bankruptcy Code.

20. Bankruptcy Rule P. 9019(a) states that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bank. P. 9019(a). This rule empowers bankruptcy courts to approve a settlement agreement where "the compromise is fair, reasonable, and in the interest of the estate." *In re Tribune Co.*, 464 B.R. 126, 158 (Bankr. D. Del. 2011).

21. The compromise or settlement must be fair, reasonable, and in the best interest of the estate. *See In re Louise's Inc.*, 211 B.R. 798, 801 (D. Del. 1997) ("The decision whether to approve a compromise under Rule 9019 is committed to the sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in the interest of the estate."); *In re Nw. Corp.*, No. 03-12872 (KJC), 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("[T]he bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.") (citation omitted); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr

D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable.").

22.     In evaluating the fairness and equity of a proposed settlement, the bankruptcy court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393(3d Cir. 1996). Specifically, the Bankruptcy Court must consider the following factors: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending to it; and (iv) the paramount interest of creditors. *Martin*, 91 F.3d at 393. "The court must also consider all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998). Accordingly, at its core, "the ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'" *Id*.

23.     Here, the Settlement should be denied.

### A.     The Settlement Constitutes a *De Facto* Sale of Property of the Estate.

24.     The Bankruptcy Code contains detailed provision regarding the assertion of claims and the allowed distribution of assets, none of which appear to be implicated here. The Bankruptcy Code also addresses the possibility of abandonment, which also does not provide for the direct transfer of title or ownership of an asset to a specifically designated party at the election of a debtor in possession or trustee. If it did, we would have a structure for avoiding priorities altogether. Rather than implicating any of the foregoing, the Settlement seeks to effectuate a *de facto* sale as a concession for withdrawal, not of a monetary claim against any particular estate, but of a contested matter. Though labeled as an abandonment, that simply is not the case. For all intents and purposes, the Trustee will transfer property of an undisclosed value and of an undisclosed

estate (*i.e*., D&O Claims) outside of the ordinary course of business to Akorn Holding's Controlling Shareholders, effectively free and clear of all interests. Non ordinary course sales of estate property must be made in accordance with the requirements of section 363 of the Bankruptcy Code, including that section's notice provisions, procedures, and protections. Regardless of how it's characterized, the proposed transfer here fails to meet the standards for a sale or an abandonment.

25. *First,* the Trustee's attempt to transfer the D&O Claims by operation of Bankruptcy Rule 9019 is inappropriate. The Third Circuit has recognized that settlements disposing of estate assets must be scrutinized under and comply with Section 363 of the Bankruptcy Code. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394-95 n.2 (3d Cir. 1996) (approving bankruptcy court decision to deny settlement and reversing district court decision to approve settlement because district court did not consider section 363 of the Bankruptcy Code); *Goodwin v. Mickey Thompson Entertainment Group, Inc*. *(In re Mickey Thompson Entertainment Group Inc*.), 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003) ("[T]his settlement is in essence a sale of potential claims to the Settling Parties[.]"). Instead, section 363 of the Bankruptcy Code is the substantive provision that gives the basis for approval of a settlement. *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 264 (5th Cir. 2010) (agreeing with courts from the Third, Sixth and Seventh Circuits that a Bankruptcy Rule 9019 settlement in which there is a disposition of estate property may trigger the requirements of section 363).

26. *Second*, the Trustee has not met the burden to abandon the D&O Claims generally —let alone to Akorn Holding specifically. Section 554(a) of the Bankruptcy Code states that the "trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Neither requirement has been

met here. *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 124 (2d Cir. 2008) (holding that where a trustee's intent to abandon claim was ambiguous, the proposed abandonment was ineffective).

### B. The Trustee's Motion Lacks Sufficient Information Necessary to Evaluate the Settlement.

27. The Trustee's Motion lacks sufficient information for the Bankruptcy Court to determine whether the Settlement is fair, equitable, and in the best interests of the estate under the Third Circuit's prevailing standard. The evidence submitted in support of a 9019(a) settlement must be detailed and must provide the Court with enough information to "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (holding that bankruptcy courts "must be apprised of all relevant information that will enable it to determine what course of action will be in the best interests of the estate"); *In re Spansion*, 2009 WL 1531788 at *9 (Bankr. D. Del. June 2. 2009) (denying motion under Bankruptcy Rule 9019 there was "not enough evidence before [the Court] to conclude whether the proposed settlement amount is within the 'range of reasonableness'").

28. The Third Court has long recognized that the "unique nature of the bankruptcy process means that judges must carefully examine settlements before approving them." *Will v. NW Univ. (In re Nutraquest, Inc.)*, 434 F.3d 639, 644 (3d Cir. 2006). The Bankruptcy Court "may not simply defer to [the Trustee's] judgment, but must independently evaluate the reasonableness of the settlement." *In re Motors*, 555 B.R. at 365; *In re Copperfield Investments, LLC*, 401 B.R. 87, 92 (Bankr. E.D.N.Y. 2009). To do so, the Bankruptcy Court must be able to apprise itself "of all facts necessary to form an intelligent and objective opinion of the probabilities of ultimate success should the claims be litigated." *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979).

29. Here, the Motion fails to apprise creditors of the nature, estimated value, and/or ownership of the D&O Claims being transferred ("abandoned") under the Settlement. By its terms, the D&O Claims are described in basic terms as "claims against any of [the Debtors'] former directors and officers." *See* Motion at pgs. 5-6. But no additional information is provided. Nowhere does the Trustee identify the specific type(s) of causes of action being transferred or their estimated value, let alone explain whether the claims at issue belong to Akorn Holding, Akorn Intermediate, or Akorn Operating. Rather, creditors are left to guess whether the Settlement includes avoidance actions or business torts and whether such claims are direct, derivative, or even double derivative in nature, given Akorn Holding is the sole member of Akorn Intermediate, which in turn is the sole member of Akorn Operating.

30. Nor does the Trustee offer any insight related to whether one or more of the D&O Claims is covered by any applicable insurance policies. The Motion is devoid of any information or discussion regarding these insurance policies, notwithstanding the Debtors' tail coverage prior to the Petition Date. *See Debtors' Schedules of Assets and Liabilities* at ECF No. 70 at pg. 26 (listing director and officer insurance policies with tail coverage); 72 at pg. 26 (same); 74 at pg. 45 (same).

31. In addition, Akorn Holding's Controlling Shareholders' request to have standing conferred by agreement (which appears to seek some form of declaratory relief) is improper. Whether Holdco's equity holders are parties in interest for the purpose of objecting to claims is a matter to be determined by this Court, not decreed via settlement. A shareholder, such as Akorn Holding—which under Bankruptcy Code section 726(a)(6) falls at the bottom of the priority distribution scheme—lacks standing on its own accord to object to claims against the estates of

other entities where it holds no claims. Thus, the Settlement's attempt to manufacture standing should not stand.

32. Although section 502 states that objections can be prosecuted by any party in interest, the trustee has an affirmative statutory obligation under Section 704(5) to prosecute objections to claims whenever the prosecution of such objections will serve a useful purpose. 11 U.S.C. § 704(5) ("The trustee shall … (5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper[.]"). Where, as here, there is no showing of a reasonable possibility of a surplus, the equity holder (even the direct equity holder) lacks standing to interpose claims objection. *In re Magnesium Corp. of Am.*, 583 B.R. 637, 650 (Bankr. S.D.N.Y. 2018) (finding equity holder of debtor lacked standing "to object to claims against the estate unless there is a reasonable possibility of a surplus after all claims against the debtor's estate are paid in full"); *see also In re Tronox Inc.*, 464 B.R. 606, 617 (Bankr. S.D.N.Y. 2012) (finding no support for requiring determination of creditors' claims prior to resolving avoidance actions).

33. There is no statutory basis for the junior-most stakeholder (*i.e.*, Akorn Holding's equity) at the junior-most debtor entity to recover priority administrative distributions for their legal fees if and when they choose to pursue objections to claims at Akorn Operating (a job that is statutorily delegated to the Trustee). Notwithstanding, the proposed Settlement would financially incentivize Akorn Holding to engage in litigation with legitimate creditors and be paid from those creditors' assets for doing so. Although the Controlling Shareholders undoubtedly have every incentive to object to the claims of legitimate estate creditors—as it is the best avenue to maximize their recovery at the very bottom of the priority list—there is no basis under the Bankruptcy Code for them to be paid by the estates to do so, or to suggest that the modification of the Bankruptcy Code can be used as a bargaining chip in settlement. Absent express authorization under the

Bankruptcy Code, there is no authority to modify existing rules regarding (i) who has standing to object to claims and (ii) who is entitled to recover attorneys' fees for doing so. The Settlement cannot override the Bankruptcy Code in this regard and/or impose new rules of priority or distribution in the name of resolving a contested matter.

## RESERVATION OF RIGHTS

34. Leadiant reserves its right to amend, modify, or supplement this Objection and to raise any additional arguments or objections under state, federal, or other applicable law on or before the hearing on the Motion, including, without limitation, any arguments or objections in regard to the Motion, in which Leadiant reserves the right to join. Nothing herein shall be construed to waive, limit, or inhibit Leadiant's right to raise such arguments or objections on or before the hearing.

## CONCLUSION

**WHEREFORE**, Leadiant respectfully requests entry of an order: (i) sustaining this Objection; (ii) denying the Motion; (iii) denying the Settlement; and (iv) granting such other and further relief as the Court deems proper.

Date: November 13, 2024.　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　By:　*/s/Michael Busenkell*
　　　　　　　　　　　　　　　　　　　Michael Busenkell (DE 3933)
　　　　　　　　　　　　　　　　　　　GELLERT SEITZ BUSENKELL & BROWN, LLC
　　　　　　　　　　　　　　　　　　　1201 North Orange Street, Suite 300
　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　Phone: (302) 425-5800
　　　　　　　　　　　　　　　　　　　mbusenkell@gsbblaw.com

　　　　　　　　　　　　　　　　　　　and

By: */s/Fernando J. Menedez*
Fernando J. Menendez, Esq.
Florida Bar No.: 18167
SEQUOR LAW
1111 Brickell Avenue, Suite 1250
Miami, FL  33131
Tel: (305) 372-8282
Fax: (305) 372-8202
E-mail: fmenendez@sequorlaw.com
E-mail: dhalperin@sequorlaw.com

*Counsel for Leadiant Biosciences, Inc.*