**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| Akorn Holding Company, LLC, *et al.,* | : | Case Number 23-10253 (KBO) |
| | : | |
| Debtors.[1] | : | Jointly Administered |
| | : | |
| | : | Obj. Deadline: November 13, 2024 at 4:00 p.m.[2] |
| | : | Hearing Date: November 20, 2024 at 9:30 a.m. |

**THE UNITED STATES TRUSTEE'S LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE TRUSTEE'S MOTION FOR ENTRY OF ORDER (I) APPROVING SETTLEMENT OF CONVERSION MOTION PURSUANT TO FED. R. BANKR. P. 9019 AND (II) GRANTING RELATED RELIEF [D.I. 972]**

In support of his limited objection and reservation of rights (the "Objection") to the *Trustee's Motion for Entry of Order (I) Approving Settlement of Conversion Motion Pursuant to Fed. R. Bankr. P. 9019 and (II) Granting Related Relief* [D.I. 972] (the "Motion"), Andrew R. Vara, the United States Trustee for Region Three ("U.S. Trustee"), states:

**PRELIMINARY STATEMENT**

1. While the U.S. Trustee recognizes the efforts of the chapter 7 trustee and other parties in interest in working towards a consensual resolution of the litigation that is the subject of the settlement described in the Motion, the U.S. Trustee objects to the elements of the settlement which address the payment of certain professional fees, such as:

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255. The Debtors' headquarters is 5605 CenterPoint Court, Gurnee, IL 60031.

[2] The objection deadline was extended for the U.S. Trustee by consent.

a. Holdco[3] shall be entitled to professional fees and expenses incurred by Holdco in prosecution of any D&O Litigation with the caveat that such professional fees and expenses incurred by Holdco in prosecution of D&O Litigation are to be paid by Holdco and not from the Debtors' Estates;

b. Holdco shall be entitled to reimbursement of reasonable professional fees and expenses, subject to Bankruptcy Court approval, incurred in the prosecution of any objections by Holdco to Insider Claims, except to the extent that such objections relate to the fact that they would be offset by the D&O Litigation. The Trustee shall cooperate reasonably with Holdco in respect of the prosecution of such objections.

c. The Debtors shall reimburse the reasonable professional fees and expenses subject to Bankruptcy Court approval which were incurred by Glenn Agre Bergman & Fuentes LLP in an amount not to exceed $320,000, Morris Nichols Arsht & Tunnel LLP in an amount not to exceed $160,000, and LAS Advisors LLC in an amount not to exceed $15,000 in connection with the Conversion Motion.

2. The payment of professional fees in chapter 7 matters is governed by sections 330, 331 and 503(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rule[s]") 2016.

3. Although the Motion relies on Bankruptcy Rule 9019 as the basis to approve these settlement terms, the Motion cites no statutory basis for the payment of Holdco's professional fees. Even if the chapter 7 trustee cited sections 105 and/or 363 of the Bankruptcy Code as the statutory basis to support the payment of these professional fees, the general provisions of those sections cannot be used to evade the specific provisions of sections 330, 331 and 503(b). Simply put, this Court cannot approve an agreement between the chapter 7 trustee and creditors and/or interest holders of an out-of-possession Debtor which is inconsistent with the Code's requirements for (and limitations on) the payment of professional fees; such a settlement is both unfair and beyond the range of potential litigation outcomes if the Conversion Motion was fully litigated. By definition, such a settlement falls below the lowest point on the

---

[3] "Holdco" appears to be those controlling members of Debtor Alcorn Holding Company, LLC.  Mot. at 1.

2

range of reasonableness. Accordingly, the Court should deny the Motion to the extent of this Objection.

## JURISDICTION AND STANDING

4. This Court has jurisdiction to hear the Motion and the above-referenced Objection.

5. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

6. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## BACKGROUND

7. On February 23, 2023 (the "Petition Date"), each of the affiliated Debtors (Akorn Holding Company LLC, Case No. 23-10253; Akorn Intermediate Company LLC, Case No. 23-10254 and Akorn Operating Company, LLC, Case No. 23-10255) filed a voluntary petition in the Bankruptcy Court for relief under chapter 7 of the Bankruptcy Code. Thereafter George L. Miller was appointed the chapter 7 Trustee for each of the Debtors.

8. On June 21, 2024, the Debtors' motion for entry of an order authorizing and approving the conversion of these chapter 7 cases to cases under chapter 11 of the

3

Bankruptcy Code [D.I. 832] (the "Conversion Motion") was filed. In the Conversion Motion, the movants identified therein (the "Debtor Movants") requested that the Court convert the above-captioned cases to cases under chapter 11 of the Bankruptcy Code.

9. On October 17, 2024 the chapter 7 trustee, through counsel, filed the Motion. By the Motion, the chapter 7 trustee and the Debtor Movants seek to comprehensively resolve the issues raised by the Conversion Motion.

10. Among the terms and conditions of the Motion and the underlying settlement are the following:

   a. Holdco shall be entitled to professional fees and expenses incurred by Holdco in prosecution of any D&O Litigation with the caveat that such professional fees and expenses incurred by Holdco in prosecution of D&O Litigation are to be paid by Holdco and not from the Debtors' Estates. Mot. ¶ 14; Settlement Term Sheet ¶ II.

   b. Holdco shall be entitled to reimbursement of reasonable professional fees and expenses, subject to Bankruptcy Court approval, incurred in the prosecution of any objections by Holdco to Insider Claims, except to the extent that such objections relate to the fact that they would be offset by the D&O Litigation. The Trustee shall cooperate reasonably with Holdco in respect of the prosecution of such objections. Mot. ¶ 14; Settlement Term Sheet ¶ IV.

   c. The Debtors shall reimburse the reasonable professional fees and expenses subject to Bankruptcy Court approval which were incurred by Glenn Agre Bergman & Fuentes LLP in an amount not to exceed $320,000, Morris Nichols Arsht & Tunnel LLP in an amount not to exceed $160,000, and LAS Advisors LLC in an amount not to exceed $15,000 in connection with the Conversion Motion. Mot. ¶ 14; Settlement Term Sheet ¶ IX.

11. The U.S. Trustee takes issue with the settlement to the extent that the settlement and the proposed form of order approving same authorizes, approves or otherwise permits the payment/reimbursement of Holdco's professional fees and expenses outside of the strictures of the Bankruptcy Code.

**ARGUMENT**

**A. Overview of Sections 330 and 331**

12. Section 327(a) allows the debtor in possession to employ professional persons that "do not hold or represent an interest adverse to the estate" and that are "disinterested persons."[4] One court described section 327(a) as "a prophylactic provision designed to insure that the undivided loyalty and exclusive allegiance required of a fiduciary to an estate in bankruptcy is not compromised or eroded." *In re Prudent Holding* Corp., 153 B.R. 629, 631 (Bankr. E.D.N.Y. 1993).[5]

13. Section 330(a)(1) of the Bankruptcy Code provides that, after notice and a hearing, the court may award to a professional person employed under § 327 "reasonable compensation for actual, necessary services rendered" by such a professional person. 11 U.S.C.

---

[4] 11 U.S.C. § 101(14)(C) defines a "disinterested person" as a person that ". . . does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason."

[5] Professional persons seeking employment under 11 U.S.C. § 327(a) must submit a verified statement disclosing "all connections" with the debtor, creditors, other parties in interests, and their respective attorneys and accountants. Fed. R. Bankr. P. 2014(a). Rule 2014 sets forth the procedural requirements for an application for employment as a professional for the debtor in possession. The substantive requirements for employment are contained in Code § 327. Bankruptcy Rule 2014 requires the applicant to, *inter alia*, state with specificity, the facts evidencing the necessity of the employment, the professional services to be rendered, any proposed arrangement for compensation, and to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee or any person employed in the office of the United States trustee. Fed. R. Bankr. 2014. To comply with Bankruptcy Rule 2014, the applicant must consider and disclose all of his or her "connections." Disclosure is not limited to the disclosure of facts which the applicant deems relevant, but includes all connections between members of the firm and the parties in interest to the bankruptcy case. The scope of disclosure is broader than the question of disqualification; the applicant and the professional must disclose, without exception, all connections and not merely those that rise to the level of conflicts. *In re Granite Partners, L.P.*, 219 B.R. 22, 35 (Bankr. S.D.N.Y. 1998). The professional may not leave the court or other parties in interest to search the record for such relationships or otherwise to ferret them out. *In re BH&P, Inc.*, 949 F.2d 1300, 1317-18 (3d Cir 1991).

5

§ 330(a)(1). Section 331 permits professionals retained under Code section 327 to "apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under [Code] section 330." 11 U.S.C. § 331.

14. The requirements for an application for compensation of a professional are described in Fed. R. Bankr. P. 2016(a). This rule specifies that an applicant must set forth a "detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a).

15. The Local Rules of the United States Bankruptcy Court for the District of Delaware add further direction regarding the composition of applications before the Court. In pertinent part, Del L. R. 2016-1 provides that any attorney representing the debtor under the Code, or in connection with such a case, whether or not such attorney applies for compensation under the Code, shall file with the Court a statement of compensation paid or agreed to be paid, if such payment or agreement was made after one (1) year before the Petition Date, for services rendered or to be rendered in contemplation of, or in connection with, the case by such attorney and the source of such compensation as required by 11 U.S.C. § 329 and Fed. R. Bankr. P. 2016(b).

16. Professional fees may not be awarded unless and until the applicant shows that there is a benefit to the estate and that the fees are reasonable and necessary. Benefit to the estate and necessity are critical threshold issues before the awarding of any fees or compensation. *Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enterprises)*, 997 F.2d 1321, 1322-23 (10th Cir. 1993) (where the Court held that the disallowance of fees for

services which were not necessary or beneficial to the estate should not be considered a penalty but rather a statutory imperative).

17. To be compensable, the professional's services must have been necessary and beneficial to the estate or its creditors. *In re Engel*, 124 F.3d 567, 573 (3d Cir. 1997). Additionally, the applicant bears the burden of proving an entitlement to fees. *Engel,* 124 F.3d at 573; *Johnson v. Holiday Express Inc.*, 488 F.2d 714 (6th Cir. 1974). Bankruptcy courts have an independent duty to review fee applications, regardless of whether any party in interest, including the United States Trustee, objects. *In re Busy Beaver Bldg. Centers., Inc.*, 19 F. 3d 833, 841 (3d Cir. 1994).[6]

18. The Motion provides no statutory authority for the payment of Holdco's professional fees and expenses under sections 330 and 331 of the Bankruptcy Code.

### B. Section 503(b) Governs the Payment of a Non-Estate Party's Professional Fees and Expenses.

19. In the event that the proposed professional fees and expenses to be reimbursed to the Debtor Movants and Holdco parties are sought to be paid under sections 503(b)(3)(D) and (4) of the Bankruptcy Code, the compensation is only available to the professionals of ad hoc committees, individual creditors, equity security holders or indenture trustees in cases under chapter 9 or chapter 11. *See* 11 U.S.C. § 503(b)(3)(D).[7] The above-

---

[6] Applicants must supply sufficient information to enable proper analysis of the services rendered as required by Fed. R. Bankr. P. 2016(a) which requires that an entity seeking compensation for services set forth detailed statement of the services rendered, time expended and expenses incurred to allow the determination of whether the services were actual and necessary. *See, e.g., In re Busy Beaver Bldg. Centers., Inc.*, 19 F. 3d at 845; *Matter of Meade Land & Dev. Co.,* 577 F.2d 858, 859 (3d Cir. 1978).

[7] In the Third Circuit, a creditor makes a substantial contribution if, and only if, its efforts provide an "actual and demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial Inc.*, 27 F.3d 937, 943-44 (3d Cir. 1994) (citation omitted) (quoting *In re Lister*, 846 F.2d 55, 57 (10th Cir. 1988)). Furthermore, to be compensable under section 503(b)(3)(D), the creditor's activity must have "benefit[ed] the estate as a whole." S*ee Lebron*, 27 F.3d at 944. Activities "which were designed primarily to serve [the applicants'] own interests" are **not**

captioned cases are being administered under chapter 7.

20. By enacting Section 503(b) of the Bankruptcy Code, Congress provided a specific procedure and standard for the allowance and approval of fees and expenses incurred by ad hoc committees and others in making a substantial contribution to a case. *See* 4 COLLIER ON BANKRUPTCY at ¶ 503.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("Administrative expenses, except ordinary course expenses paid pursuant to sections 363 and 364 of the Code, are allowed only after notice and a hearing and are not 'deemed allowed' but rather must be actually allowed by court order.").

21. Section 503 imposes detailed requirements that must be met before approval and payment, including the timely filing of a request for payment, *see* 11 U.S.C. § 503(a); notice and a hearing before the court, *see* 11 U.S.C. § 503(b); a showing that such expenses were "actual" and "necessary," *see* 11 U.S.C. § 503(b)(3); a showing that the creditor, unofficial committee, or indenture trustee has made a "substantial contribution" to a chapter 9 or a chapter 11 case, *see* 11 U.S.C. § 503(b)(3)(D); and a finding by the court that any compensation paid to an attorney or accountant is "reasonable." *See* 11 U.S.C. § 503(b)(4). Moreover, a party's right to payment under section 503(b) is not automatic but "depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *In re O'Brien Envt'l Energy, Inc.*, 181 F.3d 527, 535 (3d Cir.1999).

22. The fact that payments of professional fees are proposed as part of the proposed settlement does not relieve third-party professionals of the obligation to comply with the requirements of section 503, which is the "sole source" of authority to pay post-petition

---

compensable, because they "would have been undertaken absent an expectation of reimbursement from the estate." *Id*.

professional fees on an administrative basis. *Davis v. Elliot Management Corp. (In re Lehman Bros. Holdings Inc.)*, 508 B.R. 283, 290 (S.D.N.Y. 2014).

23. In *Lehman*, the court roundly rejected an attempt by certain committee members to circumvent section 503(b)(4) by seeking payment under a "permissive" plan provision which purported to pay third-party professional fees without regard to whether they could be authorized under section 503. As the court explained, plans pay only claims and administrative expenses:

> Although the Bankruptcy Code does not explicitly forbid payments [of] professional fees that are not administrative expenses, no such explicit prohibition is necessary. Reorganization plans exist to pay claims and expenses . . . Therefore, the Individual Members' professional fee expenses are either administrative expenses or not, and if the latter, they cannot be paid under a plan.

*Id.* at 293. Indeed, the court recognized that any contrary result "could lead to serious mischief," since it would allow plan proponents to distribute the estate's assets without regard to the Bankruptcy Code's priority scheme. *Id.*

24. Even if it were proper to award fees for a substantial contribution on a prospective basis, one of the three identified professionals mentioned in the Settlement Agreement, the financial advisor, would be ineligible to have their fees paid by the estate. Section 503(b)(4) only allows for the reimbursement of fees of "attorneys" and "accountants." 11 U.S.C. § 503(b)(4). "[T]he language of § 503(b)(4) (unlike § 330(a)(1)), limits compensation to attorneys and accountants only, rather than any professional. Accordingly, reimbursement for Seidman's [the financial advisor's] services must be disallowed." *Matter of Baldwin-United Corp.*, 79 B.R. 321, 341 (Bankr. S.D. Ohio 1987). Thus, fees for investment bankers and financial advisors can never be awarded under section 503(b)(4) as a matter of law.

**C. Sections 105 and/or 363 of the Bankruptcy Code Cannot Be Used To Circumvent**

**Code Section 503(b)**

25. The United States Supreme Court has held that "in all matters of statutory construction, the court must begin with 'the language itself [and] the specific context in which that language is used.'" *McNeill v. United States*, 131 S.Ct. 2218 (2011) (*quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *see also Lamie v. United States*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.").

26. The Supreme Court also has ruled, including when applying the Bankruptcy Code, that a specific statutory provision governs a general one. *E.g., RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). We find the debtors' reading of § 1129(b)(2)(A)—under which clause (iii) permits precisely what clause (ii) proscribes—to be hyperliteral and contrary to common sense. A well-established canon of statutory interpretation succinctly captures the problem: "[I]t is a commonplace of statutory construction that the specific governs the general." [citation omitted]. That is particularly true where, as in § 1129(b)(2)(A), "Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solutions." *Id.* (citation omitted). *See also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991) (specific statutory provision normally controls one of more general application); *Bloate v. United States*, 130 S.Ct. 1345, 1353-1354 (2010) (same)); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of priority of enactment.") (*quoting Morton v. Mancari*, 417 U.S. 535, 550-51 (1974)).

27. As in *Radlax*, so, too, here Congress targeted a specific problem—the payment of fees and expenses of non-estate entities in chapter 9 or 11 cases—with a specific

solution—sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code.  A qualifying non-estate entity can have its fees and expenses paid, but only after (i) giving notice to creditors, (ii) proving to a court that it made a substantial contribution to a case, and (iii) demonstrating that its permitted fees and expenses are reasonable.  The settling parties cannot evade the mandatory statutory scheme by agreement: "the federal scheme cannot remain comprehensive if interested parties and bankruptcy courts in each case are free to tweak the law to fit their preferences." *Lehman*, 508 B.R. at 294.

28. Further, the Supreme Court has articulated that a statutory provision should not be construed to render any other provision of the statute superfluous. *See Turner v. Rogers*, 131 S. Ct. 2507, 2522 (2011) ("The fact that one constitutional provision expressly provides a right to appointed counsel in specific circumstances indicates that the Constitution does not also sub silentio provide that right far more broadly in another, more general, provision."). When these traditional principles of statutory construction are applied to the issues before this Court, the resulting conclusion is that Section 503(b) is the only Code section to address directly the issue of the payment of professionals for an ad hoc committee and is the only appropriate statutory provision under which this Court should consider the Motion. *See Lehman*, 508 B.R. at 294 (committee members seeking repayment of legal fees must seek reimbursement under Sections 503(b)(3)(D) and 503(b)(4)).

29. Equitable principles cannot be used to circumvent clear Congressional intent.  *See, e.g., United States Trustee v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 33 F.3d 294, 300 (3d Cir. 1994); *United States Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir. 1994).  In addition, 11 U.S.C. § 105(a) can only be used to carry out provisions of the Bankruptcy Code, not to graft new provisions onto the statute that Congress neither enacted nor

intended. *See Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir. 1985) ("[S]ection 105(a) does not authorize the bankruptcy court to create rights not otherwise available under applicable law."). Using 11 U.S.C. § 105(a) to place a non-disinterested person in charge of management of operations and administration of the estate would be a violation of the letter of the Bankruptcy Code. Indeed, 11 U.S.C. § 105(b) was expressly enacted to prevent courts from "short-circuiting [the procedures governing the appointment of a trustee] by appointing a receiver." *In re Memorial Estates, Inc.*, 797 F.2d 516, 519 (7th Cir. 1986).

30. Even if section 363(b) applied to payment of the parties' professional fees, the Court should still deny the Motion. Section 363(b) is not a blank check for debtors (or trustees) to do whatever they want. *See In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir. 1983) (holding that section 363(b) does not grant judges carte blanche to use section 363(b) to justify any action and to rule otherwise would have section 363 swallow up other provisions of chapter 11.) "The court does not merely rubber stamp a debtor's decision." *In re Boy Scouts of America and Delaware BSA, LLC*, 2023 WL 8449557 at *5 (Bankr. D. Del. Dec. 5, 2023) (on appeal, 23-cv-1443 (RGA) (D. Del.)). Under section 363, the Debtors must establish that entering into an agreement to reimburse a non-estate entities' professional fees is within the "sound exercise of their business judgment[.]" *In re Mallinckrodt PLC,* No. 21-167, 2022 WL 906458 at *6 (D. Del. Mar. 28, 2022).

31. In *Mallinckrodt*, the District Court affirmed Judge Dorsey's finding that the request to pay certain parties' professional fees "complies with requirements for reimbursements in that it assures that the reimbursements will be for work that benefits the debtors' estates as a whole, rather than individual creditors or creditor groups." *In re Mallinckrodt PLC*, 2022 WL 906458 at *6 (cleaned up). *See also In re FTX Trading Ltd.*, 22-

11068 (JTD) D.I. 4019 (11/15/23 Hr'g Tr. at 19:7-14) ("I made it clear in Mallinckrodt, and Judge Stark agreed with me in his opinion upholding my decision, that in this context the business judgment rule, it's not just the debtor's business judgment, but it also has to be something that -- it has to be engaged in something that is beneficial to the estate, more akin to a 503 standard. And under 503, it's, obviously, clear that it cannot just simply be incidental."). In *Boy Scouts of America*, Judge Silverstein acknowledged the tension in permitting a debtor to seek payment of a creditor's professional fees under section 363(b) and ruled that in such an event, the applicable standard for such requests would be the substantial contribution standard under section 503(b). *See In re Boy Scouts of America and Delaware BSA, LLC*, 2023 WL 8449557 (Bankr. D. Del. Dec. 5, 2023) (on appeal, 23-cv-1443 (RGA) (D. Del.)). Judge Silverstein wrote that this approach was consistent with her prior ruling in *In re Kidde-Fenwal, Inc.*, 23-10638 (LSS) D.I. 601 (Bankr. D. Del. Nov. 7, 2023) and with Judge Dorsey's ruling in *Mallinckrodt*. *See* 2023 WL 8449557 at *3-4.

      32.      Simply put, under section 363(b) the trustee must articulate a sound business judgment for approval of a non-ordinary course transaction. On its face, it is presumptively unreasonable and bad judgment for the trustee to agree prospectively to pay fees to the parties' professionals where Code section 503(b) does not permit the payments.[8]

      33.      The U.S. Trustee reserves any and all rights, duties and obligations found at law, equity or otherwise.

---

[8] Not unlike section 105(a), section 363(b) cannot override other specific provisions of the Code. For example, trustees cannot retain and pay their chosen professionals under section 363 unless those professionals have been retained under section 327 and have filed fee applications that have been approved. Section 363(b) allows a trustee to (subject to court approval) use, sell or lease, other than in the ordinary course of business, property of the estate, but not at the point that such activity is governed by another section of the Code.

WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion and/or granting other relief that this Court deems appropriate and just.

                                              Respectfully submitted,

                                              **ANDREW R. VARA**
                                              **UNITED STATES TRUSTEE**
                                              **REGIONS 3 AND 9**

                                              **By:** _/s/Richard L. Schepacarter_
                                                    Richard L. Schepacarter
                                                    Trial Attorney
                                                    U.S. Department of Justice
                                                    Office of the U.S. Trustee
                                                    844 N. King Street, Room 2207
                                                    Wilmington, DE 19801
                                                    (302) 573-6491
                                                    Richard.Schepacarter@usdoj.gov

Dated: November 14, 2024