# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br>(Jointly Administered)<br><br>**Objection Deadline:**<br>June 27, 2025, at 4:00 p.m. (ET)<br>**Hearing Date:**<br>July 18, 2025, at 10:00 a.m. (ET) |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>CENCORA, INC. f/k/a AMERISOURCEBERGEN DRUG CORPORATION, AND MWI VETERINARY SUPPLY CO.,<br><br>Defendants. | Adv. Proc. No. 24-50043 (KBO) |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, *et al.*,<br><br>Plaintiff,<br><br>v.<br><br>CENCORA, INC. f/k/a AMERISOURCEBERGEN DRUG CORPORATION,<br><br>Defendant. | Adv. Proc. No. 25-50362 (KBO) |

---

[1] The Debtors in these Chapter 7 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Akorn Holding Company LLC (9190); Akorn Intermediate Company LLC (6123); and Akorn Operating Company LLC (6184). The Debtors' headquarters was located at 5605 CenterPoint Court, Gurnee, Illinois 60031.

**MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN
ORDER APPROVING THE SETTLEMENT BETWEEN THE
TRUSTEE, CENCORA, INC. f/k/a AMERISOURCEBERGEN
DRUG CORPORATION, AND MWI VETERINARY SUPPLY CO.**

George L. Miller, the chapter 7 trustee (the "Trustee") in the above-captioned chapter 7 cases (the "Chapter 7 Cases") for the bankruptcy estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC and Akorn Operating Company LLC (collectively, the "Debtors"), hereby moves (the "Motion") the Court pursuant to section 105 of title 11 of the United States Code, §§ 101-1532, as amended (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) approving the settlement of certain claims, including for payment of goods sold and delivered, breach of contract, account stated, unjust enrichment, turnover of accounts receivable under sections 105(a) and 542 of the Bankruptcy Code, disallowance of claims under section 502(d) of the Bankruptcy Code, and avoidance and recovery of certain transfers made before the Petition Date (as defined below) pursuant to sections 547, 548 and 550 of the Bankruptcy Code, and entry into a Settlement Agreement (the "Settlement Agreement") by and between the Trustee and Cencora, Inc. f/k/a AmerisourceBergen Drug Corporation and MWI Veterinary Supply Co. (the "Defendants", and together with the Trustee, the "Parties"), attached hereto as **Exhibit B**, and (ii) granting such other relief as may be just and proper.  In support of this Motion, the Trustee respectfully represents as follows:

**JURISDICTION**

1.       The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Trustee consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein is section 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9019.

## BACKGROUND

5. On February 23, 2023 (the "Petition Date"), each of the Debtors, Akorn Holding Company LLC, Case No. 23-10253; Akorn Intermediate Company LLC, Case No. 23-10254 and Akorn Operating Company, LLC, Case No. 23-10255 filed voluntary petitions in the Bankruptcy Court for relief under Chapter 7 of Title 11 of the Bankruptcy Code, commencing the Chapter 7 Cases. The Chapter 7 Cases are being jointly administered.

6. On or about the Petition Date, the Office of the United States Trustee appointed the Trustee as the trustee to the bankruptcy estates of each of the Debtors.

7. Prior to the Petition Date, the Debtors' businesses included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products. The Debtors were an industry leader in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants and nasal sprays.

8. The Debtors operated at numerous locations in the United States and were headquartered in Gurnee, Illinois. The Debtors ceased their operations in the United States and, as a result, the Federal Drug Administration issued a post-petition voluntary recall of certain drugs produced by the Debtors.

9. Defendant Cencora, Inc. f/k/a AmerisourceBergen Drug Corporation ("ABDC"), purportedly on behalf of itself and its affiliates, filed a proof of claim against each Debtor in the amount of $13,427,595.12 (the "Proofs of Claim"). *See* Case No. 23-10253-KBO Claim Register, Claim No. 376; Case No. 23-10254-KBO Claim Register, Claim No. 225; Case No. 23-10255-KBO Claim Register, Claim No. 421.

10. Since the date of his appointment, the Trustee has been investigating and marshalling the Debtors' assets, including unpaid amounts owed to the Debtors under prepetition contracts and transfers made during the prepetition preference period.

11. Based upon that investigation, on April 15, 2024, the Trustee filed an adversary proceeding styled *George L. Miller v. Cencora, Inc. f/k/a AmerisourceBergen Drug Corp. and MWI Veterinary Supply Co.*, Adv. Proc. No. 24-50043 (KBO) (the "A/R Proceeding"). Pursuant to the complaint filed in the A/R Proceeding (the "A/R Complaint"), the Trustee, on behalf of the Debtors' estates, asserted certain claims against Defendants, including for payment of goods sold and delivered, breach of contract, account stated, unjust enrichment, turnover of accounts receivable under section 105(a) and 542 of the Bankruptcy Code, and disallowance of claims under section 502(d) of the Bankruptcy Code (the "A/R Claims"). Through the A/R Proceeding, the Trustee demanded payment of $54,095,663.96 on account of prepetition pharmaceutical products supplied by the Debtors to Defendants for which the Debtors had not been paid as of the Petition Date.

12. On January 6, 2025, Defendants filed their answer to the A/R Complaint. The Defendants dispute the amount owed in the A/R Proceeding, and allege that they are entitled to certain setoffs, credits, rebates, and reductions which may reduce their liability pursuant to the applicable state law and the underlying agreements. Defendants further allege that the voluntary recall by the Debtors upon the bankruptcy filing was a breach of contract by the Debtors, entitling Defendants to damages, and that the recall rendered certain products unmarketable. The Trustee disputes the nature and amount of these claimed defenses and setoffs.

13. On February 19, 2025, the Trustee filed an adversary proceeding styled *George L. Miller v. Cencora, Inc. f/k/a AmerisourceBergen Drug Corp.*, Adv. Proc. No. 25-50362 (KBO) (the "Avoidance Proceeding", and together with the A/R Proceeding, the "Adversary Proceedings"), whereby the Trustee, on behalf of the Debtors' estates, asserted certain claims against Defendant ABDC, including for avoidance and recovery of certain transfers made to ABDC before the Petition Date, pursuant to sections 547, 548 and 550 of the Bankruptcy Code (the "Avoidance Claims", and together with the A/R Claims, the "Claims"). Pursuant to the complaint filed in the Avoidance Proceeding, the Trustee demanded the return of $283,072.15.

14. Defendant ABDC disputes the amount owed in the Avoidance Proceeding, and asserted various defenses to the transfers at issue, including those provided under 11 U.S.C. § 547(c).

15. The Trustee and Defendants have engaged in extensive exchanges of information in an attempt to reconcile the amounts owed to the Debtors by Defendants. As a result of these information exchanges and lengthy negotiations between the Trustee and Defendants, the Defendants and the Trustee have agreed to settle the Adversary Proceedings, subject to this Court's approval.

16. The terms of the settlement between the Trustee and Defendants are embodied in the Settlement Agreement attached hereto as **Exhibit B**.

17. The key terms of the Settlement Agreement[2] are as follows:

   a. Defendants will pay $13,025,000.00 to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;

   b. Within ten (10) business days of receiving payment, the Trustee will dismiss the Adversary Proceeding with prejudice;

   c. The Trustee and Defendants will provide mutual releases of all claims and causes of action, known or unknown; and

   d. The Proofs of Claim filed by Defendants are disallowed.

18. The Settlement Agreement is the result of extensive, active, good-faith discussions and arm's-length negotiations between the Trustee and Defendants. The Settlement Agreement is a good faith exercise of the Trustee's business judgment and should be approved.

## RELIEF REQUESTED

19. Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Trustee seeks entry of an order substantially in the form attached hereto as **Exhibit A**: (i) approving the Settlement Agreement, and (ii) granting such other relief as may be just and proper.

## BASIS FOR RELIEF

20. Section 105(a) of the Bankruptcy Code allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

---

[2] This summary of key terms is provided for convenience; in the event of any conflict between the Motion and Settlement Agreement, the Settlement Agreement will control.

11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides that "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

21. When reviewing settlements under Bankruptcy Rule 9019, the court generally defers to the Trustee's business judgment. "[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification [for the settlement]." *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996).

22. Settlements and compromises are "a normal part" of the chapter 11 process. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). The Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." *Id.* at 393 (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"). The approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See, e.g.*, *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

23. Pursuant to Bankruptcy Rule 9019(a), the Court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and equitable. *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (noting that "the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable."). The court need not be convinced that the settlement is the best possible compromise in order to approve it. *Coram Healthcare Corp.*, 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." *Travelers Cas. & Sur. Co. v. Future Claimants Representative*, No.

07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing *Matter of Jasmine, Ltd.*, 285 B.R. 119 (D.N.J. 2000)).

24. In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement. The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d at 393; *see also In re Nutraquest, Inc.*, 434 F.3d 639, 646-48 (3d Cir. 2006) (applying *Martin* factors).

25. When deciding whether to approve a compromise, a court will normally accept the judgment of the movant as long as a legitimate business justification exists. *E.g.*, *Martin*, 91 F.3d at 395; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 250 (D. Del. 1998); *see also In re Penn Central Transportation Co.*, 347 F. Supp. 1351, 1353 (E.D. Pa. 1972) (approving settlement agreement as reflection of business judgment). Once a debtor has articulated a valid business justification for a settlement, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

26. Here, the Settlement Agreement satisfies the aforementioned factors and considerations. First, although the Trustee disputes the merits, amount, and validity of Defendants' claimed credits, damages, alleged defenses, and setoffs, if the Trustee were required to litigate either Adversary Proceeding, then the probability of or size of success would be uncertain. The

outcome of the litigations would be subject to the discretion of a relevant factfinder. Disputes over the interpretation of the underlying contracts, the post-petition marketability of the products, the timing of payments, the legal theories underlying the asserted setoffs, and the asserted preference defenses all create legal and factual risks. The Settlement Agreement entirely eliminates this litigation risk and provides the Debtors' estates with a certainty of recovery.

27.     Second, the collections process is fraught with additional hurdles that would impose costs upon the Trustee.  While the Trustee has no reason to believe at this point that Defendants would not be cooperative in paying any ultimate judgment in favor of the Trustee should the matter have proceeded to trial, Defendants are not a convenient collections target should they choose to be uncooperative.  Regardless, settling with the Defendants eliminates any potential time and expense associated with any collection hurdles by providing a simple lump sum payment shortly after this Court's approval of the Settlement Agreement.

28.     Third, the litigations are complex, time-consuming, and costly. The Adversary Proceedings are still in their early stages; while Defendants have filed an answer in the A/R Proceeding, they have not done so in the Avoidance Proceeding.  Litigating over likely dispositive motions would take months, if not years, before the Adversary Proceedings are procedurally ready for trial.  Moreover, the Trustee's claims in the A/R Proceeding arise from pharmaceutical billing, a notoriously complex and voluminous process administered under sophisticated contracts and billing systems.  Any alleged setoffs asserted by the Defendants arise in part from credits generated by the constant flow of obligations from pharmaceutical product providers (like the Debtors) to distributors (like Defendants) to retail or other customers, all mediated by insurance and governmental payment programs.  In litigation, both sides, through discovery, would need to provide extensive forensic analyses of thousands of transactions to determine which amounts may

be setoff against other amounts. The experts necessary to formulate these analyses would represent a significant cost to both sides, since they would need to understand not just accounting but certain principles of pharmaceutical billing and collection. Therefore, the Trustee believes that his reconciliation with the Defendants of the amounts owed and agreed upon settlement has saved the estates significant time and expense all while returning meaningful payment to the estates.

29. Fourth, the Settlement Agreement serves the paramount interest of the creditors. As discussed above, the Settlement Agreement eliminates the risks, costs, and delays of litigation, while preserving estate resources for other purposes and lightening the estates' administrative burden.

30. Moreover, even if the Trustee were successful in litigation, the outcome might entitle Defendants to a significant claims from the bankruptcy estate on account of the Proofs of Claim or additional or modified proofs of claim filed under section 502(b) of the Bankruptcy Code. The Settlement Agreement eliminates the Proofs of Claim and Defendants' right under section 502(h) to file a proof of claim (and all other rights of Defendants to receive money from the Debtors' estates), thereby reducing the creditor body to be paid in these cases and enhancing recoveries for other general unsecured creditors.

31. Based upon the foregoing, the compromise embodied in the Settlement Agreement does not "fall below the lowest point in the range of reasonableness." *Integrated Health*, 2001 WL 1820426, at *2 (*quoting Cosoff v. Rodman (In re WW.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)). The Settlement Agreement is the result of substantial good faith, arm's-length negotiations between the Trustee and Defendants and constitutes a reasonable exercise of the Trustee's business judgment. Accordingly, this Court should exercise its discretion and approve the Settlement Agreement.

**WHEREFORE**, for the reasons set forth above, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreement, and (ii) granting such other relief as may be just and proper.

Dated: June 13, 2025
Wilmington, Delaware

**SAUL EWING LLP**

*/s/ Evan T. Miller*
Evan T. Miller (DE Bar No. 5364)
Paige N. Topper (DE Bar No. 6470)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone: (302) 421-6800
evan.miller@saul.com
paige.topper@saul.com

and

Michelle G. Novick (admitted *pro hac vice*)
161 North Clark Street, Suite 4200
Chicago, IL 60601
Telephone: (312) 876-7899
michelle.novick@saul.com

and

Turner N. Falk (admitted *pro hac vice*)
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-8415
turner.falk@saul.com

*Counsel to Trustee*