# EXHIBIT A

**Supplemental Retention Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| AKORN HOLDING COMPANY LLC, *et al.*[1] | Case No. 23-10253 (KBO |
| Debtors. | (Jointly Administered) |
| | Related D.I. __ 996, 1008 |

**ORDER (I) AUTHORIZING THE EXPANDED SCOPE OF EMPLOYMENT
AND RETENTION OF SAUL EWING LLP AS SPECIAL COUNSEL TO
CHAPTER 7 TRUSTEE, EFFECTIVE AS OF NOVEMBER 12, 2024
AND (II) GRANTING RELATED RELIEF**

Upon consideration of the supplemental application (the "Supplemental Application")[2] of

the Trustee for entry of an order (a) authorizing the expanded scope of employment and retention

of Saul Ewing LLP ("Saul Ewing") as special litigation counsel to the Trustee effective as of

November 12, 2024, and (b) granting related relief, all as more fully set forth in the Supplemental

Application and the Supplemental Declaration; and this Court having jurisdiction to consider the

Supplemental Application and the relief requested therein pursuant to 28 U.S.C. §§157 and 1334

and the *Amended Standing Order of Reference from the United States District Court for the*

*District of Delaware, dated as of February 29, 2012*; and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Supplemental

Application having been provided under the particular circumstances; and it appearing that the

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23- 10255. The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

[2] Capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Supplemental Application.

relief requested therein is in the best interests of the Trustee, the bankruptcy estates, and other parties-in-interest; and it appearing that no other or further notice need be provided; and this Court having found that the Trustee's notice of the Supplemental Application and opportunity for a hearing thereon was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Supplemental Application and having heard the statements in support of the relief requested therein at a hearing (if any) before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Supplemental Application and at the Hearing (if any) establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Supplemental Application is granted as set forth herein.

2.      Pursuant to sections 327(e) and 328(a) of the Bankruptcy Code, the Trustee is authorized to expand the scope of Saul Ewing's employment and retention in accordance with the terms and conditions set forth in the Supplemental Application and the Engagement Letter, attached hereto as **Annex 1** and incorporated herein by reference and as modified herein, effective as of November 12, 2024, to include the following additional services related to the Trustee's investigation, prosecution, and/or settlement or other resolution of the Avoidance Actions (collectively, the "Additional Services"), as needed:

> a) review, edit, or comment on the detailed preference analysis of all potential preference claims provided by the Trustee;
>
> b) preparing and sending "demand packages" to targets of Avoidance Actions, which include (i) a customized explanatory letter regarding avoidance liability; and (ii) a settlement offer and acceptance form;
>
> c) in the event the Trustee authorizes the commencement of a lawsuit, preparing and serving the summons, complaint, and any appropriate local

forms; and d) prosecuting to judgment and/or settling the Avoidance Actions.

d) prosecuting to judgment and/or settling the Avoidance Actions.

3.    The terms of the Engagement Letter are approved in all respects except as limited or modified herein. For the avoidance of doubt, the terms of the Engagement Letter, including, without limitation, the proposed contingency fee arrangement, shall apply only with respect to the Additional Services to be performed by Saul Ewing. With respect to providing further Initial Services to the Trustee, Saul Ewing shall only be compensated for such services and reimbursed for costs incurred in furtherance of such services in accordance with the terms of the Initial Retention Order.

4.    The compensation provisions of the Engagement Letter, including with respect to the contingency fees, are reasonable terms and conditions of employment as required under sections 328(a) of the Bankruptcy Code, and are hereby approved. Saul Ewing's fees and reasonable and documented out-of-pocket expenses incurred in performing the Additional Services shall be compensated and reimbursed in accordance with the terms of, and at the times specified by, the Engagement Letter.  All fees and out-of-pocket expense reimbursements to be paid to Saul Ewing shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code.

5.    Notwithstanding anything to the contrary herein, or in the Supplemental Application, and/or the Engagement Letter, Saul Ewing shall file interim fee applications for allowance of compensation and reimbursement of out-of-pocket expenses, and Saul Ewing's fees shall be subject only to the standard of review set forth in section 328 of the Bankruptcy Code, and shall not be subject to any other standard of review.  In the fee applications, Saul Ewing shall not be required to submit the type of detailed time records generally required from professionals

seeking compensation under section 330 of the Bankruptcy Code and Del. Bankr. L. R. 2016-2(d).

6.     Notwithstanding anything to the contrary in the Application or this Order, Saul Ewing shall be, and hereby is, authorized to apply for reimbursement of expenses and costs incurred in connection with the prosecution of the Additional Services prior to any recovery by the Estates in connection with the Additional Services, including but not limited to costs associated with experts.

7.     Saul Ewing shall use reasonable efforts to avoid any duplication of services provided by any of the Trustee's other retained professionals in these chapter 7 cases.

8.     Saul Ewing shall have a continuing duty to review whether any new material facts or relationships bearing on the matters described herein arise during the pendency of these chapter 7 cases. If such material facts or relationships are discovered or otherwise arise, Saul Ewing will use reasonable efforts to provide the Court with a supplemental declaration disclosing such new materials facts or relationships.

9.     The Trustee and Saul Ewing are authorized and empowered to take all actions necessary to implement the relief granted in and pursuant to this Order.

10.    Notice of the Supplemental Application as provided therein shall be deemed good and sufficient notice of such Supplemental Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.    The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.    Notwithstanding any provision to the contrary in the Supplemental Application or the Engagement Letter, the Court shall retain jurisdiction to hear and to determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order and Saul

4

Ewing's retention.

13.     To the extent that there is any inconsistency between the Engagement Letter, the Supplemental Application, the Supplemental Declaration, and this Order, the provisions of this Order shall apply.

Dated: December 13th, 2024
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE

## Annex 1

**(Engagement Letter)**



LLP

Evan T. Miller

Phone: (302) 421-6864
evan.miller@saul.com
www.saul.com

November 19, 2024

**VIA EMAIL**

Mr. George L. Miller
Miller Coffey Tate LLP
8 Penn Center, Suite 950
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103
gmiller@mctllp.com

> Re:   Representation of George L. Miller in his capacity as Chapter 7 Trustee for the bankruptcy estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC in Bankruptcy Case No. 23-10253 (KBO) (the "**Bankruptcy Case**") in reference to certain avoidance actions

Dear Mr. Miller:

Thank you for giving Saul Ewing LLP (the "**Firm**") the opportunity to represent the above-referenced client (the "**Client**"). The Rules of Professional Conduct, which govern the activities of lawyers, and the Firm's internal guidelines, provide for the establishment of the terms of the engagement at the outset of our work. Please read this letter carefully and once we begin work on your behalf the terms set forth in this letter are binding.

**Scope of Services:** The Firm will provide the following services (the "**Engagement**"):

Represent the Client on a contingency fee basis, pursuant to 11 U.S.C. §§ 327(e) and 328(a) and the terms of an order to be entered by the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), in connection with the analysis, prosecution, and resolution of avoidance claims to be asserted by the Client pursuant to Chapter 5 of Title 11 of the United States Code (the "**Bankruptcy Code**") against third parties on behalf of the bankruptcy estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC, and in connection with matters relating thereto (collectively, the "**Avoidance Actions**"). The Client and the Firm agree that this is a limited scope representation and that this Engagement does not include any legal

1201 North Market Street, Suite 2300 ♦ Wilmington, DE 19801 ♦ Phone: (302) 421-6800 ♦ Fax: (302) 421-6813

CALIFORNIA  DELAWARE  FLORIDA  ILLINOIS  MARYLAND  MASSACHUSETTS  MINNESOTA  NEW JERSEY  NEW YORK  PENNSYLVANIA  WASHINGTON, DC
A DELAWARE LIMITED LIABILITY PARTNERSHIP

53345625.3 11/18/2024

Mr. George L. Miller
November 19, 2024
Page 2

service beyond that described in this paragraph. The Client and the Firm agree that the Firm has no obligation to expand this Engagement beyond that described above. Separate arrangements must be agreed to in writing by the Firm before it shall undertake any additional legal services. For the avoidance of doubt, this Engagement is separate and apart from the Firm's existing representation of the Client in the Bankruptcy Case, which shall continue being administered in accordance with the Bankruptcy Court order addressing same. *See* Bankruptcy Case, Docket No. 692.

Our sole client in this Engagement is the person or entity identified as the Client in the subject line of this letter. Our agreement is not an agreement to represent any affiliates or related individuals or owners or any officers, directors, partners, members, shareholders, employees, independent contractors, or agents of the Client, unless we have specifically agreed to do so elsewhere in this letter or by separate written agreement.

Unless specifically mentioned as part of the Engagement described above, the Firm does not undertake to: (1) identify potentially applicable insurance coverage (either primary or excess) or indemnification agreements; (2) provide notice to potentially responsible insurers (either primary or excess) or indemnitors; (3) provide any advice or other legal services relating to tax laws (state, federal or local) or federal or state securities laws, including appearing or practicing before the U.S. Securities and Exchange Commission or the disclosure obligations under such laws; (4) provide any advice or other legal services relating to the Corporate Transparency Act ("CTA"), including determining whether filings are required, filing with the U.S. Department of the Treasury, Financial Crimes Enforcement Network ("**FinCen**"), or monitoring or updating any existing or future CTA filings made with FinCen; or (5) provide administrative services for the payment of U.S. patent maintenance fees or non-U.S. patent annuity fees.

Although the Firm provides its best advice regarding potential exposure, damages, and timing, the Firm is unable to determine, much less guarantee, when a court will rule or what schedule it will set or when or how another party will respond. Further, the outcome of any engagement may turn on factors outside our control and although the Firm may provide its views and advice, any such statements should not be interpreted as a promise or guarantee.

The Client agrees to disclose to the Firm if the Client has given a third party an interest in the outcome of this Engagement through any understanding or agreement (such as an agreement with a litigation funding firm or an assignment of any claims).

**Standard Terms of Engagement:** Enclosed is a copy of our Standard Terms of Engagement which, except if otherwise provided by state law or by further order in the Bankruptcy Case, describe in greater detail the basis upon which we provide services to our clients. This letter and the Standard Terms of Engagement together comprise the terms of this Engagement with the Firm. To the extent that the terms of this letter and those of the Standard Terms of Engagement

Mr. George L. Miller
November 19, 2024
Page 3

are inconsistent, the terms of this letter will control. However, it is agreed that the terms of any order in the Bankruptcy Case shall control over this engagement letter. Please review both documents carefully and contact me with any questions about them or our relationship. As set forth in more detail in the Standard Terms of Engagement, an estimate of fees and costs is not a maximum or fixed fee quotation and expressions of probable or possible outcomes are not guarantees about future developments. The Firm maintains errors and omissions insurance applicable to the legal services rendered to the Client.

     **Fees and Costs:** Our fees for this Engagement will be calculated on a contingent fee basis. There will be no fee unless we are successful in obtaining a recovery on the Client's behalf in the Avoidance Actions. The fees are structured as follows:

- *Pre-Filing of Suit.* The Firm shall earn legal fees on a 30% contingency basis of the cash value of any recoveries and the cash equivalent value of any claim waiver obtained from a potential defendant of an Avoidance Action after the Firm issues a demand letter, but prior to initiating an Avoidance Action proceeding against such defendant.

- *Post-Filing of Suit.* The Firm shall earn legal fees on a 35% contingency basis of the cash value of any recoveries and the cash equivalent value of any claim waiver obtained in connection with the settlement of any Avoidance Action after the Firm initiates such Avoidance Action proceeding, but prior to obtaining a judgment in connection therewith.

- *Post Judgment.* The Firm shall earn legal fees on a 35% contingency basis of the cash value of any recoveries and the cash equivalent value of any claim waiver obtained from an Avoidance Action defendant after the Firm obtains a judgment against such defendant.

     Following execution of this Engagement Letter, the Client (through undersigned counsel) shall file an application with the Bankruptcy Court to engage Saul Ewing ("**Application**") under 11 U.S.C. § 328(a). The order ("**Order**") approving the Application shall confirm the reasonableness of the terms and conditions of this Engagement Letter for purposes of 11 U.S.C. § 328(a). The Order shall further specify that Saul Ewing shall file interim fee applications for allowance of compensation and reimbursement of out-of-pocket expenses, and Saul Ewing's fees shall be subject only to the standard of review set forth in section 328(a) of the Bankruptcy Code, and shall not be subject to any other standard of review.

     Regardless of the outcome of any of the Avoidance Actions, the Client will be responsible for any and all out-of-pocket costs and expenses incurred by the Firm in connection with the analysis, prosecution, and resolution of the Avoidance Actions. Such costs and expenses may include, but are not limited to, copying, faxing, postage, long-distance telephone charges, messenger services, computerized legal research, document management fees, court reporters' fees, filing and service fees, witness and expert witness fees, travel and lodging expenses, and any

Mr. George L. Miller
November 19, 2024
Page 4

other cost or expense incurred by the Firm in connection with the Avoidance Actions. Some of these costs, such as duplicating, messenger service, and computerized legal research include a reasonable overhead charge. For the avoidance of doubt, Saul Ewing shall not be responsible for any expert witness fees and expenses, which will be the responsibility of the Estate.

**Settlement:** The Firm will advise the Client of any settlement offer received from an adverse party or parties and will provide you with our recommendations as to whether such settlement offer should be accepted. It is the Client's decision whether to accept or reject any offer to settle any of the Avoidance Actions with the Firm's advice and recommendations. If the Estate settles a claim or receives money associated with a settlement of an Avoidance Action being pursued by the Firm without our knowledge or consent, the Firm shall still be entitled to a fee computed in accordance with the terms of this letter, based upon the final amount recovered. The Firm will seek approval of any agreed settlements in accordance with any applicable federal bankruptcy rules or Bankruptcy Court orders.

**Advance Payment of Fees Retainer:** The Firm has decided not to request an advance payment of fees retainer for this Engagement.

**Conflicts of Interest:** We have commenced a check for possible conflicts of interest and based on our records and information provided to us, have not discovered any matters which we believe would raise a conflict of interest, except as will be disclosed in the Firm's Application. If the Client is or becomes aware of any additional facts which may give rise to a conflict of interest, please contact us immediately.

**Advance Waiver:** The Firm represents many companies and individuals. It is possible that during the Engagement another client may have a dispute with or a matter adverse to the Client unrelated to the Engagement or any subsequent engagement for the Client. Such matters may include a real estate transaction or land use matter, a bankruptcy matter, a financing matter or business counseling or corporate matter, a patent or other intellectual property matter, a labor and employment matter, or even an unrelated litigation matter, including litigation relating to an unrelated patent. This will confirm that the Client agrees that the Firm may continue to represent or may undertake in the future to represent existing or new clients in any matter that is not substantially related to the Engagement, even if the interests of such clients in those other matters are directly adverse to the Client. The Client agrees that it will not claim a conflict as a basis for disqualification in such other matter. We agree, however, that the Client's prospective consent to conflicting representations contained in this paragraph will not apply in any instance where, as a result of our representation of the Client, we have obtained proprietary or other confidential information of a non-public nature that, if known to such other client, could be used in any such matter by such client to the Client's material disadvantage.

Whenever you have any questions as this matter progresses, please feel free to call me at (302) 421-6864. I can be reached by email at evan.miller@saul.com. We want you to feel

Mr. George L. Miller
November 19, 2024
Page 5


comfortable that you are being kept completely informed at all times as to where each aspect of the matter stands.  If there are any questions concerning the terms of our engagement, please contact us.

<div style="margin-left:40%">

Very truly yours,

SAUL EWING LLP

*/s/ Evan T. Miller*

By:    _____

Evan T. Miller

</div>

Enclosure

Read and accepted this *19th* day of November, 2024.

_____
George L. Miller in his capacity as
Chapter 7 Trustee for the bankruptcy
estates of Akorn Holding Company LLC,
Akorn Intermediate Company LLC, and
Akorn Operating Company LLC

# STANDARD TERMS OF ENGAGEMENT FOR LEGAL SERVICES

## SAUL EWING
LLP

Thank you for selecting Saul Ewing LLP to represent the person(s) and entity(ies) identified in the accompanying engagement letter as the Client or Clients. Unless expressly modified by the letter accompanying these Standard Terms, or in some other writing entered into by mutual agreement, these terms constitute our agreement with each Client. If Client provides us with outside counsel guidelines or similar client prepared instructions, we agree that the Firm will within a reasonable amount of time consider same and respond as may be appropriate. The terms "Client", "Clients", "Engagement", and "Payor" should be interpreted as they may be defined in the letter accompanying these Standard Terms or, if not addressed therein, by their commonly accepted meanings. For simplicity, this document will refer to all Clients in the singular as Client. Please review these Standard Terms carefully and please bring any questions to our attention.

### The Scope of Our Work
We will consult with Client about objectives and, when appropriate, the means of achieving them in accordance with available facts, applicable law and the Rules of Professional Conduct governing lawyers. We shall endeavor to keep Client advised of the status of Client's matters to the extent necessary to enable Client to make informed decisions. We will provide competent representation of Client's interests. Expressions on our part concerning the probable outcome of our representation will reflect our professional judgment, but are not guarantees, as they are limited by our knowledge of the facts and are based on the state of the law at the time they are expressed.

### Confidentiality
We may obtain personal, business (including what may be proprietary information), and other information during the course of our representation, including from our meetings and conversations with Client or from documents or other information provided to us as a result of those meetings and conversations. We may also obtain personal information from others who were asked to give it to us (for example, another attorney or an accountant or other professionals whom Client requested cooperate with us). In certain circumstances, we may also obtain information from public records or other persons. Saul Ewing's policy is to follow the Rules of Professional Conduct that apply to lawyers and law firms such as ours. Those Rules prevent us and those working for us from revealing information relating to our representation unless the Client consents after consultation, except for disclosures that are implicit in the representation or otherwise required by law (for example, a court order or subpoena requiring such disclosure), or as necessary to enforce or defend the rights of Saul Ewing relating to legal services we provide to a client.  Correspondingly, we strongly recommend that Client not disclose to third parties or post on social media the substance of our consultations since such conduct may destroy the attorney-client privilege.  Finally, Client should consult with us prior to sending us any Protected Health Information as that term is understood under the Health Insurance Portability and Accountability Act (HIPAA) or any personal information covered by the European Union's General Data Protection Regulation (GDPR).

### Who Will Provide the Legal Services
Subject to the supervision of the principal attorney handling Client's matters, our legal work, or parts of it, may be performed by other lawyers or legal assistants in the Firm. Such use of others may be for the purpose of involving lawyers or legal assistants with particular knowledge in a given area or for the purpose of otherwise providing service in the most efficient manner and on a timely basis.

### Client Responsibilities
Client agrees to pay our invoices for services and expenses as provided in the letter accompanying these Standard Terms and set forth below. In addition, Client agrees to be candid and cooperative with us and to keep us informed with complete and accurate factual information, documents, and other communications relevant to the subject matter of our representation or otherwise reasonably requested by us or as may be required by law or court order. Because it is important that we be able to contact Client regarding our representation, Client agrees to inform us, in writing, of any changes in the name, address, telephone number, contact person, e-mail address, state of incorporation, or other relevant changes regarding Client's business. We recommend that client avoid using consumer cloud file storage and transfer sites, such as Dropbox or Google Drive, to transfer files to us. The Firm has a number of secure, encrypted mechanisms and virtual data rooms for file sharing and transfer that can serve in this capacity and provide an elevated level of protection. We also recommend that Client avoid using text messages to communicate with us because, among other things, of security and confidentiality concerns. In addition, if our engagement is about a personal matter or a matter in which Client's employer is a counterparty, we recommend that Client not use work email for communications with us and instead use a personal email address from a non-work computer. Whenever we need instructions or authorization in order to proceed with legal work on Client's behalf, we will contact Client at the latest contact information we have received.  We agree that we may use non-encrypted email for Client communications unless the law requires or the Client specifically directs that we use encrypted email communications. If Client affiliates with, acquires, is acquired by, or merges with another company, Client agree to provide us with sufficient notice to permit us to evaluate whether we may need to withdraw from our representation if we determine that such affiliation, acquisition, or merger creates a conflict of interest between any of our current or future clients and the other party to such affiliation, acquisition, or merger, or if we determine that it is not in the best interests of our Firm to represent the new entity.

### How Fees Will Be Set
We will keep reasonably accurate records of the time we devote to all aspects of our engagement, including, without limitation, conferences with the Client, witnesses, consultants, court personnel and others, conferences among our legal personnel, factual investigation, legal research and analysis, responding to any request to provide information to Client's auditors or to other third parties, drafting of letters, pleadings, briefs, contracts, and other documents, travel time, waiting time in court and time in depositions and other discovery proceedings, negotiations and related

matters. We record our time in units of tenths of an hour. Upon request, we will furnish the current hourly rates of the lawyers and legal assistants we expect will be working on Client's matters and an estimate of the amount of fees and costs likely to be incurred in connection with a particular matter. Because legal representation and fees are dependent on a number of factors, some of which are outside our control, any estimate is not, however, a maximum or fixed fee quotation unless specifically stated to be such. We will endeavor to keep Client apprised periodically of the level of fees incurred, if Client requests. While it is not our usual policy to accept representations on a fixed fee basis, we may do so with respect to certain specifically defined services. In those circumstances, the fixed fee arrangements will be expressed in writing setting forth the amount of the fee and the scope of the services to be provided. We also undertake representations on a contingent fee basis, if appropriate. Subject to the applicable Rules of Professional Conduct, any contingent fee arrangement will be expressed in writing stating the method by which the fee is to be determined, including, in litigation matters, the percentage or percentages that will accrue to us in the event of settlement, trial or appeal, and whether litigation or other expenses are to be deducted before or after the fee is calculated. Upon conclusion of a contingent fee matter, we will provide Client with a written statement showing the remittance, if any, and the method of its determination.

### Expenses

Generally, we may pay on Client's behalf a variety of expenses arising in connection with legal services, provided such expenses, individually and in the aggregate, are in a reasonable amount. These expenses will be billed to Client, normally on a monthly basis after receipt of invoices from service providers. However, significant expenses will be referred directly to Client for payment unless special arrangements are made. Some examples of expenses that may arise in connection with legal services are filing fees, deposition and transcript costs, witness fees, charges by outside experts and consultants, as well as other legal counsel, travel expenses, and express mail and courier services. All such costs, whether paid by us, are incurred by us as Client's agent, and Client agrees that these costs will be paid promptly on a regular basis. Client also agrees to pay promptly, on a regular basis, all expenses incurred by us internally, such as electronic document hosting and review as well as automated document production expenses, computerized legal research charges, staff overtime costs and reproduction costs. Certain of our items may be charged at our direct cost plus a reasonable allocation of overhead expenses directly associated with the items. For example, the volume of litigation discovery materials to be processed and reviewed has increased substantially in recent years, as have e-discovery costs. Saul Ewing has therefore contracted with an experienced e-discovery vendor to pay a flat fee per month for processing, hosting and storing electronic documents for cases falling within certain parameters (such as the amount of data, number of custodians, etc.). This arrangement permits us to offer Clients e-discovery services at below market prices. However, the flat-fee arrangement makes a dollar-for-dollar pass-through impossible to calculate. Thus, unless Client chooses to use another vendor, Saul Ewing will charge an amount based on usage, including a reasonable allocation of overhead. This will permit Client to achieve a savings over typical e-discovery costs. If in connection with our engagement we are required to form a business entity or obtain certifications or copies of documents from state offices, we may obtain those services from a company which is owned by Saul Ewing, such as ATA Corporate Services, LLC or ATA of Maryland, Inc. (collectively, "ATA"). ATA provides the same services available from competing commercial service providers at a competitive cost (generally lesser) to our clients. It is Client's choice as to which service provider we use. In the absence of any direction, we will most likely use ATA.

### Billing

Detailed billing information will be provided upon request. We reserve the right to charge 1% per month interest (or such other rate as may be permitted under applicable law) on any bill outstanding more than 30 days. If a delinquency continues and Client does not arrange payment terms satisfactory to us, we may pursue collection of Client's account and, subject to applicable law, we may withdraw from the Client representation.

Client agrees to pay the costs of collecting any such delinquency, including court costs and reasonable attorneys' fees. We reserve the right to decline requests for an early payment discount. We also reserve the right to charge as a cost an amount equal to any fee we must pay if Client chooses to pay us by credit card.

### Estimates Of Fees And Costs

Although we may be able to provide an estimate of our fees for the Engagement, we are not able to predict them with precision. This is because the work necessary to complete the Engagement is subject to a variety of factors not fully under our control. In transactional matters, such factors may include the following: problems relating to satisfaction of closing requirements, such as title or survey issues; the extent of negotiations and of changes in the transaction documents; and the diligence of opposing counsel in completing those tasks for which it is responsible. In litigation matters, such factors may include the following: the extent and nature of discovery sought by the other parties involved; the number of, and extent of preparation required for, witnesses; the timing of any settlement discussions; the need to file motions or to respond to those filed by another party; and, the discovery and schedules established by the court. Also, it is our experience that near or at the date scheduled for trial, cases are often postponed for significant periods of time due to conflicts in scheduling encountered by the court; thus necessitating additional costs to re-prepare for trial at a later date. Should a matter go to judgment or final decision, there may be post-judgment proceedings or an appeal may ensue, entailing additional fees and expenses, postponing the final resolution of the matter and perhaps even requiring a retrial of the matter. In addition, if the case is protracted or if the issues change, the legal personnel providing legal services may have to change, possibly resulting in additional time as new personnel acquaint themselves with the relevant facts and law. Thus, depending upon the circumstances of the Engagement, the assumptions underlying our estimate of fees may change over time.

### Aspects Of Third Party Payor Engagements

The Firm's professional duties and responsibilities will be unaffected by a third party payor. Examples of a Third Party Payor engagement include those undertaken pursuant to a policy of insurance or because another company or person has agreed to pay the legal fees and costs on Client's behalf. In such a situation, unless separate arrangements have been made with the Firm, the Firm shall represent Client solely with regard to covered claims (that is, claims for which the insurer or other payor has agreed to advance fees and costs) and subject to any reservations of rights letter from the Payor. In the event that a dispute arises between the Client and the Payor regarding the Payor's obligations to the Client or any other matter, Saul Ewing LLP will not be able to represent the Client in that dispute, nor will we be able to represent the Payor in any such dispute with Client. If we become aware of a possible dispute regarding the Payor's obligations to Client, we will notify Client of that fact so that Client may seek separate counsel as to that matter. Client should understand we may be required to make regular reports to the Payor concerning the Engagement. Such reports may include information regularly developed in the course of the Engagement, unless for some reason Client specifically instructs us not to forward some confidential information to the Payor. Such an instruction may, depending on the terms of the agreement between Client and Payor, affect the Payor's obligation to indemnify Client and/or to pay Client's legal fees and costs. We will consult and confer with Client concerning all material developments in the engagement including, in litigation matters, any settlement opportunities. Client should be aware that the Payor may have the contractual right to settle a litigation or other form of disputed matter. Should the Payor decide to avail itself of such a contractual right, we would inform Client of that fact before taking any final action.

### Aspects Of Multiple Client Engagements

In situations where we are asked to represent a number of Clients as a group, we recommend that each Client consult separate counsel to represent that Client's individual interests with respect to that Client's individual current or potential issues. We particularly urge Client to consult separate counsel concerning any matter in which Client perceives that Client's in-

terests may conflict with the interests of the other Clients. We also expect and encourage Client to consult with such individual counsel at any time and on any matter on which Client wishes to receive specific and individually tailored advice. We will provide information regarding the Engagement to such individual counsel, as part of our services to the group of Clients. We also expect that any such counsel will assist in identifying conflicts that may arise in the course of our work and inform us appropriately, and we will advise such member of the group of Clients with respect to such conflicts. Our work in this Engagement is to represent all of the members of the group of Clients as a group collectively. Consequently, we will not promote or advocate the interests of any one or more of the Clients individually. As mentioned in the accompanying letter, there may be issues related to the Engagement that would affect one or more Clients differently due to that Client's unique circumstances (of which Saul Ewing may or may not be aware); and, where conflicts or disparate interests arise, it may be necessary or appropriate for any of the Clients to engage separate counsel on an individual basis. While we will try to explain the significance and effect of the material issues to all Clients, we may not know facts specific to any one of the Clients and therefore may not realize that such explanations might be warranted in particular circumstances. We will, however, endeavor to keep all Clients informed on a regular basis about our work for the entire group of Clients.

### Additional Disclosure

The Rules of Professional Conduct for attorneys are restrictive as to the disclosure of confidential client information. It is specifically agreed that the Firm shall be and is hereby granted all general, possessory, and retaining liens and all equitable, special and attorney's charging liens upon Client's interest both in any balance due, owing and unpaid at the conclusion of the case or the termination of the Firm's employment, whichever event is first, as well as in all other assets the Client may have. Such lien(s) shall relate back to the beginning of the Engagement and shall be superior in dignity to any other lien subsequent to the date thereof. This Agreement may be disclosed by and to the Court, and the Firm shall be entitled to file a Notice and Claim of Attorney's Charging Lien, and a Notice of Lis Pendens with regard to Client's interest in any real property upon which a lien may be claimed. Notwithstanding any specific right or remedy set forth herein, these remedies shall not be exclusive and shall be cumulative upon all other rights and remedies set forth herein or allowed by this Engagement or by law.

It is possible that we may wish to place a brief summary of a matter or matters involving our representation of Client in our advertising materials. If we do, we will not use Client's name without prior approval and we will not reveal confidential client information. If Client does not wish to consent to this, or if there are any questions, please let us know as soon as possible.

Sometimes, we are asked to disclose whether we represent clients in a given industry or market segment as part of the process of being retained by a new client. Client agrees that we may disclose our representation herein on condition that no confidential information about our representation of Client is disclosed.

### Conclusion of Representation; Retention and Disposition of Documents

Unless previously terminated, our representation of Client will terminate upon our completion of currently outstanding assignment(s) or delivery of final documents for execution. At Client's request, Client's papers and property will be returned upon receipt of payment for outstanding fees and costs. Upon a conclusion of a representation, we will return original files to Client. Any materials maintained in electronic document management systems may, at our sole decision, be deleted after the conclusion of the representation. Our own files pertaining to the matter may be retained by the Firm. These Firm files include, for example, firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records; and internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers.

All such documents retained by the Firm will be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, subject to applicable law, we reserve the right to destroy or otherwise dispose of any such documents or other materials retained by us within a reasonable time after the termination of the engagement.

### Firm's Right to Consult Internal Counsel

The Firm's lawyers from time to time may have questions about legal and ethical matters relating to the representation of our clients. When such questions arise, we encourage the lawyers to consult our internal General Counsel and Deputy General Counsel. We believe that such consultation benefits both our clients and the Firm. For this consultation to be most effective, our lawyers must be completely open and candid in their communications with the Firm's counsel. It is therefore important that these communications be privileged and confidential and not be available to third parties, including clients whose representation may be the subject of the communication. To avoid any question in this regard, Client consents and agrees that our lawyers involved in a representation for Client may consult with the Firm's internal General Counsel and Deputy General Counsel and that any such communication, even at a time when we continue to represent Client, will be treated as confidential in this way and subject to the Firm's attorney-client privilege.

### Termination

Client may terminate our representation at any time, with or without cause, by notifying us. If such termination occurs, Client's papers and property will be returned promptly after our receipt of payment for all fees and expenses. Our own files pertaining to the matter may be retained by us. Client's termination will not affect Client's responsibility for payment of legal services rendered and expenses paid or incurred on Client's behalf before we receive Client's notice of termination and in connection with an orderly transition of the matter. The Rules of Professional Conduct governing lawyers list several types of conduct or circumstances that require or allow us to withdraw from representing Client, including, for example, non-payment of fees or costs, misrepresentation or failure to disclose material facts, actions contrary to our advice, and conflict of interest with another client. We try to identify in advance and discuss any situations which may lead to our withdrawal. In any event, if withdrawal becomes necessary or prudent, we will give Client reasonable notice of that fact. If we elect or are asked to withdraw, Client agrees to cooperate with us by executing any documents necessary to evidence the termination of our representation, in court or otherwise, and we will be entitled to be paid for all legal services rendered and expenses paid or incurred on Client's behalf before withdrawal and in connection with the orderly transition of the matter. If any claim or action is brought against us or any personnel of our Firm and such claim arises from Client's negligence or misconduct (for example, a motion for sanctions for failure to provide discovery), Client agrees to hold us harmless and indemnify us for all damages and expenses incurred.

### Right to Arbitrate

If Client has questions about the amount of our fee, please discuss them with the principal attorney contact. In the event of a fee dispute which is not resolved, Client has the right to request arbitration under supervision of the state or local bar association for the jurisdictions in which we practice. However, we also have the right to pursue collection of Client's account in an appropriate court.

* * *

We suggest that you retain these Standard Terms and refer to it if you have questions.

