## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC, *et al.*,[1]<br><br>     Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br>(Jointly Administered)<br><br><u>Objection Deadline</u>: 9/18/2025 at 4:00 PM (E.T.)<br><u>Hearing Date</u>: 10/17/2025 at 10:00 AM (E.T.) |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, *et al.*,<br>     Plaintiff,<br><br>  v.<br><br>McKESSON CORPORATION, McKESSON SPECIALTY CARE DISTRIBUTION LLC, and McKESSON MEDICAL-SURGICAL, INC.,<br><br>     Defendants. | Adv. Proc. No. 24-50042 (KBO) |

### MOTION OF GEORGE L. MILLER, CHAPTER 7 TRUSTEE, FOR ENTRY OF ORDER APPROVING SETTLEMENT WITH McKESSON CORPORATION, McKESSON SPECIALTY CARE DISTRIBUTION LLC, AND McKESSON MEDICAL-SURGICAL, INC.

George L. Miller, the Chapter 7 Trustee (the "**Trustee**") in the above-captioned Chapter 7

cases (the "**Chapter 7 Cases**") for the bankruptcy estates of Akorn Holding Company LLC, Akorn

Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "**Debtors**"),

hereby moves (the "**Motion**") pursuant to Section 105 of Title 11 of the United States Code, §§

101-1532 as amended (the "**Bankruptcy Code**"), and Rule 9019 of the Federal Rules of

---

[1] The Debtors in the chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are Akorn Holding Company LLC (9190), Akorn Intermediate Company LLC (6123), and Akorn Operating Company LLC (6184). The Debtors' headquarters was located at 5605 CenterPoint Court, Gurnee, Illinois 60031.

Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), as follows:  (i) approving the settlement of certain claims, including for payment of goods sold and delivered, breach of contract, account stated, and unjust enrichment, and entry into a *Settlement Agreement and Mutual Release* (the "**Settlement Agreement**") by and between the Trustee and McKesson Corporation ("**McKesson**"), McKesson Specialty Care Distribution LLC ("**MSCD**"), and McKesson Medical-Surgical, Inc. ("**MMS**" and together with McKesson and MSCD, "**Defendants**" and together with the Trustee, the "**Parties**"), attached hereto as Exhibit B, and (ii) granting such other relief as may be just and proper.  In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Trustee consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the Parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The basis for the relief requested herein is Section 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9019.

## BACKGROUND

5.      On February 23, 2023 (the "**Petition Date**"), each of the Debtors, Akorn Holding

Company LLC, Case No. 23-10253; Akorn Intermediate Company LLC, Case No. 23-10254, and

Akorn Operating Company, LLC, Case No. 23-10255, filed voluntary petitions in the Bankruptcy

Court for relief under Chapter 7 of Title 11 of the Bankruptcy Code, commencing the Chapter 7

Cases.  The Chapter 7 Cases are being jointly administered.

6.      On or about the Petition Date, the Office of the United States Trustee appointed the

Trustee as the trustee of the bankruptcy estates of each of the Debtors.

7.      Prior to the Petition Date, the Debtors' businesses included developing,

manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health,

and animal health products.  The Debtors were an industry leader in branded and generic products

in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants and nasal

sprays.

8.      The Debtors operated at numerous locations in the United States and were

headquartered in Gurnee, Illinois.  The Debtors ceased their operations in the United States and,

as a result, the United States Food and Drug Administration issued a post-petition voluntary recall

of certain drugs produced by the Debtors.

9.      McKesson, on behalf of itself and "its subsidiaries and affiliates," filed identical

proofs of claim against each Debtor for an undetermined amount (collectively, the "**Proofs of**

**Claim**").  *See* Case No. 23-10253-KBO Claim Register, Claim No. 345; Case No. 23-10254-KBO

Claim Register, Claim No. 199; Case No. 23-10255-KBO Claim Register, Claim No. 374.

10.     Since the date of his appointment, the Trustee has been investigating and marshalling the Debtors' assets, including unpaid amounts owed to the Debtors under pre-petition contracts.

11.     Based upon that investigation, on April 15, 2024, the Trustee filed an adversary proceeding styled *George L. Miller, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC et al. v. McKesson Corporation, McKesson Specialty Care Distribution LLC, and McKesson Medical-Surgical, Inc.* was filed in the Bankruptcy Court, thereby commencing the adversary case number 24-50042 (KBO) (the "**Adversary Proceeding**"), whereby the Trustee, on behalf of the Debtors' estates, asserted certain claims against Defendants, including for payment for goods sold and delivered, breach of contract, account stated, unjust enrichment, turnover of accounts receivable under Sections 105(a) and 542 of the Bankruptcy Code, and disallowance of claims under Section 502(d) of the Bankruptcy Code (the "**A/R Claims**").  Through the A/R Proceeding, the Trustee demanded payment of more than $104.4 million from Defendants for products sold to Defendants under that certain *Member Purchase and Services Agreement between McKesson Corporation and Akorn, Inc.* dated March 14, 2018, and that certain *McKesson Medical-Surgical Inc. Distribution Agreement* dated January 21, 2008, as amended by that certain *Extension Letter* dated December 15, 2021.

12.     On September 17, 2024, the Bankruptcy Court entered an order granting Defendants' motion to dismiss the A/R Claims seeking turnover of accounts receivable under Sections 105(a) and 542 of the Bankruptcy Code, and disallowance of claims under Section 502(d) of the Bankruptcy Code.

13.     On October 1, 2024, Defendants filed their answer in response to the remaining A/R Claims asserted in the Adversary Proceeding.  Defendants dispute the amount claimed to be

4

owed in the Adversary Proceeding, and allege that they are entitled to certain setoffs, credits, rebates, and reductions that may reduce their liability pursuant to applicable state law and the agreements referenced above.  Defendants further allege that the voluntary recall by the Debtors upon the bankruptcy filing was a breach of contract by the Debtors, entitling Defendants to damages, and that the recall rendered certain products unmarketable.  The Trustee disputes the nature and amount of these claimed defenses and setoffs.

14.     The Trustee and Defendants have engaged in extensive exchanges of information in an attempt to reconcile the amounts owed to the Debtors by Defendants.  As a result of these information exchanges and lengthy negotiations between the Trustee and Defendants, the Trustee and Defendants have agreed to settle the Adversary Proceeding, subject to this Court's approval.

15.     The terms of the settlement between the Trustee and Defendants are embodied in the Settlement Agreement attached hereto as Exhibit B.

16.     The key terms of the Settlement Agreement[2] are as follows:

    a.     Defendants will pay thirty-five million five hundred thousand dollars ($35,500,000.00) to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;

    b.     within ten (10) business days of receiving payment, the Trustee will dismiss the Adversary Proceeding with prejudice;

    c.     the Trustee and Defendants will provide mutual releases of all claims and causes of action, known or unknown; and

    d.     the Proofs of Claim filed by Defendants will be disallowed.

---

[2]     This summary of key terms is provided for convenience; in the event of any conflict between the Motion and Settlement Agreement, the Settlement Agreement will control.

17.    The Settlement Agreement is the result of extensive, active, good-faith discussions and arms' length negotiations between the Trustee and Defendants.  The Settlement Agreement is a good-faith exercise of the Trustee's business judgment and should be approved.

## RELIEF REQUESTED

18.    Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Trustee seeks entry of an order substantially in the form attached hereto as Exhibit A (i) approving the Settlement Agreement, and (ii) granting such other relief as may be just and proper.

## BASIS FOR RELIEF

19.    Section 105(a) of the Bankruptcy Code allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides that "[o]n the trustee's motion and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).

20.    When reviewing settlements under Bankruptcy Rule 9019, the Court generally defers to the Trustee's business judgment.  "[U]nder normal circumstances the [C]ourt would defer to the [T]rustee's judgment so long as there is a legitimate business justification [for the settlement]."  *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996).

21.    Settlements and compromises are "a normal part" of bankruptcy.  *Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).  The Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  The approval of a

proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See, e.g.*, *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

22.     Pursuant to Bankruptcy Rule 9019(a), the Court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and equitable.  *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (noting that "the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable.").  The Court need not be convinced that the settlement is the best possible compromise in order to approve it.  *Coram Healthcare*, 315 B.R. at 330.  Rather, the Court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness."  *Travelers Cas. & Sur. Co. v. Future Claimants Representative*, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing *Matter of Jasmine, Ltd.*, 285 B.R. 119 (D.N.J. 2000)).

23.     In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.  The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *Martin*, 91 F.3d at 393; *see also In re Nutraquest, Inc.*, 434 F.3d 639, 646-48 (3d Cir. 2006) (applying *Martin* factors).

24.     When deciding whether to approve a compromise, a court will normally accept the judgment of the movant as long as a legitimate business justification exists.  *Martin*, 91 F.3d at 395; *In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 250 (D. Del. 1998); *see also In re Penn Central Transportation Co.*, 347 F. Supp. 1351, 1353 (E.D. Pa. 1972) (approving settlement

agreement as reflection of business judgment).  Once a debtor has articulated a valid business justification for a settlement, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company."  *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

25.    Here, the Settlement Agreement satisfies the aforementioned factors and considerations.  First, although the Trustee disputes the merits, amount, and validity of Defendants' claimed credits, damages, alleged defenses, and setoffs, if the Trustee were required to continue to litigate the Adversary Proceeding, then the probability of or size of success would be uncertain.  Disputes over the interpretation of the underlying contracts, the post-petition marketability of the products, the timing of payments, and the legal theories underlying the asserted setoffs, all create legal and factual risks.  The Settlement Agreement entirely eliminates this litigation risk and provides the Debtors' estates with a certainty of recovery.

26.    Second, the collections process is fraught with additional hurdles that would impose costs upon the Trustee.  While the Trustee has no reason to believe at this point that Defendants would not be cooperative in paying any judgment in favor of the Trustee should the matter have proceeded to trial, Defendants are not a convenient collections target should they choose to be uncooperative.  Regardless, settling with Defendants eliminates any potential time and expense associated with any collection hurdles by providing a simple lump sum payment shortly after this Court's approval of the Settlement Agreement.

27.    Third, the litigation is complex, time-consuming, and costly.  The Adversary Proceeding is still in its early stages; while Defendants have filed an answer, the Parties have not

completed formal discovery, having used the last many months to engage in an informal discovery process in an effort to resolve the A/R Claims.  Completing discovery and litigating dispositive motions would take months, if not years, before the Adversary Proceeding is procedurally ready for trial.  Moreover, the A/R Claims arise from pharmaceutical billing, a notoriously complex and voluminous process administered under sophisticated contracts and billing systems.  Any alleged setoffs asserted by Defendants arise in part from credits generated by the constant flow of obligations from pharmaceutical product providers (like the Debtors) to distributors (like Defendants) to retail or other customers, all mediated by insurance and governmental payment programs.  In litigation, both sides, through discovery, would need to provide extensive forensic analyses of hundreds of thousands, if not millions, of transactions to determine which amounts may be setoff against other amounts.  The experts necessary to formulate these analyses would represent a significant cost to both sides, since they would need to understand not just accounting but certain principles of pharmaceutical billing and collection.  Therefore, the Trustee believes that his reconciliation with Defendants of the amounts owed and the agreed-upon settlement has saved the Debtors' estates significant time and expense, while returning a meaningful payment to the Debtors' estates.

28.    Fourth, the Settlement Agreement serves the paramount interest of creditors.  As discussed above, the Settlement Agreement eliminates the risks, costs, and delays of litigation, while preserving estate resources for other purposes and lightening the estates' administrative burden.

29.    Finally, even if the Trustee were successful in litigation, the outcome might entitle Defendants to significant claims from the Debtors' estate on account of the Proofs of Claim or additional or modified proofs of claim filed under Section 502(b) of the Bankruptcy Code.  The

Settlement Agreement eliminates the Proofs of Claim and Defendants' right under Section 502(h) of the Bankruptcy Code to file a proof of claim (and all other rights of Defendants to receive money from the Debtors' estates), thereby reducing the creditor body to be paid in these cases and enhancing recoveries for other general unsecured creditors.[3]

30.      Based upon the foregoing, the compromise embodied in the Settlement Agreement does not "fall below the lowest point in the range of reasonableness." *Integrated Health*, 2001 WL 1820426, at *2 (*quoting Cosoff v. Rodman (In re WW.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)).  The Settlement Agreement is the result of substantial good-faith, arms' length negotiations between the Trustee and Defendants and constitutes a reasonable exercise of the Trustee's business judgment.  Accordingly, this Court should exercise its discretion and approve the Settlement Agreement.

**WHEREFORE**, for the reasons set forth above, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A, approving the Settlement Agreement and granting such other relief as may be just and proper.

Dated: September 4, 2025          **SAUL EWING LLP**
Wilmington, Delaware

                                  */s/ Evan T. Miller*
                                  Evan T. Miller (DE Bar No. 5364)
                                  Paige N. Topper (DE Bar No. 6470)
                                  1201 N. Market Street, Suite 2300
                                  Wilmington, DE 19801
                                  Telephone:  (302) 421-6800
                                  evan.miller@saul.com
                                  paige.topper@saul.com

                                  -and-

---

[3]      Similar reasons supported the Trustee's settlements with Cencora, Inc. f/k/a AmerisourceBergen Drug Corporation and Cardinal Health, Inc., the two other major distributors in the pharmaceutical industry against which the Trustee had initiated litigation to recover amounts due to the Debtors' estates.  *See* D.I. 935, 959, 963, 1411, 1429, 1431.

Steven C. Reingold (*admitted pro hac vice*)
131 Dartmouth Street, Suite 501
Boston, MA 02116
Telephone:  (617) 723-3300
steven.reingold@saul.com

*Special Counsel to George Miller, Chapter 7
Trustee of the bankruptcy estates of Akorn
Holding Company LLC et al.*