IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC,<br>*et al* [1]<br><br>　　　　Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br>(Jointly Administered)<br><br>Hearing Date:　November 14, 2025 at 10:00 a.m. ET<br>Objection Date:　October 21, 2025 at 4:00 p.m. ET |

**TRUSTEE'S MOTION FOR ENTRY OF ORDER AUTHORIZING EMPLOYMENT
AND COMPENSATION OF JNR ADJUSTMENT COMPANY, INC. AS
ACCOUNTS RECEIVABLE COLLECTION AGENCY**

George L. Miller, in his capacity as chapter 7 trustee (the "Trustee") for the estates of the above-captioned debtors (the "Estates" of the "Debtors"), hereby requests the entry of an order authorizing the employment and compensation of JNR Adjustment Company, Inc. ("JNR") as accounts receivable collection agency for the Estates to pursue and collect payment of accounts receivable (the "Customer Accounts") on behalf of the Trustee, and in support hereof respectfully states as follows:

**JURISDICTION, CORE NATURE AND VENUE**

1.　The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]　The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255. The Debtors' headquarters was located at 5605 CenterPoint Court, Gurnee, IL 60031.

LEGAL\80389483\2 6010823/00574256

## BACKGROUND

2.      On February 23, 2023, (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") in this Court commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases").

3.      On or shortly after the Petition Date, the Trustee was appointed by the Office of the United States Trustee to serve as the duly authorized chapter 7 Trustee for the Estates of the Debtors, and he continues to serve in this capacity in these Bankruptcy Cases.

4.       In accordance with his duties under the Bankruptcy Code, the Trustee, with the assistance of the Trustee's accountants, Miller Coffey Tate LLP, reviewed the Debtors' financial books and records.  The Debtors' books and records indicate that certain of the Debtors' former customers (the "Account Debtors") are indebted to the Debtors for services provided by the Debtors prior to the Petition Date.

5.      JNR has a great deal of expertise and knowledge in the field of accounts receivable collections.  The Trustee and JNR, subject to Bankruptcy Court approval, have entered into an Collection Services Agreement, dated as of September 11, 2025 (the "Collection Services Agreement"), a copy of which is attached to this Motion as Exhibit "A" and incorporated herein by reference as if set forth herein.  Pursuant to the Collection Services Agreement, the Trustee may refer Customer Accounts to JNR for collection.

### A.      Services to Be Provided By JNR

6.      Pursuant to the Collection Services Agreement, JNR will provide collection services, including but not limited to communication with Account Debtors, analysis of accounts, and collection of debts, with respect to Customer Accounts which the Trustee may

2

refer to JNR (the "Customer Accounts") from time to time.  Referral of Customer Accounts to JNR shall be at the sole discretion of the Trustee.  The Collection Services Agreement does not obligate the Trustee to refer any or all Customer Accounts to JNR.

7. JNR shall instruct Account Debtors to deliver and make all monies payable to the Trustee.  In the event JNR receives any monies from an Account Debtor, JNR shall notify the Trustee, in writing, of the receipt of any payment from an Account Debtor and JNR will immediately forward such monies to the Trustee.  JNR shall not deposit any check(s) received from an Account Debtor and JNR shall endorse any checks received from Account Debtors immediately over to the Trustee.   Under no circumstances shall JNR be permitted to commingle any monies collected on Customer Accounts with other funds.

8. The Trustee shall retain complete authority to enter into negotiations or any agreement for the settlement of the Customer Accounts and/or related litigation initiated on the Trustee's behalf.

**B. Compensation of JNR.**

9. The Trustee has agreed to pay JNR a commission as determined in accordance with section 2.1 of the Collection Services Agreement (the "Commission") for all amounts collected on the Trustee's behalf on referred Customer Accounts, including any judgment, award, or settlements (hereinafter referred to as "Qualifying Payments"). Commission shall be deemed earned on all Qualifying Payments upon receipt by the Trustee, regardless of whether initially remitted by the Account Debtors to the Trustee, JNR, or any law firm.

10. Section 2.3 of the Collection Services Agreement specifies that the Commission amounts shall be based upon classification of the Customer Accounts, as follows:

3

      2.3(a)    <u>Collection</u>: JNR shall be entitled to a 35% commission of the amount of each Qualifying Payment.

      2.3(b)    <u>Returns</u>: JNR shall not be entitled to any Commission for Customer Accounts recalled by the Trustee at any time, unless payment is received on such Customer Accounts within thirty (30) days of its recall by the Trustee and such payment is a direct result of JNR's efforts. In such case, the Commission earned by JNR shall be the same as set forth in section 2.3(a).

11.    As is contemplated under the Collection Services Agreement, JNR will submit an invoice to the Trustee for Commissions earned on one or more Qualifying Payment. The Trustee agrees to pay uncontested invoices within thirty (30) days of receipt. Should the Trustee contest any amounts listed on any invoice, the Trustee may choose to pay the uncontested portion or reject the entire invoice until the discrepancy is resolved. Notwithstanding the foregoing or other provision of the Collection Services Agreement, JNR agrees that payment of its Commission for any amounts collected shall be subject to a fee notice procedure through the Bankruptcy Court whereby the Trustee shall file and serve a notice (the "<u>Fee Notice</u>") upon (i) the Office of the United States Trustee, (ii) the Debtors' counsel, (iii) the twenty (20) largest unsecured creditors of the Debtors; and (iv) all parties requesting such notice in these Bankruptcy Cases pursuant to Bankruptcy Rule 2002 of the Bankruptcy Rules, in accordance with Del. Bankr. L.R. 2002-1(b), (collectively, the "<u>Fee Notice Parties</u>") indicating the demand amount, amount collected and amount of Commission to be paid to JNR and such Fee Notice shall be subject to a ten (10) day objection period to file an objection to the Fee Notice. If no objections are filed by such ten day objection deadline, the Trustee may pay JNR its Commission without further order of the Court. Additionally, the Trustee will assist JNR with the preparation and filing of final applications to approve JNR's Commissions, as may be authorized by 11 U.S.C. §§ 330 and 331.

12. Pursuant to Article 3 of the Collection Services Agreement all costs shall be paid by JNR. "Costs" shall mean fees and expenses of any law firm engaged by JNR, filing fees, copy charges, deposition transcript fees, court reporter fees, expert witness fees, consultant fees, fees of consulting or testifying accountants, fees of electronic discovery consultants, fees of Information Technology consultants, travel costs, phone charges, facsimile charges, legal research fees, any fees determined to be the costs of litigation as defined by any state or federal law, and all other fees, costs, and all costs reasonable and necessary for the effective prosecution and/or defense of the claim or litigation.

13. The Trustee shall not pay any Costs even if no monies are collected by JNR, subject only to section 3.3 of the Collection Services Agreement. If the amount of Costs exceeds the Commission, the Trustee shall not be responsible for any deficiency.

14. JNR shall be authorized to engage law firms to assist JNR with the collection of Receivables, provided; however, that prior to engaging any law firm to initiate litigation on the Trustee's behalf, JNR shall obtain the Trustee's approval authorizing litigation and the engagement of any law firm in writing. The fees and expenses of any law firm engaged by JNR shall be paid by JNR and not by the Trustee.

## RELIEF REQUESTED

15. The Trustee respectfully requests that the Court enter an Order pursuant to sections 363 and 105(a) of the Bankruptcy Code authorizing the Trustee to employ JNR as a non-professional to assist the Estates in collecting the Customer Accounts, and to enter into, and carry out the terms of, the Collection Services Agreement without further Order of this Court.

16. In the alternative, the Trustee respectfully requests the entry of an Order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code authorizing the Trustee to employ and retain JNR as a professional in these Bankruptcy Cases.

## APPLICABLE AUTHORITY

17. The following factors apply to the determination of whether a party employed by the estate is a "professional" for purposes of section 327:

> (1) whether the employee controls, manages, administers, invests, purchases or sells assets that are significant to the debtor's reorganization, (2) whether the employee is involved in negotiating the terms of a Plan of Reorganization, (3) whether the employment is directly related to the type of work carried out by the debtor or to the routine maintenance of the debtor's business operations; (4) whether the employee is given discretion or autonomy to exercise his or her own professional judgment in some part of the administration of the debtor's estate, i.e. the qualitative approach, (5) the extent of the employee's involvement in the administration of the debtor's estate, i.e. the quantitative approach; and (6) whether the employee's services involve some degree of special knowledge or skill, such that the employee can be considered a "professional" within the ordinary meaning of the term. In applying these factors, the Court stresses that no one factor is dispositive and that the factors should be weighed against each other and considered in toto.

*In re First Merchants Acceptance Corp.*, 1997 WL 873551, at *3 (D. Del. Dec. 15, 1997). *See also In re Sieling Assocs. Ltd. P'ship*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (The phrase "professional persons" for purposes of 11 U.S.C. § 327 refers only to "persons in those occupations which play a central role in the administration of the debtor proceeding.") (quoting *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981)).

18. As the *Sieling* court explained, in determining whether an entity is a "professional" for purposes of section 327, "[W]e must examine the actual duties involved. If we find that the duties have a tangential relationship to the administration of the Debtor's estate

6

such duties are not professional in nature." *Id.* (citing *In re Johns-Manville Corp.*, 60 B.R. 612, 620 (Bankr. S.D.N.Y. 1986); *Seatrain Lines*, 13 B.R. at 981). *See also In re Johns-Manville*, 60 B.R. at 619 ("[T]he phrase 'professional persons' used in § 327(a) is a term of art reserved for those persons who play an intimate role in the reorganization of a debtor's estate").

19.     "Examples of jobs that do not qualify as 'professionals' include: fire insurance adjusters, *collection agencies* and property finders." *In re Am. Tissue, Inc.*, 331 B.R. 169, 174 n.4 (Bankr. D. Del. 2005) (emphasis added). Moreover, the fact that a non-professional collection agency may retain counsel in connection with their activities on behalf of the estate does not automatically turn a non-professional into a "professional" for purposes of section 327. *See Windsor Commc'ns Group, Inc. v. Rogers & Rogers, Inc. (In re Windsor Commc'ns Group, Inc.)*, 68 B.R. 1007, 1010-13 (finding "there is no justification of record for holding that a collection agency is a 'professional person' rather than an ordinary business" but declining to rule out the possibility).

20.     Although some courts have found that an entity involved in debt collection can rise to the level of a "professional" under section 327, these courts found that the entity's actions extended beyond mere debt collection to include tasks that required highly specialized skills, the administration of the debtor's primary asset, and broad discretion in the collections process. *See First Merchants Acceptance*, 1997 WL 873551, at *3-5 (finding "professional" status where "[a]greement extends beyond mere debt collection to the evaluation and assessment of the Debtor's equipment, personnel, organization, current and future facilities, and certain procedures and policies, relating to servicing the [r]eceivables" which constituted the debtor's primary asset). *See also In re Metro. Hosp.*, 119 B.R. 910, 915-17 ("[B]ecause of the highly specialized

7

and technical nature of HHL's services, it is more like a paralegal professional than a debt collector, and is a professional within the meaning of § 327(a)").

21. Section 363 of the Bankruptcy Code authorizes the Trustee to use property of the estate in the ordinary course of business, and section 363(b) of the Bankruptcy Code permits the Trustee to use property of the estate "other than in the ordinary course of business," after notice and a hearing. Additionally, section 105(a) of the Bankruptcy Code allows the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

22. Courts often review a trustee's use of property of the estate outside of the ordinary course of business pursuant to the trustee's demonstration of a sound business purpose. *See, e.g., Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147 (D. Del. 1999).

## ANALYSIS

A.  **JNR is not a "professional" for purposes of section 327 of the Bankruptcy Code**.

23. To the extent that the Trustee's request to employ and compensate JNR for collecting the Customer Accounts requires Court approval, the Trustee submits that such request should be considered under section 363 – as opposed to section 327 – of the Bankruptcy Code because JNR will not be acting as a "professional" for purposes of section 327.

24. Rather than assisting the Trustee with his administration of the Estates, JNR will be performing only limited, discrete tasks related to collecting the Customer Accounts. JNR will not be performing any core duties related to the administration of the Estates, and these services will not cause JNR to rise to the level of a "professional" for purposes of section 327. In

addition, the Customer Accounts do not represent the primary asset of the Estates and collecting the Customer Accounts is not so specialized and technical that it requires skills that only a few possess, such that JNR must be classified as a "professional" under section 327.

25. Indeed, as this Court recognized in *American Tissue*, "collection agencies" should not be regarded as professionals for purposes of section 327. *See Am. Tissue*, 331 B.R. at 174 n.4. Consequently, the Trustee believes that he is not required to seek approval for JNR's retention under section 327.

26. Instead, the Trustee files this Motion pursuant to section 363 out of an abundance of caution, under the assumption that compensating JNR would constitute a use of the Estates' funds outside of the "ordinary course of business." Because the Trustee recognizes that such use of funds may or may not be considered to be outside of the "ordinary course of business," he believes that it is prudent to request Court approval for JNR's retention.

B. **Employment and compensation of JNR is in the Estates' best interests**.

27. Regardless of whether the proposed employment and compensation of JNR would be outside of the "ordinary course of business," the Trustee believes that the requested relief is in the Estates' best interest and should be approved.

28. JNR is highly experienced in collections and in the Trustee's business judgment, employing JNR will benefit the Estates, as JNR's assistance appears likely to lead to the Estates' collecting on Customer Accounts from which there otherwise likely would not be a recovery.

29. Given the nature of the tasks to be performed by JNR and the fact that compensation is contingent upon collection of the Customer Accounts, the Trustee does not believe that JNR should be required to submit applications for approval of compensation. Rather, the Trustee proposes that he be allowed to pay the Commission to JNR, without further

9

order of the Court, subject, however, to the Fee Notice procedure described above in paragraph 11.

C. **In the alternative, if the Court finds JNR to be a "professional" under section 327, JNR should be (i) employed and compensated pursuant to sections 327(a) and 328(a) and (ii) the interim fee application requirement should be waived.**

30. As discussed above, the Trustee has selected JNR because of JNR's expertise and knowledge in the field of collections. Based on JNR's experience, the Trustee believes it is the most qualified entity to quickly collect the Customer Accounts.

31. In the alternative, if the Court determines that JNR is a "professional" under section 327, the professional services that JNR will provide consist of all acts necessary to collect or settle or otherwise dispose of the Customer Accounts and the Trustee requests approval of their employment for such services.

    i. **The Fee Structure is Appropriate and Should be Approved Under Section 328(a) of the Bankruptcy Code**

32. As permitted by section 328(a) of the Bankruptcy Code, JNR and the Trustee have agreed to the contingency-based Commission arrangement. The Commission, as described above, is both reasonable and market-based. The payment structure was agreed upon by the parties after an arms-length negotiation. The Trustee believes JNR's proposed fees to be reasonable and within the range of fees charged by collection firms of comparable size and experience for similar services.

33. Given these facts, if JNR is considered a "professional" under section 327, the Trustee submits that the payment structure is reasonable and market-based and should be approved pursuant to section 328(a) of the Bankruptcy Code.

### ii. This Court Should Waive Any Requirement for JNR to File Interim Fee Applications

34. If JNR is employed as a "professional" under section 327(a), JNR should not be required to file interim fee applications or seek interim court approval for its work in these cases.

35. Requiring JNR to submit interim fee applications would only add unnecessary costs for JNR and the Estates. JNR is typically compensated on a per-recovery, transactional basis and its employees are not accustomed to keeping detailed accounts of their time.

36. Moreover, JNR is to be paid only upon successful collection of Customer Accounts which benefit the Estates and the fee structure described above should be approved as reasonable under the standards of section 328(a) of the Bankruptcy Code. Given that JNR will only be compensated upon successful collection of funds from the Customer Accounts and the contingency fee structure of compensation, the Trustee submits that filing interim fee applications would be unnecessary and costly.

37. Notwithstanding the foregoing, permitting payment of Commissions to JNR without need for filing interim fee applications, JNR and the Trustee understand that JNR will be required to submit a final fee application with the Court and that the final fee application will be subject to final approval by the Court.

### Disclosure Concerning Disinterestedness

38. To the best of the Trustee's knowledge, and except as otherwise disclosed in the declaration of Scott Rapp (the "Rapp Declaration"), a copy of which is attached hereto as Exhibit "B" and incorporated herein by reference as if set forth herein, to the best of its knowledge JNR does not hold or represent an interest materially adverse to the Estates, any class of creditors, or

any other parties in interest, or its respective attorneys, in any matter relating to the Debtors or their Estates.

39. To the best of the Trustee's knowledge and except as otherwise disclosed in the Rapp Declaration, JNR is a "disinterested person" as that phrase is defined in section 101 of the Bankruptcy Code.

**NOTICE**

40. Notice of this Motion together with a copy of the Motion will be given to the following parties: (i) the Office of the United States Trustee (ii) the Debtors' counsel; (iii) the largest twenty (20) unsecured creditors with names and addresses appearing in Schedule F of the Schedules of Assets and Liabilities prepared by the Debtors; and (iv) all other parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002 of the Bankruptcy Rules, in accordance with Del. Bankr. L.R. 2002-1(b) (collectively, the "Notice Parties").

41. No previous Motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Trustee respectfully requests entry of an Order substantially in the form filed with this Motion authorizing the Trustee to employ, compensate and reimburse JNR.

Dated: September 29, 2025
      Wilmington, Delaware

COZEN O'CONNOR

By: /s/ *John T. Carroll, III*
John T. Carroll, III (DE No. 4060)
1201 North Market Street
Suite 1001
Wilmington, DE  19801
Telephone:  (302) 295-2028
Facsimile:  (302) 295-2013
jcarroll@cozen.com

*Counsel for George L. Miller, Chapter 7 Trustee*