EXHIBIT "A"

Collection Services Agreement

## COLLECTION SERVICES AGREEMENT

This Collection Services Agreement ("<u>Agreement</u>") is by and between George L. Miller, solely in his capacity as chapter 7 trustee (the "<u>Trustee</u>") for the estates of Akorn Intermediate Company LLC and Akorn Operating Company LLC (collectively hereinafter, the "<u>Debtors</u>")[1] and JNR Adjustment Company, Inc., a Minnesota corporation, having its principal place of business at 3300 Fernbrook Lane North, Suite 225, Plymouth, MN 55447, (hereinafter "<u>JNR</u>"). Trustee and JNR are hereinafter referred to together as (the "<u>Parties</u>" or individually as a "<u>Party</u>"). This Agreement shall become effective upon approval of the United States Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>").

### RECITALS

A.  On February 23, 2023, (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code in the Bankruptcy Court commencing the bankruptcy cases (the "<u>Bankruptcy Cases</u>"). On or shortly after the Petition Date, the Trustee was appointed to serve as the duly authorized chapter 7 Trustee for the estates of the Debtors and serves in this capacity in the Bankruptcy Cases.

B.  The Debtors have past due receivables ("<u>Customer Accounts</u>") from former customers of the Debtors ("<u>Account Debtors</u>") which the Trustee desires to be collected (collectively, the "<u>Receivables</u>").

C.  JNR provides collection services, including but not limited to communication with Account Debtors, analysis of accounts, and collection of debts ("<u>Collection Services</u>").

D.  The Trustee wishes to utilize JNR's Collection Services with respect to past due Receivables from Account Debtors on a case-by-case basis.

NOW, THEREFORE, in consideration of the recitals and the mutual promises contained herein, the Trustee and JNR, intending to be legally bound but subject to Bankruptcy Court approval, agree as follows:

### ARTICLE ONE
### SERVICES

1.1  The Trustee agrees to refer to JNR, and JNR agrees to accept from the Trustee, certain Customer Accounts for which JNR will provide Collection Services for said purpose of collecting amounts owing on said Receivables.

1.2  JNR shall instruct Account Debtors to deliver and make all monies payable to the Trustee. In the event JNR receives any monies from an Account Debtor, JNR shall notify the

---

[1]  The Debtors subject to this Collection Services Agreement along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO) and Akorn Operating Company LLC (6184), Case No. 23-10255.

Trustee, in writing, of the receipt of any payment from an Account Debtor and JNR will immediately forward such monies to the Trustee. JNR shall not deposit any check(s) received from an Account Debtor and JNR shall endorse any checks received from Account Debtors immediately over to the Trustee.

1.3   The Customer Accounts referred to JNR shall be on a case-by-case basis at the sole discretion of the Trustee. Nothing herein shall constitute an obligation by the Trustee to refer any or all Customer Accounts to JNR.

1.4   For purposes of establishing the proper Commission (as defined below), the Customer Accounts shall be classified as "Collection" or "Returns," as defined below.

    1.4(a) "Collection" are defined as, Customer Accounts which the Trustee has referred to JNR and not recalled subject to the terms of section 2.3(b).

    1.4(b) "Returns" are defined as Customer Accounts recalled by the Trustee for any purpose whereby JNR's Collection Services as to such Customer Accounts are terminated. Notwithstanding anything to the contrary herein, the Trustee may recall any Customer Accounts at any time, subject to the terms of section 2.3(b).

1.5   JNR shall be authorized to engage law firms to assist JNR with the collection of Receivables, provided; however, that prior to engaging any law firm to initiate litigation on the Trustee's behalf, JNR shall obtain the Trustee's approval authorizing litigation and the engagement of any law firm in writing. The fees and expenses of any law firm engaged by JNR shall be paid by JNR and not by the Trustee.

1.6   The Trustee retains complete authority to enter into negotiations or any agreement for the settlement of litigation of the Customer Accounts initiated on Trustee's behalf.

## ARTICLE TWO
## COMMISSION

2.1   The Trustee agrees to pay JNR a commission as determined in accordance with section 2.3 below ("Commission") for all amounts collected on the Trustee's behalf on referred Customer Accounts, including any judgment, award, or settlements (hereinafter referred to as "Qualifying Payments"). Commission shall be deemed earned on all Qualifying Payments upon receipt by the Trustee, regardless of whether initially remitted by the Account Debtors to the Trustee, JNR, or any law firm.

2.2   JNR will submit an invoice to the Trustee for Commissions earned on one or more Qualifying Payment. The Trustee agrees to pay uncontested invoices within thirty (30) days of receipt. Should the Trustee contest any amounts listed on any invoice, the Trustee may choose to pay the uncontested portion or reject the entire invoice until the discrepancy is resolved. Notwithstanding the foregoing or other provision of this Agreement, JNR agrees that payment of its Commission for any amounts collected shall be subject to a fee notice procedure through the Bankruptcy Court whereby the Trustee shall file and serve a

LEGAL\79821314\3 6010823/00574256

notice (the "<u>Fee Notice</u>") upon (i) the Office of the United States Trustee, (ii) the Debtors' counsel, (iii) the twenty (20) largest unsecured creditors of the Debtors; and (iv) all parties requesting such notice in these Bankruptcy Cases pursuant to Bankruptcy Rule 2002 of the Bankruptcy Rules, in accordance with Del. Bankr. L.R. 2002-1(b), (collectively, the "<u>Notice Parties</u>") indicating the demand amount, amount collected and amount of Commission to be paid to JNR and such Fee Notice shall be subject to a ten (10) day objection period, after which the Trustee may pay the amounts due to JNR. Additionally, the Trustee will assist JNR with the preparation and filing of final applications to approve JNR's Commissions, as may be authorized by 11 U.S.C. §§ 330 and 331.

2.3    The Commission amounts shall be based upon classification of the Customer Accounts, as follows:

    2.3(a)    <u>Collection</u>: JNR shall be entitled to a 35% commission of the amount of each Qualifying Payment.

    2.3(b)    <u>Returns</u>: JNR shall not be entitled to any Commission for Customer Accounts recalled by the Trustee at any time, unless payment is received on such Customer Accounts within thirty (30) days of its recall by the Trustee and such payment is a direct result of JNR's efforts. In such case, the Commission earned by JNR shall be the same as set forth in section 2.3(a).

**ARTICLE THREE**
**<u>ATTORNEY FEES, COSTS</u>**

3.1    All costs as defined in this section shall be paid by JNR. "<u>Costs</u>" shall mean fees and expenses of any law firm engaged by JNR, filing fees, copy charges, deposition transcript fees, court reporter fees, expert witness fees, consultant fees, fees of consulting or testifying accountants, fees of electronic discovery consultants, fees of Information Technology consultants, travel costs, phone charges, facsimile charges, legal research fees, any fees determined to be the costs of litigation as defined by any state or federal law, and all other fees, costs, and all costs reasonable and necessary for the effective prosecution and/or defense of the claim or litigation.

3.2    The Trustee shall not pay any Costs even if no monies are collected by JNR, subject only to section 3.3 below. If the amount of Costs exceeds the Commission, the Trustee shall not be responsible for any deficiency.

3.3    In the event Trustee recalls a Receivable after litigation has commenced, the Trustee shall reimburse JNR for any reasonable Costs paid. JNR shall submit to the Trustee within thirty (30) days of the Receivable recall an invoice for any such reimbursable Costs.

3

## ARTICLE FOUR
## CONFIDENTIALITY AND PRIVILEGE

4.1     The Trustee agrees to provide JNR all information and documentation in the Trustee's possession, custody or control which are reasonably necessary to establish and collect any Customer Accounts referred to JNR for collection.

4.2     JNR may provide an Account Debtor proof of such Account Debtor's debt, if so requested.

4.3     The Parties agree all information, whether written or oral, of any form or media, related to the Debtors, whether received from or on behalf of the Trustee, whether marked or not, are proprietary and confidential to the Trustee and Debtors ("Confidential Information"). JNR shall not use or disclose Confidential Information without the Trustee's prior written consent.

## ARTICLE FIVE
## TERM

5.1     The term of this Agreement shall be three (3) years from the effective date herein stated, unless terminated earlier pursuant to section 5.2 or 5.3.

5.2     **TERMINATION FOR CAUSE**: If either Party determines, in its sole discretion, that a material breach has occurred that would be cause for cancellation of this Agreement, the non-offending Party may cancel this Agreement immediately. The Party wishing to cancel shall notify the other Party of the alleged breach in writing and advise that they wish to cancel this Agreement. All of the Trustee's files in JNR's possession at the time of termination will be returned to the Trustee within fifteen (15) business days upon request by the Trustee.

5.3     **TERMINATION WITHOUT CAUSE**: Either Party may terminate this Agreement at any time by notifying the non-terminating Party in writing of its decision to terminate the Agreement. Such notice shall be given thirty (30) days prior to termination.

## ARTICLE SIX
## INDEMNIFICATION

6.1     JNR shall defend, indemnify, and hold harmless the Trustee and his professionals from and against any and all claims, losses, liabilities, counsel fees, costs and expenditures incurred by or asserted against the Trustee arising out of or related to the acts or omissions of JNR, its officers, employees, or contractors in its performance of services under this Agreement, unless caused by the gross negligence or the willful misconduct of the Trustee and/or his professionals.

## ARTICLE SEVEN
## INSURANCE

7.1    JNR shall carry or cause to be carried and maintained in force throughout the entire term of this Agreement the Required Coverage, as defined in section 7.2 below, with insurance companies reasonably acceptable to the Trustee. Within thirty (30) days after commencing the service hereunder, JNR shall deliver to the Trustee certificates of insurance on an Acord 25 or 25S form evidencing the existence of the following insurance coverage. All costs and deductible amounts will be for the sole account of Trustee.

7.2    "Required Coverage" shall mean Commercial or Comprehensive General Liability insurance on an occurrence form with a combined single limit of $1,000,000 each occurrence, and annual aggregates of $1,000,000 each, for bodily injury and property damage, including coverage for blanket contractual liability, broad form property damage, personal injury liability and independent contractor.

7.3    Under the policy described above, the Trustee will be named as additional insured with respect to any work performed under this Agreement.  JNR shall provide Trustee with quarterly updates demonstrating that the insurance coverage described in this Agreement remains in full effect.

## ARTICLE EIGHT
## LIMITATION OF LIABILITY

8.1    IN NO EVENT SHALL THE TRUSTEE BE LIABLE FOR ANY INCIDENTAL, INDIRECT, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING WITHOUT LIMITATION LOSS OF PROFITS, REVENUE, OPPORTUNITY, OR GOODWILL, WHETHER IN AN ACTION IN CONTRACT, TORT, OR ANY OTHER LEGAL THEORY, EVEN IF TRUSTEE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. TRUSTEE'S CUMULATIVE LIABILITY UNDER THIS AGREEMENT SHALL IN NO EVENT EXCEED THE COMMISSION AMOUNTS OWED TO JNR UNDER THE TERMS OF THIS AGREEMENT.

## ARTICLE NINE
## MISCELLANEOUS

9.1    The relationship between the Trustee and JNR shall be that of independent contractor and in no event shall persons employed by either Party be held to be or construed to be employees of the other.

9.2    This Agreement may only be amended or modified by a written instrument executed by both Parties and the approval of the Bankruptcy Court.

9.3    This Agreement describes the entire agreement between the Parties and is binding upon and will inure to the benefit of their successors and permitted assigns.  This Agreement supersedes all prior written and oral agreements and understandings between the Parties.

LEGAL\79821314\3 6010823/00574256

9.4   This Agreement may not be assigned or transferred by JNR without the written consent of the Trustee and the approval of the Bankruptcy Court.

9.5   The failure of either Party to enforce any provision hereof shall not constitute the permanent waiver of such provision.

9.6   This Agreement shall be governed by and shall be construed and enforced in accordance with the laws of the State of Delaware, irrespective of its choice of law rules. Any legal procedure brought to enforce this Agreement shall be brought in the Bankruptcy Court.

9.7   In the event JNR, in pursuing a Receivable, identifies that the Account Debtor from whom the collection should take place is or will likely be one of JNR's other clients, JNR shall immediately notify Trustee of the potential conflict of interest and cease all collection efforts. Should both Parties determine that no conflict exists, JNR may resume the Collection Services as to such Account Debtor.

9.8   JNR represents and warrants that its collection practices comply with the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act of 1991, as well as any other state and federal law designed to protect consumers in connection with debt collection and customer contacts.

In witness whereof, the Parties hereto have executed this Agreement by their duly authorized agents as of the effective date set forth below.

Dated: September _11_, 2025

JNR Adjustment Company, Inc.
By:  Omar Harris
Its: CEO

George L. Miller, solely in his capacity as
Chapter 7 Trustee for the estates of Akorn
Intermediate Company LLC and
Akorn Operating Company LLC

6