## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| AKORN HOLDING COMPANY LLC, *et al.*,[1] | Case No. 23-10253 (KBO) (Jointly Administered) |
| Debtors. | **Objection Deadline**: 10/23/2025 at 4:00 PM (E.T.) **Hearing Date**: 11/14/2025 at 10:00 AM (E.T.) |
| GEORGE MILLER, Chapter 7 Trustee of the bankruptcy estates of Akorn Holding Company LLC, *et al.*, Plaintiff, v. | |
| H. E. BUTT GROCERY COMPANY, | Adv. Proc. No. 25-50448 (KBO) |
| WAKEFERN FOOD CORP. *dba* WAKEFERN GENERAL MERCHANDISE, | Adv. Proc. No. 25-50899 (KBO) |
| JAMS WHOLESALE DISTRIBUTION SERVICES, LLC, | Adv. Proc. No. 25-50449 (KBO) |
| CITYMEDRX, LLC, | Adv. Proc. No. 25-50519 (KBO) |
| THRIFTY DRUG STORES, INC. *dba* THRIFTY WHITE WAREHOUSE and THRIFTY WHITE PHARMACY, | Adv. Proc. No. 25-50898 (KBO) |
| PEYTON'S SOUTHEASTERN, INC., | Adv. Proc. No. 25-50284 (KBO) |
| TRILOGY EYE MEDICAL GROUP, INC. *dba* RETINA INSTITUTE OF CALIFORNIA and ACUITY EYE GROUP, | Adv. Proc. No. 25-50901 (KBO) |

---

[1] The Debtors in the chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are Akorn Holding Company LLC (9190), Akorn Intermediate Company LLC (6123), and Akorn Operating Company LLC (6184). The Debtors' headquarters was located at 5605 CenterPoint Court, Gurnee, Illinois 60031.

1

| | |
|---|---|
| RETINA ASSOCIATES, SOUTHWEST, P.C. *dba* RETINA ASSOCIATES; and DR. CAMERON G. JAVID, | Adv. Proc. No. 25-51029 (KBO) |
| Defendants. | |

**OMNIBUS MOTION OF THE CHAPTER 7 TRUSTEE FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENTS AND COMPROMISES OF ADVERSARY PROCEEDINGS AGAINST H.E. BUTT GROCERY COMPANY; WAKEFERN FOOD CORP.; JAMS WHOLESALE DISTRIBUTION SERVICES, LLC; CITYMEDRX, LLC; THRIFTY DRUG STORES, INC.; PEYTON'S-SOUTHEASTERN, INC.; TRILOGY EYE MEDICAL GROUP, INC.; AND RETINA ASSOCIATES, SOUTHWEST, P.C.**

George L. Miller, the chapter 7 trustee (the "Trustee") in the above-captioned chapter 7 cases (the "Chapter 7 Cases") for the bankruptcy estates of Akorn Holding Company LLC, Akorn Intermediate Company LLC and Akorn Operating Company LLC (collectively, the "Debtors"), hereby moves (the "Motion") the Court pursuant to section 105 of title 11 of the United States Code, §§ 101-1532, as amended (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), approving the compromises of claims and settlements, which resolve eight pending adversary proceedings (the "A/R Adversary Proceedings"). The A/R Adversary Proceedings were all filed by the Trustee on behalf of the bankruptcy estates, seeking claims for payment of goods sold and delivered, breach of contract, account stated, and unjust enrichment (collectively, the "A/R Claims"). This Motion seeks approval of the respective settlement agreements and authorization for the Trustee to compromise the respective claims in the following A/R Adversary Proceedings:

(i) **HEB** – Adv. No. 25-50448 – approving the settlement of the A/R Claims with H. E. Butt Grocery Company ("HEB") and authorizing the Trustee to enter into the settlement agreement with HEB (the "HEB Settlement Agreement") attached hereto as **Exhibit B**;

(ii) **Wakefern** – Adv. No. 25-50899 –  approving the settlement of the A/R Claims with Wakefern Food Corp. ("Wakefern") and authorizing the Trustee to enter into the settlement agreement with Wakefern (the "Wakefern Settlement Agreement") attached hereto as **Exhibit C**,

(iii) **JAMS** – Adv. No. 25-50449 – approving the settlement of the A/R Claims with JAMS Wholesale Distribution Services, LLC ("JAMS") and authorizing the Trustee to enter into the settlement agreement with JAMS (the "JAMS Settlement Agreement") attached hereto as **Exhibit D**,

(iv) **CityMedRx** – Adv. No. 25-50519 – approving the settlement of the A/R Claims with CityMedRx, LLC ("CityMedRx") and authorizing the Trustee to enter into the settlement agreement with CityMedRx (the "CityMedRx Settlement Agreement") attached hereto as **Exhibit E**;

(v) **Thrifty Drug** – Adv. No. 25-50898 –  approving the settlement of the A/R Claims with Thrifty Drug Stores, Inc. ("Thrifty") and authorizing the Trustee to enter into the settlement agreement with Thrifty (the "Thrifty Settlement Agreement") attached hereto as **Exhibit F**;

(vi) **Peyton's** – Adv. No. 25-50284 – approving the settlement of the A/R Claims with Peyton's-Southeastern, Inc. ("Peyton's") and authorizing the Trustee to enter into the settlement agreement with Thrifty (the "Peyton's Settlement Agreement") attached hereto as **Exhibit G**;

(vii) **Trilogy Eye** – Adv. No. 25-50901 – approving the settlement of the A/R Claims with Trilogy Eye Medical Group, Inc. ("Trilogy Eye") and authorizing the Trustee to enter into the settlement agreement with Trilogy Eye (the "Trilogy Eye Settlement Agreement") attached hereto as **Exhibit H**; and

(viii) **Retina Associates** – Adv. No. 25-51029 – approving the compromise of the A/R Claims with Retina Associates, Southwest, P.C. ("Retina Associates") and Dr. Cameron G. Javid

("Dr. Javid") and authorizing the Trustee to accept payment of the full amount demanded as a compromise of the adversary proceeding against Retina Associates and Dr. Javid (the "Retina Associates Compromise").

The HEB Settlement Agreement, together with the Wakefern Settlement Agreement, the JAMS Settlement Agreement, the CityMedRx Settlement Agreement, the Thrifty Settlement Agreement, the Peyton's Settlement Agreement, the Trilogy Eye Settlement Agreement, and the Retina Associates Compromise are collectively referred to herein as the "Settlement Agreements." HEB, with Wakefern, JAMS, CityMedRx, Thrifty, Peyton's, Trilogy Eye, Retina Associates, and Dr. Javid are collectively referred to herein as the "Defendants."   In support of this Motion, the Trustee states respectfully as follows:

## JURISDICTION

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Trustee consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

**A.      General Background**

1.      On February 23, 2023 (the "Petition Date"), each of the Debtors, Akorn Holding Company LLC, Case No. 23-10253; Akorn Intermediate Company LLC, Case No. 23-10254 and Akorn Operating Company, LLC, Case No. 23-10255 filed voluntary petitions in the Bankruptcy Court for relief under Chapter 7 of Title 11 of the Bankruptcy Code, commencing the Chapter 7 Cases. The Chapter 7 Cases are being jointly administered.

2.      On or about the Petition Date, the Office of the United States Trustee appointed the Trustee as the trustee to the bankruptcy estates of each of the Debtors.

3.      Prior to the Petition Date, the Debtors' businesses included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products. The Debtors were an industry leader in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays.

4.      The Debtors operated at numerous locations in the United States and were headquartered in Gurnee, Illinois. The Debtors' operations in the United States have all ceased.

5.      Since the date of his appointment, the Trustee and his professionals have been investigating and marshalling the Debtors' assets, including unpaid amounts owed to the Debtors under prepetition contracts and transfers made during the prepetition preference period.

6.      Based upon that investigation, the Trustee filed the following A/R Adversary Proceedings in the Bankruptcy Court:

| *Defendant* | *Date Filed* | *Adversary No.* | *Amount Demanded* | *Title* |
|---|---|---|---|---|
| *H.E. Butt Grocery Company* | 3/25/2025 | 25-50448 | $56,615.46 | HEB Adversary Proceeding |
| *Wakefern Food Corp.* | 5/6/2025 | 25-50899 | $41,376.24 | Wakefern Adversary Proceeding |
| *JAMS Wholesale Distribution Services, LLC* | 3/25/2025 | 25-50449 | $32,106.46 | JAMS Adversary Proceeding |
| *CityMedRx, LLC* | 4/1/2025 | 25-50519 | $57,126.72 | CityMedRx Adversary Proceeding |
| *Thrifty Drug Stores, Inc.* | 5/6/2025 | 25-50898 | $29,862.24 | Thrifty Drug Adversary Proceeding |
| *Peyton's-Southeastern, Inc.* | 2/14/2025 | 25-50284 | $178,428.55 | Peyton's Adversary Proceeding |
| *Trilogy Eye Medical Group, Inc.* | 5/27/2025 | 25-50901 | $57,827.52 | Trilogy Eye Adversary Proceeding |
| *Retina Associates, Southwest, P.C. and Dr. Cameron G. Javid* | 7/9/2025 | 25-51029 | $34,560.00 | Retina Associates Adv. Proceeding |

7.     Pursuant to the complaints filed above in the A/R Adversary Proceedings, the Trustee, on behalf of the Debtors' estates, asserted the A/R Claims against the Defendants. Through the A/R Adversary Proceedings, the Trustee demanded payment as noted above on account of prepetition pharmaceutical products supplied by the Debtors to the respective Defendants for which the Debtors had not been paid as of the Petition Date.

**B.    Summaries of the Settlement Agreements**

**HEB**

8.    The terms of the settlement between the Trustee and HEB are embodied in the HEB Settlement Agreement attached hereto as **Exhibit B**.  Under the HEB Settlement Agreement, which was the result of good-faith discussions and arms' length negotiations among the parties, HEB has agreed to pay the amount demanded in the complaint in exchange for releases.

9.    The key terms of the HEB Settlement Agreement[2] are as follows:

a.  HEB will pay $46,062.75 to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;

b.  Within ten (10) business days of receiving payment, the Trustee will dismiss the HEB Adversary Proceeding with prejudice; and

c.  The Trustee and HEB will provide mutual releases of all claims and causes of action, known or unknown.

**Wakefern**

10.    The terms of the settlement between the Trustee and Wakefern are embodied in the Wakefern Settlement Agreement attached hereto as **Exhibit C**.  Under the Wakefern Settlement Agreement, which was the result of good-faith discussions and arms' length negotiations among the parties, Wakefern has agreed to pay the amount demanded in the complaint in exchange for releases.

11.    The key terms of the Wakefern Settlement Agreement[3] are as follows:

a.  Wakefern will pay $10,000 to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;

---

[2]    This summary of key terms is provided for convenience; in the event of any conflict between the Motion and HEB Settlement Agreement, the HEB Settlement Agreement will control.
[3]    This summary of key terms is provided for convenience; in the event of any conflict between the Motion and Wakefern Settlement Agreement, the Wakefern Settlement Agreement will control.

    b. Within ten (10) business days of receiving payment, the Trustee will dismiss the Wakefern Adversary Proceeding with prejudice; and

    c. The Trustee and Wakefern will provide mutual releases of all claims and causes of action, known or unknown.

**JAMS**

12.    The terms of the settlement between the Trustee and JAMS are embodied in the JAMS Settlement Agreement attached hereto as **Exhibit D**. Under the JAMS Settlement Agreement, which was the result of good-faith discussions and arms' length negotiations among the Parties, JAMS has agreed to pay the amount demanded in the complaint in exchange for releases.

13.    The key terms of the JAMS Settlement Agreement[4] are as follows:

    a. JAMS will pay $12,500.00 to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;

    b. Within ten (10) business days of receiving payment, the Trustee will dismiss the JAMS Adversary Proceeding with prejudice; and

    c. The Trustee and JAMS will provide mutual releases of all claims and causes of action, known or unknown.

**CityMedRx**

14.    The terms of the settlement between the Trustee and CityMedRx are embodied in the CityMedRx Settlement Agreement attached hereto as **Exhibit E**. Under the CityMedRx Settlement Agreement, which was the result of good-faith discussions and arms' length negotiations among the parties, CityMedRx has agreed to pay the amount demanded in the complaint in exchange for releases.

---

[4]    This summary of key terms is provided for convenience; in the event of any conflict between the Motion and JAMS Settlement Agreement, the JAMS Settlement Agreement will control.

56028324.2
389590-00014

15.     The key terms of the CityMedRx Settlement Agreement[5] are as follows:

a.  CityMedRx will pay $40,000 to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;

b.  Within ten (10) business days of receiving payment, the Trustee will dismiss the CityMedRx Adversary Proceeding with prejudice; and

c.  The Trustee and CityMedRx will provide mutual releases of all claims and causes of action, known or unknown.

**Thrifty**

16.     The terms of the settlement between the Trustee and Thrifty are embodied in the Thrifty Settlement Agreement attached hereto as **Exhibit F**.  Under the Thrifty Settlement Agreement, which was the result of good-faith discussions and arms' length negotiations among the parties, Thrifty has agreed to pay the amount demanded in the complaint in exchange for releases.

17.     The key terms of the Thrifty Settlement Agreement[6] are as follows:

a.  Thrifty will pay $6,000 to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;

b.  Within ten (10) business days of receiving payment, the Trustee will dismiss the Thrifty Adversary Proceeding with prejudice; and

c.  The Trustee and Thrifty will provide mutual releases of all claims and causes of action, known or unknown.

**Peyton's**

18.     The terms of the settlement between the Trustee and Peyton's are embodied in the Thrifty Settlement Agreement attached hereto as **Exhibit G**.  Under the Peyton's Settlement Agreement, which was the result of good-faith discussions and arms' length negotiations among

---

[5]  This summary of key terms is provided for convenience; in the event of any conflict between the Motion and CityMedRx Settlement Agreement, the CityMedRx Settlement Agreement will control.

[6]  This summary of key terms is provided for convenience; in the event of any conflict between the Motion and Thrifty Settlement Agreement, the Thrifty Settlement Agreement will control.

the parties, Peyton's has agreed to pay the amount demanded in the complaint in exchange for releases.

19.     The key terms of the Peyton's Settlement Agreement[7] are as follows:

d.  Thrifty will pay $30,000 to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;

e.  Within ten (10) business days of receiving payment, the Trustee will dismiss the Peyton's Adversary Proceeding with prejudice; and

f.  The Trustee and Peyton's will provide mutual releases of all claims and causes of action, known or unknown.

**Trilogy Eye**

20.     The terms of the settlement between the Trustee and Trilogy Eye are embodied in the Trilogy Eye Settlement Agreement attached hereto as **Exhibit H**.  Under the Trilogy Eye Settlement Agreement, which was the result of good-faith discussions and arms' length negotiations among the parties, Trilogy Eye has agreed to pay the amount demanded in the complaint in exchange for releases.

21.     The key terms of the Trilogy Eye Settlement Agreement[8] are as follows:

g.  Thrifty will pay $40,000 to the Trustee within fifteen (15) business days of the entry of an order approving this Motion;

h.  Within ten (10) business days of receiving payment, the Trustee will dismiss the Trilogy Eye Adversary Proceeding with prejudice; and

i.  The Trustee and Trilogy Eye will provide mutual releases of all claims and causes of action, known or unknown.

---

[7]     This summary of key terms is provided for convenience; in the event of any conflict between the Motion and Peyton's Settlement Agreement, the Peyton's Settlement Agreement will control.

[8]     This summary of key terms is provided for convenience; in the event of any conflict between the Motion and Trilogy Eye Settlement Agreement, the Trilogy Eye Settlement Agreement will control.

**Retina Associates**

22.     The compromise with Retina Associates is different than the other settlements outlined above because after Retina Associates received notice of the Trustee's complaint, Retina Associates promptly sent a check to the Trustee for the full amount demanded of $34,500.00. Retina Associates and the Trustee, thus, did not enter into a written agreement.[9] However, the Trustee seeks Court's approval of the Trustee's decision to accept the payment from Retina Associates as a full compromise of the claims against Retina Associates. Approval will ensure final resolution of the claims against Retina Associates and provide clarity that the settlement is binding and enforceable. Upon approval, the Trustee will promptly file a notice of dismissal of the Retina Associates Adversary Proceeding.

**C.      Trustee's Business Judgment**

23.     Each of the Settlement Agreements represent a substantial benefit to the bankruptcy estates while avoiding the costs and uncertainty associated with litigation.

24.     The Trustee on behalf of the bankruptcy estates will receive $219,122.75 collectively from these settlements. Some of the settlement amounts have already been paid and are being held in trust pending court approval. For each of the Settlement Agreements: (1) the Trustee investigated the A/R Claims; (2) sent demand letters to the Defendants regarding the A/R Claims of the bankruptcy estates; (3) after receiving no response to the demand letters, the Trustee filed the Settled A/R Adversary Proceedings; (4) thereafter, the Defendants contacted Trustee's counsel to provide documents and information supporting any partial payments or defenses and/or

---

[9]     Because there is no written compromise or settlement, and Retina Associates has agreed to pay the full amount demanded, the Trustee acknowledges that court approval of the Retina Associates settlement may not be strictly required. However, given the number of settlements presented in this Motion, the Trustee determined it appropriate to include this settlement within the request for approval.

to negotiate a resolution; and (5) the Trustee and each of the Defendants entered into the Settlement Agreements to resolve the A/R Claims.

25.     The Settlement Agreements are a good faith exercise of the Trustee's business judgment and should be approved.

## RELIEF REQUESTED

26.     Pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the Trustee seeks entry of an order substantially in the form attached hereto as **Exhibit A**: (i) approving the Settlement Agreements, and (ii) granting such other relief as may be just and proper.

## BASIS FOR RELIEF

27.     Section 105(a) of the Bankruptcy Code allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides:

> On motion of the trustee, after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

28.     When reviewing settlements under Bankruptcy Rule 9019, the court generally defers to the Trustee's business judgment.  "[U]nder normal circumstances the court would defer to the trustee's judgment so long as there is a legitimate business justification [for the settlement]." *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996).

29.     The Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." *Id.* at 393 (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); *see also In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy").  Courts in this District also have recognized that the approval of a

proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. *See, e.g.*, *In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

30.     Pursuant to Bankruptcy Rule 9019(a), the Court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and equitable.  *See In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr. D. Del. 2005) (noting that "the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable.").  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  *Coram Healthcare Corp.*, 315 B.R. at 330.  Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness."  *Travelers Cas. & Sur. Co. v. Future Claimants Representative*, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing *Matter of Jasmine, Ltd.*, 285 B.R. 119 (D.N.J. 2000)).

31.     In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.  The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."  *In re Martin*, 91 F.3d at 393.

32.     The Trustee respectfully submits that the Settlement Agreements satisfy the requirements of Bankruptcy Rule 9019.  The Settlement Agreements allow the Trustee to resolve costly litigations and potential liability while preserving its limited resources for, among other things, the payment of creditors, professionals and administrative expenses.  Although the Trustee relinquishes his rights to pursue the A/R Claims against the Defendants as part of the Settlement

Agreements, there is unlikely to be a materially better result from litigating the respective A/R Adversary Proceedings. Some of the Settlement Agreements require the respective Defendants to pay the full amount of the A/R Claims after defenses.

33.     The litigation process brings further uncertainties, including with respect to any defenses the potential defendants may raise. The Defendants to A/R Claims have asserted defenses including but not limited to that there were offsets for returns/refunds and deductions for the goods sold, and that partial payment was made and providing proof of that payment. Some of the Defendants purchased thousands of goods, and it there is some uncertainty with the analysis of certain deductions and chargebacks from 2-4 years ago.

34.     The only certainty if litigation is to continue in these matters is the accrual of more legal fees and further diminishing the limited resources of the Trustee.  Therefore, taking into consideration the time, cost, expense and complexity of litigation, the Trustee has determined that the Settlement Agreements are fair, reasonable and appropriate as the Settlement Agreements will help avoid costs and delay, and bring finality and certainty to the A/R Adversary Proceedings— while achieving a collective recovery of $219,122.75 for the A/R Claims against the Defendants. The approval of the Settlement Agreements is in the best interests of the estate and its creditors, as it will recover a substantial sum for the estates while providing for a quicker resolution of the proceeding compared with continued litigation.

35.     Based upon the foregoing, the compromises embodied in the Settlement Agreements do not "fall below the lowest point in the range of reasonableness." *Integrated Health*, 2001 WL 1820426, at *2 (*quoting Cosoff v. Rodman (In re WW.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983)).  The Settlement Agreements are the result of substantial good faith, arm's-length negotiations between the Trustee and the Defendants and constitutes a reasonable exercise of the

Trustee's business judgment.  Accordingly, this Court should exercise its discretion and approve the Settlement Agreements.

WHEREFORE, for the reasons set forth above, the Trustee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) approving the Settlement Agreements, and (ii) granting such other relief as may be just and proper.

Dated: October 9, 2025
Wilmington, Delaware

**SAUL EWING LLP**

*/s/ Evan T. Miller*
Evan T. Miller (DE Bar No. 5364)
Paige N. Topper (DE Bar No. 6470)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
Telephone:  (302) 421-6800
evan.miller@saul.com
paige.topper@saul.com

and

Carmen Contreras-Martinez
(admitted *pro hac vice*)
701 Brickell Avenue, 17th Floor
Miami, FL 33131
Telephone: (305) 428-4500
carmen.contreras-martinez@saul.com

and

Ryan F. Coy (admitted *pro hac vice*)
1888 Century Park East, Suite 1500
Los Angeles, CA 90067
Telephone: (310) 255-6168
ryan.coy@saul.com

*Special Counsel to the Chapter 7 Trustee*

56028324.2
389590-00014

15