# EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) Kevin Bain, James E. Bauersmith, Steven Lynn, Lynn Consulting, LLC, Steven Jeffords, Elizabeth Jeffords, March A. Rechan, Jeffrey Wasserstein, Iris Wasserstein, and Robert B. Webster (collectively, "Defendants"). Hereinafter, the Trustee and Defendants are each referred to as a "Party" or collectively as the "Parties").

**WHEREAS,** on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

**WHEREAS,** on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

**WHEREAS,** before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

**WHEREAS,** the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

**WHEREAS,** prior to the Chapter 7 cases, one or more of the Defendants are alleged to have served as a member of the board of directors of one or more of the debtors including Akorn Holding Company LLC.

**WHEREAS,** certain of the Defendants filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to those Defendants for fees for Defendants' service on the Board, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

**WHEREAS,** on February 21, 2025, an adversary proceeding styled *George L. Miller v. Bain et al.,* was filed in the Bankruptcy Court thereby commencing the adversary case number 25-50367 (KBO) (the "Adversary Proceeding").

**WHEREAS,** in the Adversary Proceeding, the Trustee, on behalf of the Debtors'

1

estates, alleges that one or more of the Defendants received Restricted Stock Units ("RSU") that were redeemed for value and otherwise may have received avoidable and recoverable transfers, and the Trustee asserted certain claims against Defendants, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

**WHEREAS,** the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $325,145.92 from Defendants.

**WHEREAS,** Defendants contest the merits of Plaintiff's Claims and have asserted defenses to the Claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

**WHEREAS,** following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

**WHEREAS,** as reflected by the execution of this Agreement by the Trustee and Defendants, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties stipulate and agree that:

1.      **Recitals**. All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2.      **Settlement**. Defendants shall direct to be paid a total sum of one hundred and five thousand dollars ($105,000.00) (the "Settlement Payment") to the Trustee by company check, bank check, or cashier's check made payable to "George L. Miller, Trustee of Akorn Holding Company LLC, *et al.*" and sent to the attention of George L. Miller, Chapter 7 Trustee, c/o Miller Coffey Tate LLP, 1628 John F. Kennedy Blvd., Suite 950, Philadelphia, PA 19103, or at their election by wire transfer pursuant to instructions to be provided by the Trustee to the Defendants. The Trustee shall provide to Defendants a W-9 or other relevant information necessary to make the Settlement Payment promptly after the execution of this Settlement Agreement. The Settlement Payment shall be delivered and paid to the Trustee according to the terms hereof no later than fifteen (15) days after entry of the Approval Order by the Bankruptcy Court.

3.      **Court Approval.** This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order"). Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

4.      **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither

2

the Settlement Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

5.      **Dismissal of Adversary Proceeding.** Within five (5) business days after the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee will dismiss the Adversary Proceeding with prejudice.

6.      **Trustee's Release.** Effective immediately upon the later of (i) the entry of the Approval Order, and (ii) the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendants and their officers, directors, employees, representatives, agents and professionals, and all of their respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendants in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases, or the Adversary Proceeding (the "General Release").   The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement.  This provision does not release Defendants from their obligations under this Settlement Agreement.

7.      **Defendants' Release.** Effective immediately upon the dismissal with prejudice of the Adversary Proceeding, except as further provided in paragraph 13 below, Defendants shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendants, now have, had, or can, shall or may have at any time against the Trustee, the Debtors, the Debtors' estates, or the Chapter 7 Estates.  This provision does not release the Trustee from his obligations under this Settlement Agreement.

8.      **Mutual Releases.** The mutual releases given hereunder are intended by the Parties to be full, final, and general releases.  This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown.  In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and

3

that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

9.    **Controlling Members Agreement.** The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024. Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing, claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order. The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendants and the Trustee, and to provide the General Release to Defendants as provided hereunder. The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

10.    **Confidentiality.** The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential. The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies. If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

11.    **Fees and Costs.** Except as provided in this Settlement Agreement, the Parties shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

12.    **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

13.    **Reservation of Rights.** Notwithstanding any other provision of this Settlement Agreement, (a) Defendants reserve each of their rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing

4

herein is intended to, nor will, terminate affect, diminish, and/or modify any of Defendants' rights, claims and/coverages under any insurance policy or other similar instrument including but not limited to any directors' and officers' insurance policy. To the extent that any indemnification claim is asserted under Defendants' Proofs of Claim or under Defendants' other rights to indemnification, those claims shall be held in abeyance until a claim, if any, is asserted against a Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim. The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim. To the extent a Defendant's Proof of Claim asserts a liquidated damages claim for board fees, such claim is allowed.

14.     **Authority.** The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

15.     **Execution.** This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.     **Entire Agreement.** This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof. Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

17.     **Modification.** Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

18.     **Conversion.** The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

19.     **Jurisdiction.** The Parties acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

20.     **Choice of Law.** This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

5

21.     **Construction.** Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

**WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

AGREED TO BY:

**GEORGE L. MILLER**


By: _____
George L. Miller, Chapter 7 Trustee

**KEVIN BAIN**

By: _____
Kevin Bain

**JAMES E. BAUERSMITH**

By: _____
James E. Bauersmith

**STEVEN LYNN**

By: _____
Steven Lynn

**LYNN CONSULTING, LLC**

By: _____
Lynn Consulting, LLC

**STEVEN JEFFORD**

By: _____
Steven Jeffords

**ELIZABETH JEFFORDS**

By: _____
Elizabeth Jeffords

**MARK A. RECHAN**


By: _____
Mark A. Rechan


**JEFFREY WASSERSTEIN**


By: _____
Jeffrey Wasserstein


**IRIS WASSERSTEIN**


By: _____
Iris Wasserstein


**ROBERT B. WEBSTER**


By: _____
Robert B. Webster

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) Kevin Bain, James E. Bauersmith, Steven Lynn, Lynn Consulting, LLC, Steven Jeffords, Elizabeth Jeffords, March A. Rechan, Jeffrey Wasserstein, Iris Wasserstein, and Robert B. Webster (collectively, "Defendants"). Hereinafter, the Trustee and Defendants are each referred to as a "Party" or collectively as the "Parties").

WHEREAS, on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

WHEREAS, on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

WHEREAS, before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

WHEREAS, the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

WHEREAS, prior to the Chapter 7 cases, one or more of the Defendants are alleged to have served as a member of the board of directors of one or more of the debtors including Akorn Holding Company LLC.

WHEREAS, certain of the Defendants filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to those Defendants for fees for Defendants' service on the Board, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

WHEREAS, on February 21, 2025, an adversary proceeding styled *George L. Miller v. Bain et al.*, was filed in the Bankruptcy Court thereby commencing the adversary case number 25-50367 (KBO) (the "Adversary Proceeding").

WHEREAS, in the Adversary Proceeding, the Trustee, on behalf of the Debtors'

1

estates, alleges that one or more of the Defendants received Restricted Stock Units ("RSU") that were redeemed for value and otherwise may have received avoidable and recoverable transfers, and the Trustee asserted certain claims against Defendants, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

**WHEREAS,** the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $325,145.92 from Defendants.

**WHEREAS,** Defendants contest the merits of Plaintiff's Claims and have asserted defenses to the Claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

**WHEREAS,** following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

**WHEREAS,** as reflected by the execution of this Agreement by the Trustee and Defendants, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties stipulate and agree that:

1. **Recitals.** All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2. **Settlement.** Defendants shall direct to be paid a total sum of one hundred and five thousand dollars ($105,000.00) (the "Settlement Payment") to the Trustee by company check, bank check, or cashier's check made payable to "George L. Miller, Trustee of Akorn Holding Company LLC, *et al.*" and sent to the attention of George L. Miller, Chapter 7 Trustee, c/o Miller Coffey Tate LLP, 1628 John F. Kennedy Blvd., Suite 950, Philadelphia, PA 19103, or at their election by wire transfer pursuant to instructions to be provided by the Trustee to the Defendants.  The Trustee shall provide to Defendants a W-9 or other relevant information necessary to make the Settlement Payment promptly after the execution of this Settlement Agreement.  The Settlement Payment shall be delivered and paid to the Trustee according to the terms hereof no later than fifteen (15) days after entry of the Approval Order by the Bankruptcy Court.

3. **Court Approval.** This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order").  Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

4. **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither

the Settlement Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

5.    **Dismissal of Adversary Proceeding.** Within five (5) business days after the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee will dismiss the Adversary Proceeding with prejudice.

6.    **Trustee's Release.** Effective immediately upon the later of (i) the entry of the Approval Order, and (ii) the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendants and their officers, directors, employees, representatives, agents and professionals, and all of their respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendants in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases, or the Adversary Proceeding (the "General Release"). The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement. This provision does not release Defendants from their obligations under this Settlement Agreement.

7.    **Defendants' Release.** Effective immediately upon the dismissal with prejudice of the Adversary Proceeding, except as further provided in paragraph 13 below, Defendants shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendants, now have, had, or can, shall or may have at any time against the Trustee, the Debtors, the Debtors' estates, or the Chapter 7 Estates. This provision does not release the Trustee from his obligations under this Settlement Agreement.

8.    **Mutual Releases.** The mutual releases given hereunder are intended by the Parties to be full, final, and general releases. This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown. In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and

3

that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

9. **Controlling Members Agreement.** The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024. Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing, claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order. The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendants and the Trustee, and to provide the General Release to Defendants as provided hereunder. The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

10. **Confidentiality.** The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential. The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies. If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

11. **Fees and Costs.** Except as provided in this Settlement Agreement, the Parties shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

12. **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

13. **Reservation of Rights.** Notwithstanding any other provision of this Settlement Agreement, (a) Defendants reserve each of their rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing

4

herein is intended to, nor will, terminate affect, diminish, and/or modify any of Defendants' rights, claims and/coverages under any insurance policy or other similar instrument including but not limited to any directors' and officers' insurance policy. To the extent that any indemnification claim is asserted under Defendants' Proofs of Claim or under Defendants' other rights to indemnification, those claims shall be held in abeyance until a claim, if any, is asserted against a Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim. The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim. To the extent a Defendant's Proof of Claim asserts a liquidated damages claim for board fees, such claim is allowed.

14.    **Authority.** The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

15.    **Execution.** This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.    **Entire Agreement.** This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof. Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

17.    **Modification.** Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

18.    **Conversion.** The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

19.    **Jurisdiction.** The Parties acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

20.    **Choice of Law.** This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

21.     **Construction.** Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

**WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

Case 23-10253-KBO   Doc 1591-3   Filed 05/13/26   Page 17 of 82

AGREED TO BY:

**GEORGE L. MILLER**

By: _____
   George L. Miller, Chapter 7 Trustee

7

**KEVIN BAIN**

By: _____
Kevin Bain

**JAMES E. BAUERSMITH**

By: _____
James E. Bauersmith

**STEVEN LYNN**

By: _____
Steven Lynn

**LYNN CONSULTING, LLC**

By: _____
Lynn Consulting, LLC

**STEVEN JEFFORD**

By: _____
Steven Jeffords

**ELIZABETH JEFFORDS**

By: _____
Elizabeth Jeffords

**MARK A. RECHAN**

By: _____

Mark A. Rechan


**JEFFREY WASSERSTEIN**

By: _____

Jeffrey Wasserstein


**IRIS WASSERSTEIN**

By: _____

Iris Wasserstein


**ROBERT B. WEBSTER**

By: _____

Robert B. Webster

9

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) Kevin Bain, James E. Bauersmith, Steven Lynn, Lynn Consulting, LLC, Steven Jeffords, Elizabeth Jeffords, March A. Rechan, Jeffrey Wasserstein, Iris Wasserstein, and Robert B. Webster (collectively, "Defendants"). Hereinafter, the Trustee and Defendants are each referred to as a "Party" or collectively as the "Parties").

**WHEREAS,** on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

**WHEREAS,** on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

**WHEREAS,** before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

**WHEREAS**, the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

**WHEREAS,** prior to the Chapter 7 cases, one or more of the Defendants are alleged to have served as a member of the board of directors of one or more of the debtors including Akorn Holding Company LLC.

**WHEREAS**, certain of the Defendants filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to those Defendants for fees for Defendants' service on the Board, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

**WHEREAS,** on February 21, 2025, an adversary proceeding styled *George L. Miller v. Bain et al.,* was filed in the Bankruptcy Court thereby commencing the adversary case number 25-50367 (KBO) (the "Adversary Proceeding").

**WHEREAS,** in the Adversary Proceeding, the Trustee, on behalf of the Debtors'

1

estates, alleges that one or more of the Defendants received Restricted Stock Units ("RSU") that were redeemed for value and otherwise may have received avoidable and recoverable transfers, and the Trustee asserted certain claims against Defendants, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

**WHEREAS,** the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $325,145.92 from Defendants.

**WHEREAS,** Defendants contest the merits of Plaintiff's Claims and have asserted defenses to the Claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

**WHEREAS,** following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

**WHEREAS,** as reflected by the execution of this Agreement by the Trustee and Defendants, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties stipulate and agree that:

1.      **Recitals**. All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2.      **Settlement**. Defendants shall direct to be paid a total sum of one hundred and five thousand dollars ($105,000.00) (the "Settlement Payment") to the Trustee by company check, bank check, or cashier's check made payable to "George L. Miller, Trustee of Akorn Holding Company LLC, *et al*." and sent to the attention of George L. Miller, Chapter 7 Trustee, c/o Miller Coffey Tate LLP, 1628 John F. Kennedy Blvd., Suite 950, Philadelphia, PA 19103, or at their election by wire transfer pursuant to instructions to be provided by the Trustee to the Defendants.  The Trustee shall provide to Defendants a W-9 or other relevant information necessary to make the Settlement Payment promptly after the execution of this Settlement Agreement.  The Settlement Payment shall be delivered and paid to the Trustee according to the terms hereof no later than fifteen (15) days after entry of the Approval Order by the Bankruptcy Court.

3.      **Court Approval.**  This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order").  Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

4.      **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither

the Settlement Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

5.     **Dismissal of Adversary Proceeding.** Within five (5) business days after the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee will dismiss the Adversary Proceeding with prejudice.

6.     **Trustee's Release.** Effective immediately upon the later of (i) the entry of the Approval Order, and (ii) the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendants and their officers, directors, employees, representatives, agents and professionals, and all of their respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendants in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases, or the Adversary Proceeding (the "General Release").  The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement.  This provision does not release Defendants from their obligations under this Settlement Agreement.

7.     **Defendants' Release.** Effective immediately upon the dismissal with prejudice of the Adversary Proceeding, except as further provided in paragraph 13 below, Defendants shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendants, now have, had, or can, shall or may have at any time against the Trustee, the Debtors, the Debtors' estates, or the Chapter 7 Estates.  This· provision does not release the Trustee from his obligations under this Settlement Agreement.

8.     **Mutual Releases.** The mutual releases given hereunder are intended by the Parties to be full, final, and general releases.  This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown.  In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and

3

that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

9.     **Controlling Members Agreement.** The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024. Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing, claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order. The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendants and the Trustee, and to provide the General Release to Defendants as provided hereunder. The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

10.     **Confidentiality.** The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential. The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies. If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

11.     **Fees and Costs.** Except as provided in this Settlement Agreement, the Parties shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

12.     **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

13.     **Reservation of Rights.** Notwithstanding any other provision of this Settlement Agreement, (a) Defendants reserve each of their rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing

4

herein is intended to, nor will, terminate affect, diminish, and/or modify any of Defendants' rights, claims and/coverages under any insurance policy or other similar instrument including but not limited to any directors' and officers' insurance policy. To the extent that any indemnification claim is asserted under Defendants' Proofs of Claim or under Defendants' other rights to indemnification, those claims shall be held in abeyance until a claim, if any, is asserted against a Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim. The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim. To the extent a Defendant's Proof of Claim asserts a liquidated damages claim for board fees, such claim is allowed.

14. **Authority.** The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

15. **Execution.** This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16. **Entire Agreement.** This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof. Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

17. **Modification.** Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

18. **Conversion.** The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

19. **Jurisdiction.** The Parties acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

20. **Choice of Law.** This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

5

21.    **Construction.**  Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

**WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

6

AGREED TO BY:

**GEORGE L. MILLER**


By: _____
   George L. Miller, Chapter 7 Trustee

**KEVIN BAIN**


By: _____
Kevin Bain


**JAMES E. BAUERSMITH**


By: _____
James E. Bauersmith


**STEVEN LYNN**

By: _____
Steven Lynn


**LYNN CONSULTING, LLC**

By: _____
Lynn Consulting, LLC


**STEVEN JEFFORD**


By: _____
Steven Jeffords


**ELIZABETH JEFFORDS**


By: _____
Elizabeth Jeffords

8

**MARK A. RECHAN**

By: _____
Mark A. Rechan

**JEFFREY WASSERSTEIN**

By: _____
Jeffrey Wasserstein

**IRIS WASSERSTEIN**

By: _____
Iris Wasserstein

**ROBERT B. WEBSTER**

By: _____
Robert B. Webster

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) Kevin Bain, James E. Bauersmith, Steven Lynn, Lynn Consulting, LLC, Steven Jeffords, Elizabeth Jeffords, March A. Rechan, Jeffrey Wasserstein, Iris Wasserstein, and Robert B. Webster (collectively, "Defendants"). Hereinafter, the Trustee and Defendants are each referred to as a "Party" or collectively as the "Parties").

**WHEREAS,** on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

**WHEREAS,** on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

**WHEREAS,** before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

**WHEREAS**, the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

**WHEREAS,** prior to the Chapter 7 cases, one or more of the Defendants are alleged to have served as a member of the board of directors of one or more of the debtors including Akorn Holding Company LLC.

**WHEREAS**, certain of the Defendants filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to those Defendants for fees for Defendants' service on the Board, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

**WHEREAS,** on February 21, 2025, an adversary proceeding styled *George L. Miller v. Bain et al.,* was filed in the Bankruptcy Court thereby commencing the adversary case number 25-50367 (KBO) (the "Adversary Proceeding").

**WHEREAS,** in the Adversary Proceeding, the Trustee, on behalf of the Debtors'

1

estates, alleges that one or more of the Defendants received Restricted Stock Units ("RSU") that were redeemed for value and otherwise may have received avoidable and recoverable transfers, and the Trustee asserted certain claims against Defendants, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

**WHEREAS,** the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $325,145.92 from Defendants.

**WHEREAS,** Defendants contest the merits of Plaintiff's Claims and have asserted defenses to the Claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

**WHEREAS,** following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

**WHEREAS,** as reflected by the execution of this Agreement by the Trustee and Defendants, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which the Parties acknowledge,  the Parties stipulate and agree that:

1.      **Recitals**. All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2.      **Settlement**. Defendants shall direct to be paid a total sum of one hundred and five thousand dollars ($105,000.00) (the "Settlement Payment") to the Trustee by company check, bank check, or cashier's check made payable to "George L. Miller, Trustee of Akorn Holding Company LLC, *et al*." and sent to the attention of George L. Miller, Chapter 7 Trustee, c/o Miller Coffey Tate LLP, 1628 John F. Kennedy Blvd., Suite 950, Philadelphia, PA 19103, or at their election by wire transfer pursuant to instructions to be provided by the Trustee to the Defendants.  The Trustee shall provide to Defendants a W-9 or other relevant information necessary to make the Settlement Payment promptly after the execution of this Settlement Agreement.  The Settlement Payment shall be delivered and paid to the Trustee according to the terms hereof no later than fifteen (15) days after entry of the Approval Order by the Bankruptcy Court.

3.      **Court Approval.** This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order").  Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

4.      **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither

the Settlement Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

5.      **Dismissal of Adversary Proceeding.** Within five (5) business days after the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee will dismiss the Adversary Proceeding with prejudice.

6.      **Trustee's Release.** Effective immediately upon the later of (i) the entry of the Approval Order, and (ii) the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendants and their officers, directors, employees, representatives, agents and professionals, and all of their respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendants in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases, or the Adversary Proceeding (the "General Release"). The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement. This provision does not release Defendants from their obligations under this Settlement Agreement.

7.      **Defendants' Release.** Effective immediately upon the dismissal with prejudice of the Adversary Proceeding, except as further provided in paragraph 13 below, Defendants shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendants, now have, had, or can, shall or may have at any time against the Trustee, the Debtors, the Debtors' estates, or the Chapter 7 Estates. This· provision does not release the Trustee from his obligations under this Settlement Agreement.

8.      **Mutual Releases.** The mutual releases given hereunder are intended by the Parties to be full, final, and general releases. This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown. In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and

3

that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

9.    **Controlling Members Agreement.** The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024. Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing, claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order. The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendants and the Trustee, and to provide the General Release to Defendants as provided hereunder. The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

10.    **Confidentiality.** The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential. The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies. If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

11.    **Fees and Costs.** Except as provided in this Settlement Agreement, the Parties shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

12.    **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

13.    **Reservation of Rights.** Notwithstanding any other provision of this Settlement Agreement, (a) Defendants reserve each of their rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing

4

herein is intended to, nor will, terminate affect, diminish, and/or modify any of Defendants' rights, claims and/coverages under any insurance policy or other similar instrument including but not limited to any directors' and officers' insurance policy.  To the extent that any indemnification claim is asserted under Defendants' Proofs of Claim or under Defendants' other rights to indemnification, those claims shall be held in abeyance until a claim, if any, is asserted against a Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim.  The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim. To the extent a Defendant's Proof of Claim asserts a liquidated damages claim for board fees, such claim is allowed.

14.    **Authority.**  The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

15.    **Execution.**  This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.    **Entire Agreement.**  This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof.  Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

17.    **Modification.**  Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

18.    **Conversion.**  The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

19.    **Jurisdiction.**  The Parties acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

20.    **Choice of Law.**  This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

21.     **Construction.**  Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

**WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

AGREED TO BY:

**GEORGE L. MILLER**


By: _____
    George L. Miller, Chapter 7 Trustee

7

**KEVIN BAIN**


By: _____
Kevin Bain


**JAMES E. BAUERSMITH**


By: _____
James E. Bauersmith


**STEVEN LYNN**


By: _____
Steven Lynn


**LYNN CONSULTING, LLC**


By: _____
Lynn Consulting, LLC


**STEVEN JEFFORD**


By: _____
Steven Jeffords


**ELIZABETH JEFFORDS**


By: _____
Elizabeth Jeffords

**MARK A. RECHAN**

By: _Mark A. Rechan_ (signature)
Mark A. Rechan

**JEFFREY WASSERSTEIN**

By: _____
Jeffrey Wasserstein

**IRIS WASSERSTEIN**

By: _____
Iris Wasserstein

**ROBERT B. WEBSTER**

By: _____
Robert B. Webster

9

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) Kevin Bain, James E. Bauersmith, Steven Lynn, Lynn Consulting, LLC, Steven Jeffords, Elizabeth Jeffords, March A. Rechan, Jeffrey Wasserstein, Iris Wasserstein, and Robert B. Webster (collectively, "Defendants"). Hereinafter, the Trustee and Defendants are each referred to as a "Party" or collectively as the "Parties").

**WHEREAS,** on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

**WHEREAS,** on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

**WHEREAS,** before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

**WHEREAS,** the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

**WHEREAS,** prior to the Chapter 7 cases, one or more of the Defendants are alleged to have served as a member of the board of directors of one or more of the debtors including Akorn Holding Company LLC.

**WHEREAS,** certain of the Defendants filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to those Defendants for fees for Defendants' service on the Board, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

**WHEREAS,** on February 21, 2025, an adversary proceeding styled *George L. Miller v. Bain et al.,* was filed in the Bankruptcy Court thereby commencing the adversary case number 25-50367 (KBO) (the "Adversary Proceeding").

**WHEREAS,** in the Adversary Proceeding, the Trustee, on behalf of the Debtors'

1

estates, alleges that one or more of the Defendants received Restricted Stock Units ("RSU") that were redeemed for value and otherwise may have received avoidable and recoverable transfers, and the Trustee asserted certain claims against Defendants, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

WHEREAS, the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $325,145.92 from Defendants.

WHEREAS, Defendants contest the merits of Plaintiff's Claims and have asserted defenses to the Claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

WHEREAS, following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

WHEREAS, as reflected by the execution of this Agreement by the Trustee and Defendants, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

NOW THEREFORE, for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties stipulate and agree that:

1.      **Recitals**. All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2.      **Settlement**. Defendants shall direct to be paid a total sum of one hundred and five thousand dollars ($105,000.00) (the "Settlement Payment") to the Trustee by company check, bank check, or cashier's check made payable to "George L. Miller, Trustee of Akorn Holding Company LLC, *et al.*" and sent to the attention of George L. Miller, Chapter 7 Trustee, c/o Miller Coffey Tate LLP, 1628 John F. Kennedy Blvd., Suite 950, Philadelphia, PA 19103, or at their election by wire transfer pursuant to instructions to be provided by the Trustee to the Defendants. The Trustee shall provide to Defendants a W-9 or other relevant information necessary to make the Settlement Payment promptly after the execution of this Settlement Agreement. The Settlement Payment shall be delivered and paid to the Trustee according to the terms hereof no later than fifteen (15) days after entry of the Approval Order by the Bankruptcy Court.

3.      **Court Approval.** This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order"). Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

4.      **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither

2

the Settlement Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

5.      **Dismissal of Adversary Proceeding.** Within five (5) business days after the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee will dismiss the Adversary Proceeding with prejudice.

6.      **Trustee's Release.** Effective immediately upon the later of (i) the entry of the Approval Order, and (ii) the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendants and their officers, directors, employees, representatives, agents and professionals, and all of their respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendants in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases, or the Adversary Proceeding (the "General Release"). The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement. This provision does not release Defendants from their obligations under this Settlement Agreement.

7.      **Defendants' Release.** Effective immediately upon the dismissal with prejudice of the Adversary Proceeding, except as further provided in paragraph 13 below, Defendants shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendants, now have, had, or can, shall or may have at any time against the Trustee, the Debtors, the Debtors' estates, or the Chapter 7 Estates. This provision does not release the Trustee from his obligations under this Settlement Agreement.

8.      **Mutual Releases.** The mutual releases given hereunder are intended by the Parties to be full, final, and general releases. This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown. In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and

3

that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

9.     **Controlling Members Agreement.** The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024. Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing, claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order. The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendants and the Trustee, and to provide the General Release to Defendants as provided hereunder. The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

10.     **Confidentiality.** The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential. The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies. If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

11.     **Fees and Costs.** Except as provided in this Settlement Agreement, the Parties shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

12.     **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

13.     **Reservation of Rights.** Notwithstanding any other provision of this Settlement Agreement, (a) Defendants reserve each of their rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing

4

herein is intended to, nor will, terminate affect, diminish, and/or modify any of Defendants' rights, claims and/coverages under any insurance policy or other similar instrument including but not limited to any directors' and officers' insurance policy. To the extent that any indemnification claim is asserted under Defendants' Proofs of Claim or under Defendants' other rights to indemnification, those claims shall be held in abeyance until a claim, if any, is asserted against a Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim. The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim. To the extent a Defendant's Proof of Claim asserts a liquidated damages claim for board fees, such claim is allowed.

14.    **Authority.** The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

15.    **Execution.** This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.    **Entire Agreement.** This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof. Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

17.    **Modification.** Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

18.    **Conversion.** The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

19.    **Jurisdiction.** The Parties acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

20.    **Choice of Law.** This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

5

21.     **Construction.** Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

**WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

AGREED TO BY:

**GEORGE L. MILLER**

By: _____
George L. Miller, Chapter 7 Trustee

7

**KEVIN BAIN**

By: _____
Kevin Bain

**JAMES E. BAUERSMITH**

By: _____
James E. Bauersmith

**STEVEN LYNN**

By: _____
Steven Lynn

**LYNN CONSULTING, LLC**

By: _____
Lynn Consulting, LLC

**STEVEN JEFFORD**

By: _____
Steven Jeffords

**ELIZABETH JEFFORDS**

By: _____
Elizabeth Jeffords

8

**MARK A. RECHAN**

By: _____
Mark A. Rechan

**JEFFREY WASSERSTEIN**

By: _____
Jeffrey Wasserstein

**IRIS WASSERSTEIN**

By: _____
Iris Wasserstein

**ROBERT B. WEBSTER**

By: _____
Robert B. Webster

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) Kevin Bain, James E. Bauersmith, Steven Lynn, Lynn Consulting, LLC, Steven Jeffords, Elizabeth Jeffords, March A. Rechan, Jeffrey Wasserstein, Iris Wasserstein, and Robert B. Webster (collectively, "Defendants"). Hereinafter, the Trustee and Defendants are each referred to as a "Party" or collectively as the "Parties").

**WHEREAS,** on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

**WHEREAS,** on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

**WHEREAS,** before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

**WHEREAS**, the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

**WHEREAS,** prior to the Chapter 7 cases, one or more of the Defendants are alleged to have served as a member of the board of directors of one or more of the debtors including Akorn Holding Company LLC.

**WHEREAS**, certain of the Defendants filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to those Defendants for fees for Defendants' service on the Board, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

**WHEREAS,** on February 21, 2025, an adversary proceeding styled *George L. Miller v. Bain et al.,* was filed in the Bankruptcy Court thereby commencing the adversary case number 25-50367 (KBO) (the "Adversary Proceeding").

**WHEREAS,** in the Adversary Proceeding, the Trustee, on behalf of the Debtors'

1

estates, alleges that one or more of the Defendants received Restricted Stock Units ("RSU") that were redeemed for value and otherwise may have received avoidable and recoverable transfers, and the Trustee asserted certain claims against Defendants, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

**WHEREAS,** the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $325,145.92 from Defendants.

**WHEREAS,** Defendants contest the merits of Plaintiff's Claims and have asserted defenses to the Claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

**WHEREAS,** following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

**WHEREAS,** as reflected by the execution of this Agreement by the Trustee and Defendants, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties stipulate and agree that:

1.     **Recitals**. All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2.     **Settlement**. Defendants shall direct to be paid a total sum of one hundred and five thousand dollars ($105,000.00) (the "Settlement Payment") to the Trustee by company check, bank check, or cashier's check made payable to "George L. Miller, Trustee of Akorn Holding Company LLC, *et al*." and sent to the attention of George L. Miller, Chapter 7 Trustee, c/o Miller Coffey Tate LLP, 1628 John F. Kennedy Blvd., Suite 950, Philadelphia, PA 19103, or at their election by wire transfer pursuant to instructions to be provided by the Trustee to the Defendants.  The Trustee shall provide to Defendants a W-9 or other relevant information necessary to make the Settlement Payment promptly after the execution of this Settlement Agreement.  The Settlement Payment shall be delivered and paid to the Trustee according to the terms hereof no later than fifteen (15) days after entry of the Approval Order by the Bankruptcy Court.

3.     **Court Approval.** This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order").  Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

4.     **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither

the Settlement Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

5.    **Dismissal of Adversary Proceeding.** Within five (5) business days after the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee will dismiss the Adversary Proceeding with prejudice.

6.    **Trustee's Release.** Effective immediately upon the later of (i) the entry of the Approval Order, and (ii) the Trustee's receipt of the Settlement Payment in good and sufficient funds, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendants and their officers, directors, employees, representatives, agents and professionals, and all of their respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendants in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases, or the Adversary Proceeding (the "General Release"). The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement. This provision does not release Defendants from their obligations under this Settlement Agreement.

7.    **Defendants' Release.** Effective immediately upon the dismissal with prejudice of the Adversary Proceeding, except as further provided in paragraph 13 below, Defendants shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendants, now have, had, or can, shall or may have at any time against the Trustee, the Debtors, the Debtors' estates, or the Chapter 7 Estates. This· provision does not release the Trustee from his obligations under this Settlement Agreement.

8.    **Mutual Releases.** The mutual releases given hereunder are intended by the Parties to be full, final, and general releases. This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown. In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and

3

that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

9. **Controlling Members Agreement.** The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024. Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing, claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order. The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendants and the Trustee, and to provide the General Release to Defendants as provided hereunder. The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

10. **Confidentiality.** The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential. The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies. If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

11. **Fees and Costs.** Except as provided in this Settlement Agreement, the Parties shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

12. **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

13. **Reservation of Rights.** Notwithstanding any other provision of this Settlement Agreement, (a) Defendants reserve each of their rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing

4

herein is intended to, nor will, terminate affect, diminish, and/or modify any of Defendants' rights, claims and/coverages under any insurance policy or other similar instrument including but not limited to any directors' and officers' insurance policy.  To the extent that any indemnification claim is asserted under Defendants' Proofs of Claim or under Defendants' other rights to indemnification, those claims shall be held in abeyance until a claim, if any, is asserted against a Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim.  The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim. To the extent a Defendant's Proof of Claim asserts a liquidated damages claim for board fees, such claim is allowed.

14.    **Authority.**  The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

15.    **Execution.**  This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

16.    **Entire Agreement.**  This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof.  Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

17.    **Modification.**  Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

18.    **Conversion.**  The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

19.    **Jurisdiction.**  The Parties acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

20.    **Choice of Law.**  This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

21.    **Construction.**  Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

**WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

6

Docusign Envelope ID: 7DE5E044-9EF4-8568-83B9-C0585FC3C423

AGREED TO BY:

**GEORGE L. MILLER**


By: _____

   George L. Miller, Chapter 7 Trustee

**KEVIN BAIN**

By: _____

Kevin Bain

**JAMES E. BAUERSMITH**

By: _____

James E. Bauersmith

**STEVEN LYNN**

By: _____

Steven Lynn

**LYNN CONSULTING, LLC**

By: _____

Lynn Consulting, LLC

**STEVEN JEFFORD**

By: _____

Steven Jeffords

**ELIZABETH JEFFORDS**

By: _____

Elizabeth Jeffords

8

**MARK A. RECHAN**


By: _____
Mark A. Rechan


**JEFFREY WASSERSTEIN**


By: _____
Jeffrey Wasserstein


**IRIS WASSERSTEIN**


By: _____
Iris Wasserstein


**ROBERT B. WEBSTER**


By: _____
Robert B. Webster

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) Beth Zelnick Kaufman ("Defendant"). Hereinafter, the Trustee and Defendant are each referred to as a "Party" or collectively as the "Parties").

WHEREAS, on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

WHEREAS, on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

WHEREAS, before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

WHEREAS, the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

WHEREAS, prior to the Chapter 7 cases, Defendant was employed by one or more of the Debtors.

WHEREAS, Defendant provided certain services to Akorn Operating Company LLC continuing after the Petition Date.

WHEREAS, Defendant filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to Defendant under certain employment contracts between the Debtors and Defendant, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

WHEREAS, pursuant to Defendant's employment with the Debtors, Defendant received certain payments from the Debtors (the "Transfers") during the two-year period prior to the Petition Date.

WHEREAS, on February 21, 2025, an adversary proceeding styled *George L. Miller v. Beth Zelnick Kaufman,* was filed in the Bankruptcy Court thereby commencing the adversary

1

case number 25-50380 (KBO) (the "Adversary Proceeding").

**WHEREAS,** in the Adversary Proceeding, the Trustee, on behalf of the Debtors' estates, asserted certain claims against Defendant, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

**WHEREAS,** the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $503,993.25 from Defendant.

**WHEREAS,** Defendant contests the merits of Plaintiff's claims and has asserted defenses to the claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

**WHEREAS,** following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

**WHEREAS,** as reflected by the execution of this Agreement by the Trustee and Defendant, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties stipulate and agree that:

1.      **Recitals**. All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2.      **Settlement**. The Parties agree that the Proofs of Claim will be allowed on the following terms: (i) Defendant shall have a single allowed general unsecured claim in the amount of $350,000.00 (the "Allowed GUC Amount") in the Akorn Operating Company, LLC bankruptcy case, (ii) Defendant shall waive its allowed priority and unsecured claims, owed under (a) the Settlement Agreement approved under the *Final Order Approving the WARN Settlement Under Fed. R. Civ. P. 23, Fed. Bankr. R. 7023, and Bankr. R. 9019* [Docket No. 1030] (the "WARN Settlement"), or (b) any other claim as to which Defendant may be able to assert under the WARN Settlement, and (iii) to the extent that an indemnification claim is asserted under Defendant's Proofs of Claim or under Defendant's other rights to indemnification, that claim shall be held in abeyance until a claim, if any, is asserted against Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim. The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim.

3.      **Allowed GUC Amount Payment**. The Trustee shall pay to Defendant the current funded distribution percentage of the GUC Amount (the "GUC Payment") by company check, bank check, or cashier's check made payable to Defendant, or by wire transfer, pursuant to instructions provided by Defendant to the Trustee promptly after execution of this Settlement Agreement, no later than fifteen (15 days) after entry of the Approval Order (as defined below)

2

by the Bankruptcy Court. For the avoidance of doubt, the Allowed GUC Amount shall constitute an allowed general unsecured claim against the Debtors that will receive such additional payment as may be made to general unsecured creditors subject to additional payments, if any, upon the Trustee's additional funding of recoveries for general unsecured claims in the Chapter 7 Cases.

4. **Court Approval.** This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order"). Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

5. **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither compromise the Proofs of Claim nor the GUC Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

6. **Dismissal of Adversary Proceeding.** Within ten (10) business days after entry of the Approval Order, the Trustee will dismiss the Adversary Proceeding with prejudice, subject to the terms of this Settlement Agreement.

7. **Trustee's Release.** Effective immediately upon the entry of the Approval Order, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendant and its officers, directors, employees, representatives, agents and professionals, and all of its respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendant in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases, the Adversary Proceeding, or under that certain consulting agreement entered into between Defendant and Debtor Akorn Operating Company LLC dated February 22, 2023 (the "General Release"). The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement. This provision does not release Defendant from its obligations under this Settlement Agreement.

8. **Defendant's Release.** Effective immediately upon the entry of the Approval Order, except as further provided in paragraph 14 below, Defendant shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any

3

RLF1 35622131v.4

nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendant, now has, had, or can, shall or may have at any time against the Trustee, the Debtors, or the Debtors' estates. With respect to the Claims specified herein, Defendant's releases include, but are not necessarily limited to the compromise, release and waiver of Defendant's Proofs of Claim filed against the Debtors' estates as provided in paragraph 2 above and any right(s) under Section 502(h) of the Bankruptcy Code to file a proof of claim (or to modify an existing Proof of Claim) seeking an allowed unsecured claim equal to the consideration provided by Defendant under this Settlement Agreement. This· provision does not release the Trustee from his obligations under this Settlement Agreement.

9.    **Mutual Releases.** The mutual releases given hereunder are intended by the Parties to be full, final, and general releases. This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown. In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

10.    **Controlling Members Agreement.** The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024. Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order. The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendant and the Trustee, and to provide the General Release to Defendant as provided hereunder. The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

11.    **Confidentiality.** The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential. The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies. If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise

4

about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

12.     **Fees and Costs.**  Except as provided in this Settlement Agreement, the Parties shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

13.     **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

14.     **Reservation of Rights.**  Notwithstanding any other provision of this Settlement Agreement, (a) Defendant reserves its rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing herein is intended to, nor will terminate affect, diminish, and/or modify any of Defendant's rights, claims and/coverages under any insurance policy or other similar instrument, including but not limited to any directors' and officers' insurance policy.  The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim.

15.     **Authority.**  The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

16.     **Execution.**  This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17.     **Entire Agreement.** This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof.  Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

18.     **Modification.**  Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

19.     **Conversion.**  The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

20.     **Jurisdiction.**  The Parties acknowledge and agree that the Bankruptcy Court

RLF1 35622131v.4

shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

21.    **Choice of Law.**  This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

22.    **Construction.**  Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

**WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

6

RLF1 35622131v.4

AGREED TO BY:

**GEORGE L. MILLER, CHAPTER 7 TRUSTEE**

By: _____
George L. Miller, Chapter 7 Trustee

**BETH ZELNICK KAUFMAN**

By: Signed by: *Beth Zelnick Kaufman* 48361E864D0344E...
Beth Zelnick Kaufman

7

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) John Sweeney ("Defendant").  Hereinafter, the Trustee and Defendant are each referred to as a "Party" or collectively as the "Parties").

WHEREAS, on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

WHEREAS, on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

WHEREAS, before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

WHEREAS, the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

WHEREAS, prior to the Chapter 7 cases, Defendant was employed by one or more of the Debtors.

WHEREAS, Defendant filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to Defendant under certain employment contracts between the Debtors and Defendant, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

WHEREAS, pursuant to Defendant's employment with the Debtors, Defendant received certain payments from the Debtors (the "Transfers") during the two-year period prior to the Petition Date.

WHEREAS, on February 21, 2025, an adversary proceeding styled *George L. Miller v. John Sweeney,* was filed in the Bankruptcy Court thereby commencing the adversary case number 25-50383 (KBO) (the "Adversary Proceeding").

WHEREAS,  in the Adversary Proceeding, the Trustee, on behalf of the Debtors'

1

estates, asserted certain claims against Defendant, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

**WHEREAS,** the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $489,000.00 from Defendant.

**WHEREAS,** Defendant contests the merits of Plaintiff's claims and has asserted defenses to the claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

**WHEREAS,** following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

**WHEREAS,** as reflected by the execution of this Agreement by the Trustee and Defendant, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties stipulate and agree that:

1.      **Recitals**. All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2.      **Settlement**. The Parties agree that the Proofs of Claim will be allowed on the following terms: (i) Defendant shall have a single allowed general unsecured claim in the amount of $275,000.00 (the "Allowed GUC Amount") in the Akorn Operating Company, LLC bankruptcy case, (ii) Defendant shall waive its allowed priority and unsecured claims, owed under (a) the Settlement Agreement approved under the *Final Order Approving the WARN Settlement Under Fed. R. Civ. P. 23, Fed. Bankr. R. 7023, and Bankr. R. 9019* [Docket No. 1030] (the "WARN Settlement"), or (b) any other claim as to which Defendant may be able to assert under the WARN Settlement, and (iii) to the extent that an indemnification claim is asserted under Defendant's Proofs of Claim or under Defendant's other rights to indemnification, that claim shall be held in abeyance until a claim, if any, is asserted against Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim. The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim.

3.      **Allowed GUC Amount Payment**. The Trustee shall pay to Defendant the current funded distribution percentage of the GUC Amount (the "GUC Payment") by company check, bank check, or cashier's check made payable to Defendant, or by wire transfer, pursuant to instructions provided by Defendant to the Trustee promptly after execution of this Settlement Agreement, no later than fifteen (15 days) after entry of the Approval Order (as defined below) by the Bankruptcy Court. For the avoidance of doubt, the Allowed GUC Amount shall constitute an allowed general unsecured claim against the Debtors that will receive such additional payment as may be made to general unsecured creditors subject to additional

2

RLF1 35642337v.2

payments, if any, upon the Trustee's additional funding of recoveries for general unsecured claims in the Chapter 7 Cases.

4.      **Court Approval.** This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order").  Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

5.      **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither compromise the Proofs of Claim nor the GUC Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

6.      **Dismissal of Adversary Proceeding.** Within ten (10) business days after entry of the Approval Order, the Trustee will dismiss the Adversary Proceeding with prejudice, subject to the terms of this Settlement Agreement.

7.      **Trustee's Release.** Effective immediately upon the entry of the Approval Order, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendant and its officers, directors, employees, representatives, agents and professionals, and all of its respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendant in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases or the Adversary Proceeding (the "General Release").  The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement.  This provision does not release Defendant from its obligations under this Settlement Agreement.

8.      **Defendant's Release.** Effective immediately upon the entry of the Approval Order, except as further provided in paragraph 14 below, Defendant shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendant, now has, had, or can, shall or may have at any time against the Trustee, the Debtors, or the Debtors' estates.  With respect to the Claims specified herein, Defendant's releases include, but are not necessarily limited to the compromise, release and waiver of Defendant's

RLF1 35642337v.2

Proofs of Claim filed against the Debtors' estates as provided in paragraph 2 above and any right(s) under Section 502(h) of the Bankruptcy Code to file a proof of claim (or to modify an existing Proof of Claim) seeking an allowed unsecured claim equal to the consideration provided by Defendant under this Settlement Agreement.  This· provision does not release the Trustee from his obligations under this Settlement Agreement.

9.      **Mutual Releases.** The mutual releases given hereunder are intended by the Parties to be full, final, and general releases.  This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown.  In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

10.      **Controlling Members Agreement.** The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024. Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order.  The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendant and the Trustee, and to provide the General Release to Defendant as provided hereunder.  The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

11.      **Confidentiality.** The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential.  The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies.  If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

12.      **Fees and Costs.** Except as provided in this Settlement Agreement, the Parties

shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

13. **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

14. **Reservation of Rights.** Notwithstanding any other provision of this Settlement Agreement, (a) Defendant reserves its rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing herein is intended to, nor will terminate affect, diminish, and/or modify any of Defendant's rights, claims and/coverages under any insurance policy or other similar instrument, including but not limited to any directors' and officers' insurance policy. The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim.

15. **Authority.** The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

16. **Execution.** This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17. **Entire Agreement.** This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof. Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

18. **Modification.** Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

19. **Conversion.** The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

20. **Jurisdiction.** The Parties acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

RLF1 35642337v.2

21.     **Choice of Law.**  This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

22.     **Construction.**  Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

**WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

AGREED TO BY:

**GEORGE L. MILLER, CHAPTER 7 TRUSTEE**

By: _____
George L. Miller, Chapter 7 Trustee

**JOHN SWEENEY**

By: _*John Sweeney*_
John Sweeney

6

RLF1 35642337v.2

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) William Ostrowski ("Defendant"). Hereinafter, the Trustee and Defendant are each referred to as a "Party" or collectively as the "Parties").

WHEREAS, on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

WHEREAS, on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

WHEREAS, before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

WHEREAS, the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

WHEREAS, prior to the Chapter 7 cases, Defendant was employed by one or more of the Debtors.

WHEREAS, Defendant filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to Defendant under certain employment contracts between the Debtors and Defendant, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

WHEREAS, pursuant to Defendant's employment with the Debtors, Defendant received certain payments from the Debtors (the "Transfers") during the two-year period prior to the Petition Date.

WHEREAS, on February 21, 2025, an adversary proceeding styled *George L. Miller v. William Ostrowski,* was filed in the Bankruptcy Court thereby commencing the adversary case number 25-50384 (KBO) (the "Adversary Proceeding").

WHEREAS, in the Adversary Proceeding, the Trustee, on behalf of the Debtors'

1

estates, asserted certain claims against Defendant, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

**WHEREAS,** the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $125,000.00 from Defendant.

**WHEREAS,** Defendant contests the merits of Plaintiff's claims and has asserted defenses to the claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

**WHEREAS,** following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

**WHEREAS,** as reflected by the execution of this Agreement by the Trustee and Defendant, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties stipulate and agree that:

1. **Recitals**. All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2. **Settlement**. The Parties agree that the Proofs of Claim will be allowed on the following terms: (i) Defendant shall have a single allowed general unsecured claim in the amount of $131,250.00 (the "Allowed GUC Amount") in the Akorn Operating Company, LLC bankruptcy case, (ii) Defendant shall waive its allowed priority and unsecured claims, owed under (a) the Settlement Agreement approved under the *Final Order Approving the WARN Settlement Under Fed. R. Civ. P. 23, Fed. Bankr. R. 7023, and Bankr. R. 9019* [Docket No. 1030] (the "WARN Settlement"), or (b) any other claim as to which Defendant may be able to assert under the WARN Settlement, and (iii) to the extent that an indemnification claim is asserted under Defendant's Proofs of Claim or under Defendant's other rights to indemnification, that claim shall be held in abeyance until a claim, if any, is asserted against Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim. The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim.

3. **Allowed GUC Amount Payment**. The Trustee shall pay to Defendant the current funded distribution percentage of the GUC Amount (the "GUC Payment") by company check, bank check, or cashier's check made payable to Defendant, or by wire transfer, pursuant to instructions provided by Defendant to the Trustee promptly after execution of this Settlement Agreement, no later than fifteen (15 days) after entry of the Approval Order (as defined below) by the Bankruptcy Court. For the avoidance of doubt, the Allowed GUC Amount shall constitute an allowed general unsecured claim against the Debtors that will receive such additional payment as may be made to general unsecured creditors subject to additional

2

payments, if any, upon the Trustee's additional funding of recoveries for general unsecured claims in the Chapter 7 Cases.

4. **Court Approval.** This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order"). Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

5. **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither compromise the Proofs of Claim nor the GUC Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

6. **Dismissal of Adversary Proceeding.** Within ten (10) business days after entry of the Approval Order, the Trustee will dismiss the Adversary Proceeding with prejudice, subject to the terms of this Settlement Agreement.

7. **Trustee's Release.** Effective immediately upon the entry of the Approval Order, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendant and its officers, directors, employees, representatives, agents and professionals, and all of its respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendant in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases, or the Adversary Proceeding (the "General Release"). The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement. This provision does not release Defendant from its obligations under this Settlement Agreement.

8. **Defendant's Release.** Effective immediately upon the entry of the Approval Order, except as further provided in paragraph 14 below, Defendant shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendant, now has, had, or can, shall or may have at any time against the Trustee, the Debtors, or the Debtors' estates. With respect to the Claims specified herein, Defendant's releases include, but are not necessarily limited to the compromise, release and waiver of Defendant's

3

Proofs of Claim filed against the Debtors' estates as provided in paragraph 2 above and any right(s) under Section 502(h) of the Bankruptcy Code to file a proof of claim (or to modify an existing Proof of Claim) seeking an allowed unsecured claim equal to the consideration provided by Defendant under this Settlement Agreement. This· provision does not release the Trustee from his obligations under this Settlement Agreement.

9. **Mutual Releases.** The mutual releases given hereunder are intended by the Parties to be full, final, and general releases. This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown. In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

10. **Controlling Members Agreement.** The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024. Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order. The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendant and the Trustee, and to provide the General Release to Defendant as provided hereunder. The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

11. **Confidentiality.** The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential. The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies. If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

12. **Fees and Costs.** Except as provided in this Settlement Agreement, the Parties

4

shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

13.    **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

14.    **Reservation of Rights.** Notwithstanding any other provision of this Settlement Agreement, (a) Defendant reserves its rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing herein is intended to, nor will terminate affect, diminish, and/or modify any of Defendant's rights, claims and/coverages under any insurance policy or other similar instrument, including but not limited to any directors' and officers' insurance policy. The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim.

15.    **Authority.** The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

16.    **Execution.** This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17.    **Entire Agreement.** This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof. Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

18.    **Modification.** Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

19.    **Conversion.** The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

20.    **Jurisdiction.** The Parties acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

21.    **Choice of Law.**  This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

22.    **Construction.**  Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

    **WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

AGREED TO BY:

**GEORGE L. MILLER, CHAPTER 7 TRUSTEE**

By: _____
George L. Miller, Chapter 7 Trustee

**WILLIAM OSTROWSKI**

By: _____
William Ostrowski

6

By: _____
George L. Miller, Chapter 7 Trustee


**ERISLANDY DORADO-BOLADERES**

By: _____
Erislandy Dorado Boladeres    May 3, 2026

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This settlement agreement and mutual release (the "Settlement Agreement" or "Agreement"), dated as of May 1, 2026, is made and entered into by and between: (i) George L. Miller, not individually, but solely in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Chapter 7 Estates") of Akorn Holding Company LLC, Akorn Intermediate Company LLC, and Akorn Operating Company LLC (collectively, the "Debtors") and (ii) Christopher C. Young ("Defendant"). Hereinafter, the Trustee and Defendant are each referred to as a "Party" or collectively as the "Parties").

WHEREAS, on February 23, 2023, (the "Petition Date") each of the Debtors filed a voluntary petition for relief under chapter 7, title 11 of the United States Code, 11 U.S.C. §§ 101-1532 as amended, (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and are jointly administered under the bankruptcy case number 23-10253 (KBO) (the "Chapter 7 Cases").

WHEREAS, on or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the Trustee to the bankruptcy estate of each of the Debtors.

WHEREAS, before the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.

WHEREAS, the Debtors were industry leaders in branded and generic products in alternate dosage forms such as ophthalmic, injectables, oral liquids, topicals, inhalants, and nasal sprays. The Debtors no longer operate their business, and Plaintiff is in the process of liquidating the Debtors' assets.

WHEREAS, prior to the Chapter 7 cases, Defendant was employed by one or more of the Debtors.

WHEREAS, Defendant filed proofs of claim against Akorn Holding Company, Akorn Intermediate Company, LLC, and Akorn Operating Company, LLC asserting (i) liquidated amounts owed by the Debtors to Defendant under certain employment contracts between the Debtors and Defendant, and (ii) unliquidated, contingent rights of indemnification (collectively, the "Proofs of Claim").

WHEREAS, pursuant to Defendant's employment with the Debtors, Defendant received certain payments from the Debtors (the "Transfers") during the two-year period prior to the Petition Date.

WHEREAS, on February 21, 2025, an adversary proceeding styled *George L. Miller v. Christopher C. Young,* was filed in the Bankruptcy Court thereby commencing the adversary case number 25-50381 (KBO) (the "Adversary Proceeding").

WHEREAS, in the Adversary Proceeding, the Trustee, on behalf of the Debtors'

1

estates, asserted certain claims against Defendant, including for the avoidance of alleged fraudulent transfers under sections 544 and 548 of the Bankruptcy Code, sections 160/5 and 160/6 of chapter 740 of the Illinois Uniform Fraudulent Transfer Act, and sections 1304 and 1305 of chapter 70 of the Delaware Uniform Fraudulent Transfer Act, and the recovery of fraudulent transfers under section 550 of the Bankruptcy Code (the "Claims").

**WHEREAS,** the Adversary Proceeding demands the avoidance and recovery of an aggregate amount of not less than $125,000.00 from Defendant.

**WHEREAS,** Defendant contests the merits of Plaintiff's claims and has asserted defenses to the claims and/or Plaintiff's ability to prevail or recover under or on account of any such claims.

**WHEREAS,** following good faith, arm's length negotiations, the Parties desire to resolve the Claims on the terms set forth herein, to avoid the cost and uncertainty of litigation.

**WHEREAS,** as reflected by the execution of this Agreement by the Trustee and Defendant, the Parties wish to settle the issues existing between them without delay on the terms and conditions hereof; and

**NOW THEREFORE,** for good and valuable consideration, the sufficiency of which the Parties acknowledge, the Parties stipulate and agree that:

1.     **Recitals**. All the foregoing recitals are incorporated into this Settlement Agreement as if fully set forth herein.

2.     **Settlement**. The Parties agree that the Proofs of Claim will be allowed on the following terms: (i) Defendant shall have a single allowed general unsecured claim in the amount of $112,500.00 (the "Allowed GUC Amount") in the Akorn Operating Company, LLC bankruptcy case, (ii) Defendant shall waive its allowed priority and unsecured claims, owed under (a) the Settlement Agreement approved under the *Final Order Approving the WARN Settlement Under Fed. R. Civ. P. 23, Fed. Bankr. R. 7023, and Bankr. R. 9019* [Docket No. 1030] (the "WARN Settlement"), or (b) any other claim as to which Defendant may be able to assert under the WARN Settlement, and (iii) to the extent that an indemnification claim is asserted under Defendant's Proofs of Claim or under Defendant's other rights to indemnification, that claim shall be held in abeyance until a claim, if any, is asserted against Defendant, at which time the Parties shall discuss the procedures with which the Parties will proceed with the treatment of such indemnification claim.  The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim.

3.     **Allowed GUC Amount Payment**. The Trustee shall pay to Defendant the current funded distribution percentage of the GUC Amount (the "GUC Payment") by company check, bank check, or cashier's check made payable to Defendant, or by wire transfer, pursuant to instructions provided by Defendant to the Trustee promptly after execution of this Settlement Agreement, no later than fifteen (15 days) after entry of the Approval Order (as defined below) by the Bankruptcy Court.  For the avoidance of doubt, the Allowed GUC Amount shall constitute an allowed general unsecured claim against the Debtors that will receive such additional payment as may be made to general unsecured creditors subject to additional

RLF1 35642333v.2

payments, if any, upon the Trustee's additional funding of recoveries for general unsecured claims in the Chapter 7 Cases.

4.      **Court Approval.** This Settlement Agreement, and the obligations of the Parties to perform hereunder, shall become effective only upon entry of a final order of the Bankruptcy Court approving the Settlement Agreement (the "Approval Order"). Upon execution of the Settlement Agreement, the Trustee shall, through his counsel, promptly file an appropriate motion seeking entry of the Approval Order.

5.      **No Admission of Liability.** The Parties each acknowledge that the settlement of the Claims constitutes a resolution of the Parties' disputes regarding the Claims, and that neither compromise the Proofs of Claim nor the GUC Payment (as defined above) to be made hereunder nor entry into or anything contained in this Settlement Agreement is a concession or admission of any liability or wrongdoing by either Party.

6.      **Dismissal of Adversary Proceeding.** Within ten (10) business days after entry of the Approval Order, the Trustee will dismiss the Adversary Proceeding with prejudice, subject to the terms of this Settlement Agreement.

7.      **Trustee's Release.** Effective immediately upon the entry of the Approval Order, the Trustee on behalf of, himself, the Debtors, the Debtors' estates, and the Chapter 7 Estates, shall forever discharge Defendant and its officers, directors, employees, representatives, agents and professionals, and all of its respective successors and assigns, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which the Trustee, the Debtors, or the Debtors' estates, now have, had, or can, shall or may have at any time against Defendant in connection with the Debtors, the Debtors' Estates, the Chapter 7 Estates, the Chapter 7 Cases, the Adversary Proceeding, or under that certain consulting agreement entered into between Defendant and Debtor Akorn Operating Company LLC dated February 22, 2023 (the "General Release"). The Trustee expressly waives and relinquishes any and all rights or benefits the Trustee has or may have under California Civil Code § 1542 and under any other federal or state statute, rule, law, or common law principle of similar effect as to such releases to the full extent that such right or benefit may be lawfully waived related to the releases given in this Agreement. This provision does not release Defendant from its obligations under this Settlement Agreement.

8.      **Defendant's Release.** Effective immediately upon the entry of the Approval Order, except as further provided in paragraph 14 below, Defendant shall forever discharge (i) the Trustee and all of his representatives, agents and professionals, and their respective successors and assigns and (ii) the Debtors and the Debtors' estates, of and from any and all manner of actions, causes of action, suits, debts, accounts, covenants, contracts, controversies, agreements, variances, damages, judgments, claims, demands, duties and obligations of any nature whatsoever, whether present or future, whether known or unknown, whether suspected or unsuspected, whether liquidated or unliquidated, whether matured or unmatured, which Defendant, now has, had, or can, shall or may have at any time against the Trustee, the Debtors,

3

or the Debtors' estates.  With respect to the Claims specified herein, Defendant's releases include, but are not necessarily limited to the compromise, release and waiver of Defendant's Proofs of Claim filed against the Debtors' estates as provided in paragraph 2 above and any right(s) under Section 502(h) of the Bankruptcy Code to file a proof of claim (or to modify an existing Proof of Claim) seeking an allowed unsecured claim equal to the consideration provided by Defendant under this Settlement Agreement.  This· provision does not release the Trustee from his obligations under this Settlement Agreement.

9.      **Mutual Releases.**  The mutual releases given hereunder are intended by the Parties to be full, final, and general releases.  This Settlement Agreement covers both claims that either of the Parties know to exist as of the date of this Settlement Agreement, and any claims or potential claims existing as of the date of this Settlement Agreement whether known or unknown.  In connection with the waiver and relinquishment of rights or benefits under applicable law, including California Civil Code § 1542, the Parties acknowledge that they fully understand that facts may later be discovered in addition to or different from those facts which are now known or believed to be true with respect to the subject matter of this Agreement, and that it is his, her, or its intention hereby to fully, finally and forever release all claims, obligations, and matters released herein, known or unknown, suspected or unsuspected, which now exist, may exist in the future, and/or have ever existed in the past as to the matters released in this Agreement.

10.      **Controlling Members Agreement.**  The Trustee entered a settlement agreement [Case No. 23-10253, Docket No. 998-1] (the "Controlling Members Agreement") with the Controlling Members (as defined therein) dated November 25, 2024.  Notwithstanding, the Trustee represents and warrants that he has full authority to enter into, perform under, and to provide the General Release required hereunder, and that any derivative standing claim or objection provided to the Controlling Members (as defined in the Controlling Members Agreement) is and shall be extinguished under the General Release and upon entry of the Approval Order.  The Trustee represents and warrants that he has secured any necessary consent or approval under the Controlling Members Agreement to enter into this Settlement Agreement, resolve the matters between Defendant and the Trustee, and to provide the General Release to Defendant as provided hereunder.  The Trustee will make no assignment of any claim, cause of action, right of action, or any other right released pursuant to the terms of this Settlement Agreement.

11.      **Confidentiality.**  The Parties agree that the negotiations leading to this Settlement Agreement have been and remain confidential.  The Parties shall not disclose any statement made during negotiations except as may be necessary to obtain the Bankruptcy Court's approval of this Settlement Agreement, to prepare financial statements or tax returns, or to comply with applicable law or by valid order of a court of competent jurisdiction, including as may be required to comply with a Party's obligation to report transactions to appropriate governmental, taxing, or registering agencies.  If any Party or its representatives, directors, officers, shareholders, attorneys, insurers, employees, agents, subsidiaries, parents and related entities, predecessors, successors, or assigns receives an inquiry from the press or otherwise about this Settlement Agreement, such person shall respond that *"the matter has been resolved"*, provided that neither Party is limited in its use or disclosure of information that is or may become part of the public record.

4

12.     **Fees and Costs.**  Except as provided in this Settlement Agreement, the Parties shall each be responsible for their attorneys' fees and costs arising from the Adversary Proceeding including those associated with negotiation, preparation, and implementation of this Settlement Agreement.

13.     **Terms and Conditions.** The Parties have each read the Settlement Agreement in its entirety and represent and warrant (a) that the Settlement Agreement, including each term and provision, as memorialized herein, has been explained to them by their legal counsel and (b) that each understands all the terms, obligations, releases, and other provisions of the Settlement Agreement.

14.     **Reservation of Rights.**  Notwithstanding any other provision of this Settlement Agreement, (a) Defendant reserves its  rights to indemnification (i) asserted in the Proofs of Claim or (ii) otherwise available to Defendant under any agreements or organizational documents, including but not limited to any certificates of formation or by-laws, and (b) nothing herein is intended to, nor will terminate affect, diminish, and/or modify any of Defendant's rights, claims and/coverages under any insurance policy or other similar instrument, including but not limited to any directors' and officers' insurance policy.  The Trustee reserves all rights to assert defenses and otherwise object to any such asserted indemnification claim.

15.     **Authority.**  The Parties each represent and warrant that they are duly authorized to execute this Settlement Agreement and that each intends to be legally bound by all provisions of this Settlement Agreement; provided, however, that the Trustee's authorization is subject to Bankruptcy Court approval, and this Settlement Agreement shall become effective upon the Approval Order becoming effective.

16.     **Execution.**  This Settlement Agreement may be executed in one or more counterparts, including by PDF or facsimile, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17.     **Entire Agreement.**  This Settlement Agreement is a fully integrated agreement and constitutes the entire agreement and understanding between the Parties regarding the subject matter hereof.  Each Party acknowledges that this Settlement Agreement controls and supersedes all of the Parties' prior discussions, agreements, communications or negotiations regarding the terms hereof.

18.     **Modification.**  Except as expressly set forth herein, this Settlement Agreement may not be amended except by a writing signed by all Parties.

19.     **Conversion.**  The Approval Order shall survive conversion of the Chapter 7 Cases to any other Chapter of the Bankruptcy Code.

20.     **Jurisdiction.**  The Parties acknowledge and agree that the Bankruptcy Court shall retain exclusive jurisdiction over the Parties and the subject matter hereof to resolve all disputes arising from or related to the Claims and this Settlement Agreement, including but not limited to any action to enforce this Agreement or interpret its terms. The Parties hereto irrevocably submit to the personal jurisdiction of the Bankruptcy Court for such purpose.

RLF1 35642333v.2

21.     **Choice of Law.**  This Settlement Agreement shall be governed by the laws of the State of Delaware and shall be construed and interpreted in accordance with its laws, notwithstanding its conflict of laws principles or any other rule or regulation that would result in the application of any other state's law.

22.     **Construction.**  Each party represents and warrants that it has had an opportunity to fully review the provisions of this Settlement Agreement, as a result, the Parties hereto acknowledge and agree that (a) any rule of law that provides that ambiguities are to be construed against the drafting party shall not be employed in the interpretation of this Settlement Agreement; (b) each party signing this Settlement Agreement is entering into this Settlement Agreement knowingly, voluntarily, and of his or its free will; (c) no promises or representation that are not contained in this Agreement have been made to induce either Party into executing such documents; and (d) neither has relied on any promise or representation except as set forth herein, and that it has conducted its own independent investigation of all matters it deems relevant regarding this Agreement.

**WHEREFORE** the Parties hereto, intending to be legally bound, have caused this Agreement to be duly executed as set forth below on this 1st day of May, 2026.

*[Signature page follows]*

6

RLF1 35642333v.2

AGREED TO BY:

**GEORGE L. MILLER, CHAPTER 7
TRUSTEE**


By: _____
George L. Miller, Chapter 7 Trustee


**CHRISTOPHER C. YOUNG**

By: _____
Christopher C. Young

7

RLF1 35642333v.2