**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>AKORN HOLDING COMPANY LLC,<br>*et al* [2]<br>　　　　　　　　　Debtors. | Chapter 7<br><br>Case No. 23-10253 (KBO)<br><br>(Jointly Administered)<br><br>**Objection Date:**　　**July 17, 2024 at 4:00 p.m. ET**<br>**Hearing Date:**　　**July 24, 2026 at 10:00 a.m. ET** |

**TRUSTEE'S MOTION FOR ENTRY OF ORDER APPROVING SETTLEMENT WITH**
**AKORN AG (N/K/A OPTHTAPHARM AG)**

George L. Miller, as chapter 7 trustee (the "Trustee") for the estates (the "Estates") of the above-captioned debtors (the "Debtors"), respectfully moves (the "Motion") for entry of an order approving the settlement between the Trustee and Akorn AG (n/k/a Opthtapharm AG) and granting related relief, and in support respectfully states:

**Jurisdiction and Core Nature**

1.　　The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Pursuant to Local Rule 9013-1(f), the Trustee consents to the entry of a final order by the Bankruptcy Court in connection with this Motion to the extent that it is later determined that the Bankruptcy Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

---

[2] The Debtors in these chapter 7 cases, along with the last four digits of their federal tax identification numbers, and cases numbers are Akorn Holding Company LLC (9190), Case No. 23-10253 (KBO); Akorn Intermediate Company LLC (6123), Case No. 23-10254 (KBO); and Akorn Operating Company LLC (6184), Case No. 23-10255.  The Debtors' headquarters is located at 5605 CenterPoint Court, Gurnee, IL 60031.

**Background**

2.      On February 23, 2023 (the "Petition Date"), the Debtors commenced the above-captioned bankruptcy cases (the "Bankruptcy Cases") by filing voluntary petitions for relief under chapter 7 of the Bankruptcy Code.  On or about the Petition Date, the Office of the United States Trustee appointed George L. Miller as the chapter 7 Trustee for the Estates of each of the Debtors.

3.      Prior to the Petition Date, the Debtors' business included developing, manufacturing, and marketing specialty pharmaceuticals, including prescription, consumer health, and animal health products.  The Debtors were an industry leader in branded and generic products in alternate dosage forms such as ophthalmics, injectables, oral liquids, topicals, inhalants and nasal sprays.  The Debtors operated at numerous locations in the United States.  The Debtors' operations in the U.S. had all ceased as of the Petition Date, and the Trustee has not operated the business.

4.      As of Petition Date, the Debtors' Swiss affiliate, non-Debtor Akorn AG, was continuing to operate.  Debtor Akorn Operating Company LLC ("Akorn Operating") owned 100% of the equity in Akorn International S.á.r.l, a non-debtor based in Luxembourg.  Akorn International S.á.r.l, in turn, owned 100% of the equity in Akorn AG.

5.      In May 2023, the Trustee entered into an *Asset and Share Purchase Agreement*, dated as of May 18, 2023, with Sentiss AG, pursuant to which, among other things, the Trustee agreed to sell Akorn Operating's equity interest in Akorn International S.á.r.l to Sentiss AG.  On May 19, 2023, the Bankruptcy Court entered an order approving, and authorizing the Trustee to enter into, the *Asset and Share Purchase Agreement* with Sentiss AG.  The sale closed shortly thereafter, making Sentiss AG the new direct owner of Akorn International S.á.r.l, and the new

4

indirect owner of Akorn AG.  Akorn AG subsequently changed its name to Opthtapharm AG ("Opthtapharm," and, together with the Trustee, the "Parties"), and has continued operating.

6.      On June 26, 2023, Akorn AG filed a proof of claim on the claims register of Akorn Operating asserting a general unsecured claim in the amount of $28,344,959, which is docketed at claim No. 416-1 on the claims register (the "Claim").  The proof of claim did not attach any support for the Claim.

7.      In approximately late 2025, through counsel, the Parties entered into discussions about the Claim, and Opthtapharm provided certain information about the basis of the Claim and related documentation to the Trustee.  Opthtapharm asserted that the Claim arose from certain intercompany supply, pricing, and procurement arrangements between Akorn Operating and Akorn AG.  Among other things, Opthtapharm asserted that prior to the Petition Date Akorn AG had: procured certain pharmaceutical ingredients and components for Akorn Operating; manufactured, packaged, and provided certain product to Akorn Operating; and maintained certain inventory for Akorn Operating in anticipation of the latter's demand.  Opthtapharm  asserted that the Claim was based on Akorn AG's unpaid charge and other losses in connection with these arrangements, including, among other things, unpaid trade receivables, losses incurred from inventory becoming unusable, and destruction and disposal costs.  The Trustee disputed the asserted amount of the Claim and questioned certain of the asserted bases for the Claim.

8.      After arm's length negotiations, the Parties eventually reached an agreement to resolve their disputes concerning the Claim pursuant to certain terms and conditions, which are set out in a certain *Stipulation Between Trustee and Akorn AG Resolving Claim* (the "Stipulation"), a copy of which is attached to this Motion as Exhibit "A."[3]  The principal terms of the Stipulation

---

[3] This Motion contains a summary of certain terms of the Stipulation.  To the extent of any inconsistency between the terms of the Stipulation and this Motion, the terms of the Stipulation shall govern.

include an agreement by the Trustee to allow the Claim as a general unsecured claim against the Estate of Akorn Operating in the amount of $18,500,000 in full and final resolution of all claims that Akorn AG (n/k/a/ Opthtapharm) may possess in the Bankruptcy Cases, including without limitation all claims asserted in the Claim.

9.      The Stipulation also provides that within twenty (20) days after the entry of a final order of the Bankruptcy Court approving the Stipulation, the Trustee shall make an interim distribution to Opthtapharm on account of the Claim in an amount equal to $12,802,000 (i.e., 69.2% of the agreed-upon face amount of $18,500,000) (the "Interim Distribution"). This is the same percentage interim distribution that the Trustee recently made on account of certain other allowed general unsecured claims pursuant to the Bankruptcy Court's July 16, 2026 *Order Granting Motion of George L. Miller, Chapter 7 Trustee for an Order Authorizing Trustee's Fourth Distribution to Holders of General Unsecured Claims* entered in these Bankruptcy Cases [D.I. 1613].

## Relief Requested

10.      By this Motion, the Trustee seeks entry of an order, substantially in the form attached hereto: approving the Stipulation; and authorizing the Trustee to enter into the Stipulation, and to take any and all actions necessary or appropriate to implement the Stipulation.

## Basis For Relief Requested

11.      This Bankruptcy Court has the authority to grant the relief requested in this Motion pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019(a). Bankruptcy Rule 9019 governs the approval of compromises and settlements, and provides:

> On motion by the Trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

6

Fed. R. Bankr. P. 9019.  In addition, pursuant to section 105(a) of the Bankruptcy Code, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

12.     Under this authority, the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (*quoting* 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, this district has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  *See In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

13.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (*quoting Louise's*, 211 B.R. at 801). The Third Circuit has enumerated four factors that should be considered in determining whether a compromise should be approved: (i) the probability of success in litigation; (ii) the likely difficulties in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the paramount interest of the creditors.  *See Martin*, 91 F.3d at 393 (*citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968)).

14.     Fundamental to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry*, 390 U.S. at 425.  The *TMT* rule does not require the Bankruptcy Court to hold a full evidentiary hearing before a compromise can be approved, but rather the Bankruptcy Court's obligation is "to

canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'"

15.     The Trustee submits that his proposed settlement of the Claim pursuant to the terms of the Stipulation amply meets the applicable standards.  The settlement is the product of good faith and arms' length negotiations, saves the Estates the likely significant cost of litigating an objection to the Claim, and represents a significant reduction from the original face amount of the Claim.  Moreover, the outcome of any objection to the Claim that the Trustee may assert would be uncertain at best, and the litigation would be fact-intensive and complex.  If the Trustee were unsuccessful in his objection, then the significant costs of litigation would have resulted in no benefit at all for the Estates.  Under the circumstances, the Trustee submits that his settling the Claim pursuant to the terms of the Stipulation would represent a fair and reasonable outcome, and would be in the best interests of the Estates.

16.     Finally, the Trustee believes that the provision in the Stipulation providing for the Interim Distribution should not be controversial.  As mentioned above, 69.2% is the very same percentage interim distribution that the Bankruptcy Court recently approved for certain other allowed general unsecured claims, and the Trustee knows of no reason why Opthtapharm should not also receive an interim distribution of this percentage, based on the agreed-upon allowed amount of the Claim.

17.     For these reasons, the Trustee submits that the Stipulation meets the applicable standards, and should be approved.

## **Notice**

18.     Notice of this Motion will be given to the following parties (the "Notice Parties"): (i) the Office of the United States Trustee; (ii) counsel for Opthtapharm; (iii) the largest thirty (30) unsecured creditors with names and addresses appearing in Schedule F of the Schedules of Assets

8

and Liabilities prepared by the Debtors; and (iv) all parties who have requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002.  The Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

<u>**Conclusion**</u>

WHEREFORE, the Trustee respectfully requests that the Court enter an order in substantially the attached form: (i) approving the Stipulation; (ii) authorizing the Trustee to enter into the Stipulation, and to take any and all actions necessary or appropriate to implement the Stipulation, including, without limitation, making the Interim Distribution; and (iii) granting any additional relief that may be appropriate.

**COZEN O'CONNOR**

Dated:  July 2, 2026

By:  */s/ Simon E. Fraser*
John T. Carroll, III (DE No. 4060)
Simon E. Fraser (DE No. 5335)
1201 N. Market Street
Suite 1001
Wilmington, DE  19801
Tel: (302) 295-2000
jcarroll@cozen.com
sfraser@cozen.com

*Counsel to George L. Miller, Chapter 7 Trustee*

9